# Exhibit A

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
LETTERSTREAM

Crosner Legal, PC
9440 Santa Monica Blvd., Ste. 301
Beverly Hills CA 90212

0007072290000011



Ashley L. Shively
HOLLAND & KNIGHT
50 California Street Suite 2800
San Francisco CA 94111
USA

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| MICHAEL CROSNER (SBN 41294), ZACHARY CROSNER (SBN 272295), JAMIE SERB (SBN 289601), CHAD SAUNDERS (SBN 257810) CROSNER LEGAL, PC 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210 | |

TELEPHONE NO.: (310) 496-5818     FAX NO. *(Optional)*: (310) 510-6429
E-MAIL ADDRESS *(Optional)*: zach@crosnerlegal.com   chad@crosnerlegal.com
ATTORNEY FOR *(Name)*: Moises Reza, et al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

PLAINTIFF/PETITIONER: MOISES REZA, et al.

DEFENDANT/RESPONDENT: ZUFFA, LLC, et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: 22CV019499 |
|---|---|

TO *(insert name of party being served)*: ZUFFA, LLC, a Nevada limited liability company;

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: November 04, 2022

Maria Monterrey
_____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✔] A copy of the summons and of the complaint.
2. [✔] Other *(specify)*:
   CIVIL CASE COVER SHEET;
   NOTICE OF CASE MANAGEMENT CONFERENCE;
   NOTICE OF HEARING

*(To be completed by recipient)*:

Date this form is signed:

_____                    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                       ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

7072290.1.2

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| MICHAEL CROSNER (SBN 41294), ZACHARY CROSNER (SBN 272295), JAMIE SERB (SBN 289601), CHAD SAUNDERS (SBN 257810) CROSNER LEGAL, PC 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210 TELEPHONE NO.: (310) 496-5818   FAX NO. *(Optional)*: (310) 510-6429 E-MAIL ADDRESS *(Optional)*: zach@crosnerlegal.com   chad@crosnerlegal.com ATTORNEY FOR *(Name)*: Moises Reza, et al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

PLAINTIFF/PETITIONER: MOISES REZA, et al.

DEFENDANT/RESPONDENT: ZUFFA, LLC, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 22CV019499 |
|---|---|

TO *(insert name of party being served)*: ZUFFA, LLC, a Nevada limited liability company:

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: November 04, 2022

Maria Monterrey
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:

1. [✔] A copy of the summons and of the complaint.
2. [✔] Other *(specify)*:
   CIVIL CASE COVER SHEET;
   NOTICE OF CASE MANAGEMENT CONFERENCE;
   NOTICE OF HEARING

*(To be completed by recipient)*:

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

1  MICHAEL R. CROSNER (SBN 41299)
2  mike@crosnerlegal.com
   ZACHARY M. CROSNER (SBN 272295)
3  zach@crosnerlegal.com
   JAMIE SERB (SBN 289601)
4  jamie@crosnerlegal.com
   CHAD A. SAUNDERS (SBN 257810)
5  chad@crosnerlegal.com
   **CROSNER LEGAL, PC**
6  9440 Santa Monica Blvd. Suite 301
   Beverly Hills, CA 90210
7  Tel: (310) 496-5818
   Fax: (310) 510-6429
8
9  Attorneys for Plaintiffs MOISES REZA,
   FRANK GARZA, TANNER PENDERGRAFT,
10 and FEDERICO NAVARRETE

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**10/11/2022 at 06:24:56 PM**
By: Angela Linhares,
Deputy Clerk

11            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                       **COUNTY OF ALAMEDA**

13

14 MOISES REZA, FRANK GARZA,              Case No.:  **22CV019499**
   TANNER PENDERGRAFT, and
15 FEDERICO NAVARRETE on behalf of        **CLASS ACTION COMPLAINT**
   themselves and all others similarly situated,
16
17        Plaintiffs,                      1) FALSE ADVERTISING IN VIOLATION
                                               OF THE CALIFORNIA AUTOMATIC
18 v.                                          RENEWAL LAW [BUS. & PROF. CODE
                                               § 17600, ET SEQ.]
19 ZUFFA, LLC, a Nevada limited liability
   company; NEULION USA, LLC, a          2) VIOLATION OF THE CALIFORNIA
20 Delaware limited liability company; and    CONSUMER LEGAL REMEDIES ACT
   DOES 1 to 50, inclusive,                   [CIV. CODE § 1750, ET SEQ.]
21
          Defendants.                      3) VIOLATION OF THE CALIFORNIA
22                                             UNFAIR COMPETITION LAW [BUS. &
                                               PROF CODE § 17200, ET SEQ.]
23
                                           4) UNJUST ENRICHMENT
24
25                                         **JURY TRIAL DEMANDED**
26
27
28

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## I.     INTRODUCTION

1.     This class action complaint alleges that Defendants ZUFFA, LLC, and NEULION USA, LLC ("Defendants") violate California law in connection with an automatically renewing online streaming subscription program. Specifically, Defendants enroll consumers in its streaming subscription program without providing the "clear and conspicuous" disclosures mandated by California law, and posts charges to consumers' credit or debit cards for purported subscription charges without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures. Furthermore, Defendants fail to provide a clear mechanism for consumers to cancel the subscription service before its automatic renewal.

2.     This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code § 17600, et seq.) ("ARL"), the Consumers Legal Remedies Act (Civ. Code § 1750, et seq.) ("CLRA"), and the Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.) ("UCL").

## II.     JURISDICTION AND VENUE

3.     This court possesses original subject matter jurisdiction over this matter.  Venue is proper in Alameda, California, because Defendants transact business in Alameda, California, and some of the complained of conduct occurred in this judicial district.

## III.     THE PARTIES

4.     Plaintiffs MOISES REZA ("Plaintiff Reza"), FRANK GARZA ("Plaintiff Garza"), TANNER PENDERGRAFT ("Plaintiff Pendergraft"), and FEDERICO NAVARRETE ("Plaintiff Navarrete") (hereinafter collectively referred to as "Plaintiffs") are, and at relevant times were, individuals domiciled in the State of California and a citizen of the State of California.

5.     Defendant ZUFFA, LLC, is a Nevada limited liability company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California.

6.     Defendant NEULION USA, LLC, ("NEULION") is a Delaware limited liability company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California. Plaintiffs are informed and believe, and based thereon allege, that Defendant NEULION contracts with ZUFFA, LLC to provide services that provide the

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  consumer with the ability to access and view ZUFFA, LLC's UFC Fight Pass content, and

2  NEULION processes the subscription fees charged by ZUFFA, LLC. Based on information and

3  belief, the UFC Fight Pass service and/or access to view UFC fights and/or other UFC content is

4  processed by NEULION so UFC Fight Pass users can view UFC fights and/or other UFC content.[1]

5       7.     The true names and capacities of the DOE Defendants sued herein as DOES 1

6  through 50, inclusive, are currently unknown to Plaintiffs, who therefore sue each such Defendant

7  by said fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible

8  for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend this Complaint to

9  reflect the true names and capacities of the Doe Defendants when such identities become known.

10      8.     Plaintiffs are informed and believe, and based thereon allege, that, at all relevant

11 times, each of the Defendants was the principal, agent, partner, joint venturer, officer, director,

12 controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or

13 predecessor in interest of some or all of the other Defendants, and was engaged with some or all of

14 the other defendants in a joint enterprise for profit, and bore such other relationships to some or all

15 of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this

16 complaint. Plaintiffs are further informed and believes, and based thereon allege, that each

17 Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all

18 relevant times, each Defendant knew or should have known about, authorized, ratified, adopted,

19 approved, controlled, and/or aided and abetted the conduct of all other Defendants.

20      9.     At all relevant times, Defendants were and are legally responsible for all of the

21 unlawful conduct, policies, practices, acts and omissions complained of herein. The conduct of

22 Defendants' managers and supervisors was at all relevant times undertaken as employees of

23 Defendants, acting within the scope of their employment or authority in all of the unlawful activities

24 described herein.

25                     IV.   **BACKGROUND**

26      10.    According to ZUFFA, LLC, ZUFFA, LLC, owns the exclusive rights to, "Ultimate

27 Fighting Championship," "Ultimate Fighting," "UFC," "The Ultimate Fighter," "Submission," "As

28

---

[1] See https://www.ufc.com/terms (last visited September 11, 2022).

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Real As It Gets", "The Octagon" and the eight-sided cage design are registered trademarks, trademarks, trade dress or service marks, and ZUFFA, LLC, operates all Ultimate Fighting Championship® web sites, including without limitation, those located at www.ufc.com and www.ufcfightpass.com[2]

11.    As part of its business activities, Defendants operate an online streaming service called "UFC Fight Pass" to which consumers may subscribe on a monthly or annual basis. After subscribing to UFC Fight Pass, Defendants thereafter post charges to the consumer's credit or debit card in the amount of $9.99 per month for "UFC Fight Pass". The annual charge for this service is $95.99. However, Defendants fail to provide clear and conspicuous disclosures mandated by California law, and fail to provide a clear mechanism by which consumers may cancel their subscriptions.

12.    As described below, the California Automatic Renewal Law was enacted to prohibit companies from enrolling consumers in automatic renewal programs without first making specific clear and conspicuous disclosures and without obtaining each individual's affirmative consent.

**THE CALIFORNIA AUTOMATIC RENEWAL LAW**

13.    In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010, as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code § 17600, *et seq*. (the California Automatic Renewal Law or "ARL"). SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

(See Exhibit 1 attached hereto.)

14.    The Assembly Committee on Judiciary provided the following background for the legislation:

---

[2] See https://www.ufc.com/terms (last visited September 11, 2022); see also https://esos.nv.gov/OnlineTrademarkSearch/TradeMarkInformation (last visited September 11, 2022)

3

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

(See Exhibit 2 attached hereto.)

15.     The ARL seeks to ensure that, before there can be a legally binding automatic renewal or continuous service arrangement, there must first be adequate disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, Bus. & Prof. Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

(1)     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. (Bus. & Prof. Code § 17602(a)(1).) For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (Bus. & Prof. Code § 17601(c).) In the case of an audio disclosure, 'clear and conspicuous' means in a volume and cadence sufficient to be readily audible and understandable." (*Id*.) The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (a) that the subscription or purchasing agreement will continue until the consumer cancels; (b) the description of the cancellation policy that applies to the offer; (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (e) the minimum purchase obligation, if any. (Bus. & Prof.

4

Code § 17601(b).)

(2)     Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code § 17602(a)(2).)

(3) Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. (Bus. & Prof. Code § 17602(a)(3).) If the offer includes a free trial, the business must also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services. (*Ibid*.) Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation.[3]

16.     Violation of the ARL gives rise to restitution and injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof. Code § 17535. (Bus. & Prof. Code, § 17604, subd. (a).)

---

[3] According to the Federal Trade Commission, the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405, which contains the federal rules for automatic renewal agreements, "requires negative option sellers to provide a simple, reasonable means for consumers to cancel their contracts. To meet this standard, negative option sellers should provide cancellation mechanisms that are at least as easy to use as the method the consumer used to initiate the negative option feature. For example, to ensure compliance with this simple cancellation mechanism requirement, negative option sellers should not subject consumers to new offers or similar attempts to save the negative option arrangement that impose unreasonable delays on consumers' cancellation efforts. In addition, negative option sellers should provide their cancellation mechanisms at least through the same medium (such as website or mobile application) the consumer used to consent to the negative option feature. The negative option seller should provide, at a minimum, the simple mechanism over the same website or web-based application the consumer used to purchase the negative option feature. If the seller also provides for telephone cancellation, it should provide, at a minimum, a telephone number, and answer all calls to this number during normal business hours, within a short time frame, and ensure the calls are not lengthier or otherwise more burdensome than the telephone call the consumer used to consent to the negative option feature. See https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 14.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## V.   FACTS GIVING RISE TO THIS ACTION

17.     Defendants automatically subscribed Plaintiffs to their UFC Fight Pass service. Defendants automatically subscribed Plaintiffs to their UFC Fight Pass service without first providing the clear and conspicuous disclosures required by the ARL and without first obtaining Plaintiffs' affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Based on information and belief, on or around January 2020, Plaintiff Reza logged onto Defendants' UFC Fight Pass streaming service home page at https://welcome.ufcfightpass.com/region/united-states via his desktop computer. The home page includes several graphics and images of UFC combat sports. The home page prompts consumers to "Sign Up Today" by clicking on a red box with the word "Sign Up Today" preceded by a seven-line blurb describing the service subscription to UFC Fight Pass as "a never-ending supply of fighting…the Ultimate 24/7 platform for MORE combat sports, UFC Fight Pass!"

18.     Only after scrolling down past the "Sign Up Today"[4] and scrolling past numerous large graphics of combat sports with descriptions in large font of the service is there any discussion of (1) that the service will have to be paid for and (2) that the service will involve "recurring payments" on either a monthly or yearly basis. This information is finally given below large font saying "IMMERSE YOURSELF: CHOOSE YOUR UFC FIGHT PASS PLAN" where there are side-by-side boxes for the monthly plan and the yearly plan. The boxes display the cost of the respective plans followed by a blurb about the features provided in the subscription. Under the blurb are two line items in significantly smaller font. The first line item advertises "Over 1,000 hours of live combat sports action from around the globe". Finally, the second line item reads that the service requires a recurring payment as it states "Recurring payment of $9.99 per month" and "Recurring payment of $95.99 every year" in the boxes for the monthly and yearly subscriptions, respectively. The customer is given the option to click large red boxes labeled "SELECT" at the bottom of the plan choices. Only after scrolling past the subscription plan choices does it finally state in much smaller greyed-out font that that the "Subscription will auto-renew unless cancelled prior to the

---

[4] Based on information and belief, many consumers do not scroll down past the large red "Sign Up Today" button as the webpage design with its dark background, formatting of the page, and/or the centered "Sign Up Today" button suggests there is no material below to which to scroll down.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

applicable renewal". This purported disclosure phrase not only fails to be clear and conspicuous but also fails to disclose all required automatic renewal terms as required by California law. Notably, there is no indication when such renewal will occur and/or whether the recurring payment is subject to change. Attached hereto as Exhibit 3 is a printout of Defendant's UFC Fight Pass home page as of September 8, 2022.

19. Upon clicking on any of the three buttons on the home page (the "SIGN UP TODAY" or either of the two "SELECT" buttons under the plan choices) the consumer is directed to a page with two similar boxes to the first page, with the choices for a monthly or annual plan. Much like the boxes on the home page they list the prices of each plan followed by a blurb advertising the service features – namely, "Access to exclusive prelims for all PPV events, the entire UFC Fight Library, live martial arts events from around the world and exclusive original series and shows" is under the pricing. Below that, are two line items: (1) the first reads "Over 1,000 hours of live combat sports action from around the globe" (2) The second line item differs from the second line item from the boxes on the homepage as the second line item for the monthly plan states "Monthly subscription, cancel anytime," and the second line item for the yearly plan states "Save 20% when compared to the monthly subscription. Recurring payment of $95.99 every year". The consumer is then given the option to click a button under either plan that reads "SELECT LICENSE". Notably, this page fails to give any indication to the consumer that the plan will automatically renew on a monthly basis unless canceled. Attached hereto as Exhibit 4 is a printout/screenshot of UFC Fight Pass' "Select A Plan" page as of September 8, 2022.[5]

20. Upon selecting either of these options (either the monthly or annual option), the consumer is taken to a new page where he or she is prompted to "Create a New Account" by providing an email address and creating a password as well as providing a billing address. Attached hereto as Exhibit 5 is a screenshot of the account creation page as of September 8, 2022[6]. As demonstrated by Exhibits 4-5, Defendants fail to provide any form of disclosures regarding the automatically renewing nature of its subscription services and/or that the plan will automatically

_____

[5] The select a plan page can be found here: https://ufcfightpass.com/signup last visited September 8, 2022; Exhibit 4 is a screenshot of the select a plan page as of September 8, 2022.

[6] Exhibit 5 is a screenshot of the account creation and order summary page as of September 8, 2022.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

renew on a monthly basis unless canceled.  Once the consumer clicks "Continue" to create a new

account, a "Terms of Use" box pops up containing the following language: "UFC (Zuffa, LLC) is

collecting your information as part of its signup process, and while you use the services, for the

purpose of providing the service to you, as well as other purposes set out in the Privacy Policy."

Beneath this language, there are three checkboxes.  The first checkbox has following language: "By

checking this box, you confirm that you have read and agree to the Terms of Use, Privacy Policy

and Cookie Policy."  The consumer is required to check this box to proceed/activate the "Submit"

button at the bottom of the box.  There are also optional boxes that can be checked to receive offers

and opt out of certain data sharing.  Attached hereto as Exhibit 6 is a printout of the "Terms of Use"

box as of September 11, 2022.

21.     Upon clicking on the phrase "Terms of Use", the consumer is taken to a new page

that includes a long list of twenty-six (26) different terms, many with multiple paragraphs and/or

subsections.[7] A user must scroll down several times to reach section twelve called "Special Terms

and Conditions Applicable to Subscription Products, online Pay Per View, and Other

Services/Products Offered for Purchase Through the Billing."  There are several paragraphs the user

must scroll through, none of which relate to any automatic renewal terms, before the user encounters

a paragraph, not bolded, nor in a distinctive font nor emphasized in any way, containing the

following language: "Billing and Automatic Renewal Policies for Certain Subscription Services or

Monthly Subscriptions,".  Under this section, Defendants state that a monthly or annual subscription

will begin "when you purchase and ends at the product's pre-determined cycle."  Notably, there is

no disclosure informing the user the first date he/she will be charged for the service and/or that the

service or purchasing agreement will continue until the consumer cancels.  The section merely

informs the user that he/she *may* cancel, not that he/she *must* cancel to avoid the continuation of

charges.  Additionally, a user can check out and purchase the service without ever opening the Terms

of Use.  Other than these terms, which fail to be clear and conspicuous, there are no other clear and

---

[7] Attached hereto as Exhibit 7 is a printout of the "Terms of Use" as of September 11, 2022. Upon clicking on the
phrase "Privacy Policy", the consumer is taken to a new page that includes several terms, none of which explain the
automatic renewal terms. Attached hereto as Exhibits 8 and 9 are printouts of the "Privacy Policy" and the "Cookie
Policy" as of September 11, 2022, neither of which said policies contain any automatic renewal terms.

1  conspicuous disclosures provided to the consumer prior to purchasing a service.

2      22.    Moreover, Defendants fail to explain the cancellation policy in a way that can be

3  retained by the user.  For example, the paragraph "Billing and Automatic Renewal Policies for

4  Certain Subscription Services or Monthly Subscriptions" purports to articulate a cancellation policy

5  with the language "To cancel your monthly subscription or the annual automatic renewal feature,

6  send an e-mail to UFCTVSupport@UFC.com cancellation will become effective as of the next

7  monthly billing cycle following receipt."  However, it is unclear as to exactly what is required to

8  effectively cancel the service in a timely manner.  The purported cancellation policy does not

9  articulate any sort of intelligible policy, simply stating "send an email to

10 UFCTVSupport@UFC.com"."  For example, there is no indication to the user that he/she will

11 receive a confirmation email upon receipt and/or other indication the user's email was correctly

12 received, noted, and the user's account updated; no instructions are provided to the user as to what

13 to include in the email e.g., label the subject line of the email or the required contents of the email

14 for effective cancellation in a timely manner. In short, the cursory nature of the purported

15 cancellation policy that is couched among numerous irrelevant terms and devoid of any real

16 instruction to the user as to how to effectuate cancellation in a timely manner renders it confusing

17 and/or unintelligible and not capable of being retained by the consumer.  Moreover, as noted, a user

18 can check out and purchase the service without ever opening the Terms of Use.  Other than these

19 terms, which fail to be clear and conspicuous, there are no other clear and conspicuous disclosures

20 provided to the consumer prior to purchasing a service.

21     23.    After the user checks the box that he/she has read and agrees to the terms of use,

22 privacy and cookies policies in order to activate the "Submit" button to advance, the user is taken

23 directly to a "Checkout" page that directs the consumer to choose a method of payment (PayPal,

24 Google Pay or Debit/Credit Card).   On the right side of this screen is an "Order Summary" with a

25 line item that reads "Monthly US $9.99" beneath which is the following description of the streaming

26 service "Access to exclusive prelims for all PPV events, the entire UFC Fight Library, live martial

27 arts events from around the world and exclusive original series and shows".  Beneath this description

28 are two line items "Over 1,0000 hours of live combat sports action from around the globe" and a

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

second line with the following language "Monthly subscription, cancel anytime".   The Order Summary provides a large box for a "Promo Code" and displays the total price for a single purchase in larger font than anything else on the page. There is no indication that the subscription will automatically renew, that the subscription will continue until it is cancelled, when such renewal will occur, the amount of each recurring charge and/or whether the recurring charge is subject to change. Moreover, while the "Order Summary" includes the language "cancel anytime", there is no indication of the process by which to cancel.  As such, the Checkout page fails to provide the clear and conspicuous automatic renewal disclosures as required by California law. Attached hereto as Exhibit 10 is a screenshot of the "Payment Methods" and "Order Summary" Checkout page (as of September 11, 2022) directing the consumer to choose method of payment for the previously selected service. Upon selecting the option for Debit/Credit Card, the user is taken to a second "Checkout" page that requests the consumer's credit card information.  Attached hereto as Exhibit 11 is a screenshot of the Selected Payment page (as of September 11, 2022) that requests the consumer's credit card information with an "Order Summary" on the right-hand side of the screen that is identical to the "Order Summary" provided on the first Checkout page that directs the user to choose a payment method.  As such, the Checkout pages fail to provide the clear and conspicuous automatic renewal disclosures as required by California law.  Additionally, once the user has entered his/her payment information, he/she can select the "Secure Checkout" without ever being provided with any of the clear and conspicuous disclosures as required by California law.

24.     As a result of Defendants' failure to provide clear and conspicuous automatic renewal terms under California law, consumers do not affirmatively consent to the hidden renewal terms of the UFC Fight Pass service.

25.     Additionally, consumers are never provided with an acknowledgement that includes the automatic renewal or continuous offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.

26.     Based on information and belief, individuals that purchase Defendants' UFC Fight Pass service via an application on their smart phone or smart TV undergo a process that is substantially similar if not identical to the process described above, including but not limited to the

lack of disclosures required under California law.

27.   When Plaintiff Reza made his online purchase in or around January 2020, he was not aware that Defendants were going to automatically renew his subscription without further notice.

28.   Plaintiff Reza first purchased Defendants' UFC Fight Pass service following a very similar process as that described above. Upon clicking on the "Sign Up Today" button on Defendants' home page, Plaintiff Reza was redirected to a new page that advertised the features of Defendants' streaming service. Plaintiff Reza then created a UFC account by providing his email address and creating a password. After creating the account, Plaintiff Reza paid for one month of Defendant's UFC Fight Pass using a personal credit/debit card. To Plaintiff Reza's surprise, Defendants automatically enrolled him in a monthly subscription plan that was scheduled to renew each month. Plaintiff Reza discovered that Defendants enrolled him an automatic subscription service when he noticed additional charges to his credit card/debit card approximately two months after his original purchase date. On or around March 2020, Plaintiff Reza attempted to cancel the monthly subscription by visiting Defendants' streaming service web page via his desktop. Over the months that followed, Plaintiff Reza attempted to cancel at least one other time but was unable to do so. Defendants continued to charge Plaintiff Reza for a monthly subscription he did not consent to until in or around October 2021, when Defendants finally responded to his most recent attempt to cancel Defendants' subscription.

29.   Defendants automatically subscribed Plaintiff Reza to its UFC Fight Pass service without first providing the clear and conspicuous disclosures required by the ARL and posted charges to Plaintiff Reza's debit/credit card without first obtaining his affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Moreover, Defendants did not provide an adequate mechanism for cancelling the service before the renewal date.

30.   When Plaintiff Reza made his online purchase in January 2020, he was not aware that Defendants were going to automatically renew his subscription without further notice. If Plaintiff had known that Defendants were going to automatically renew his subscription with charges of $9.99 per month, Plaintiff either would not have purchased a UFC Fight Pass subscription

11

1   in the first place or would have taken other steps to avoid the renewal of his subscription.

2       31.   Plaintiff Garza first purchased Defendants' UFC Fight Pass Service following a very

3   similar process as that described above. On information and belief, on or around July 31, 2020,

4   Plaintiff Garza logged onto Defendants' UFC Fight Pass streaming service home page at

5   https://welcome.ufcfightpass.com/region/united-states  via his laptop computer.  Upon clicking on

6   the "Sign Up Today" button on Defendants' home page, Plaintiff Garza was redirected to a new page

7   that advertised the features of Defendants' streaming service. Plaintiff Garza then created a UFC

8   account by providing his email address and creating a password. After creating the account, Plaintiff

9   Garza paid for one month of Defendants' UFC Fight Pass using the PayPal payment option on the

10  choose a method of payment screen. Defendants automatically enrolled him in a monthly

11  subscription plan that was scheduled to renew each month. On or around December 2020, Plaintiff

12  Garza attempted to cancel the monthly subscription by visiting Defendants' streaming service web

13  page via Defendants' website but was unable to do so.  Plaintiff Garza attempted to cancel several

14  more times by phone but was unable to do so. Defendants continued to charge Plaintiff Garza for a

15  monthly subscription without his consent until in or around at least February 2021, when Defendants

16  finally cancelled Plaintiff Garza's monthly subscription, following Plaintiff Garza's most recent

17  cancellation attempt.  Plaintiff Garza never received any confirmation email and/or other form of

18  cancellation confirmation from Defendants.

19      32.   Defendants automatically subscribed Plaintiff Garza to its UFC Fight Pass service

20  without first providing the clear and conspicuous disclosures required by the ARL and posted

21  charges to Plaintiff Garza's debit/credit card without first obtaining his affirmative consent to an

22  agreement containing the required clear and conspicuous disclosures as required under California

23  law. Moreover, Defendants did not provide an adequate mechanism for cancelling the service before

24  the renewal date.  Defendants continued to charge Plaintiff Garza for a monthly subscription without

25  his consent until in or around at least February 2021, when his subscription was finally cancelled.

26      33.   Plaintiff Pendergraft first purchased Defendants' UFC Fight Pass Service following

27  a very similar process as that described above. In or around November 2021, Plaintiff Pendergraft

28  opened his web browser on his mobile phone and went to Defendants' UFC Fight Pass streaming

service home page at  https://welcome.ufcfightpass.com/region/united-states.  Upon clicking on the "Sign Up Today" button on Defendants' home page, Plaintiff Pendergraft was redirected to a new page that advertised the features of Defendants' streaming service. Plaintiff Pendergraft then created a UFC account by providing his email address and creating a password. After creating the account, Plaintiff Pendergraft paid for one month of Defendants' UFC Fight Pass using the credit card payment option on the choose a method of payment screen. Defendants automatically enrolled him in a monthly subscription plan that was scheduled to renew each month. On or around January 2022, Plaintiff Pendergraft attempted to cancel the monthly subscription by phone but was unable to do so.  Plaintiff Pendergraft attempted to cancel at least one additional time by phone but was unable to do so. Defendants continued to charge Plaintiff Pendergraft for a monthly subscription without his consent until in or around at least April 2022, when Defendants finally cancelled Plaintiff Pendergraft's monthly subscription, following Plaintiff Pendergraft's most recent cancellation attempt.

34.    Defendants automatically subscribed Plaintiff Pendergraft to its UFC Fight Pass service without first providing the clear and conspicuous disclosures required by the ARL and posted charges to Plaintiff Pendergraft's credit card without first obtaining his affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Moreover, Defendants did not provide an adequate mechanism for cancelling the service before the renewal date.  Defendants continued to charge Plaintiff Pendergraft for a monthly subscription without his consent until in or around at least April 2022, when his subscription was finally cancelled.

35.    Based on information and belief, individuals that purchase Defendants' UFC Fight Pass service via an application on their smart phone undergo a process that is substantially similar if not identical to the process described above, including but not limited to the lack of disclosures required under California law.  Plaintiff Navarrete first purchased Defendants' UFC Fight Pass Service following a very similar process as that described above On or about October 25, 2019, Plaintiff Navarrete downloaded Defendants' UFC application via his smart phone. He then created an account. After creating an account, Plaintiff Navarrete purchased one month of UFC Fight Pass

1  without ever being provided with the required disclosures under California law. As such, Plaintiff

2  Navarrete did not realize that Defendants would enroll him in an automatically renewing monthly

3  subscription that he would be charged for immediately after creating his account. Plaintiff Navarrete

4  attempted to cancel the monthly subscription the same day he downloaded the app and created his

5  account after he was unable to access/view the UFC Fight Pass content for which he had signed up

6  to view. Plaintiff Navarrete initially attempted to cancel the monthly subscription the same day as

7  his initial purchase by deleting the app from his smart phone. Approximately two months after

8  Plaintiff Navarrete's initial attempt to cancel the monthly subscription, Plaintiff Navarrete

9  discovered that Defendants were continuing to post charges to his credit card/debit card for the

10  monthly subscription. Plaintiff Navarrete was surprised to see the recurring charges. Plaintiff

11  Navarrete attempted to cancel the monthly subscription again by, including but not limited to,

12  searching Defendants' website and search engines to find a contact number for Defendants so he

13  could cancel, but he was unable to cancel the subscription.

14       36.   To this day, Defendants continue to charge Plaintiff Navarrete for a monthly

15  subscription he did not consent to.

16       37.   When Plaintiff Navarrete made his online purchase on or about October 25, 2019, he

17  was not aware that Defendants were going to automatically renew his subscription without further

18  notice. If Plaintiff Navarrete had known that Defendants were going to automatically renew his

19  subscription with charges of $9.99 per month, Plaintiff Navarrete either would not have purchased

20  a UFC Fight Pass subscription in the first place or would have taken other steps to avoid the renewal

21  of his subscription.

22                 **VI. <u>CLASS ACTION ALLEGATIONS</u>**

23       38.   Plaintiffs bring this lawsuit as a class action under Code of Civil Procedure section

24  382 on behalf of the following Class: "All California residents who were both (1) enrolled in

25  Defendants' subscription service for UFC Fight Pass and (2) charged by Defendants for a

26  subscription to UFC Fight Pass within the applicable statute of limitations. Excluded from the Class

27  are all employees of Defendants, all employees of Plaintiffs' counsel, and the judicial officers to

28  whom this case is assigned.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

39.   <u>Ascertainability</u>. The members of the Class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' marketing and promotion records, customer records, and billing records.

40.   <u>Common Questions of Fact or Law</u>. There are questions of fact and law that are common to the members of the Class, which predominate over individual issues. Common questions regarding the Class include, without limitation: (1) whether Defendants present all statutorily-mandated automatic renewal offer terms, within the meaning of Business and Professions Code § 17601(b); (2) whether Defendants present automatic renewal offer terms in a manner that is "clear and conspicuous," within the meaning of § 17601(c), and in "visual proximity" to a request for consent to the offer, or in the case of an offer conveyed by voice, in temporal proximity to a request for consent to the offer, as required by § 17602; (3) whether Defendants obtain consumers' affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms before charging a credit card, debit card, or third-party payment account; (4) whether Defendants provide consumers with an acknowledgment that includes clear and conspicuous disclosure of all statutorily-mandated automatic renewal or continuous service offer terms, the cancellation policy, and information regarding how to cancel; (5) Defendants' record-keeping practices; (6) the appropriate remedies for Defendants' conduct; and (7) the appropriate terms of an injunction.

41.   <u>Numerosity</u>. The Class is so numerous that joinder of all class members would be impracticable. Plaintiffs are informed and believe and thereon allege that the Class consists of at least 100 members.

42.   <u>Typicality and Adequacy</u>. Plaintiffs allege that Defendants enrolled the Class members in automatic renewal subscriptions without disclosing all terms required by law, and without presenting such terms in the requisite "clear and conspicuous" manner; charged the Class members' credit cards, debit cards, or third-party accounts without first obtaining the Class members' affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms; and failed to provide the requisite acknowledgment. Plaintiffs have no interests that are adverse to those of the other Class members. Plaintiffs will fairly and adequately

15

protect the interests of the Class members.

43.    <u>Superiority</u>. A class action is superior to other methods for resolving this controversy. Because the amount of restitution or damages to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for class members to redress the wrongs done to them without a class action forum. Furthermore, on information and belief, Class members do not know that their legal rights have been violated. Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

44.    <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>. Defendants have acted on grounds that are generally applicable to the members of the Class, thereby making appropriate final injunctive relief and/or declaratory relief with respect to the Class as a whole.

## VII. <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>

False Advertising - Violation of the Automatic Renewal Law

(Bus. & Prof. Code, § 17600 et seq.)

(By Plaintiffs and the Class Against All Defendants)

45.    Plaintiffs incorporate the previous allegations as though set forth herein.

46.    Plaintiffs are informed and believe and thereon allege that, during the applicable statute of limitations period, Defendants have enrolled consumers, including Plaintiffs and Class members, in automatic renewal and/or continuous service subscription programs and have (a) failed to present the automatic renewal or continuous service offer terms in a clear and conspicuous manner before the subscription agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer; (b) charged the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms or continuous service offer terms; and (c) failed to provide an acknowledgment that includes clear and

conspicuous disclosure of automatic renewal or continuous service offer terms, the cancellation policy, and information regarding how to cancel.

47.     As a result of Defendants' conduct, pursuant to Bus. & Prof. Code §§ 17603 and 17535, Plaintiffs and Class members are entitled to restitution of all amounts that Defendants charged for any VIP membership during the four years preceding the filing of this Complaint and continuing until Defendants' statutory violations cease.

48.     Pursuant to Bus. & Prof. Code § 17535, Plaintiffs and the Class members are entitled to an injunction enjoining Defendants from making membership program offers to California consumers that do not comply with California law.

## SECOND CAUSE OF ACTION
Violation of the California Consumers Legal Remedies Act
(Civ. Code, § 1750 et seq.)
(By Plaintiffs and the Class Against All Defendants)

49.     Plaintiffs incorporate the allegations of the preceding paragraphs as though set forth herein.

50.     Plaintiffs and the members of the Class are "consumers" within the meaning of Civil Code § 1761(d) in that Plaintiffs and the goods and/or services sought or acquired were for personal, family, or household purposes.

51.     Defendants' UFC Fight Pass subscription services offers pertain to "goods" and/or "services" within the meaning of Civil Code § 1761(a) and (b).

52.     The purchases and payments by Plaintiffs and Class members are "transactions" within the meaning of Civil Code § 1761(e).

53.     Defendants have violated Civil Code § 1770, subdivisions (a)(5), (a)(9), (a)(13), (a)(14), and (a)(17), by representing that Defendants' goods or services have certain characteristics that they do not have; advertising goods or and services with the intent not to sell them as advertised; making false and misleading statements of fact concerning the reasons for, existence of and amounts of price reductions; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and by representing that

17

the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

54.     Plaintiffs, on behalf of themselves and all other Class members, seek an injunction prohibiting Defendants from continuing their unlawful practices in violation of the Consumers Legal Remedies Act ("CLRA"), as described above.

55.     Pursuant to Civil Code § 1782, a notice regarding Defendants' violations of the CLRA was mailed via certified mail, return receipt requested, to Defendants, on September 28, 2022. Following expiration of the statutory period Plaintiffs will amend this Complaint to add claims for monetary damages under the CLRA, in addition to equitable and injunctive relief, and request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money that may have been acquired in violation of the CLRA, and for such other relief as is provided under Civil Code § 1780.

**THIRD CAUSE OF ACTION**
Unfair Competition
(Bus. & Prof. Code, § 17200 et seq.)
(By Plaintiffs and the Class Against All Defendants)

56.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

57.     The Unfair Competition Law defines unfair competition as including any unlawful, unfair or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act of false advertising under section 17500. (Bus. & Prof. Code § 17200.)

58.     Defendants committed unlawful, unfair, and/or fraudulent business practices, and engaged in unfair, deceptive, untrue, or misleading advertising, by, inter alia and without limitation: (a) failing to present the automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation of § 17602(a)(l); (b) charging the consumer in connection with an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of automatic renewal offer terms or continuous service offer terms, in

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

violation of § 17602(a)(2); (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding how to cancel, in violation of § 17602(a)(3); (d) representing that Defendants' goods or services have certain characteristics that they do not have, in violation of Civil Code § 1770(a)(5); € advertising goods and services with the intent not to sell them as advertised, in violation of Civil Code § 1770(a)(9); (f) making false and misleading statements of fact concerning the reasons for, existence of and amounts of price reductions, in violation of Civil Code § 1770(a)(13); (g) representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law, in violation of Civil Code § 1770(a)(14); and (h) representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of Civil Code § 1770(a)(17). Plaintiffs reserve the right to identify other acts or omissions that constitute unlawful, unfair or fraudulent business acts or practices, unfair, deceptive, untrue or misleading advertising, and/or other prohibited acts.

59.     Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

60.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

61.     Plaintiffs have suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

62.     Pursuant to Bus. & Prof. Code § 17203, Plaintiffs and the Class members are entitled to an order: (1) requiring Defendants to make restitution of all amounts received in connection with the unlawful, unfair, and/or fraudulent business practices alleged above; and (2) enjoining Defendants from making offers in the State of California that do not comply with California law.

1           **FOURTH CAUSE OF ACTION**

2           Unjust Enrichment

3           (By Plaintiffs and the Class Against All Defendants)

4        63.      Plaintiffs incorporate the previous allegations as though fully set forth herein.

5        64.      Defendants have received money from Plaintiffs and Class members in connection

6 with Defendants' conduct in violation of California law, as described herein. Defendants would be

7 unjustly enriched if they were permitted to retain those funds, and Defendants should be ordered to

8 restore said funds to Plaintiffs and the Class members.

9        65.      Plaintiffs allege this unjust enrichment claim in the alternative to relief provided

10 under any legal claim alleged herein.

11              **PRAYER**

12        WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

13 On the First Cause of Action

14   1.  For restitution;

15   2.  For a public injunction for the benefit of the People of the State of California;

16 On the Second Cause of Action:

17   3.  For a public injunction for the benefit of the People of the State of California;

18   4.  For an award of attorney's fees and costs, pursuant to Civil Code § 1780(e);

19 On the Third Cause of Action:

20   5.   For restitution;

21   6.  For a public injunction for the benefit of the People of the State of California;

22 On the Fourth Cause of Action:

23   7.  For restitution;

24 On All Causes of Action:

25   8.  For an award of attorneys' fees pursuant to Code Civ. Proc. § 1021.5;

26   9.  For costs of suit;

27 ////

28 ////

10. For pre-judgment interest; and

11. For such other relief that the Court deems just and proper.

Dated:  October 11, 2022

**CROSNER LEGAL, P.C.**

Michael R. Crosner, Esq.
Zachary M. Crosner, Esq.
Jamie Serb, Esq.
Chad A. Saunders, Esq.
Attorneys for Plaintiffs
MOISES REZA, FRANK GARZA, TANNER
PENDERGRAFT, and FEDERICO NAVARRETE

7072290.1.25

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs demand a trial by jury on all claims so triable.

3

Dated:  October 11, 2022

4

**CROSNER LEGAL, P.C.**

5

6

Michael R. Crosner, Esq.

7

Zachary M. Crosner, Esq.
Jamie Serb, Esq.

8

Chad A. Saunders, Esq.
Attorneys for Plaintiffs

9

MOISES REZA, FRANK GARZA,
TANNER PENDERGRAFT, and FEDERICO

10

NAVARRETE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit 1

**SENATE JUDICIARY COMMITTEE**
**Senator Ellen M. Corbett, Chair**
**2009-2010 Regular Session**

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

## SUBJECT

Advertising:  Automatic Renewal Purchases

## DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis.  This bill would also require all marketing materials to clearly and conspicuously display a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism the customer could use for cancellation.

This bill would require the order form to clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over the telephone or on an Internet Web page.

 (This analysis reflects author's amendments to be offered in committee.)

## BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements.  Senate Bill 340 is intended to close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase agreements for products and services, consumer complaints began to surface regarding those automatic renewals.  Consumers complained that they were unaware of and had

SB 340 (Yee)
Page 2 of 7

not requested the automatic renewals until they either received a bill or a charge on
their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case.  After receiving
numerous consumer complaints, the Attorneys General of 23 states, including
California, launched an investigation into Time's automatic renewal subscription offers.
In 2006, the investigation resulted in a settlement agreement between the Attorneys
General and Time that includes a number of reforms to automatic renewals that Time
sends to their customers.  Those reforms include, among others, expanded disclosure
requirements and customers' affirmative consent to automatic renewals.  (*See* Comment
2 for details.)

## CHANGES TO EXISTING LAW

<u>Existing law</u>, the Unfair Competition Law (UCL), provides that unfair competition
means and includes any unlawful, unfair, or fraudulent business act or practice and
unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False
Advertising Act (FAA).  (Bus. & Prof. Code Sec. 17200 et seq.)

<u>Existing law</u>, the FAA, includes the following:
- prohibits any person with the intent, directly or indirectly, to dispose of real or
personal property, to perform services, or to make or disseminate or cause to be
made or disseminated to the public any statement concerning that real or personal
property that is untrue or misleading and known or should be known to be untrue
or misleading; and
- prohibits any person from making or disseminating any untrue or misleading
statement as part of a plan or scheme with the intent not to sell that personal
property or those services at the stated or advertised price.  (Bus. & Prof. Code Sec.
17500.)

<u>Existing law</u> provides that any violation of the FAA is a misdemeanor punishable by
imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by
both.  (Bus. & Prof. Secs. 17500, 17534.)

<u>Existing law</u> provides that any person who violates any provision of the FAA is liable
for a civil penalty not to exceed $2,500 for each violation that must be assessed and
recovered in a civil action by the Attorney General or by any district attorney, county
counsel, or city attorney.  (Bus. & Prof. Code Sec. 17536.)

<u>Existing law</u> provides that a person who has suffered injury in fact and has lost money
or property as a result of unfair competition may bring a civil action for relief.  (Bus. &
Prof. Code Sec. 17204.)

<u>Existing law</u> provides for injunctive relief, restitution, disgorgement, and civil penalties.
(Bus. & Prof. Code Secs. 17203, 17206.)



LEGISLATIVE INTENT SERVICE     (800) 666-1917

SB 340 (Yee)
Page 3 of 7

<u>This bill</u> would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:

1.  All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.

2.  Both of the following:
    a.  on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and
    b.  the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

<u>This bill</u> would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

<u>This bill</u> would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information.  The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

<u>This bill</u> would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order.  In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms.  The automatic



SB 340 (Yee)
Page 4 of 7

renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations,""Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

<u>This bill</u> would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

<u>This bill</u> would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

<u>This bill</u> would define key terms, including "automatic renewal" and "automatic renewal terms."  (*See* Comment 4.)

## <u>COMMENT</u>

1.  <u>Stated need for the bill</u>

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations.  The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions.  The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.



LEGISLATIVE INTENT SERVICE    (800) 666-1917

SB 340 (Yee)
Page 5 of 7

2. <u>Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with
   Attorneys General; SB 340 modeled after the Assurance</u>

The Attorneys General of 23 states (States), including California, investigated Time's
automatic renewal subscription offers.  Time publishes over 150 magazines worldwide,
including Time, People, Sports Illustrated, This Old House, Entertainment Weekly,
Fortune, and Popular Science.  Time required customers to notify it if they did not want
a subscription renewal; otherwise Time charged customers' credit cards or billed
customers.  The automatic renewal terms replaced "the industry's prior practice of
offering limited-term subscriptions that were renewed at the Customer's affirmative
election."  The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed;
> whether the Customer was given an opportunity to expressly consent to the offer;
> whether the Customer was likely to believe the purchase was for a limited-term
> subscription, rather than an automatically renewed subscription; whether
> Customers were subsequently informed of the activation of an Automatic Renewal,
> and, if so, the manner in which they were so informed; the manner by which
> Customers were billed or charged; and how Time sought to collect payments for
> charges resulting from an Automatic Renewal.  (Matters Investigated set forth in the
> Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the
Assurance – with Time.  In the Assurance, Time agreed to:
- provide clear and conspicuous disclosures to consumers concerning all the material
  terms for automatic subscription renewals and, for the next five years, provide
  consumers the option to affirmatively choose an automatic renewal option and Time
  will send those consumers who have chosen an automatic subscription renewal
  written reminders, including information on the right and procedure to cancel;
- honor all requests to cancel subscriptions as soon as reasonably possible and to
  provide refunds to consumers charged for magazines they did not order;
- stop mailing solicitations to consumers for subscriptions that resemble bills,
  invoices, or statements of amounts due; and
- not submit unpaid accounts of automatic renewal customers for third party
  collection.

Time also agreed to refund to customers up to $4.3 million, which included up to
$828,463 to 20,238 eligible California consumers, approximately $41 per consumer.
Senate Bill 340 is modeled in large part after the Assurance.

3. <u>Remedies available under the bill</u>

Senate Bill 340 would provide that a violation of its provisions would not be a crime,
but all applicable civil remedies would be available.



LEGISLATIVE INTENT SERVICE     (800) 666-1917

Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney.  Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party.  However, the party must have suffered injury in fact and lost money or property.

4.  Key terms defined

This bill would define the following key terms:
   a.  "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.
   b.  "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:
   •   that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
   •   that the customer has the right to cancel;
   •   that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
   •   the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
   •   that the price paid by the customer for future automatic renewal terms may change; and
   •   the minimum purchase obligation, if any.
   c.  "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or  communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.
   d.  "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5.  Recording of telephone automatic renewal offers

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices.  The rule requires, among other things, that telemarketers make



LEGISLATIVE INTENT SERVICE     (800) 666-1917

SB 340 (Yee)
Page 7 of 7

and maintain an audio recording of all telephone solicitations. (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6. <u>Author's amendments</u>

On page 3, line 17, insert:
(c) "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.

<u>Support</u>:  California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

<u>Opposition</u>:  None Known

## **<u>HISTORY</u>**

<u>Source</u>:  Author

<u>Related Pending Legislation</u>:  None Known

<u>Prior Legislation</u>:  None Known

<div align="center">************</div>

7072290.133

(800) 666-1917   LEGISLATIVE INTENT SERVICE



Exhibit 2

Date of Hearing:  June 30, 2009

### ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

SENATE VOTE:  37-0

SUBJECT:  AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

KEY ISSUE:  SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN "AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES, AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC RENEWAL?

FISCAL EFFECT:  As currently in print this bill is keyed non-fiscal.

### SYNOPSIS

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers.  According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge.  For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.  Indeed, this problem led 23 state attorneys general to launch an investigation of Time, Inc., in response to claims that the company used deceptive practices in signing up customers for automatic subscription renewals.  As part of a settlement of this dispute, Time agreed to institute new practices so that customers are fully aware of and affirmatively consent to automatic renewals.  This bill, following the lead of the Times' settlement, would require that renewal terms and cancellation policies be clearly and conspicuously presented to the consumer, whether the offer is made on printed material or through a telephone solicitation.  In addition, the bill would require that the consumer make some affirmative acknowledgement before an order with an automatic renewal can be completed.  Finally, the bill specifies that violation of the bill's provisions do not constitute a crime.  The author has worked closely with affected business interests and has made several amendments that appear to address all stakeholders' concerns.  There is no registered opposition to the bill.*

SUMMARY:  Requires any business making an "automatic renewal" or "continuous service" offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the consumer's affirmative consent to the offer.  Specifically, this bill:

1)  Makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer to do any of the following:

7072290.1.35

(800) 666-1917

LEGISLATIVE INTENT SERVICE

a) Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

b) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

c) Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2) Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3) Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4) Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5) Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6) Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed.  Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7) Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

<u>EXISTING LAW</u>:

1) Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA).  (Business & Professions Code Section 17200 *et seq.*)

2) Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading



LEGISLATIVE INTENT SERVICE          (800) 666-1917

statement as part of a plan or scheme to sell goods or services at other than the stated or advertised price.  (Business & Professions Code section 17500.)

3)   Provides that any violation of the FAA is a misdemeanor.  (Business & Professions Code sections 17500, 17534.)

4)   Provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Business & Professions Code section 17536.)

5)   Provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief.  (Business & Professions Code section 17204.)

6)   Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA violations.  (Business & Professions Code sections 17203, 17206.)

COMMENTS:  This non-controversial bill is a response to reported consumer complaints that certain businesses, especially those offering magazine subscriptions or other potentially continuous services, lure customers into signing up for "automatic renewals" without the consumer's full knowledge or consent.  This bill seeks to address this problem by requiring clear disclosures and affirmative acts of customer consent.  The author states:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation brought by the attorneys general of 23 states, including California, against Time, Inc.  The investigations found that subscribers to several magazines published by Time, Inc. were discovering that their subscriptions were automatically renewed even though the customers claimed that they had never knowingly consented to the renewals.  In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that requires Time to more clearly disclose renewal terms and ensure that the consumer take some affirmative step to acknowledge consent or rejection of the automatic renewal offer.  According to the author, the specific disclosure and consent requirements in this measure are modeled after, though not identical to, those set forth in the Time settlement.

ARGUMENTS IN SUPPORT:  According to the California Public Interest Research Group (CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if they want to."  According to the Consumer Federation of California, this measure will curb deceptive marketing practices that are used to sell everything from magazine subscriptions to "free trial" offers that lock consumers into an ongoing purchase agreement.  Supporters generally

7072290.137

LEGISLATIVE INTENT SERVICE    (800) 666-1917

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

<u>Author's Technical Amendments</u>:  The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

<u>PRIOR LEGISLATION</u>:  AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call.  (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

<u>REGISTERED SUPPORT/OPPOSITION</u>:

<u>Support</u>:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

<u>Opposition</u>:

None on file

<u>Analysis Prepared by</u>:   Thomas Clark / JUD. / (916) 319-2334



(800) 666-1917

LEGISLATIVE INTENT SERVICE

7072290.1.38

Exhibit 3

9/8/22, 4:57 PM                                                UFC Fight Pass



SCHEDULE        PPV        LOG IN        SIGN-UP

WELCOME TO



Unlock MORE of your inner combat sports fan with UFC Fight Pass!
Fighting is what we live for. And no one brings you MORE live fights, new
shows, and events across multiple combat sports from around the
world. With a never-ending supply of fighting in every discipline, there's
always something new to watch. Leave it to the world's authority in
MMA to bring you the Ultimate 24/7 platform for MORE combat sports,
UFC Fight Pass!

SIGN UP TODAY



SCHEDULE    PPV    LOG IN    SIGN-UP

**EXPERIENCE COMBAT SPORTS**

# LIKE NEVER BEFORE







## LIVE EVENTS

Every week is fight week with UFC Fight Pass! Watch the best and most exciting combat sports events from around the world from Lethwei to MMA.

## ORIGINALS

Best-in-class original programming providing the most compelling storytelling and memorable moments across all of combat sports.

## FIGHT LIBRARY

Exclusive access to the world's largest MMA library, including legendary fights and events from UFC, PRIDE, Invicta FC, Strikeforce, and WEC.

**IMMERSE YOURSELF**

# CHOOSE YOUR UFC FIGHT PASS PLAN

MOST POPULAR

9/8/22, 4:57 PM                                    UFC Fight Pass



SCHEDULE    PPV    LOG IN    SIGN-UP

 

USD                                USD

Access to exclusive prelims        Access to exclusive prelims
for all PPV events, the            for all PPV events, the
entire UFC Fight Library,          entire UFC Fight Library,
live martial arts events           live martial arts events
from around the world and          from around the world and
exclusive original series          exclusive original series
and shows.                         and shows

- Over 1,000 hours of live         - Over 1,000 hours of live
  combat sports action from          combat sports action from
  around the globe                   around the globe
- Recurring payment of $9.99       - Recurring payment of
  per month                          $95.99 every year

SELECT                             SELECT

*Subscription will auto-renew unless cancelled prior to the applicable renewal*

UFC Fight Pass



SCHEDULE    PPV    LOG IN    SIGN-UP

# ANYTIME. ANYWHERE. ANY DEVICE.



9/8/22, 4:57 PM                                          UFC Fight Pass



SCHEDULE     PPV     LOG IN     SIGN-UP

    HELP   FAQ   TERMS OF USE   PRIVACY POLICY          

UFC and associated designs are registered and/or owned exclusively by Zuffa, LLC. © 2019 All rights reserved

7072290.1.45

Exhibit 4



7072290.1.47

Exhibit 5



7072290.1.49

Exhibit 6

## TERMS OF USE

✕

UFC (Zuffa, LLC) is collecting your information as part of this signup process, and while you use the services, for the purpose of providing the service to you, as well as other purposes set out in the Privacy Policy.

☐ By checking this box, you confirm that you have read and agree to the Terms of Use, Privacy Policy and Cookie Policy.

☐ By checking this box, you agree that you would like to receive offers and information from UFC (Zuffa,LLC) about similar events and products by email as described in our Privacy Policy. You can unsubscribe at any time. (Optional)

☐ By checking this box, you are opting out of the transfer of your data to some third parties where that transfer is considered a sale. Note: This may impact the performance and availability of the Service. Please review our Privacy Policy for more information. (Optional)

SUBMIT

7072260.1.51

Exhibit 7



MENU ⌄

**PAGE**

# TERMS OF USE

**OWNERSHIP OF SITE; AGREEMENT TO TERMS OF USE**

These Terms and Conditions of Use (the "Terms of Use") apply to all Ultimate Fighting Championship® web sites, including without limitation, those located at www.ufc.com and www.ufcfightpass.com, and all associated sites linked to www.ufc.com by Zuffa, LLC, its subsidiaries, affiliates and related entities (the "Site"). The Site is the property of Zuffa, LLC. **BY USING THE SITE, YOU AGREE TO THESE TERMS OF USE; IF YOU DO NOT AGREE, DO NOT USE THE SITE.**

**COPYRIGHT NOTICE**

This Site is the official Site of Zuffa, LLC and is © 2017 Copyright Zuffa LLC. Commercial reproduction, distribution or transmission of any part or parts of this website or any information contained therein by any means whatsoever without the prior written permission of the Zuffa, LLC is not permitted.

"Ultimate Fighting Championship," "Ultimate Fighting," "UFC," "The Ultimate Fighter," "Submission," "As Real As It Gets", "The Octagon" and the eight-sided cage design are registered trademarks, trademarks, trade dress or service marks owned exclusively by Zuffa, LLC in the United States and other jurisdictions. All other marks referenced herein may be the property of Zuffa, LLC or other respective owners.

**Your Use of the Site**

You may not use any "deep-link", "page-scrape", "robot", "spider" or other automatic device, program, algorithm or methodology, or any similar or equivalent manual process, to access, acquire, copy or monitor any portion of the Site or any Content, or in any way reproduce or circumvent the navigational structure or presentation of the Site or any Content, to obtain or attempt to obtain any materials, documents or information through any means not purposely made available through the Site. Zuffa, LLC ("Zuffa, LLC" or "Zuffa") reserves the right to bar any such activity.

**MENU**

You may not probe, scan or test the vulnerability of the Site or any network connected to the Site, nor breach the security or authentication measures on the Site or any network connected to the Site. You may not reverse look-up, trace or seek to trace any information on any other user of or visitor to the Site, or any other customer of Zuffa, including any Zuffa account not owned by you, to its source, or exploit the Site or any service or information made available or offered by or through the Site, in any way where the purpose is to reveal any information, including but not limited to personal identification or information, other than your own information, as provided for by the Site.

You agree that you will not take any action that imposes an unreasonable or disproportionately large load on the infrastructure of the Site or Zuffa's systems or networks, or any systems or networks connected to the Site or to Zuffa.

You agree not to use any device, software or routine to interfere or attempt to interfere with the proper working of the Site or any transaction being conducted on the Site, or with any other person's use of the Site.

You may not forge headers or otherwise manipulate identifiers in order to disguise the origin of any message or transmittal you send to Zuffa on or through the Site or any service offered on or through the Site. You may not pretend that you are, or that you represent, someone else, or impersonate any other individual or entity.

You may not use the Site or any Content for any purpose that is unlawful or prohibited by these Terms of Use, or to solicit the performance of any illegal activity or other activity which infringes the rights of Zuffa or others.

**Submission of Unsolicited Materials**

Zuffa policy prohibits Zuffa or its employees from accepting or considering any unsolicited ideas, proposals, suggestions or materials of any nature whatsoever ("Unsolicited Materials"). Accordingly, you may not use this Site or any information obtained from the Site to submit Unsolicited Materials to Zuffa or anyone affiliated with Zuffa via email, fax, postal mail or any other means. We have adopted this policy to avoid potential misunderstandings or disputes when new products, services and features developed internally by UFC personnel may appear to be similar to Unsolicited Materials submitted to the UFC.

As stated above, we ask that you do not send us Unsolicited Materials. By ignoring our policy and submitting or posting Unsolicited Materials, including without limitation, text, photos, video, sound

7072290.1.54

**MENU**

use the Unsolicited Materials.

**Purchases; Other Terms and Conditions**

Additional terms and conditions may apply to purchases of goods or services and to specific portions or features of the Site, including contests, promotions, sweepstakes or other similar features, all of which terms are made a part of these Terms of Use by this reference. You agree to abide by such other terms and conditions, including where applicable representing that you are of sufficient legal age to use or participate in such service or feature. If there is a conflict between these Terms of Use and the terms posted for or applicable to a specific portion of the Site or for any service offered on or through the Site, the latter terms shall control with respect to your use of that portion of the Site or the specific service.

Zuffa's obligations, if any, with regard to its products and services are governed solely by the agreements pursuant to which they are provided, and nothing on this Site should be construed to alter such agreements.

Zuffa may make changes to any products or services offered on the Site, or to the applicable prices for any such products or services, at any time, without notice. The materials on the Site with respect to products and services may be out of date, and Zuffa makes no commitment to update the materials on the Site with respect to such products and services.

**Your Acceptance**

By using or visiting the www.UFCFIGHTPASS.COM ("UFC®") website or any UFC® products, software, data feeds, and services provided to you on, from, or through the UFC® website (collectively the "Service") you signify your agreement to (1) these terms and conditions (the "Terms of Service"), and (2) the UFC® Privacy Notice. If for any reason you do not agree with all of the terms and conditions contained in this Agreement, including this website's Privacy Policy, please discontinue using the website immediately.

By using this website, you agree to be legally bound by all of the terms of this Agreement. UFC® reserves the right to change the terms of this Agreement or to change, modify or otherwise alter any features of this website at any time and for any purpose without notice and you agree to be bound by such modifications or revisions. Nothing in these Terms of Service shall be deemed to confer any third-party rights or benefits.

7072290.1.55

**MENU**

offered by UFC® may be subject to additional terms and conditions, which you should read carefully before making any use of those areas. Any such terms will not vary or replace the terms of this Agreement regarding any use of this website, unless otherwise expressly stated.

**Representations**

You affirm that you are either more than 18 years of age, or an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in these Terms of Service, and to abide by and comply with these Terms of Service.

Provided you are eligible to use this site, UFC® hereby grants you a personal, non-exclusive, non-assignable and non-transferable license to use and display, for home, noncommercial and personal use only, one copy of any Material and/or software contained within this site, including, but not limited to, any files, codes, audio or images incorporated in or generated by the software (collectively the "Material"). You acknowledge and agree that you may not sublicense, assign or otherwise transfer this license or the Material and that no title to the Downloaded Material has been or will be transferred to you from UFC® or anyone else. You also agree that you will not alter, disassemble, decompile, reverse engineer or otherwise modify the Material.

**Availability of Services**

The availability of the content on the Services, including the Subscription Products, may be affected by a variety of factors, including event delays or cancellations, technical problems or network delays, program rescheduling, or other reasons. You agree that we are not obligated to provide you with any specific content under this Agreement.

**Access to the Services.**

In order to access the Services, you must have access to the World Wide Web, either directly or through devices that access Web-based content, and must pay any service fees associated with such access. Not all of the features available through the Services, including certain live streaming audio, video or access to high-quality video, will be available to you unless your computer or mobile device satisfies the minimum technical requirements that are presented when you first register for the Services. As we make changes to the Services, the minimum technical requirements for access to the Services may change. You are responsible for determining whether your computer satisfies the minimum technical requirements before you register to access the Services. Moreover, if we change the minimum technical

7072290.1.56

**MENU**

In addition, access to certain of the Subscription Products is limited to residents of certain geographical territories, and can be modified at UFC®'s discretion.

Additional terms and conditions may apply to purchases of goods or services and to specific portions or features of the Site, including contests, promotions, sweepstakes or other similar features, all of which terms are made a part of these Terms of Use by this reference. You agree to abide by such other terms and conditions, including where applicable representing that you are of sufficient legal age to use or participate in such service or feature. If there is a conflict between these Terms of Use and the terms posted for or applicable to a specific portion of the Site or for any service offered on or through the Site, the latter terms shall control with respect to your use of that portion of the Site or the specific service. UFC®'s obligations, if any, with regard to its products and services are governed solely by the agreements pursuant to which they are provided, and nothing on this Site should be construed to alter such agreements. UFC® may make changes to any products or services offered on the Site, or to the applicable prices for any such products or services, at any time, without notice. The materials on the Site with respect to products and services may be out of date, and UFC® makes no commitment to update the materials on the Site with respect to such products and services.

**Registration, Username, Password, Security.**

Registration. In accessing this website or certain of the resources on the website, you may be asked to provide registration details, including but not limited to, a valid e-mail address, date of birth and your full name. We will not grant any user access to any registration-required portions of the Services unless he or she has completed the necessary registration and paid the fees, if any, associated with access to such portion of the Services. It is a condition of use of this website that all the details you provide will be correct, current, and complete. If UFC® believes the details are not correct, current, or complete, we have the right to refuse you access to the website or any of its resources.

Your User Identity. Your username and password will be your identity for purposes of interacting with the Services and other users through the Services. In order to access the Subscription Products, you will be asked to provide your username and password.

Username, Passwords, and Password Access. You shall keep confidential, shall not disseminate, and shall use solely in accordance with this Agreement, your username, and password for the Services. You shall immediately notify us if you learn of or suspect: (i) any loss or theft of your username or password, or (ii) any unauthorized use of your username or password or of the Services. In the event of such loss, theft, or unauthorized use, we may impose on you, at our sole discretion, additional security obligations.

otherwise cooperate and assist in any investigation relating to any such unauthorized access.

Although UFC® will not be liable for your losses caused by any unauthorized use of your account, you may be liable for the losses of UFC® or others due to such unauthorized use.

**Your Content and Conduct.**

As a Site account holder you may submit Content to the Service, including but not limited to, user comments. You understand that UFC® does not guarantee any confidentiality with respect to any Content you submit and you acknowledge and agree that Zuffa may use and permit third parties to use anything you submit or otherwise provide or make available to Zuffa, including without limitation, information available through any Third Party Platform (e.g., Facebook, Twitter, etc) used to access any Site.

**Copyrights and Trademarks.**

This website and all materials incorporated on this website (including, but not limited to text, photographs, graphics, video and audio content) are protected by copyrights, patents, trade secrets or other proprietary rights under laws of the United States and other countries. Some of the logos or other images incorporated by UFC® on this website are also protected as registered or unregistered trademarks, trade names and/or service marks ("Trademarks") owned by UFC®. All other trademarks are the property of their respective owners. Use of the Trademarks of UFC® or of any other party is not authorized in any manner other than as incorporated into this website. UNAUTHORIZED COPYING, REPRODUCTION, REPUBLISHING, UPLOADING, DOWNLOADING, POSTING, TRANSMITTING OR DUPLICATING OF ANY OF THE MATERIAL, IN WHOLE OR IN PART, IS EXPRESSLY PROHIBITED. Any unauthorized use may subject the offender to civil liability and criminal prosecution under applicable federal and state law.

**Infringement Notice.**

If you believe that any content appearing on this website has been copied in a way that constitutes copyright infringement under the laws of the U.S, please forward the following information to the Copyright Agent named below:

- Your name, address, telephone number, and email address;
- A description of the copyrighted work that you claim has been infringed;
- The exact URL or a description of where the alleged infringing material is located;

**MENU**

copyright interest; and

- A statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf.

Zuffa, LLC
Attn: Legal Department
P.O. Box 26595
Las Vegas, NV 89126
Facsimile: (702) 221-4703

Please note that while UFC® seeks to preserve any and all exemptions from liability that may be available under the copyright law, this is not a stipulation that UFCFIGHTPASS.com is a service provider as defined in 17 U.S.C § 512(c) or elsewhere in the law.

**Special Terms and Conditions Applicable to Subscription Products, online Pay Per View, and Other Services/Products Offered for Purchase Through the Site.**

We reserve the right to modify the price of any Subscription Product, online Pay Per View, and/or any other services/products offered for purchase through the Site. We are not responsible for any error in copy or images relating to any Subscription Product or any other services/ products offered for purchase through the Site.

In order to purchase a Subscription Product, online Pay Per View, or other services/products offered for purchase through the Site, you may be required to provide complete and accurate personal information, including, without limitation, your name, address, telephone number, e-mail address, credit card information and billing address. Our Privacy Policy explains how such information collected via the Site may be used by us. Your ability to purchase Subscription Products and/or other services/products offered for purchase through the Site is subject to limits established by your credit card issuer. You must notify us immediately of any change in your credit card information, including any change to your home address. By utilizing a credit or debit card for purchase of any of the Subscription Products or any other services/products offered for purchase through the Site, you authorize us to charge such card on a periodic basis as specified in the amount described on the applicable Subscription Product or other services/products purchase path(s).

Pay Per View events purchase includes viewing for 24 hours from the event start.  If purchased as a rental after the event, includes viewing of 24 hours from purchase.

7072290.1.58

**MENU**

to UFCTVSupport@UFC.com cancellation will become effective as of the next monthly billing cycle following receipt.

The UFC® reserves the right to block access to any online event to any regions or territories at the UFC®'s discretion and for any reason. Blackout restrictions may apply.

Under this agreement, the payment processing services for the Service will be provided by NeuLion Limited, on behalf of UFC®, depending on the type of payment methods used for the purchase of the Services.

We have contracted with NeuLion, Inc. to provide services that provide You (the subscriber who pays a fee) with the ability to access and view our content. The payment processing relating to the ability to view the content for those subscribers in Europe will be provided by NeuLion, Limited. (NeuLion, Limited and NeuLion, Inc. are collectively referred to herein as "NeuLion".) NeuLion's Terms of Use and Privacy Policy are available at www.neulion.com. Payment for the ability to view our content is made to NeuLion, on our behalf, based upon the subscription plan that you sign up for. The subscription fee will be processed through NeuLion and will be processed in a secure manner by a third party payment services provider retained by NeuLion. Questions concerning payment processing for subscribers in Europe can be addressed via live chat, email at Support@UFC.TV or NeuLion, Limited, located at 69 Wilson Street, 2nd Floor, London EC2A 2BB, United Kingdom or NeuLion, Inc., located at 1600 Old Country Road, Plainview, NY 11803.

**Online Pay Per View is for residential use only.**

Commercial locations in the United States are required to license the Pay Per View from our commercial distributor Joe Hand Promotions, Inc., 407 E. Pennsylvania Blvd., Feasterville, PA 19053. Commercial locations in English Canada are required to license the Pay Per View from our commercial distributor Premium Sports Broadcasting, Inc., 650 Columbia Street New Westminster, BC V3M 1A9.  Commercial locations in Australia are required to license the Pay Per View from our commercial distributor FOXTEL. Commercial locations in New Zealand are required to license the Pay Per View from our commercial distributor SKY.

**Refunds.**

In order to provide the highest customer satisfaction possible, we will refund the purchase price paid for any Subscription Product, as follows:

**MENU**

your access to such Subscription Product is cancelled by you within five (5) days of the purchase date, we will make a reasonable effort to refund to the credit card you used to subscribe to such Subscription Product an amount equal to the total amount you paid for access to the Subscription Products in the current term of your subscription less the amount of a Weekly Pass for such Subscription Product. If your access to such Subscription Product is cancelled by you after five (5) days of the purchase date, you will not be eligible for a refund.

- Your access to the Subscription Product is cancelled by us at any time, we will make a reasonable effort to refund to the credit card you used to subscribe to such Subscription Product a prorated amount equal to the total amount you paid for access to the Subscription Product in the current term of your subscription times the fraction of the term of your subscription that remains on the date of termination, except if we allege that you have violated the Terms of Use, in which case you will not be eligible for a refund.

- If you have purchased a Subscription to any Subscription Product you will not be entitled to any refund if your access to the Subscription Product is terminated.

- If we are unable to post a refund to your credit card, including because your credit card account is closed or otherwise unavailable when we attempt to post the refund, or if we allege that you have violated the Terms of Use, you agree that you will forfeit the amount due to you (if any) under this paragraph. Please note that we may not be able to post refunds for subscriptions that are paid for through the use of "single use" credit card numbers or similar "disposable" payment methods. We recommend that you do not use these payment methods to pay for your subscription to the Services; if you choose to use them despite our recommendation, you do so at the risk that we may not be able to provide you with a refund under this paragraph.

- Our reasonable effort to provide you with a refund, as described above, will be your exclusive remedy if you or we terminate your access to the Services, including in the event that you claim we breached our obligations to you.

By accepting this Agreement, you agree that we may notify you about changes to prices and/or the Subscription Products by sending an e-mail message to your e-mail address on file with us and by publishing such notices from time to time on the informational page(s) of the Site. It is your responsibility to notify us of any change in your e-mail address by logging in to the Site and using the online account management tool. If your e-mail service includes functionality or software that catalogues your e-mails in an automated manner, it is your responsibility to ensure that those e-mails we send to you reach your inbox, either by routinely monitoring your bulk, junk and/or spam e-mail folders or by adding us to your address book or safe senders list.

**Deactivation/termination of your registration**

7072290.1.61

**MENU**

further obligation of any kind whatsoever to you or any other party.

**Account Termination Policy**

UFC® will terminate a user's access to the Service if, under appropriate circumstances, the user is determined to be in violation of the Terms of Use, at any time, without prior notice and in its sole discretion.

**General Use of the Service – Permission and Restrictions.**

UFC® hereby grants you permission to access and use the Service as set forth in these Terms of Service, provided that:

- You agree not to distribute in any medium any part of the Service or the Content without UFC®'s prior written authorization.
- You agree not to alter or modify any part of the Service.
- You agree not to access Content through any technology or means other than the video playback pages of the Service itself or other explicitly authorized means UFC® may designate.
- You agree not to use or launch any automated system, including without limitation, "robots," "spiders," or "offline readers," that accesses the Service in a manner that sends more request messages to the UFC® servers in a given period of time than a human can reasonably produce in the same period by using a conventional on-line web browser. UFC® reserves the right to revoke these exceptions either generally or in specific cases. You agree not to collect or harvest any personally identifiable information, including account names, from the Service, nor to use the communication systems provided by the Service (e.g., comments, email) for any commercial solicitation purposes. You agree not to solicit, for commercial purposes, any users of the Service with respect to their Content.
- In your use of the Service, you will comply with all applicable laws.
- UFC® reserves the right to discontinue any aspect of the Service at any time.

You may not copy, reproduce, distribute, publish, enter into a database, display, perform, modify, create derivative works, transmit, or in any way exploit any part of this website, except that you may access and display material and all other content displayed on this website for non-commercial, personal, entertainment use on a single computer only. Without limited the generality of the foregoing, you may not distribute any part of this website over any network, including a local area network, nor sell or offer it for sale. In addition, these files may not be used to construct any kind of database. Also, decompiling, reverse engineering, disassembling, or otherwise reducing the code used in any software on this website into a

7072290.1.62

**MENU**

**Warranty Disclaimer.**

You agree that your use of the services shall be at your sole risk. To the fullest extent permitted by law, UFC®, its officers, directors, employees, and agents disclaim all warranties, express or implied, in connection with the services and your use thereof. UFC® makes no warranties or representations about the accuracy or completeness of this site's content or the content of any sites linked to this site and assumes no liability or responsibility for any (i) errors, mistakes, or inaccuracies of content, (ii) personal injury or property damage, of any nature whatsoever, resulting from your access to and use of our services, (iii) any unauthorized access to or use of our secure servers and/or any and all personal information and/or financial information stored therein, (iv) any interruption or cessation of transmission to or from our services, (iv) any bugs, viruses, trojan horses, or the like which may be transmitted to or through our services by any third party, and/or (v) any errors or omissions in any content or for any loss or damage of any kind incurred as a result of the use of any content posted, emailed, transmitted, or otherwise made available via the services. UFC® does not warrant, endorse, guarantee, or assume responsibility for any product or service advertised or offered by a third party through the services or any hyperlinked services or featured in any banner or other advertising, and UFC® will not be a party to or in any way be responsible for monitoring any transaction between you and third-party providers of products or services. As with the purchase of a product or service through any medium or in any environment, you should use your best judgment and exercise caution where appropriate.

**Limitation of Liability.**

In no event shall UFC®, its officers, directors, employees, or agents, be liable to you for any direct, indirect, incidental, special, punitive, or consequential damages whatsoever resulting from any (i) errors, mistakes, or inaccuracies of content, (ii) personal injury or property damage, of any nature whatsoever, resulting from your access to and use of our services, (iii) any unauthorized access to or use of our secure servers and/or any and all personal information and/or financial information stored therein, (iv) any interruption or cessation of transmission to or from our services, (iv) any bugs, viruses, trojan horses, or the like, which may be transmitted to or through our services by any third party, and/or (v) any errors or omissions in any content or for any loss or damage of any kind incurred as a result of your use of any content posted, emailed, transmitted, or otherwise made available via the services, whether based on warranty, contract, tort, or any other legal theory, and whether or not the company is advised of the possibility of such damages. The foregoing limitation of liability shall apply to the fullest extent permitted by law in the applicable jurisdiction.

You specifically acknowledge that UFC® shall not be liable for content or the defamatory, offensive, or illegal conduct of any third party and that the risk of harm or damage from the foregoing rests entirely

7072290.1.63

**MENU**

makes no representations that the Service is appropriate or available for use in other locations. Those who access or use the Service from other jurisdictions do so at their own volition and are responsible for compliance with local law.

**Indemnity.**

To the extent permitted by applicable law, you agree to defend, indemnify and hold harmless UFC®, its parent corporation, officers, directors, employees and agents, from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (i) your use of and access to the Service; (ii) your violation of any term of these Terms of Service; or (iii) your violation of any third party right, including without limitation any copyright, property, or privacy right. This defense and indemnification obligation will survive these Terms of Service and your use of the Service, (Iv) any bugs, viruses, trojan horses, or the like which may be transmitted to or through our services by any third party, and/or (v) any errors or omissions in any content or for any loss or damage of any kind incurred as a result of the use of any content posted, emailed, transmitted, or otherwise made available via the services. UFC® does not warrant, endorse, guarantee, or assume responsibility for any product or service advertised or offered by a third party through the services or any hyperlinked services or featured in any banner or other advertising, and UFC® will not be a party to or in any way be responsible for monitoring any transaction between you and third-party providers of products or services. As with the purchase of a product or service through any medium or in any environment, you should use your best judgment and exercise caution where appropriate.

**Submissions and Postings.**

UFC® does not accept unsolicited submissions of concepts, creative ideas, suggestions, stories, merchandise, or other potential content. This is to avoid the possibility of future misunderstanding when projects developed by UFC® staff or representatives might seem to others to be similar to the submitted concepts, creative ideas, suggestions, stories or other potential content. Therefore, please do not send UFC® any unsolicited submissions.

To the extent that use of the website provides you or other users an opportunity to post and exchange information, content, ideas and opinions ("Postings"), be advised that UFC® does not screen, edit, or review Postings prior to their appearance on the website or elsewhere, and Postings do not necessarily reflect the views of UFC®. To the fullest extent permitted by applicable laws, UFC® excludes all responsibility and liability for the Postings or for any losses or expenses resulting from their use and/or appearance on the website or elsewhere. You hereby represent and warrant that you have all necessary

**MENU**

.

In any event, no material you send to us will be treated as confidential and may be used by Zuffa and third parties for any and all purposes.

**Moderation/Monitoring.**

UFC® shall have the right, but not the obligation, to monitor any Postings or other material on UFCFIGHTPASS.com. UFC® shall have the right in its sole discretion to edit, refuse to post or remove any material submitted or posted to UFCFIGHTPASS.com. Without limiting the foregoing, UFC® shall have the right to remove any material that UFC®, in its sole discretion, finds to be in violation of this Agreement or otherwise objectionable.

**Assignment.**

These Terms of Service, and any rights and licenses granted hereunder, may not be transferred or assigned by you, but may be assigned by UFC® without restriction**.**

**Applicable Law and Jurisdictional Matters.**

You agree that: (i) the Service shall be deemed solely based in Nevada; and (ii) These Terms of Service shall be governed by the internal substantive laws of the State of Nevada, without respect to its conflict of laws principles. Any claim or dispute between you and UFC® that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Clark County, Nevada. The parties all consent to the jurisdiction of such courts agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it. These Terms of Service, together with the Privacy Noticeat and any other legal notices published by UFCFIGHTPASS.com on the Service, shall constitute the entire agreement between you and UFC® concerning the Service.

YOU AND UFC® AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED.

**Severability.**

If any provision of these Terms of Service is deemed invalid by a court of competent jurisdiction, the invalidity of such provision shall not affect the validity of the remaining provisions of these Terms of Service, which shall remain in full force and effect. No waiver of any term of this these Terms of Service

7072290.1.65

**MENU**

it is your responsibility to review these Terms of Service for any changes. Your use of the Service following any amendment of these Terms of Service will signify your assent to and acceptance of its revised terms.

**IF YOU DO NOT AGREE TO BE LEGALLY BOUND BY ALL OF THE FOREGOING TERMS PLEASE DO NOT ACCESS AND/OR USE THE WEBSITE**.

**UFC**

The Sport

UFC Foundation

Careers

Store

**SOCIAL MEDIA**

IRL

Facebook

Instagram

TikTok

Twitch

Twitter

YouTube

**HELP**

Fight Pass FAQ

Devices

Press Credentials

**LEGAL**

Terms

Privacy Policy

Ad Choices

**Do Not Sell My Personal Information**

**MENU**

UFC.COM - UNITED STATES

| UFC | SOCIAL MEDIA | HELP | LEGAL |
|---|---|---|---|
| The Sport | IRL | Fight Pass FAQ | Terms |
| UFC Foundation | Facebook | Devices | Privacy Policy |
| Careers | Instagram | Press Credentials | Ad Choices |
| Store | TikTok | | |
| | Twitch | | |
| | Twitter | | |
| | YouTube | | |

**Do Not Sell My Personal Information**

Exhibit 8



MENU ⌄

🔍

7072260.1.68

PAGE

# PRIVACY POLICY

Effective Date: December 30, 2019

**What's New?**

- We've added more detail in what data we collect, how we use your data, and who we share it with.
- We've updated our policy to include new rights to opt out of the sale of your data under applicable laws.
- We've included additional information about rights of some customers under new California laws relating to data privacy.

**UFC PRIVACY POLICY**

We are UFC and we know that our fans are a key part of what makes the UFC community successful. Our commitment to our fans includes handling data responsibly.

This Privacy Policy describes how we use the data we collect from you through our digital properties ("Site"), when you buy a ticket or other merchandise from us online, when you view UFC programming on one of our online channels (including UFC FIGHT PASS and UFC.tv), when you attend our events in person, and when you otherwise interact with UFC marketing, contests, sweepstakes, and surveys (collectively our "Services").

Please read this Privacy Policy carefully to understand how we will treat your information.

7072290.1.69

**MENU**

WHO WE ARE

HOW WE COLLECT INFORMATION ABOUT YOU

INFORMATION WE COLLECT AND HOW WE USE IT

DISCLOSURE OF YOUR INFORMATION

MARKETING AND ADVERSTISING

SOCIAL SHARING FEATURES

DO NOT TRACK

STORAGE AND TRANSFER OF INFORMATION

CHILDREN

OPTING OUT OF THE SALE OF YOUR PERSONAL INFORMATION

YOUR CALIFORNIA PRIVACY RIGHTS

SECURITY

LINKS TO THIRD PARTY WEBSITES

**MENU**

**WHO WE ARE**

We are UFC, including our main company Zuffa, LLC and affiliated entities. We are also part of Endeavor and share data with its affiliated entities ("Endeavor").  If you would like a list of relevant entities, please submit an Information Request to the Privacy Team.

Like any company, we use a variety of third party businesses and partners to market and provide our Services to you. Some of those companies are part of Endeavor and some are third parties that we partner with or support our operations so we can provide the best experience to you.

**HOW WE COLLECT INFORMATION ABOUT YOU**

**Directly From You**

You may provide us with personal information in a number of ways, such as when you:

- - Provide information to us via our websites, applications, and other digital channels by signing up, creating accounts (including using social media login), filling out forms, commenting, or otherwise engaging with our online services;
- - Communicate with us by e-mail or phone;
- - Subscribe to e-mails and/or newsletters;
- - Report a problem or request support for any of our Services;

7072290.1.71

**MENU**

- - Subscribe to UFC content online at UFC FIGHT PASS, UFC.tv, and other online official video or streaming partners; and
- - Attending any UFC event (e.g. ticket scanning, CCTV, and other on location interactions you may have with us.

**Information We Collect From Other Sources**

We work closely with third parties (for example, technical service providers, ticketing providers, promotions companies, advertising networks, analytics providers, and search information providers) and may receive information about you from them. Depending on the relationship and activity, they will provide us with certain information that will help us understand how you interact with UFC Services so we can tailor our marketing and provide better, more personalized Services to you. In some cases, third parties also provide us with information that helps us keep track of transactions, address technical or logistical issues, prevent fraud, or keep our UFC community safe from security threats.

We may also receive and display information and content which you make publically available on your social media account when you use social media logins for our Services or interact with any of our content (such as contests).

Some of our key partners and service providers who may provide us with personal information about you are:

- - Media and digital content partners, who we partner with to share exclusive content, including PPV packages of UFC events;
  - - E-commerce platforms and service, which provide UFC merchandise to UFC fans around the world;
  - - Ticket sellers around the world who sell tickets to UFC events; and
  - - Venues which host UFC events and provide various marketing, advertising, customer support, and security services related to UFC events.

We may also receive and display information and content which you make publically available on your social media account, such as when you post using one of our promoted hashtags.

**INFORMATION WE COLLECT AND HOW WE USE IT**

7072290.1.72

**MENU**

| | | | |
|---|---|---|---|
| | | sharing | |
| | | To provide and Improve the Services | Customer service partners |
| | | | Marketing sponsors and partners |
| | Directly from you | Personalization of the Services | Ad networks |
| Personal and online identifiers (such as first and last name, email address, phone number, usernames, or unique online identifiers) | Marketing partners | Customer support | E-Commerce vendors |
| | | Marketing and targeted advertising | Endeavor |
| | | Security and fraud prevention | Analytics services |
| | | | E-Commerce vendors |
| | Directly from you | To provide the Services | Payment providers |
| Financial Account Information (such as credit card numbers, bank account information, Paypal account information) | Payment providers | To sell you merchandise, tickets, or UFC content | Fraud and cybersecurity companies |
| | E-Commerce vendors | | Endeavor |
| Customer Profile Information (such as race, gender, age range, income range, ad demographics) | Directly from you | To provide and improve the Services | Endeavor |
| | Marketing partners | | Analytics services |

7072290.1.73

MENU

| | | | |
|---|---|---|---|
| | | Direct marketing<br>Targeted advertising<br>Analytics<br>Research and development<br>Security and fraud prevention | Marketing sponsors and partners |
| Transactional Information | Directly from you<br>E-Commerce vendors | To Provide and Improve the Services<br>Customer Support<br>Analytics<br>Research and Development | Endeavor<br>Analytics services<br>Technology service providers<br>E-Commerce Vendors |
| Communications with you (such as customer support messages, emails, social media posts) | Directly from You<br>Customer support partners | To Provide and Improve the Services<br>Customer Support | Endeavor<br>Analytics services |

**MENU**

| | | | |
|---|---|---|---|
| | | | Customer Service Partners |
| | Directly from You | To Provide and Improve the Services | Endeavor |
| | Cookies and similar technologies | Personalization of the Services | Technology service providers |
| Online Activity Information  (such as browsing history, search history, interactions with a website, email, application, or advertisement) | Marketing partners | | Analytics services |
| | Advertising networks | Direct marketing | Ad networks |
| | Third party data providers | Targeted advertising | |
| Non-Precise Geolocation information (such as zip or area code, state, country) | Directly from you | To provide and improve the Services to you | Endeavor affiliates |
| | Cookies and similar technologies | | Ad networks |
| | Marketing sponsors | Personalization of the Services | Technology service providers |
| | Technology service providers | | Marketing sponsors |
| | Ad networks | Fraud and cybersecurity | |
| | | Direct marketing | |
| | | Targeted advertising | |

**MENU**

| | | | |
|---|---|---|---|
| Sensory information (such as audio, electronic, visual, or similar information) | Directly from you (such as when you interact with certain apps at our events) | Personalization of the services | Endeavor |
| | Technology service providers (such as apps and third party analytics platforms activating services at our events) | Enhancing live event experiences | Technology services providers |
| | | Research and development | |
| Inferences drawn from the above information about your predicted characteristics and preferences | Endeavor | To Provide and improve the Services | Endeavor |
| | Third party data providers | Personalization of the Services | Ad networks |
| | Marketing sponsors | Direct marketing | Marketing sponsors |
| | | Targeted advertising | Technology service providers |
| | | Analytics | Analytics companies |
| Other information about you that is linked to the personal information above | Directly from you | To Provide and Improve the Services | Endeavor |
| | Endeavor | Personalization of the Services | Ad networks |
| | Third party data providers | | Marketing sponsors |
| | Marketing sponsors. | | |

**MENU**

We may also use the information we have about you:

- ◦ - as necessary if we believe there has been a breach of the Terms of Use or the rights of any third party, or
  ◦ - to comply with legal and/or regulatory requirements.

We combine information we receive from other sources with information you give to us and information we collect about you. We use this combined information for the purposes set out above.

**DISCLOSURE OF PERSONAL INFORMATION**

We do share data with third parties, including event sponsors and Endeavor, and the other categories of partners as listed above. Some of these disclosures of data may be constitute a sale of data under some data privacy laws. Accordingly, we offer the option for you to opt out of the sale of your personal information, as further set forth below.

We may share your personal information with Endeavor and with selected third parties including:

- - business partners, suppliers and sub-contractors for the performance of any contract we enter into with them or you in order to provide you with a product or service;

- - business partners, suppliers and sub-contractors to provide you with information about promotions and offers;

- - advertisers, advertising networks and social networks that require the data to select and serve relevant advertisements to you and, in some cases, to others. For more information on how we use personal information for targeted advertising, see below; and

- - analytics and search engine providers that assist us in the improvement and optimization of the Service.

We may disclose your personal information to third parties:

7072290.1.77

**MENU**

- - if we are under a duty to disclose or share your personal information in order to comply with any legal obligation, or in the event of an emergency, or in order to enforce or apply our Terms of Use and other agreements, or to protect the rights, property, or safety of UFC, Endeavor, our customers, clients or others; and

- - to any other third party not covered in this policy with your prior consent.

**MARKETING AND ADVERTISING**

**Targeted Advertising**

We use your personal information to tailor our marketing and advertising efforts. To do this, we provide your information to third party advertising networks (such as Google Doubleclick) and social media companies (such as Facebook). When we provide data to agencies, ad networks, and other parties for targeted advertising, we do not provide them with your name, financial information, or any sensitive information (such as an government ID or date of birth, if we have collected that). We use online identifiers such as email, cookie addresses, and device identifiers to help us provide targeted advertising to you and others like you. We may also use aggregate information to help advertisers reach the kind of audience they want to target. We may make use of the personal information we have collected from you to enable us to display advertisements to target audiences;

To opt out of targeted advertising, you may use the following links provided by third parties that manage opt outs for some ad networks:

http://preferences-mgr.truste.com,
http://www.networkadvertising.org/managing/opt_out.asp
http://www.aboutads.info/
https://policies.google.com/privacy/partners

**MENU**

mailing lists, purchase a ticket or UFC merchandise, or subscribe to UFC content online. If you provide us with your email address in order to receive communications, you can opt out at any time by using the unsubscribe links at the bottom of our emails.

**Mobile Notifications**

With your consent, we may send promotional and non-promotional push notifications or alerts to your mobile device. You can deactivate these messages at any time by changing the notification settings on your mobile device.

**SOCIAL SHARING**

You may be able to use social sharing features and other integrated tools on the Site such as the Facebook "Like" button. These features and tools may permit you to share actions you take on our Service with other media, and vice versa. Your use of such features enables the sharing of information with your friends or the public, depending on the settings you establish with the service that provides the social sharing feature. Please remember, though, that use of the information you share on social media sites will be governed by the privacy policies of the social media provider, and we are not responsible for how they treat the information.

**COOKIES**

We and trusted third parties use cookies and similar technologies on the Site to collect and process personal information. For more information, please see our Cookie Notice.

**DO NOT TRACK**

Some web browsers may transmit "do-not-track" signals to the websites with which the user communicates. Because of differences in how web browsers incorporate and activate this feature, it is not always clear whether you intend for these signals to be transmitted, or whether you even are aware of them. Because there currently is no industry standard concerning what, if anything, websites should do when they receive such signals, we currently do not take action in response to these signals.

**MENU**

where your information will likely be stored and processed. Your information may be disclosed in response to inquiries or requests from government authorities or to respond to legal process in the countries in which we operate and/or store your information.

**CHILDREN**

We do not knowingly collect information from children who are under 13 years old. If you are a parent or guardian of a child who is 13-16 years old and using our Services, please send us an email at dataprivacy@ufc.com to opt in or request deletion of any personal information we may have collected about the child. If you are a parent or guardian of a child who is under 13 years old and using our Services, please contact us to arrange for deletion of any personal information we may have collected about the child.

**OPTING OUT OF THE SALE OF YOUR PERSONAL INFORMATION**

WE DO NOT SELL YOUR PERSONAL INFORMATION FOR MONEY.

However, sometimes we share your data with sponsors, vendors, Endeavor, and third party advertising networks. These transfers, which are used to provide you with certain Services and/or to more effectively provide you with personalized Services (including advertising), can be deemed a sale under some data privacy laws.

You may opt out of the sale of your personal information by clicking on the Do Not Sell My Personal Information button on our site or calling 1-866-983-0571. You will be asked to provide certain information to us in order to exercise this option so we can verify your identity and locate your records with us.

Please note that your decision to opt out of the sale of your personal information may impact the availability and quality of some of the Services provided to you. For example, if you choose to opt out of the sale of your personal information with regard to UFC FIGHT PASS, your account will need to be suspended because the service relies on certain data to function.

**CALIFORNIA PRIVACY RIGHTS**

**MENU**

- **- Information about You:** You may ask for us to state what categories of personal information about you we have, and the categories of sources from which we collect your personal information;
- **- Receive a Copy of Your Data:** You may request the categories and specific pieces of information (if any) we have about you, the categories of personal information that we have disclosed about you for a business purpose,   and the categories of third parties with which we have shared personal information in the previous 12 months.
- **- Delete Your Data:** You may request that we delete the personal information we have collected from you.
- **- Do-Not-Sell:**  You may opt out of our sale(s) of your personal information, as "sale" is defined by California law. Please see above for more information.
- **- Non-Discrimination:**  California law prohibits discrimination against you for exercising your privacy rights..

Note: Where certain technologies rely on your data to provide the Services, the absence of that data may impact the operation of the Services.

**How to Exercise Your Rights.** To exercise any of the above rights, please follow the instructions below:

- - By phone at 1-866-983-0571
- - Online by using this webform

If you have an online account with UFC FIGHT PASS, you may also exercise your rights through the menu options available to you in the account settings.

If you have any other request you wish to submit to the UFC Privacy Team, you may email us at dataprivacy@ufc.com.

**Verification Process and Required Information.** All requests must be verified.  Some requests, including receiving a copy of your data or requests made by an agent claiming to be acting on your behalf, are subject to heightened requirements.  If we cannot verify your identity based on the information provided, a request for a copy of your data shall be treated as a request for information and if we cannot verify your identity, a request to delete personal information may be treated as a request to opt-out of the sale of personal information.

**MENU**

**SECURITY**

We use a variety of administrative, physical, and technology solutions, including engaging with qualified cybersecurity companies, to protect your information from unauthorized access, loss, or misuse. Because there is always some risk in transmitting information over the internet and otherwise processing information, we cannot and do not guarantee or warrant the security of any information that you transmit on or through the Services or that we otherwise maintain.

**LINKS TO THIRD PARTY WEBSITES**

Our Services, newsletters, email updates and other communications may, from time to time, contain links to and from the websites of others, including our partner networks, retail partners, advertisers and affiliates. If you follow a link to any of these websites, please note that these websites have their own privacy policies and that we do not accept any responsibility or liability for these policies.

**UPDATES**

Any updates we may make to our Privacy Policy will be posted on this page, and we may also provide a website notice of any material changes for a reasonable period of time. Please check back frequently to see any updates or changes to our Privacy Policy. If you do not agree or consent to these updates or changes, do not continue to use the Services.

**CONTACT**

Questions or comments regarding this Privacy Policy should be emailed to dataprivacy@ufc.com

7072290.1.82

MENU

---

**UFC.COM - UNITED STATES**

| UFC | SOCIAL MEDIA | HELP | LEGAL |
|---|---|---|---|
| The Sport | IRL | Fight Pass FAQ | Terms |
| UFC Foundation | Facebook | Devices | Privacy Policy |
| Careers | Instagram | Press Credentials | Ad Choices |
| Store | TikTok | | |
| | Twitch | | |
| | Twitter | | |
| | YouTube | | |

Do Not Sell My Personal Information

7072290.1.83

Exhibit 9

 

MENU ⌄

**PAGE**

# COOKIE POLICY

Effective Date: May 24, 2018

**COOKIE POLICY**

Zuffa, LLC ("we", "us", "our") are committed to protecting and respecting your privacy as described in our Privacy Notice, of which this Cookie Policy forms a part.

By consenting to this cookie policy ("Cookie Policy"), you acknowledge and consent to our website using cookies and other similar technologies (as described below) to distinguish you from other users of our website and for analytics. This helps us to provide you with a good experience during your visit to our website. This also allows us to improve our website and provide you with tailored content and advertising. For example we can recognise and remember important information that will make it more comfortable browsing our website such as preferred settings.

A cookie is a small file of letters and numbers that we store via your browser on the hard drive of your computer or your mobile device, if you consent.

We may automatically collect and store certain information about your interaction with our website, including IP addresses, browser type, internet service provider (ISP), referring/exit pages, operating system, date/time stamps, and related data. We use this information, which does not identify individual users, solely to improve the quality of our products and services.

7072290.1.85

**MENU**

**First party cookies**

- **- Session Cookies** (Technical Cookies): Their use is strictly limited to sending the session identifiers (random numbers generated by the server) needed for secure and efficient Website browsing. They are not permanently stored on the user's computer and are deleted upon browser closing. In particular, the use of the session cookies aims at ensuring security and improving of the offered service; and
- **- Technical Cookie**: It is required to keep track of the consent given by the user.

The described cookies do not require your consent to be installed and used.

**Third party cookies**

Some third parties can also provide cookies on our website(s). These cookies or similar technologies are managed by the third parties set out in the table below, and are divided into the following categories:

- **- Analytical Cookies**: we use Google Analytics, the web analytics service offered by Google, Inc. ("Google") to analyse how our Website is used. This service uses cookies generating information on your use of our Website (including your IP address), collected from Google in an anonymous form. Disabling these third-party cookies does not affect the Website use;
- **- Marketing/Advertising**: Cookies used to provide advertising services on a given Website fall within this category. Disabling these third-party cookies does not affect the Website use; and
- **- Profiling Cookies**: They are used to trace the user's network browsing and create profiles about his/her tastes, behaviour, choices, etc. These cookies allow the transmission of online advertising messages to the user's device [with the preferences already expressed by that same user when browsing]. In accordance with applicable laws, using these cookies and any processing related thereto require the prior user's consent. Disabling these third-party cookies does not affect the Website use.

**MENU**

**Type of Cookie**: Google Analytics

**Purpose of Cookie**: The web analytics service offered by Google, Inc. ("Google"), to analyse how our Website is used. This service uses cookies generating information on your use of our Website (including your IP address), collected from Google in an anonymous form. Disabling these third-party cookies does not affect the Website useThese cookies are used to collect information about how visitors use our website. We use the information to compile reports and to help us improve the website. The cookies collect information in an anonymous form, including the number of visitors to the website, where visitors have come to the website from and the pages they visited.

**Profiling**: yes

**Duration**: Varies

**Link**: https://www.google.com/analytics/terms/us.html

**Type of Cookie**: Doubleclick / AdWords

**Purpose of Cookie**: Ad targeting / relevance.

**Profiling**: yes

**Duration**: Varies

**Link**: https://policies.google.com/technologies/ads

**Type of Cookie** Facebook

7072290.1.87

**MENU**

**Duration**: Varies

**Link:** https://www.facebook.com/policy.php

**Type of Cookie:** Youtube

**Purpose of Cookie:** Ad targeting / relevance.

**Profiling:** yes

**Duration**: Varies

**Link:** https://support.google.com/youtube/answer/7671399?p=privacy_guidelines&hl=en&visit_id=1-636627269713290487-2925436020&rd=1

**Type of Cookie:** Yahoo

**Purpose of Cookie:** Ad targeting / relevance.

**Profiling:** yes

**Duration**: Varies

**Link:** https://policies.oath.com/us/en/oath/privacy/

**Type of Cookie:** Snapchat

**MENU**

**Duration**: Varies

**Link:** https://www.snap.com/en-US/privacy/privacy-policy/

**Type of Cookie:** The Trade Desk

**Purpose of Cookie**: Ad targeting / relevance.

**Profiling:** yes

**Duration**: Varies

**Link:** https://www.thetradedesk.com/general/privacy-policy

**Type of Cookie:** Twitter

**Purpose of Cookie**: Ad targeting / relevance.

**Profiling:** yes

**Duration**: Varies

**Link:** https://twitter.com/privacy

You also acknowledge and consent to the use of third party cookies (including, for example, those provided by operators of advertising networks and providers of external services like web traffic analysis services). You acknowledge that where we allow advertising networks,

7072290.1.89

**MENU**

Most internet browsers are set up by default to accept cookies. However, if you want to refuse or delete any cookies (or similar technologies), please refer to the help and support area on your internet browser for instructions on how to block or delete cookies (for example: Internet Explorer, Google Chrome, Mozilla Firefox and Safari). Please note you may not be able to take advantage of all the features of our Website, including certain personalised features, if you delete or refuse cookies.

To opt out of Google Analytics, visit https://tools.google.com/dlpage/gaoptout.

For more information on managing cookies, please go to www.allaboutcookies.org

**If you are a resident in the EU:**

For more information on managing cookies, please visit www.youronlinechoices.eu which has further information about behavioral advertising and online privacy.

**Changes to our Cookie Policy**

This Cookie Policy may be updated from time to time.

If we change anything important about this Cookie Policy we will notify you through a pop-up on the website for a reasonable length of time prior to and following the change. You may review the Cookie Policy by visiting the website and clicking on the "Cookie Policy" link.

**MENU**

---

UFC.COM - UNITED STATES

---

| UFC | SOCIAL MEDIA | HELP | LEGAL |
|---|---|---|---|
| The Sport | IRL | Fight Pass FAQ | Terms |
| UFC Foundation | Facebook | Devices | Privacy Policy |
| Careers | Instagram | Press Credentials | Ad Choices |
| Store | TikTok | | |
| | Twitch | | |
| | Twitter | | |
| | YouTube | | |

---

Do Not Sell My Personal Information

7072290.1.91

Exhibit 10



7072290.1.93

Exhibit 11



7072290.1.95

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**   ZUFFA, LLC, a Nevada limited liability company;
***(AVISO AL DEMANDADO):*** NEULION USA, LLC, a Delaware limited liability
                          company; and DOES 1 to 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

MOISES REZA, FRANK GARZA, TANNER PENDERGRAFT, and
FEDERICO NAVARRETE on behalf of themselves and all others similarly
situated

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
10/11/2022
Chad Finke , Executive Officer / Clerk of the Court
By: _____ A. Linhares _____ Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

  You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court for the State of California

for the county of Alameda - Hayward Hall of Justice
24405 Amador Street, Hayward, CA 94544

CASE NUMBER:
*(Número del Caso):*
**22CV019499**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
CROSNER LEGAL, PC 9440 Santa Monica Blvd., Ste. 301 Beverly Hills, CA 90210 Tel: (310) 496-5818

DATE:    10/11/2022   Chad Finke, Executive Officer / Clerk of the Court    Clerk, by                         , Deputy
*(Fecha)*                                                 *(Secretario)*                     A. Linhares    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

     under: ☐ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
                ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
                ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
                ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Michael R. Crosner (SBN 41299), Zachary M. Crosner (SBN. 272295),
Jamie Serb (SBN 289601)
CROSNER LEGAL, PC, 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210
TELEPHONE NO.: (310) 496-5818          FAX NO. *(Optional):* (310) 510-6429
E-MAIL ADDRESS: zach@crosnerlegal.com, jamie@crosnerlegal.com
ATTORNEY FOR *(Name):* Moises Reza, Frank Garza, Tanner Pendergraft, Federico Navarrete

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
10/13/2022 at 01:22:27 PM
By: Cheryl Clark,
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Alameda**
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

CASE NAME:
MOISES REZA, et al. v. ZUFFA, LLC, et al.

| **CIVIL CASE COVER SHEET** | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder | 22CV019499 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties        d. [x] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [x] Substantial amount of documentary evidence            f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 4
5. This case [x] is [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date: October 11, 2022
Zachary Crosner
_____          ▶ _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]          **CIVIL CASE COVER SHEET**          Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

**Page 2 of 2**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp **FILED** Superior Court of California County of Alameda 10/11/2022 Chad Finke, Executive Officer / Clerk of the Court By: _____ A. Linhares    Deputy |
|---|---|
| COURTHOUSE ADDRESS: Rene C. Davidson Courthouse Administration Building, 1221 Oak Street, Oakland, CA 94612 | |
| PLAINTIFF: MOISES REZA  et al | |
| DEFENDANT: ZUFFA, LLC, a Nevada limited liability company et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 22CV019499 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

> Date: 02/08/2023      Time: 8:30 AM      Dept.: 23
>
> Location: Rene C. Davidson Courthouse
>           Administration Building, 1221 Oak Street, Oakland, CA 94612

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

7072290.1.99

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>10/11/2022<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ A. Linhares _____ Deputy |
| PLAINTIFF/PETITIONER:<br>MOISES REZA  et al | |
| DEFENDANT/RESPONDENT:<br>ZUFFA, LLC, a Nevada limited liability company et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CV019499 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Michael R Crosner
CROSNER LEGAL, PC
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

Chad Finke, Executive Officer / Clerk of the Court

Dated: 10/13/2022                    By:

A. Linhares, Deputy Clerk

**CERTIFICATE OF MAILING**

| **SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br><br>Rene C. Davidson Courthouse<br><br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>10/13/2022<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ A. Linhares _____ Deputy |
| PLAINTIFF(S):<br>MOISES REZA  et al | |
| DEFENDANT(S):<br>ZUFFA, LLC, a Nevada limited liability company et al | |
| **NOTICE OF HEARING** | CASE NUMBER:<br><br>22CV019499 |

TO ALL PARTIES:

Notice is hereby given that the above-entitled action has been set for a/an
Complex Determination Hearing _____ on 12/06/2022 _____ at

3:00 PM _____ in Department 23 _____ of the above named court located at

Administration Building, 1221 Oak Street, Oakland, CA 94612 _____.

Chad Finke, Executive Officer / Clerk of the Court

*A. Linhares, Deputy Cler.*

Dated: 10/13/2022          By: _____
                                Deputy Clerk

**NOTICE OF HEARING**

ACSC (Rev. [12/20])



Crosner Legal, PC
9440 Santa Monica Blvd., Ste. 301
Beverly Hills CA 90212

7072290-1

PRESORTED

FIRST-CLASS MAIL

U.S. POSTAGE

PAID

LETTERSTREAM

Crosner Legal, PC
9440 Santa Monica Blvd., Ste. 301
Beverly Hills CA 90212

0007072120000011



Ashley L. Shively
HOLLAND & KNIGHT
50 California Street Suite 2800
San Francisco CA 94111
USA

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| MICHAEL CROSNER (SBN 41294), ZACHARY CROSNER (SBN 272295), JAMIE SERB (SBN 289601), CHAD SAUNDERS (SBN 257810) CROSNER LEGAL, PC 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210 TELEPHONE NO.: (310) 496-5818   FAX NO. *(Optional):* (310) 510-6429 E-MAIL ADDRESS *(Optional):* zach@crosnerlegal.com  chad@crosnerlegal.com ATTORNEY FOR *(Name):* Moises Reza, et al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

PLAINTIFF/PETITIONER: MOISES REZA, et al.

DEFENDANT/RESPONDENT: ZUFFA, LLC, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 22CV019499 |
|---|---|

TO *(insert name of party being served):* ZUFFA, LLC, a Nevada limited liability company;

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 04, 2022

Maria Monterrey
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:

1. [✔] A copy of the summons and of the complaint.
2. [✔] Other *(specify):*
   CIVIL CASE COVER SHEET;
   NOTICE OF CASE MANAGEMENT CONFERENCE;
   NOTICE OF HEARING

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

7072120.1.2

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| MICHAEL CROSNER (SBN 41294), ZACHARY CROSNER (SBN 272295), JAMIE SERB (SBN 289601), CHAD SAUNDERS (SBN 257810) CROSNER LEGAL, PC 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210 TELEPHONE NO.: (310) 496-5818   FAX NO. *(Optional)*: (310) 510-6429 E-MAIL ADDRESS *(Optional)*: zach@crosnerlegal.com   chad@crosnerlegal.com ATTORNEY FOR *(Name)*: Moises Reza, et al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

PLAINTIFF/PETITIONER: MOISES REZA, et al.

DEFENDANT/RESPONDENT: ZUFFA, LLC, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 22CV019499 |
|---|---|

TO *(insert name of party being served)*: ZUFFA, LLC, a Nevada limited liability company;

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 04, 2022

Maria Monterrey
_____
(TYPE OR PRINT NAME)                          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✔] A copy of the summons and of the complaint.
2. [✔] Other *(specify)*:
   CIVIL CASE COVER SHEET;
   NOTICE OF CASE MANAGEMENT CONFERENCE;
   NOTICE OF HEARING

*(To be completed by recipient)*:

Date this form is signed:

_____          _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

MICHAEL R. CROSNER (SBN 41299)
mike@crosnerlegal.com
ZACHARY M. CROSNER (SBN 272295)
zach@crosnerlegal.com
JAMIE SERB (SBN 289601)
jamie@crosnerlegal.com
CHAD A. SAUNDERS (SBN 257810)
chad@crosnerlegal.com
**CROSNER LEGAL, PC**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429

Attorneys for Plaintiffs MOISES REZA,
FRANK GARZA, TANNER PENDERGRAFT,
and FEDERICO NAVARRETE

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
10/11/2022 at 06:24:56 PM
By: Angela Linhares,
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ALAMEDA**

| | |
|---|---|
| MOISES REZA, FRANK GARZA, TANNER PENDERGRAFT, and FEDERICO NAVARRETE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, a Nevada limited liability company; NEULION USA, LLC, a Delaware limited liability company; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No.: **22CV019499**<br><br>**CLASS ACTION COMPLAINT**<br><br>1) FALSE ADVERTISING IN VIOLATION OF THE CALIFORNIA AUTOMATIC RENEWAL LAW [BUS. & PROF. CODE § 17600, ET SEQ.]<br><br>2) VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT [CIV. CODE § 1750, ET SEQ.]<br><br>3) VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW [BUS. & PROF CODE § 17200, ET SEQ.]<br><br>4) UNJUST ENRICHMENT<br><br>**JURY TRIAL DEMANDED** |

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## I.  INTRODUCTION

1.      This class action complaint alleges that Defendants ZUFFA, LLC, and NEULION USA, LLC ("Defendants") violate California law in connection with an automatically renewing online streaming subscription program. Specifically, Defendants enroll consumers in its streaming subscription program without providing the "clear and conspicuous" disclosures mandated by California law, and posts charges to consumers' credit or debit cards for purported subscription charges without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures. Furthermore, Defendants fail to provide a clear mechanism for consumers to cancel the subscription service before its automatic renewal.

2.      This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code § 17600, et seq.) ("ARL"), the Consumers Legal Remedies Act (Civ. Code § 1750, et seq.) ("CLRA"), and the Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.) ("UCL").

## II.  JURISDICTION AND VENUE

3.      This court possesses original subject matter jurisdiction over this matter.  Venue is proper in Alameda, California, because Defendants transact business in Alameda, California, and some of the complained of conduct occurred in this judicial district.

## III.  THE PARTIES

4.      Plaintiffs MOISES REZA ("Plaintiff Reza"), FRANK GARZA ("Plaintiff Garza"), TANNER PENDERGRAFT ("Plaintiff Pendergraft"), and FEDERICO NAVARRETE ("Plaintiff Navarrete") (hereinafter collectively referred to as "Plaintiffs") are, and at relevant times were, individuals domiciled in the State of California and a citizen of the State of California.

5.      Defendant ZUFFA, LLC, is a Nevada limited liability company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California.

6.      Defendant NEULION USA, LLC, ("NEULION") is a Delaware limited liability company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California. Plaintiffs are informed and believe, and based thereon allege, that Defendant NEULION contracts with ZUFFA, LLC to provide services that provide the

consumer with the ability to access and view ZUFFA, LLC's UFC Fight Pass content, and NEULION processes the subscription fees charged by ZUFFA, LLC. Based on information and belief, the UFC Fight Pass service and/or access to view UFC fights and/or other UFC content is processed by NEULION so UFC Fight Pass users can view UFC fights and/or other UFC content.[1]

7.     The true names and capacities of the DOE Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who therefore sue each such Defendant by said fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

8.     Plaintiffs are informed and believe, and based thereon allege that, at all relevant times, each of the Defendants was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. Plaintiffs are further informed and believes, and based thereon allege, that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, and/or aided and abetted the conduct of all other Defendants.

9.     At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions complained of herein. The conduct of Defendants' managers and supervisors was at all relevant times undertaken as employees of Defendants, acting within the scope of their employment or authority in all of the unlawful activities described herein.

## IV.   **BACKGROUND**

10.     According to ZUFFA, LLC, ZUFFA, LLC, owns the exclusive rights to, "Ultimate Fighting Championship," "Ultimate Fighting," "UFC," "The Ultimate Fighter," "Submission," "As

---

[1] See https://www.ufc.com/terms (last visited September 11, 2022).

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Real As It Gets", "The Octagon" and the eight-sided cage design are registered trademarks, trademarks, trade dress or service marks, and ZUFFA, LLC, operates all Ultimate Fighting Championship® web sites, including without limitation, those located at www.ufc.com and www.ufcfightpass.com[2]

11.     As part of its business activities, Defendants operate an online streaming service called "UFC Fight Pass" to which consumers may subscribe on a monthly or annual basis. After subscribing to UFC Fight Pass, Defendants thereafter post charges to the consumer's credit or debit card in the amount of $9.99 per month for "UFC Fight Pass". The annual charge for this service is $95.99. However, Defendants fail to provide clear and conspicuous disclosures mandated by California law, and fail to provide a clear mechanism by which consumers may cancel their subscriptions.

12.     As described below, the California Automatic Renewal Law was enacted to prohibit companies from enrolling consumers in automatic renewal programs without first making specific clear and conspicuous disclosures and without obtaining each individual's affirmative consent.

**THE CALIFORNIA AUTOMATIC RENEWAL LAW**

13.     In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010, as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code § 17600, *et seq*. (the California Automatic Renewal Law or "ARL"). SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

(See Exhibit 1 attached hereto.)

14.     The Assembly Committee on Judiciary provided the following background for the legislation:

---

[2] See https://www.ufc.com/terms (last visited September 11, 2022); see also https://esos.nv.gov/OnlineTrademarkSearch/TradeMarkInformation (last visited September 11, 2022)

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

(See Exhibit 2 attached hereto.)

15.     The ARL seeks to ensure that, before there can be a legally binding automatic renewal or continuous service arrangement, there must first be adequate disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, Bus. & Prof. Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

(1)     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. (Bus. & Prof. Code § 17602(a)(1).) For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (Bus. & Prof. Code § 17601(c).) In the case of an audio disclosure, 'clear and conspicuous' means in a volume and cadence sufficient to be readily audible and understandable." (*Id*.) The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (a) that the subscription or purchasing agreement will continue until the consumer cancels; (b) the description of the cancellation policy that applies to the offer; (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (e) the minimum purchase obligation, if any. (Bus. & Prof.

4

7072120.1.8

1   Code § 17601(b).)

2       (2)   Charge the consumer's credit or debit card, or the consumer's account with a

3   third party, for an automatic renewal or continuous service without first obtaining the

4   consumer's affirmative consent to the agreement containing the automatic renewal offer

5   terms or continuous service offer terms, including the terms of an automatic renewal offer

6   or continuous service offer that is made at a promotional or discounted price for a limited

7   period of time. (Bus. & Prof. Code § 17602(a)(2).)

8       (3) Fail to provide an acknowledgment that includes the automatic renewal or

9   continuous service offer terms, cancellation policy, and information regarding how to cancel

10  in a manner that is capable of being retained by the consumer. (Bus. & Prof. Code §

11  17602(a)(3).) If the offer includes a free trial, the business must also disclose in the

12  acknowledgment how to cancel and allow the consumer to cancel before the consumer pays

13  for the goods or services. (*Ibid*.) Section 17602(b) requires that the acknowledgment

14  specified in § 17602(a)(3) include a toll-free telephone number, electronic mail address, a

15  postal address if the seller directly bills the consumer, or it shall provide another cost-

16  effective, timely, and easy-to-use mechanism for cancellation.[3]

17      16.   Violation of the ARL gives rise to restitution and injunctive relief under the general

18  remedies provision of the False Advertising Law, Bus. & Prof. Code § 17535. (Bus. & Prof. Code,

19  § 17604, subd. (a).)

20

21  [3] According to the Federal Trade Commission, the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-
22  8405, which contains the federal rules for automatic renewal agreements, "requires negative option sellers to provide a
    simple, reasonable means for consumers to cancel their contracts. To meet this standard, negative option sellers should
    provide cancellation mechanisms that are at least as easy to use as the method the consumer used to initiate the
23  negative option feature. For example, to ensure compliance with this simple cancellation mechanism requirement,
    negative option sellers should not subject consumers to new offers or similar attempts to save the negative option
24  arrangement that impose unreasonable delays on consumers' cancellation efforts. In addition, negative option sellers
    should provide their cancellation mechanisms at least through the same medium (such as website or mobile
25  application) the consumer used to consent to the negative option feature. The negative option seller should provide, at
    a minimum, the simple mechanism over the same website or web-based application the consumer used to purchase the
26  negative option feature. If the seller also provides for telephone cancellation, it should provide, at a minimum, a
    telephone number, and answer all calls to this number during normal business hours, within a short time frame, and
27  ensure the calls are not lengthier or otherwise more burdensome than the telephone call the consumer used to consent
    to the negative option feature. See
28  https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-
    2021-toburbureau.pdf at p. 14.

                                                    5
                    PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## V.  **FACTS GIVING RISE TO THIS ACTION**

17.  Defendants automatically subscribed Plaintiffs to their UFC Fight Pass service. Defendants automatically subscribed Plaintiffs to their UFC Fight Pass service without first providing the clear and conspicuous disclosures required by the ARL and without first obtaining Plaintiffs' affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Based on information and belief, on or around January 2020, Plaintiff Reza logged onto Defendants' UFC Fight Pass streaming service home page at https://welcome.ufcfightpass.com/region/united-states via his desktop computer. The home page includes several graphics and images of UFC combat sports. The home page prompts consumers to "Sign Up Today" by clicking on a red box with the word "Sign Up Today" preceded by a seven-line blurb describing the service subscription to UFC Fight Pass as "a never-ending supply of fighting…the Ultimate 24/7 platform for MORE combat sports, UFC Fight Pass!"

18.  Only after scrolling down past the "Sign Up Today"[4] and scrolling past numerous large graphics of combat sports with descriptions in large font of the service is there any discussion of (1) that the service will have to be paid for and (2) that the service will involve "recurring payments" on either a monthly or yearly basis. This information is finally given below large font saying "IMMERSE YOURSELF: CHOOSE YOUR UFC FIGHT PASS PLAN" where there are side-by-side boxes for the monthly plan and the yearly plan. The boxes display the cost of the respective plans followed by a blurb about the features provided in the subscription. Under the blurb are two line items in significantly smaller font. The first line item advertises "Over 1,000 hours of live combat sports action from around the globe". Finally, the second line item reads that the service requires a recurring payment as it states "Recurring payment of $9.99 per month" and "Recurring payment of $95.99 every year" in the boxes for the monthly and yearly subscriptions, respectively. The customer is given the option to click large red boxes labeled "SELECT" at the bottom of the plan choices. Only after scrolling past the subscription plan choices does it finally state in much smaller greyed-out font that that the "Subscription will auto-renew unless cancelled prior to the

---

[4] Based on information and belief, many consumers do not scroll down past the large red "Sign Up Today" button as the webpage design with its dark background, formatting of the page, and/or the centered "Sign Up Today" button suggests there is no material below to which to scroll down.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  applicable renewal".  This purported disclosure phrase not only fails to be clear and conspicuous but

2  also fails to disclose all required automatic renewal terms as required by California law.  Notably,

3  there is no indication when such renewal will occur and/or whether the recurring payment is subject

4  to change.  Attached hereto as Exhibit 3 is a printout of Defendant's UFC Fight Pass home page as

5  of September 8, 2022.

6          19.     Upon clicking on any of the three buttons on the home page (the "SIGN UP TODAY"

7  or either of the two "SELECT" buttons under the plan choices) the consumer is directed to a page

8  with two similar boxes to the first page, with the choices for a monthly or annual plan. Much like

9  the boxes on the home page they list the prices of each plan followed by a blurb advertising the

10 service features – namely, "Access to exclusive prelims for all PPV events, the entire UFC Fight

11 Library, live martial arts events from around the world and exclusive original series and shows" is

12 under the pricing. Below that, are two line items: (1) the first reads "Over 1,000 hours of live combat

13 sports action from around the globe" (2) The second line item differs from the second line item from

14 the boxes on the homepage as the second line item for the monthly plan states "Monthly

15 subscription, cancel anytime," and the second line item for the yearly plan states "Save 20% when

16 compared to the monthly subscription. Recurring payment of $95.99 every year". The consumer is

17 then given the option to click a button under either plan that reads "SELECT LICENSE".  Notably,

18 this page fails to give any indication to the consumer that the plan will automatically renew on a

19 monthly basis unless canceled.  Attached hereto as Exhibit 4 is a printout/screenshot of UFC Fight

20 Pass' "Select A Plan" page as of September 8, 2022.[5]

21         20.     Upon selecting either of these options (either the monthly or annual option), the

22 consumer is taken to a new page where he or she is prompted to "Create a New Account" by

23 providing an email address and creating a password as well as providing a billing address. Attached

24 hereto as Exhibit 5 is a screenshot of the account creation page as of September 8, 2022[6]. As

25 demonstrated by Exhibits 4-5, Defendants fail to provide any form of disclosures regarding the

26 automatically renewing nature of its subscription services and/or that the plan will automatically

27 ───────────────────
   [5] The select a plan page can be found here: https://ufcfightpass.com/signup last visited September 8, 2022; Exhibit 4 is
28 a screenshot of the select a plan page as of September 8, 2022.
   [6] Exhibit 5 is a screenshot of the account creation and order summary page as of September 8, 2022.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1   renew on a monthly basis unless canceled.  Once the consumer clicks "Continue" to create a new
2   account, a "Terms of Use" box pops up containing the following language: "UFC (Zuffa, LLC) is
3   collecting your information as part of its signup process, and while you use the services, for the
4   purpose of providing the service to you, as well as other purposes set out in the Privacy Policy."
5   Beneath this language, there are three checkboxes.  The first checkbox has following language: "By
6   checking this box, you confirm that you have read and agree to the Terms of Use, Privacy Policy
7   and Cookie Policy."  The consumer is required to check this box to proceed/activate the "Submit"
8   button at the bottom of the box.  There are also optional boxes that can be checked to receive offers
9   and opt out of certain data sharing.  Attached hereto as Exhibit 6 is a printout of the "Terms of Use"
10  box as of September 11, 2022.

11       21.    Upon clicking on the phrase "Terms of Use", the consumer is taken to a new page
12  that includes a long list of twenty-six (26) different terms, many with multiple paragraphs and/or
13  subsections.[7] A user must scroll down several times to reach section twelve called "Special Terms
14  and Conditions Applicable to Subscription Products, online Pay Per View, and Other
15  Services/Products Offered for Purchase Through the Billing."  There are several paragraphs the user
16  must scroll through, none of which relate to any automatic renewal terms, before the user encounters
17  a paragraph, not bolded, nor in a distinctive font nor emphasized in any way, containing the
18  following language: "Billing and Automatic Renewal Policies for Certain Subscription Services or
19  Monthly Subscriptions,".  Under this section, Defendants state that a monthly or annual subscription
20  will begin "when you purchase and ends at the product's pre-determined cycle."  Notably, there is
21  no disclosure informing the user the first date he/she will be charged for the service and/or that the
22  service or purchasing agreement will continue until the consumer cancels.  The section merely
23  informs the user that he/she *may* cancel, not that he/she *must* cancel to avoid the continuation of
24  charges.  Additionally, a user can check out and purchase the service without ever opening the Terms
25  of Use.  Other than these terms, which fail to be clear and conspicuous, there are no other clear and
26

27  _____
    [7] Attached hereto as Exhibit 7 is a printout of the "Terms of Use" as of September 11, 2022. Upon clicking on the
    phrase "Privacy Policy", the consumer is taken to a new page that includes several terms, none of which explain the
28  automatic renewal terms. Attached hereto as Exhibits 8 and 9 are printouts of the "Privacy Policy" and the "Cookie
    Policy" as of September 11, 2022, neither of which said policies contain any automatic renewal terms.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

conspicuous disclosures provided to the consumer prior to purchasing a service.

22.     Moreover, Defendants fail to explain the cancellation policy in a way that can be retained by the user.  For example, the paragraph "Billing and Automatic Renewal Policies for Certain Subscription Services or Monthly Subscriptions" purports to articulate a cancellation policy with the language "To cancel your monthly subscription or the annual automatic renewal feature, send an e-mail to UFCTVSupport@UFC.com cancellation will become effective as of the next monthly billing cycle following receipt."  However, it is unclear as to exactly what is required to effectively cancel the service in a timely manner.  The purported cancellation policy does not articulate any sort of intelligible policy, simply stating "send an email to UFCTVSupport@UFC.com"."  For example, there is no indication to the user that he/she will receive a confirmation email upon receipt and/or other indication the user's email was correctly received, noted, and the user's account updated; no instructions are provided to the user as to what to include in the email e.g., label the subject line of the email or the required contents of the email for effective cancellation in a timely manner. In short, the cursory nature of the purported cancellation policy that is couched among numerous irrelevant terms and devoid of any real instruction to the user as to how to effectuate cancellation in a timely manner renders it confusing and/or unintelligible and not capable of being retained by the consumer.  Moreover, as noted, a user can check out and purchase the service without ever opening the Terms of Use.  Other than these terms, which fail to be clear and conspicuous, there are no other clear and conspicuous disclosures provided to the consumer prior to purchasing a service.

23.     After the user checks the box that he/she has read and agrees to the terms of use, privacy and cookies policies in order to activate the "Submit" button to advance, the user is taken directly to a "Checkout" page that directs the consumer to choose a method of payment (PayPal, Google Pay or Debit/Credit Card).   On the right side of this screen is an "Order Summary" with a line item that reads "Monthly US $9.99" beneath which is the following description of the streaming service "Access to exclusive prelims for all PPV events, the entire UFC Fight Library, live martial arts events from around the world and exclusive original series and shows".  Beneath this description are two line items "Over 1,0000 hours of live combat sports action from around the globe" and a

1   second line with the following language "Monthly subscription, cancel anytime".   The Order

2   Summary provides a large box for a "Promo Code" and displays the total price for a single purchase

3   in larger font than anything else on the page. There is no indication that the subscription will

4   automatically renew, that the subscription will continue until it is cancelled, when such renewal will

5   occur, the amount of each recurring charge and/or whether the recurring charge is subject to change.

6   Moreover, while the "Order Summary" includes the language "cancel anytime", there is no

7   indication of the process by which to cancel.  As such, the Checkout page fails to provide the clear

8   and conspicuous automatic renewal disclosures as required by California law. Attached hereto as

9   Exhibit 10 is a screenshot of the "Payment Methods" and "Order Summary" Checkout page (as of

10  September 11, 2022) directing the consumer to choose method of payment for the previously

11  selected service. Upon selecting the option for Debit/Credit Card, the user is taken to a second

12  "Checkout" page that requests the consumer's credit card information.  Attached hereto as Exhibit

13  11 is a screenshot of the Selected Payment page (as of September 11, 2022) that requests the

14  consumer's credit card information with an "Order Summary" on the right-hand side of the screen

15  that is identical to the "Order Summary" provided on the first Checkout page that directs the user to

16  choose a payment method.  As such, the Checkout pages fail to provide the clear and conspicuous

17  automatic renewal disclosures as required by California law.  Additionally, once the user has entered

18  his/her payment information, he/she can select the "Secure Checkout" without ever being provided

19  with any of the clear and conspicuous disclosures as required by California law.

20      24.    As a result of Defendants' failure to provide clear and conspicuous automatic

21  renewal terms under California law, consumers do not affirmatively consent to the hidden renewal

22  terms of the UFC Fight Pass service.

23      25.    Additionally, consumers are never provided with an acknowledgement that includes

24  the automatic renewal or continuous offer terms, cancellation policy, and information regarding how

25  to cancel in a manner that is capable of being retained by the consumer.

26      26.    Based on information and belief, individuals that purchase Defendants' UFC Fight

27  Pass service via an application on their smart phone or smart TV undergo a process that is

28  substantially similar if not identical to the process described above, including but not limited to the

lack of disclosures required under California law.

27.     When Plaintiff Reza made his online purchase in or around January 2020, he was not aware that Defendants were going to automatically renew his subscription without further notice.

28.     Plaintiff Reza first purchased Defendants' UFC Fight Pass service following a very similar process as that described above. Upon clicking on the "Sign Up Today" button on Defendants' home page, Plaintiff Reza was redirected to a new page that advertised the features of Defendants' streaming service. Plaintiff Reza then created a UFC account by providing his email address and creating a password. After creating the account, Plaintiff Reza paid for one month of Defendant's UFC Fight Pass using a personal credit/debit card. To Plaintiff Reza's surprise, Defendants automatically enrolled him in a monthly subscription plan that was scheduled to renew each month. Plaintiff Reza discovered that Defendants enrolled him an automatic subscription service when he noticed additional charges to his credit card/debit card approximately two months after his original purchase date. On or around March 2020, Plaintiff Reza attempted to cancel the monthly subscription by visiting Defendants' streaming service web page via his desktop. Over the months that followed, Plaintiff Reza attempted to cancel at least one other time but was unable to do so. Defendants continued to charge Plaintiff Reza for a monthly subscription he did not consent to until in or around October 2021, when Defendants finally responded to his most recent attempt to cancel Defendants' subscription.

29.     Defendants automatically subscribed Plaintiff Reza to its UFC Fight Pass service without first providing the clear and conspicuous disclosures required by the ARL and posted charges to Plaintiff Reza's debit/credit card without first obtaining his affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Moreover, Defendants did not provide an adequate mechanism for cancelling the service before the renewal date.

30.     When Plaintiff Reza made his online purchase in January 2020, he was not aware that Defendants were going to automatically renew his subscription without further notice. If Plaintiff had known that Defendants were going to automatically renew his subscription with charges of $9.99 per month, Plaintiff either would not have purchased a UFC Fight Pass subscription

11

in the first place or would have taken other steps to avoid the renewal of his subscription.

31.    Plaintiff Garza first purchased Defendants' UFC Fight Pass Service following a very similar process as that described above. On information and belief, on or around July 31, 2020, Plaintiff Garza logged onto Defendants' UFC Fight Pass streaming service home page at https://welcome.ufcfightpass.com/region/united-states  via his laptop computer.  Upon clicking on the "Sign Up Today" button on Defendants' home page, Plaintiff Garza was redirected to a new page that advertised the features of Defendants' streaming service. Plaintiff Garza then created a UFC account by providing his email address and creating a password. After creating the account, Plaintiff Garza paid for one month of Defendants' UFC Fight Pass using the PayPal payment option on the choose a method of payment screen. Defendants automatically enrolled him in a monthly subscription plan that was scheduled to renew each month. On or around December 2020, Plaintiff Garza attempted to cancel the monthly subscription by visiting Defendants' streaming service web page via Defendants' website but was unable to do so.  Plaintiff Garza attempted to cancel several more times by phone but was unable to do so. Defendants continued to charge Plaintiff Garza for a monthly subscription without his consent until in or around at least February 2021, when Defendants finally cancelled Plaintiff Garza's monthly subscription, following Plaintiff Garza's most recent cancellation attempt.  Plaintiff Garza never received any confirmation email and/or other form of cancellation confirmation from Defendants.

32.    Defendants automatically subscribed Plaintiff Garza to its UFC Fight Pass service without first providing the clear and conspicuous disclosures required by the ARL and posted charges to Plaintiff Garza's debit/credit card without first obtaining his affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Moreover, Defendants did not provide an adequate mechanism for cancelling the service before the renewal date.  Defendants continued to charge Plaintiff Garza for a monthly subscription without his consent until in or around at least February 2021, when his subscription was finally cancelled.

33.    Plaintiff Pendergraft first purchased Defendants' UFC Fight Pass Service following a very similar process as that described above. In or around November 2021, Plaintiff Pendergraft opened his web browser on his mobile phone and went to Defendants' UFC Fight Pass streaming

service home page at  https://welcome.ufcfightpass.com/region/united-states.  Upon clicking on the "Sign Up Today" button on Defendants' home page, Plaintiff Pendergraft was redirected to a new page that advertised the features of Defendants' streaming service. Plaintiff Pendergraft then created a UFC account by providing his email address and creating a password. After creating the account, Plaintiff Pendergraft paid for one month of Defendants' UFC Fight Pass using the credit card payment option on the choose a method of payment screen. Defendants automatically enrolled him in a monthly subscription plan that was scheduled to renew each month. On or around January 2022, Plaintiff Pendergraft attempted to cancel the monthly subscription by phone but was unable to do so.  Plaintiff Pendergraft attempted to cancel at least one additional time by phone but was unable to do so. Defendants continued to charge Plaintiff Pendergraft for a monthly subscription without his consent until in or around at least April 2022, when Defendants finally cancelled Plaintiff Pendergraft's monthly subscription, following Plaintiff Pendergraft's most recent cancellation attempt.

34.     Defendants automatically subscribed Plaintiff Pendergraft to its UFC Fight Pass service without first providing the clear and conspicuous disclosures required by the ARL and posted charges to Plaintiff Pendergraft's credit card without first obtaining his affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Moreover, Defendants did not provide an adequate mechanism for cancelling the service before the renewal date.  Defendants continued to charge Plaintiff Pendergraft for a monthly subscription without his consent until in or around at least April 2022, when his subscription was finally cancelled.

35.     Based on information and belief, individuals that purchase Defendants' UFC Fight Pass service via an application on their smart phone undergo a process that is substantially similar if not identical to the process described above, including but not limited to the lack of disclosures required under California law.  Plaintiff Navarrete first purchased Defendants' UFC Fight Pass Service following a very similar process as that described above On or about October 25, 2019, Plaintiff Navarrete downloaded Defendants' UFC application via his smart phone. He then created an account. After creating an account, Plaintiff Navarrete purchased one month of UFC Fight Pass

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1   without ever being provided with the required disclosures under California law. As such, Plaintiff

2   Navarrete did not realize that Defendants would enroll him in an automatically renewing monthly

3   subscription that he would be charged for immediately after creating his account.  Plaintiff Navarrete

4   attempted to cancel the monthly subscription the same day he downloaded the app and created his

5   account after he was unable to access/view the UFC Fight Pass content for which he had signed up

6   to view.  Plaintiff Navarrete initially attempted to cancel the monthly subscription the same day as

7   his initial purchase by deleting the app from his smart phone.  Approximately two months after

8   Plaintiff Navarrete's initial attempt to cancel the monthly subscription, Plaintiff Navarrete

9   discovered that Defendants were continuing to post charges to his credit card/debit card for the

10  monthly subscription.  Plaintiff Navarrete was surprised to see the recurring charges. Plaintiff

11  Navarrete attempted to cancel the monthly subscription again by, including but not limited to,

12  searching Defendants' website and search engines to find a contact number for Defendants so he

13  could cancel, but he was unable to cancel the subscription.

14        36.    To this day, Defendants continue to charge Plaintiff Navarrete for a monthly

15  subscription he did not consent to.

16        37.    When Plaintiff Navarrete made his online purchase on or about October 25, 2019, he

17  was not aware that Defendants were going to automatically renew his subscription without further

18  notice. If Plaintiff Navarrete had known that Defendants were going to automatically renew his

19  subscription with charges of $9.99 per month, Plaintiff Navarrete either would not have purchased

20  a UFC Fight Pass subscription in the first place or would have taken other steps to avoid the renewal

21  of his subscription.

22                    **VI. <u>CLASS ACTION ALLEGATIONS</u>**

23        38.    Plaintiffs bring this lawsuit as a class action under Code of Civil Procedure section

24  382 on behalf of the following Class: "All California residents who were both (1) enrolled in

25  Defendants' subscription service for UFC Fight Pass and (2) charged by Defendants for a

26  subscription to UFC Fight Pass within the applicable statute of limitations. Excluded from the Class

27  are all employees of Defendants, all employees of Plaintiffs' counsel, and the judicial officers to

28  whom this case is assigned.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1    39.   <u>Ascertainability</u>. The members of the Class may be ascertained by reviewing records

2   in the possession of Defendants and/or third parties, including without limitation Defendants'

3   marketing and promotion records, customer records, and billing records.

4    40.   <u>Common Questions of Fact or Law</u>. There are questions of fact and law that are

5   common to the members of the Class, which predominate over individual issues. Common questions

6   regarding the Class include, without limitation: (1) whether Defendants present all statutorily-

7   mandated automatic renewal offer terms, within the meaning of Business and Professions Code §

8   17601(b); (2) whether Defendants present automatic renewal offer terms in a manner that is "clear

9   and conspicuous," within the meaning of § 17601(c), and in "visual proximity" to a request for

10   consent to the offer, or in the case of an offer conveyed by voice, in temporal proximity to a request

11   for consent to the offer, as required by § 17602; (3) whether Defendants obtain consumers'

12   affirmative consent to an agreement containing clear and conspicuous disclosure of automatic

13   renewal offer terms before charging a credit card, debit card, or third-party payment account; (4)

14   whether Defendants provide consumers with an acknowledgment that includes clear and

15   conspicuous disclosure of all statutorily-mandated automatic renewal or continuous service offer

16   terms, the cancellation policy, and information regarding how to cancel; (5) Defendants' record-

17   keeping practices; (6) the appropriate remedies for Defendants' conduct; and (7) the appropriate

18   terms of an injunction.

19    41.   <u>Numerosity</u>. The Class is so numerous that joinder of all class members would be

20   impracticable. Plaintiffs are informed and believe and thereon allege that the Class consists of at

21   least 100 members.

22    42.   <u>Typicality and Adequacy</u>. Plaintiffs allege that Defendants enrolled the Class

23   members in automatic renewal subscriptions without disclosing all terms required by law, and

24   without presenting such terms in the requisite "clear and conspicuous" manner; charged the Class

25   members' credit cards, debit cards, or third-party accounts without first obtaining the Class

26   members' affirmative consent to an agreement containing clear and conspicuous disclosure of

27   automatic renewal offer terms; and failed to provide the requisite acknowledgment. Plaintiffs have

28   no interests that are adverse to those of the other Class members. Plaintiffs will fairly and adequately

15

1    protect the interests of the Class members.

2        43.   <u>Superiority</u>. A class action is superior to other methods for resolving this controversy.

3    Because the amount of restitution or damages to which each Class member may be entitled is low

4    in comparison to the expense and burden of individual litigation, it would be impracticable for class

5    members to redress the wrongs done to them without a class action forum. Furthermore, on

6    information and belief, Class members do not know that their legal rights have been violated. Class

7    certification would also conserve judicial resources and avoid the possibility of inconsistent

8    judgments.

9        44.   <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>. Defendants

10   have acted on grounds that are generally applicable to the members of the Class, thereby making

11   appropriate final injunctive relief and/or declaratory relief with respect to the Class as a whole.

12                        **VII. <u>CAUSES OF ACTION</u>**

13                          **<u>FIRST CAUSE OF ACTION</u>**

14                  False Advertising - Violation of the Automatic Renewal Law

15                        (Bus. & Prof. Code, § 17600 et seq.)

16                   (By Plaintiffs and the Class Against All Defendants)

17       45.   Plaintiffs incorporate the previous allegations as though set forth herein.

18       46.   Plaintiffs are informed and believe and thereon allege that, during the applicable

19   statute of limitations period, Defendants have enrolled consumers, including Plaintiffs and Class

20   members, in automatic renewal and/or continuous service subscription programs and have (a) failed

21   to present the automatic renewal or continuous service offer terms in a clear and conspicuous manner

22   before the subscription agreement is fulfilled and in visual proximity, or in the case of an offer

23   conveyed by voice, in temporal proximity, to the request for consent to the offer; (b) charged the

24   consumer's credit or debit card or the consumer's third-party payment account for an automatic

25   renewal or continuous service without first obtaining the consumer's affirmative consent to an

26   agreement containing clear and conspicuous disclosure of all automatic renewal offer terms or

27   continuous service offer terms; and (c) failed to provide an acknowledgment that includes clear and

28

                                16

1   conspicuous disclosure of automatic renewal or continuous service offer terms, the cancellation

2   policy, and information regarding how to cancel.

3       47.     As a result of Defendants' conduct, pursuant to Bus. & Prof. Code §§ 17603 and

4   17535, Plaintiffs and Class members are entitled to restitution of all amounts that Defendants

5   charged for any VIP membership during the four years preceding the filing of this Complaint and

6   continuing until Defendants' statutory violations cease.

7       48.     Pursuant to Bus. & Prof. Code § 17535, Plaintiffs and the Class members are entitled

8   to an injunction enjoining Defendants from making membership program offers to California

9   consumers that do not comply with California law.

10                          **SECOND CAUSE OF ACTION**
                      Violation of the California Consumers Legal Remedies Act
11
                              (Civ. Code, § 1750 et seq.)
12
                       (By Plaintiffs and the Class Against All Defendants)
13

14      49.     Plaintiffs incorporate the allegations of the preceding paragraphs as though set forth

15   herein.

16      50.     Plaintiffs and the members of the Class are "consumers" within the meaning of Civil

17   Code § 1761(d) in that Plaintiffs and the goods and/or services sought or acquired were for personal,

18   family, or household purposes.

19      51.     Defendants' UFC Fight Pass subscription services offers pertain to "goods" and/or

20   "services" within the meaning of Civil Code § 1761(a) and (b).

21      52.     The purchases and payments by Plaintiffs and Class members are "transactions"

22   within the meaning of Civil Code § 1761(e).

23      53.     Defendants have violated Civil Code § 1770, subdivisions (a)(5), (a)(9), (a)(13),

24   (a)(14), and (a)(17), by representing that Defendants' goods or services have certain characteristics

25   that they do not have; advertising goods or and services with the intent not to sell them as advertised;

26   making false and misleading statements of fact concerning the reasons for, existence of and amounts

27   of price reductions; representing that a transaction confers or involves rights, remedies, or

28   obligations that it does not have or involve, or that are prohibited by law; and by representing that

1  the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit

2  is contingent on an event to occur subsequent to the consummation of the transaction.

3        54.    Plaintiffs, on behalf of themselves and all other Class members, seek an injunction

4  prohibiting Defendants from continuing their unlawful practices in violation of the Consumers Legal

5  Remedies Act ("CLRA"), as described above.

6        55.    Pursuant to Civil Code § 1782, a notice regarding Defendants' violations of the

7  CLRA was mailed via certified mail, return receipt requested, to Defendants, on September 28,

8  2022. Following expiration of the statutory period Plaintiffs will amend this Complaint to add claims

9  for monetary damages under the CLRA, in addition to equitable and injunctive relief, and request

10 that this Court enter such orders or judgments as may be necessary to restore to any person in interest

11 any money that may have been acquired in violation of the CLRA, and for such other relief as is

12 provided under Civil Code § 1780.

13                        **THIRD CAUSE OF ACTION**

14                            Unfair Competition

15                        (Bus. & Prof. Code, § 17200 et seq.)

16                   (By Plaintiffs and the Class Against All Defendants)

17       56.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

18       57.    The Unfair Competition Law defines unfair competition as including any unlawful,

19 unfair or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising;

20 and any act of false advertising under section 17500. (Bus. & Prof. Code § 17200.)

21       58.    Defendants committed unlawful, unfair, and/or fraudulent business practices, and

22 engaged in unfair, deceptive, untrue, or misleading advertising, by, inter alia and without limitation:

23 (a) failing to present the automatic renewal offer terms in a clear and conspicuous manner before a

24 subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer

25 conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation of §

26 17602(a)(l); (b) charging the consumer in connection with an automatic renewal or continuous

27 service without first obtaining the consumer's affirmative consent to an agreement containing clear

28 and conspicuous disclosures of automatic renewal offer terms or continuous service offer terms, in

violation of § 17602(a)(2); (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding how to cancel, in violation of § 17602(a)(3); (d) representing that Defendants' goods or services have certain characteristics that they do not have, in violation of Civil Code § 1770(a)(5); € advertising goods and services with the intent not to sell them as advertised, in violation of Civil Code § 1770(a)(9); (f) making false and misleading statements of fact concerning the reasons for, existence of and amounts of price reductions, in violation of Civil Code § 1770(a)(13); (g) representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law, in violation of Civil Code § 1770(a)(14); and (h) representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of Civil Code § 1770(a)(17). Plaintiffs reserve the right to identify other acts or omissions that constitute unlawful, unfair or fraudulent business acts or practices, unfair, deceptive, untrue or misleading advertising, and/or other prohibited acts.

59.     Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

60.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

61.     Plaintiffs have suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

62.     Pursuant to Bus. & Prof. Code § 17203, Plaintiffs and the Class members are entitled to an order: (1) requiring Defendants to make restitution of all amounts received in connection with the unlawful, unfair, and/or fraudulent business practices alleged above; and (2) enjoining Defendants from making offers in the State of California that do not comply with California law.

7072120.1.23

1

**FOURTH CAUSE OF ACTION**

2

Unjust Enrichment

3

(By Plaintiffs and the Class Against All Defendants)

4

63.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

5

64.     Defendants have received money from Plaintiffs and Class members in connection

6

with Defendants' conduct in violation of California law, as described herein. Defendants would be

7

unjustly enriched if they were permitted to retain those funds, and Defendants should be ordered to

8

restore said funds to Plaintiffs and the Class members.

9

65.     Plaintiffs allege this unjust enrichment claim in the alternative to relief provided

10

under any legal claim alleged herein.

11

**PRAYER**

12

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

13

On the First Cause of Action

14

1.   For restitution;

15

2.   For a public injunction for the benefit of the People of the State of California;

16

On the Second Cause of Action:

17

3.   For a public injunction for the benefit of the People of the State of California;

18

4.   For an award of attorney's fees and costs, pursuant to Civil Code § 1780(e);

19

On the Third Cause of Action:

20

5.    For restitution;

21

6.   For a public injunction for the benefit of the People of the State of California;

22

On the Fourth Cause of Action:

23

7.   For restitution;

24

On All Causes of Action:

25

8.   For an award of attorneys' fees pursuant to Code Civ. Proc. § 1021.5;

26

9.   For costs of suit;

27

/ / / /

28

/ / / /

20

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

10. For pre-judgment interest; and

11. For such other relief that the Court deems just and proper.

Dated:  October 11, 2022                    **CROSNER LEGAL, P.C.**


_____
Michael R. Crosner, Esq.
Zachary M. Crosner, Esq.
Jamie Serb, Esq.
Chad A. Saunders, Esq.
Attorneys for Plaintiffs
MOISES REZA, FRANK GARZA, TANNER
PENDERGRAFT, and FEDERICO NAVARRETE

1

## **DEMAND FOR JURY TRIAL**

2
      Plaintiffs demand a trial by jury on all claims so triable.

3

4
Dated:  October 11, 2022                   **CROSNER LEGAL, P.C.**

5

6
                          Michael R. Crosner, Esq.

7
                          Zachary M. Crosner, Esq.
Jamie Serb, Esq.

8
                          Chad A. Saunders, Esq.

9
                          Attorneys for Plaintiffs
MOISES REZA, FRANK GARZA,

10
                          TANNER PENDERGRAFT, and FEDERICO
NAVARRETE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit 1

**SENATE JUDICIARY COMMITTEE**
**Senator Ellen M. Corbett, Chair**
**2009-2010 Regular Session**

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

## SUBJECT

Advertising:  Automatic Renewal Purchases

## DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis.  This bill would also require all marketing materials to clearly and conspicuously display a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism the customer could use for cancellation.

This bill would require the order form to clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over the telephone or on an Internet Web page.

 (This analysis reflects author's amendments to be offered in committee.)

## BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements.  Senate Bill 340 is intended to close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase agreements for products and services, consumer complaints began to surface regarding those automatic renewals.  Consumers complained that they were unaware of and had



not requested the automatic renewals until they either received a bill or a charge on their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case.  After receiving numerous consumer complaints, the Attorneys General of 23 states, including California, launched an investigation into Time's automatic renewal subscription offers.  In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that includes a number of reforms to automatic renewals that Time sends to their customers.  Those reforms include, among others, expanded disclosure requirements and customers' affirmative consent to automatic renewals.  (*See* Comment 2 for details.)

## CHANGES TO EXISTING LAW

Existing law, the Unfair Competition Law (UCL), provides that unfair competition means and includes any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False Advertising Act (FAA).  (Bus. & Prof. Code Sec. 17200 et seq.)

Existing law, the FAA, includes the following:
- prohibits any person with the intent, directly or indirectly, to dispose of real or personal property, to perform services, or to make or disseminate or cause to be made or disseminated to the public any statement concerning that real or personal property that is untrue or misleading and known or should be known to be untrue or misleading; and
- prohibits any person from making or disseminating any untrue or misleading statement as part of a plan or scheme with the intent not to sell that personal property or those services at the stated or advertised price.  (Bus. & Prof. Code Sec. 17500.)

Existing law provides that any violation of the FAA is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by both.  (Bus. & Prof. Secs. 17500, 17534.)

Existing law provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney.  (Bus. & Prof. Code Sec. 17536.)

Existing law provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief.  (Bus. & Prof. Code Sec. 17204.)

Existing law provides for injunctive relief, restitution, disgorgement, and civil penalties. (Bus. & Prof. Code Secs. 17203, 17206.)

LEGISLATIVE INTENT SERVICE   (800) 666-1917

SB 340 (Yee)
Page 3 of 7

This bill would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:

1.       All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.

2.       Both of the following:
   a.  on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and
   b.   the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

This bill would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

This bill would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

This bill would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information. The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

This bill would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order. In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms. The automatic



LEGISLATIVE INTENT SERVICE     (800) 666-1917

SB 340 (Yee)
Page 4 of 7

renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," "Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

<u>This bill</u> would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

<u>This bill</u> would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

<u>This bill</u> would define key terms, including "automatic renewal" and "automatic renewal terms."  (*See* Comment 4.)

## **COMMENT**

1.  <u>Stated need for the bill</u>

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations.  The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions.  The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.

7072120.1.30

LEGISLATIVE INTENT SERVICE     (800) 666-1917

SB 340 (Yee)
Page 5 of 7

2. <u>Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with Attorneys General; SB 340 modeled after the Assurance</u>

The Attorneys General of 23 states (States), including California, investigated Time's automatic renewal subscription offers.  Time publishes over 150 magazines worldwide, including Time, People, Sports Illustrated, This Old House, Entertainment Weekly, Fortune, and Popular Science.  Time required customers to notify it if they did not want a subscription renewal; otherwise Time charged customers' credit cards or billed customers.  The automatic renewal terms replaced "the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election."  The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and, if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from an Automatic Renewal.  (Matters Investigated set forth in the Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the Assurance – with Time.  In the Assurance, Time agreed to:
- provide clear and conspicuous disclosures to consumers concerning all the material terms for automatic subscription renewals and, for the next five years, provide consumers the option to affirmatively choose an automatic renewal option and Time will send those consumers who have chosen an automatic subscription renewal written reminders, including information on the right and procedure to cancel;
- honor all requests to cancel subscriptions as soon as reasonably possible and to provide refunds to consumers charged for magazines they did not order;
- stop mailing solicitations to consumers for subscriptions that resemble bills, invoices, or statements of amounts due; and
- not submit unpaid accounts of automatic renewal customers for third party collection.

Time also agreed to refund to customers up to $4.3 million, which included up to $828,463 to 20,238 eligible California consumers, approximately $41 per consumer.  Senate Bill 340 is modeled in large part after the Assurance.

3. <u>Remedies available under the bill</u>

Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.



Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney.  Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered injury in fact and lost money or property.

4.  Key terms defined

This bill would define the following key terms:
   a.   "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.
   b.   "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:
   •   that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
   •   that the customer has the right to cancel;
   •   that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
   •   the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
   •   that the price paid by the customer for future automatic renewal terms may change; and
   •   the minimum purchase obligation, if any.
   c.  "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or   communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.
   d.   "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5.   Recording of telephone automatic renewal offers

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices.  The rule requires, among other things, that telemarketers make



LEGISLATIVE INTENT SERVICE   (800) 666-1917

SB 340 (Yee)
Page 7 of 7

and maintain an audio recording of all telephone solicitations. (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6. <u>Author's amendments</u>

On page 3, line 17, insert:
(c) "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.

<u>Support</u>:  California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

<u>Opposition</u>:  None Known

<div align="center">**<u>HISTORY</u>**</div>

<u>Source</u>:  Author

<u>Related Pending Legislation</u>:  None Known

<u>Prior Legislation</u>:  None Known

<div align="center">\*\*\*\*\*\*\*\*\*\*\*\*</div>

Exhibit 2

Date of Hearing:  June 30, 2009

<div align="center">

ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

</div>

SENATE VOTE:  37-0

SUBJECT:  AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

KEY ISSUE:  SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN "AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES, AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC RENEWAL?

FISCAL EFFECT:  As currently in print this bill is keyed non-fiscal.

<div align="center">

**SYNOPSIS**

</div>

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers.  According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge.  For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.  Indeed, this problem led 23 state attorneys general to launch an investigation of Time, Inc., in response to claims that the company used deceptive practices in signing up customers for automatic subscription renewals. As part of a settlement of this dispute, Time agreed to institute new practices so that customers are fully aware of and affirmatively consent to automatic renewals.  This bill, following the lead of the Times' settlement, would require that renewal terms and cancellation policies be clearly and conspicuously presented to the consumer, whether the offer is made on printed material or through a telephone solicitation.  In addition, the bill would require that the consumer make some affirmative acknowledgement before an order with an automatic renewal can be completed.  Finally, the bill specifies that violation of the bill's provisions do not constitute a crime.  The author has worked closely with affected business interests and has made several amendments that appear to address all stakeholders' concerns.  There is no registered opposition to the bill.*

SUMMARY:  Requires any business making an "automatic renewal" or "continuous service" offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the consumer's affirmative consent to the offer.  Specifically, this bill:

1) Makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer to do any of the following:



a) Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

b) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

c) Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2) Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3) Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4) Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5) Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6) Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed.  Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7) Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

<u>EXISTING LAW</u>:

1) Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA).  (Business & Professions Code Section 17200 *et seq*.)

2) Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading



LEGISLATIVE INTENT SERVICE     (800) 666-1917

statement as part of a plan or scheme to sell goods or services at other than the stated or advertised price.  (Business & Professions Code section 17500.)

3)  Provides that any violation of the FAA is a misdemeanor.  (Business & Professions Code sections 17500, 17534.)

4)  Provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Business & Professions Code section 17536.)

5)  Provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief.  (Business & Professions Code section 17204.)

6)  Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA violations.  (Business & Professions Code sections 17203, 17206.)

COMMENTS:  This non-controversial bill is a response to reported consumer complaints that certain businesses, especially those offering magazine subscriptions or other potentially continuous services, lure customers into signing up for "automatic renewals" without the consumer's full knowledge or consent.  This bill seeks to address this problem by requiring clear disclosures and affirmative acts of customer consent.  The author states:

>     It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation brought by the attorneys general of 23 states, including California, against Time, Inc.  The investigations found that subscribers to several magazines published by Time, Inc. were discovering that their subscriptions were automatically renewed even though the customers claimed that they had never knowingly consented to the renewals.  In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that requires Time to more clearly disclose renewal terms and ensure that the consumer take some affirmative step to acknowledge consent or rejection of the automatic renewal offer.  According to the author, the specific disclosure and consent requirements in this measure are modeled after, though not identical to, those set forth in the Time settlement.

ARGUMENTS IN SUPPORT:  According to the California Public Interest Research Group (CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if they want to."  According to the Consumer Federation of California, this measure will curb deceptive marketing practices that are used to sell everything from magazine subscriptions to "free trial" offers that lock consumers into an ongoing purchase agreement.  Supporters generally

LEGISLATIVE INTENT SERVICE    (800) 666-1917

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

<u>Author's Technical Amendments</u>:  The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

<u>PRIOR LEGISLATION</u>:  AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call.  (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

<u>REGISTERED SUPPORT/OPPOSITION</u>:

<u>Support</u>:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

<u>Opposition</u>:

None on file

<u>Analysis Prepared by</u>:  Thomas Clark / JUD. / (916) 319-2334



LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 3

9/8/22, 4:57 PM                                                      UFC Fight Pass



SCHEDULE      PPV      LOG IN      SIGN-UP

WELCOME TO



Unlock MORE of your inner combat sports fan with UFC Fight Pass!
Fighting is what we live for. And no one brings you MORE live fights, new
shows, and events across multiple combat sports from around the
world. With a never-ending supply of fighting in every discipline, there's
always something new to watch. Leave it to the world's authority in
MMA to bring you the Ultimate 24/7 platform for MORE combat sports,
UFC Fight Pass!

SIGN UP TODAY

9/8/22, 4:57 PM                                                                UFC Fight Pass



SCHEDULE        PPV        LOG IN        SIGN-UP

## EXPERIENCE COMBAT SPORTS
# LIKE NEVER BEFORE







### LIVE EVENTS

Every week is fight week with UFC Fight Pass! Watch the best and most exciting combat sports events from around the world from Lethwei to MMA.

### ORIGINALS

Best-in-class original programming providing the most compelling storytelling and memorable moments across all of combat sports.

### FIGHT LIBRARY

Exclusive access to the world's largest MMA library, including legendary fights and events from UFC, PRIDE, Invicta FC, Strikeforce, and WEC.

## IMMERSE YOURSELF
# CHOOSE YOUR UFC FIGHT PASS PLAN

MOST POPULAR

UFC Fight Pass



SCHEDULE    PPV    LOG IN    SIGN-UP

# $9.99
## USD

# $95.99
## USD

Access to exclusive prelims
for all PPV events, the
entire UFC Fight Library,
live martial arts events
from around the world and
exclusive original series
and shows.

- Over 1,000 hours of live
  combat sports action from
  around the globe
- Recurring payment of $9.99
  per month

Access to exclusive prelims
for all PPV events, the
entire UFC Fight Library,
live martial arts events
from around the world and
exclusive original series
and shows

- Over 1,000 hours of live
  combat sports action from
  around the globe
- Recurring payment of
  $95.99 every year

SELECT

SELECT

*Subscription will auto-renew unless cancelled prior to the applicable renewal*

9/8/22, 4:57 PM                                                    UFC Fight Pass



SCHEDULE        PPV        LOG IN        SIGN-UP

# ANYTIME. ANYWHERE. ANY DEVICE.



9/8/22, 4:57 PM                                                      UFC Fight Pass



SCHEDULE          PPV          LOG IN          SIGN-UP

          HELP     FAQ     TERMS OF USE     PRIVACY POLICY                    

UFC and associated designs are registered and/or owned exclusively by Zuffa, LLC. © 2019 All rights reserved

7072120.1.45

Exhibit 4



Exhibit 5



Exhibit 6

**TERMS OF USE**

UFC (Zuffa, LLC) is collecting your information as part of this signup process, and while you use the services, for the purpose of providing the service to you, as well as other purposes set out in the Privacy Policy.

☐ By checking this box, you confirm that you have read and agree to the Terms of Use, Privacy Policy and Cookie Policy.

☐ By checking this box, you agree that you would like to receive offers and information from UFC (Zuffa,LLC) about similar events and products by email as described in our Privacy Policy. You can unsubscribe at any time. (Optional)

☐ By checking this box, you are opting out of the transfer of your data to some third parties where that transfer is considered a sale. Note: This may impact the performance and availability of the Service. Please review our Privacy Policy for more information. (Optional)

SUBMIT

7072120.1.51

Exhibit 7

7072120.1.52



MENU ⌄

PAGE

# TERMS OF USE

**OWNERSHIP OF SITE; AGREEMENT TO TERMS OF USE**

These Terms and Conditions of Use (the "Terms of Use") apply to all Ultimate Fighting Championship® web sites, including without limitation, those located at www.ufc.com and www.ufcfightpass.com, and all associated sites linked to www.ufc.com by Zuffa, LLC, its subsidiaries, affiliates and related entities (the "Site"). The Site is the property of Zuffa, LLC. **BY USING THE SITE, YOU AGREE TO THESE TERMS OF USE; IF YOU DO NOT AGREE, DO NOT USE THE SITE.**

**COPYRIGHT NOTICE**

This Site is the official Site of Zuffa, LLC and is © 2017 Copyright Zuffa LLC. Commercial reproduction, distribution or transmission of any part or parts of this website or any information contained therein by any means whatsoever without the prior written permission of the Zuffa, LLC is not permitted.

"Ultimate Fighting Championship," "Ultimate Fighting," "UFC," "The Ultimate Fighter," "Submission," "As Real As It Gets", "The Octagon" and the eight-sided cage design are registered trademarks, trademarks, trade dress or service marks owned exclusively by Zuffa, LLC in the United States and other jurisdictions. All other marks referenced herein may be the property of Zuffa, LLC or other respective owners.

**Your Use of the Site**

You may not use any "deep-link", "page-scrape", "robot", "spider" or other automatic device, program, algorithm or methodology, or any similar or equivalent manual process, to access, acquire, copy or monitor any portion of the Site or any Content, or in any way reproduce or circumvent the navigational structure or presentation of the Site or any Content, to obtain or attempt to obtain any materials, documents or information through any means not purposely made available through the Site. Zuffa, LLC ("Zuffa, LLC" or "Zuffa") reserves the right to bar any such activity.

7072120.1.53

**MENU**

You may not probe, scan or test the vulnerability of the Site or any network connected to the Site, nor breach the security or authentication measures on the Site or any network connected to the Site. You may not reverse look-up, trace or seek to trace any information on any other user of or visitor to the Site, or any other customer of Zuffa, including any Zuffa account not owned by you, to its source, or exploit the Site or any service or information made available or offered by or through the Site, in any way where the purpose is to reveal any information, including but not limited to personal identification or information, other than your own information, as provided for by the Site.

You agree that you will not take any action that imposes an unreasonable or disproportionately large load on the infrastructure of the Site or Zuffa's systems or networks, or any systems or networks connected to the Site or to Zuffa.

You agree not to use any device, software or routine to interfere or attempt to interfere with the proper working of the Site or any transaction being conducted on the Site, or with any other person's use of the Site.

You may not forge headers or otherwise manipulate identifiers in order to disguise the origin of any message or transmittal you send to Zuffa on or through the Site or any service offered on or through the Site. You may not pretend that you are, or that you represent, someone else, or impersonate any other individual or entity.

You may not use the Site or any Content for any purpose that is unlawful or prohibited by these Terms of Use, or to solicit the performance of any illegal activity or other activity which infringes the rights of Zuffa or others.

**Submission of Unsolicited Materials**

Zuffa policy prohibits Zuffa or its employees from accepting or considering any unsolicited ideas, proposals, suggestions or materials of any nature whatsoever ("Unsolicited Materials"). Accordingly, you may not use this Site or any information obtained from the Site to submit Unsolicited Materials to Zuffa or anyone affiliated with Zuffa via email, fax, postal mail or any other means. We have adopted this policy to avoid potential misunderstandings or disputes when new products, services and features developed internally by UFC personnel may appear to be similar to Unsolicited Materials submitted to the UFC.

As stated above, we ask that you do not send us Unsolicited Materials. By ignoring our policy and submitting or posting Unsolicited Materials, including without limitation, text, photos, video, sound

**MENU**

use the Unsolicited Materials.

**Purchases; Other Terms and Conditions**

Additional terms and conditions may apply to purchases of goods or services and to specific portions or features of the Site, including contests, promotions, sweepstakes or other similar features, all of which terms are made a part of these Terms of Use by this reference. You agree to abide by such other terms and conditions, including where applicable representing that you are of sufficient legal age to use or participate in such service or feature. If there is a conflict between these Terms of Use and the terms posted for or applicable to a specific portion of the Site or for any service offered on or through the Site, the latter terms shall control with respect to your use of that portion of the Site or the specific service.

Zuffa's obligations, if any, with regard to its products and services are governed solely by the agreements pursuant to which they are provided, and nothing on this Site should be construed to alter such agreements.

Zuffa may make changes to any products or services offered on the Site, or to the applicable prices for any such products or services, at any time, without notice. The materials on the Site with respect to products and services may be out of date, and Zuffa makes no commitment to update the materials on the Site with respect to such products and services.

**Your Acceptance**

By using or visiting the www.UFCFIGHTPASS.COM ("UFC®") website or any UFC® products, software, data feeds, and services provided to you on, from, or through the UFC® website (collectively the "Service") you signify your agreement to (1) these terms and conditions (the "Terms of Service"), and (2) the UFC® Privacy Notice. If for any reason you do not agree with all of the terms and conditions contained in this Agreement, including this website's Privacy Policy, please discontinue using the website immediately.

By using this website, you agree to be legally bound by all of the terms of this Agreement. UFC® reserves the right to change the terms of this Agreement or to change, modify or otherwise alter any features of this website at any time and for any purpose without notice and you agree to be bound by such modifications or revisions. Nothing in these Terms of Service shall be deemed to confer any third-party rights or benefits.

**MENU**

offered by UFC® may be subject to additional terms and conditions, which you should read carefully before making any use of those areas. Any such terms will not vary or replace the terms of this Agreement regarding any use of this website, unless otherwise expressly stated.

**Representations**

You affirm that you are either more than 18 years of age, or an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in these Terms of Service, and to abide by and comply with these Terms of Service.

Provided you are eligible to use this site, UFC® hereby grants you a personal, non-exclusive, non-assignable and non-transferable license to use and display, for home, noncommercial and personal use only, one copy of any Material and/or software contained within this site, including, but not limited to, any files, codes, audio or images incorporated in or generated by the software (collectively the "Material"). You acknowledge and agree that you may not sublicense, assign or otherwise transfer this license or the Material and that no title to the Downloaded Material has been or will be transferred to you from UFC® or anyone else. You also agree that you will not alter, disassemble, decompile, reverse engineer or otherwise modify the Material.

**Availability of Services**

The availability of the content on the Services, including the Subscription Products, may be affected by a variety of factors, including event delays or cancellations, technical problems or network delays, program rescheduling, or other reasons. You agree that we are not obligated to provide you with any specific content under this Agreement.

**Access to the Services.**

In order to access the Services, you must have access to the World Wide Web, either directly or through devices that access Web-based content, and must pay any service fees associated with such access. Not all of the features available through the Services, including certain live streaming audio, video or access to high-quality video, will be available to you unless your computer or mobile device satisfies the minimum technical requirements that are presented when you first register for the Services. As we make changes to the Services, the minimum technical requirements for access to the Services may change. You are responsible for determining whether your computer satisfies the minimum technical requirements before you register to access the Services. Moreover, if we change the minimum technical

**MENU**

In addition, access to certain of the Subscription Products is limited to residents of certain geographical territories, and can be modified at UFC®'s discretion.

Additional terms and conditions may apply to purchases of goods or services and to specific portions or features of the Site, including contests, promotions, sweepstakes or other similar features, all of which terms are made a part of these Terms of Use by this reference. You agree to abide by such other terms and conditions, including where applicable representing that you are of sufficient legal age to use or participate in such service or feature. If there is a conflict between these Terms of Use and the terms posted for or applicable to a specific portion of the Site or for any service offered on or through the Site, the latter terms shall control with respect to your use of that portion of the Site or the specific service. UFC®'s obligations, if any, with regard to its products and services are governed solely by the agreements pursuant to which they are provided, and nothing on this Site should be construed to alter such agreements. UFC® may make changes to any products or services offered on the Site, or to the applicable prices for any such products or services, at any time, without notice. The materials on the Site with respect to products and services may be out of date, and UFC® makes no commitment to update the materials on the Site with respect to such products and services.

**Registration, Username, Password, Security.**

Registration. In accessing this website or certain of the resources on the website, you may be asked to provide registration details, including but not limited to, a valid e-mail address, date of birth and your full name. We will not grant any user access to any registration-required portions of the Services unless he or she has completed the necessary registration and paid the fees, if any, associated with access to such portion of the Services. It is a condition of use of this website that all the details you provide will be correct, current, and complete. If UFC® believes the details are not correct, current, or complete, we have the right to refuse you access to the website or any of its resources.

Your User Identity. Your username and password will be your identity for purposes of interacting with the Services and other users through the Services. In order to access the Subscription Products, you will be asked to provide your username and password.

Username, Passwords, and Password Access. You shall keep confidential, shall not disseminate, and shall use solely in accordance with this Agreement, your username, and password for the Services. You shall immediately notify us if you learn of or suspect: (i) any loss or theft of your username or password, or (ii) any unauthorized use of your username or password or of the Services. In the event of such loss, theft, or unauthorized use, we may impose on you, at our sole discretion, additional security obligations.

**MENU**

otherwise cooperate and assist in any investigation relating to any such unauthorized access.

Although UFC® will not be liable for your losses caused by any unauthorized use of your account, you may be liable for the losses of UFC® or others due to such unauthorized use.

**Your Content and Conduct.**

As a Site account holder you may submit Content to the Service, including but not limited to, user comments. You understand that UFC® does not guarantee any confidentiality with respect to any Content you submit and you acknowledge and agree that Zuffa may use and permit third parties to use anything you submit or otherwise provide or make available to Zuffa, including without limitation, information available through any Third Party Platform (e.g., Facebook, Twitter, etc) used to access any Site.

**Copyrights and Trademarks.**

This website and all materials incorporated on this website (including, but not limited to text, photographs, graphics, video and audio content) are protected by copyrights, patents, trade secrets or other proprietary rights under laws of the United States and other countries. Some of the logos or other images incorporated by UFC® on this website are also protected as registered or unregistered trademarks, trade names and/or service marks ("Trademarks") owned by UFC®. All other trademarks are the property of their respective owners. Use of the Trademarks of UFC® or of any other party is not authorized in any manner other than as incorporated into this website. UNAUTHORIZED COPYING, REPRODUCTION, REPUBLISHING, UPLOADING, DOWNLOADING, POSTING, TRANSMITTING OR DUPLICATING OF ANY OF THE MATERIAL, IN WHOLE OR IN PART, IS EXPRESSLY PROHIBITED. Any unauthorized use may subject the offender to civil liability and criminal prosecution under applicable federal and state law.

**Infringement Notice.**

If you believe that any content appearing on this website has been copied in a way that constitutes copyright infringement under the laws of the U.S, please forward the following information to the Copyright Agent named below:

- Your name, address, telephone number, and email address;
- A description of the copyrighted work that you claim has been infringed;
- The exact URL or a description of where the alleged infringing material is located;

**MENU**

copyright interest; and

- A statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf.

Zuffa, LLC
Attn: Legal Department
P.O. Box 26595
Las Vegas, NV 89126
Facsimile: (702) 221-4703

Please note that while UFC® seeks to preserve any and all exemptions from liability that may be available under the copyright law, this is not a stipulation that UFCFIGHTPASS.com is a service provider as defined in 17 U.S.C § 512(c) or elsewhere in the law.

**Special Terms and Conditions Applicable to Subscription Products, online Pay Per View, and Other Services/Products Offered for Purchase Through the Site.**

We reserve the right to modify the price of any Subscription Product, online Pay Per View, and/or any other services/products offered for purchase through the Site. We are not responsible for any error in copy or images relating to any Subscription Product or any other services/ products offered for purchase through the Site.

In order to purchase a Subscription Product, online Pay Per View, or other services/products offered for purchase through the Site, you may be required to provide complete and accurate personal information, including, without limitation, your name, address, telephone number, e-mail address, credit card information and billing address. Our Privacy Policy explains how such information collected via the Site may be used by us. Your ability to purchase Subscription Products and/or other services/products offered for purchase through the Site is subject to limits established by your credit card issuer. You must notify us immediately of any change in your credit card information, including any change to your home address. By utilizing a credit or debit card for purchase of any of the Subscription Products or any other services/products offered for purchase through the Site, you authorize us to charge such card on a periodic basis as specified in the amount described on the applicable Subscription Product or other services/products purchase path(s).

Pay Per View events purchase includes viewing for 24 hours from the event start.  If purchased as a rental after the event, includes viewing of 24 hours from purchase.

to UFCTVSupport@UFC.com cancellation will become effective as of the next monthly billing cycle following receipt.

The UFC® reserves the right to block access to any online event to any regions or territories at the UFC®'s discretion and for any reason. Blackout restrictions may apply.

Under this agreement, the payment processing services for the Service will be provided by NeuLion Limited, on behalf of UFC®, depending on the type of payment methods used for the purchase of the Services.

We have contracted with NeuLion, Inc. to provide services that provide You (the subscriber who pays a fee) with the ability to access and view our content. The payment processing relating to the ability to view the content for those subscribers in Europe will be provided by NeuLion, Limited. (NeuLion, Limited and NeuLion, Inc. are collectively referred to herein as "NeuLion".) NeuLion's Terms of Use and Privacy Policy are available at www.neulion.com. Payment for the ability to view our content is made to NeuLion, on our behalf, based upon the subscription plan that you sign up for. The subscription fee will be processed through NeuLion and will be processed in a secure manner by a third party payment services provider retained by NeuLion. Questions concerning payment processing for subscribers in Europe can be addressed via live chat, email at Support@UFC.TV or NeuLion, Limited, located at 69 Wilson Street, 2nd Floor, London EC2A 2BB, United Kingdom or NeuLion, Inc., located at 1600 Old Country Road, Plainview, NY 11803.

**Online Pay Per View is for residential use only.**

Commercial locations in the United States are required to license the Pay Per View from our commercial distributor Joe Hand Promotions, Inc., 407 E. Pennsylvania Blvd., Feasterville, PA 19053. Commercial locations in English Canada are required to license the Pay Per View from our commercial distributor Premium Sports Broadcasting, Inc., 650 Columbia Street New Westminster, BC V3M 1A9.  Commercial locations in Australia are required to license the Pay Per View from our commercial distributor FOXTEL. Commercial locations in New Zealand are required to license the Pay Per View from our commercial distributor SKY.

**Refunds.**

In order to provide the highest customer satisfaction possible, we will refund the purchase price paid for any Subscription Product, as follows:

7072120.1.60

**MENU**

your access to such Subscription Product is cancelled by you within five (5) days of the purchase date, we will make a reasonable effort to refund to the credit card you used to subscribe to such Subscription Product an amount equal to the total amount you paid for access to the Subscription Products in the current term of your subscription less the amount of a Weekly Pass for such Subscription Product. If your access to such Subscription Product is cancelled by you after five (5) days of the purchase date, you will not be eligible for a refund.

- Your access to the Subscription Product is cancelled by us at any time, we will make a reasonable effort to refund to the credit card you used to subscribe to such Subscription Product a prorated amount equal to the total amount you paid for access to the Subscription Product in the current term of your subscription times the fraction of the term of your subscription that remains on the date of termination, except if we allege that you have violated the Terms of Use, in which case you will not be eligible for a refund.

- If you have purchased a Subscription to any Subscription Product you will not be entitled to any refund if your access to the Subscription Product is terminated.

- If we are unable to post a refund to your credit card, including because your credit card account is closed or otherwise unavailable when we attempt to post the refund, or if we allege that you have violated the Terms of Use, you agree that you will forfeit the amount due to you (if any) under this paragraph. Please note that we may not be able to post refunds for subscriptions that are paid for through the use of "single use" credit card numbers or similar "disposable" payment methods. We recommend that you do not use these payment methods to pay for your subscription to the Services; if you choose to use them despite our recommendation, you do so at the risk that we may not be able to provide you with a refund under this paragraph.

- Our reasonable effort to provide you with a refund, as described above, will be your exclusive remedy if you or we terminate your access to the Services, including in the event that you claim we breached our obligations to you.

By accepting this Agreement, you agree that we may notify you about changes to prices and/or the Subscription Products by sending an e-mail message to your e-mail address on file with us and by publishing such notices from time to time on the informational page(s) of the Site. It is your responsibility to notify us of any change in your e-mail address by logging in to the Site and using the online account management tool. If your e-mail service includes functionality or software that catalogues your e-mails in an automated manner, it is your responsibility to ensure that those e-mails we send to you reach your inbox, either by routinely monitoring your bulk, junk and/or spam e-mail folders or by adding us to your address book or safe senders list.

**Deactivation/termination of your registration**

7072120.1.61

**MENU**

further obligation of any kind whatsoever to you or any other party.

**Account Termination Policy**

UFC® will terminate a user's access to the Service if, under appropriate circumstances, the user is determined to be in violation of the Terms of Use, at any time, without prior notice and in its sole discretion.

**General Use of the Service – Permission and Restrictions.**

UFC® hereby grants you permission to access and use the Service as set forth in these Terms of Service, provided that:

- You agree not to distribute in any medium any part of the Service or the Content without UFC®'s prior written authorization.
- You agree not to alter or modify any part of the Service.
- You agree not to access Content through any technology or means other than the video playback pages of the Service itself or other explicitly authorized means UFC® may designate.
- You agree not to use or launch any automated system, including without limitation, "robots," "spiders," or "offline readers," that accesses the Service in a manner that sends more request messages to the UFC® servers in a given period of time than a human can reasonably produce in the same period by using a conventional on-line web browser. UFC® reserves the right to revoke these exceptions either generally or in specific cases. You agree not to collect or harvest any personally identifiable information, including account names, from the Service, nor to use the communication systems provided by the Service (e.g., comments, email) for any commercial solicitation purposes. You agree not to solicit, for commercial purposes, any users of the Service with respect to their Content.
- In your use of the Service, you will comply with all applicable laws.
- UFC® reserves the right to discontinue any aspect of the Service at any time.

You may not copy, reproduce, distribute, publish, enter into a database, display, perform, modify, create derivative works, transmit, or in any way exploit any part of this website, except that you may access and display material and all other content displayed on this website for non-commercial, personal, entertainment use on a single computer only. Without limited the generality of the foregoing, you may not distribute any part of this website over any network, including a local area network, nor sell or offer it for sale. In addition, these files may not be used to construct any kind of database. Also, decompiling, reverse engineering, disassembling, or otherwise reducing the code used in any software on this website into a

**MENU**

**Warranty Disclaimer.**

You agree that your use of the services shall be at your sole risk. To the fullest extent permitted by law, UFC®, its officers, directors, employees, and agents disclaim all warranties, express or implied, in connection with the services and your use thereof. UFC® makes no warranties or representations about the accuracy or completeness of this site's content or the content of any sites linked to this site and assumes no liability or responsibility for any (i) errors, mistakes, or inaccuracies of content, (ii) personal injury or property damage, of any nature whatsoever, resulting from your access to and use of our services, (iii) any unauthorized access to or use of our secure servers and/or any and all personal information and/or financial information stored therein, (iv) any interruption or cessation of transmission to or from our services, (iv) any bugs, viruses, trojan horses, or the like which may be transmitted to or through our services by any third party, and/or (v) any errors or omissions in any content or for any loss or damage of any kind incurred as a result of the use of any content posted, emailed, transmitted, or otherwise made available via the services. UFC® does not warrant, endorse, guarantee, or assume responsibility for any product or service advertised or offered by a third party through the services or any hyperlinked services or featured in any banner or other advertising, and UFC® will not be a party to or in any way be responsible for monitoring any transaction between you and third-party providers of products or services. As with the purchase of a product or service through any medium or in any environment, you should use your best judgment and exercise caution where appropriate.

**Limitation of Liability.**

In no event shall UFC®, its officers, directors, employees, or agents, be liable to you for any direct, indirect, incidental, special, punitive, or consequential damages whatsoever resulting from any (i) errors, mistakes, or inaccuracies of content, (ii) personal injury or property damage, of any nature whatsoever, resulting from your access to and use of our services, (iii) any unauthorized access to or use of our secure servers and/or any and all personal information and/or financial information stored therein, (iv) any interruption or cessation of transmission to or from our services, (iv) any bugs, viruses, trojan horses, or the like, which may be transmitted to or through our services by any third party, and/or (v) any errors or omissions in any content or for any loss or damage of any kind incurred as a result of your use of any content posted, emailed, transmitted, or otherwise made available via the services, whether based on warranty, contract, tort, or any other legal theory, and whether or not the company is advised of the possibility of such damages. The foregoing limitation of liability shall apply to the fullest extent permitted by law in the applicable jurisdiction.

You specifically acknowledge that UFC® shall not be liable for content or the defamatory, offensive, or illegal conduct of any third party and that the risk of harm or damage from the foregoing rests entirely

7072120.1.63

**MENU**

makes no representations that the Service is appropriate or available for use in other locations. Those who access or use the Service from other jurisdictions do so at their own volition and are responsible for compliance with local law.

**Indemnity.**

To the extent permitted by applicable law, you agree to defend, indemnify and hold harmless UFC®, its parent corporation, officers, directors, employees and agents, from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (i) your use of and access to the Service; (ii) your violation of any term of these Terms of Service; or (iii) your violation of any third party right, including without limitation any copyright, property, or privacy right. This defense and indemnification obligation will survive these Terms of Service and your use of the Service, (Iv) any bugs, viruses, trojan horses, or the like which may be transmitted to or through our services by any third party, and/or (v) any errors or omissions in any content or for any loss or damage of any kind incurred as a result of the use of any content posted, emailed, transmitted, or otherwise made available via the services. UFC® does not warrant, endorse, guarantee, or assume responsibility for any product or service advertised or offered by a third party through the services or any hyperlinked services or featured in any banner or other advertising, and UFC® will not be a party to or in any way be responsible for monitoring any transaction between you and third-party providers of products or services. As with the purchase of a product or service through any medium or in any environment, you should use your best judgment and exercise caution where appropriate.

**Submissions and Postings.**

UFC® does not accept unsolicited submissions of concepts, creative ideas, suggestions, stories, merchandise, or other potential content. This is to avoid the possibility of future misunderstanding when projects developed by UFC® staff or representatives might seem to others to be similar to the submitted concepts, creative ideas, suggestions, stories or other potential content. Therefore, please do not send UFC® any unsolicited submissions.

To the extent that use of the website provides you or other users an opportunity to post and exchange information, content, ideas and opinions ("Postings"), be advised that UFC® does not screen, edit, or review Postings prior to their appearance on the website or elsewhere, and Postings do not necessarily reflect the views of UFC®. To the fullest extent permitted by applicable laws, UFC® excludes all responsibility and liability for the Postings or for any losses or expenses resulting from their use and/or appearance on the website or elsewhere. You hereby represent and warrant that you have all necessary

**MENU**

In any event, no material you send to us will be treated as confidential and may be used by Zuffa and third parties for any and all purposes.

**Moderation/Monitoring.**

UFC® shall have the right, but not the obligation, to monitor any Postings or other material on UFCFIGHTPASS.com. UFC® shall have the right in its sole discretion to edit, refuse to post or remove any material submitted or posted to UFCFIGHTPASS.com. Without limiting the foregoing, UFC® shall have the right to remove any material that UFC®, in its sole discretion, finds to be in violation of this Agreement or otherwise objectionable.

**Assignment.**

These Terms of Service, and any rights and licenses granted hereunder, may not be transferred or assigned by you, but may be assigned by UFC® without restriction.

**Applicable Law and Jurisdictional Matters.**

You agree that: (i) the Service shall be deemed solely based in Nevada; and (ii) These Terms of Service shall be governed by the internal substantive laws of the State of Nevada, without respect to its conflict of laws principles. Any claim or dispute between you and UFC® that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Clark County, Nevada. The parties all consent to the jurisdiction of such courts agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it. These Terms of Service, together with the Privacy Notice at and any other legal notices published by UFCFIGHTPASS.com on the Service, shall constitute the entire agreement between you and UFC® concerning the Service.

YOU AND UFC® AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED.

**Severability.**

If any provision of these Terms of Service is deemed invalid by a court of competent jurisdiction, the invalidity of such provision shall not affect the validity of the remaining provisions of these Terms of Service, which shall remain in full force and effect. No waiver of any term of this these Terms of Service

7072120.1.65

**MENU**

it is your responsibility to review these Terms of Service for any changes. Your use of the Service following any amendment of these Terms of Service will signify your assent to and acceptance of its revised terms.

**IF YOU DO NOT AGREE TO BE LEGALLY BOUND BY ALL OF THE FOREGOING TERMS PLEASE DO NOT ACCESS AND/OR USE THE WEBSITE.**

**UFC**

The Sport

UFC Foundation

Careers

Store

**SOCIAL MEDIA**

IRL

Facebook

Instagram

TikTok

Twitch

Twitter

YouTube

**HELP**

Fight Pass FAQ

Devices

Press Credentials

**LEGAL**

Terms

Privacy Policy

Ad Choices

**Do Not Sell My Personal Information**

**MENU**

UFC.COM - UNITED STATES

| UFC | SOCIAL MEDIA | HELP | LEGAL |
|-----|--------------|------|-------|
| The Sport | IRL | Fight Pass FAQ | Terms |
| UFC Foundation | Facebook | Devices | Privacy Policy |
| Careers | Instagram | Press Credentials | Ad Choices |
| Store | TikTok | | |
| | Twitch | | |
| | Twitter | | |
| | YouTube | | |

**Do Not Sell My Personal Information**

7072120.1.67

Exhibit 8

7072120.1.68



MENU ⌄

PAGE

# PRIVACY POLICY

Effective Date: December 30, 2019

**What's New?**

- We've added more detail in what data we collect, how we use your data, and who we share it with.
- We've updated our policy to include new rights to opt out of the sale of your data under applicable laws.
- We've included additional information about rights of some customers under new California laws relating to data privacy.

**UFC PRIVACY POLICY**

We are UFC and we know that our fans are a key part of what makes the UFC community successful. Our commitment to our fans includes handling data responsibly.

This Privacy Policy describes how we use the data we collect from you through our digital properties ("Site"), when you buy a ticket or other merchandise from us online, when you view UFC programming on one of our online channels (including UFC FIGHT PASS and UFC.tv), when you attend our events in person, and when you otherwise interact with UFC marketing, contests, sweepstakes, and surveys (collectively our "Services").

Please read this Privacy Policy carefully to understand how we will treat your information.

MENU

WHO WE ARE

HOW WE COLLECT INFORMATION ABOUT YOU

INFORMATION WE COLLECT AND HOW WE USE IT

DISCLOSURE OF YOUR INFORMATION

MARKETING AND ADVERSTISING

SOCIAL SHARING FEATURES

DO NOT TRACK

STORAGE AND TRANSFER OF INFORMATION

CHILDREN

OPTING OUT OF THE SALE OF YOUR PERSONAL INFORMATION

YOUR CALIFORNIA PRIVACY RIGHTS

SECURITY

LINKS TO THIRD PARTY WEBSITES

**MENU**

**WHO WE ARE**

We are UFC, including our main company Zuffa, LLC and affiliated entities. We are also part of Endeavor and share data with its affiliated entities ("Endeavor").  If you would like a list of relevant entities, please submit an Information Request to the Privacy Team.

Like any company, we use a variety of third party businesses and partners to market and provide our Services to you. Some of those companies are part of Endeavor and some are third parties that we partner with or support our operations so we can provide the best experience to you.

**HOW WE COLLECT INFORMATION ABOUT YOU**

**Directly From You**

You may provide us with personal information in a number of ways, such as when you:

- - Provide information to us via our websites, applications, and other digital channels by signing up, creating accounts (including using social media login), filling out forms, commenting, or otherwise engaging with our online services;
- - Communicate with us by e-mail or phone;
- - Subscribe to e-mails and/or newsletters;
- - Report a problem or request support for any of our Services;

**MENU**

- - Subscribe to UFC content online at UFC FIGHT PASS, UFC.tv, and other online official video or streaming partners; and
- - Attending any UFC event (e.g. ticket scanning, CCTV, and other on location interactions you may have with us.

**Information We Collect From Other Sources**

We work closely with third parties (for example, technical service providers, ticketing providers, promotions companies, advertising networks, analytics providers, and search information providers) and may receive information about you from them. Depending on the relationship and activity, they will provide us with certain information that will help us understand how you interact with UFC Services so we can tailor our marketing and provide better, more personalized Services to you. In some cases, third parties also provide us with information that helps us keep track of transactions, address technical or logistical issues, prevent fraud, or keep our UFC community safe from security threats.

We may also receive and display information and content which you make publically available on your social media account when you use social media logins for our Services or interact with any of our content (such as contests).

Some of our key partners and service providers who may provide us with personal information about you are:

- - ○ - Media and digital content partners, who we partner with to share exclusive content, including PPV packages of UFC events;
  - ○ - E-commerce platforms and service, which provide UFC merchandise to UFC fans around the world;
  - ○ - Ticket sellers around the world who sell tickets to UFC events; and
  - ○ - Venues which host UFC events and provide various marketing, advertising, customer support, and security services related to UFC events.

We may also receive and display information and content which you make publically available on your social media account, such as when you post using one of our promoted hashtags.

**INFORMATION WE COLLECT AND HOW WE USE IT**

70721201.72

**MENU**

| | | | |
|---|---|---|---|
| | | | sharing |
| | | To provide and Improve the Services | Customer service partners |
| | | | Marketing sponsors and partners |
| | Directly from you | Personalization of the Services | Ad networks |
| Personal and online identifiers (such as first and last name, email address, phone number, usernames, or unique online identifiers) | Marketing partners | Customer support | E-Commerce vendors |
| | | Marketing and targeted advertising | Endeavor |
| | | Security and fraud prevention | Analytics services |
| | | | E-Commerce vendors |
| | Directly from you | To provide the Services | Payment providers |
| Financial Account Information (such as credit card numbers, bank account information, Paypal account information) | Payment providers | To sell you merchandise, tickets, or UFC content | Fraud and cybersecurity companies |
| | E-Commerce vendors | | Endeavor |
| Customer Profile Information (such as race, gender, age range, income range, ad demographics) | Directly from you | To provide and improve the Services | Endeavor |
| | Marketing partners | | Analytics services |

7072120.1.73

**MENU**

| | | Direct marketing | |
| | | Targeted advertising | Marketing sponsors and partners |
| | | Analytics | |
| | | Research and development | |
| | | Security and fraud prevention | |
| Transactional Information | Directly from you | To Provide and Improve the Services | Endeavor |
| | E-Commerce vendors | Customer Support | Analytics services |
| | | Analytics | Technology service providers |
| | | Research and Development | E-Commerce Vendors |
| Communications with you (such as customer support messages, emails, social media posts) | Directly from You | To Provide and Improve the Services | Endeavor |
| | Customer support partners | Customer Support | Analytics services |

70721201.74

**MENU**

| | | | |
|---|---|---|---|
| | | | Customer Service Partners |
| | Directly from You | To Provide and Improve the Services | Endeavor |
| | Cookies and similar technologies | Personalization of the Services | Technology service providers |
| Online Activity Information  (such as browsing history, search history, interactions with a website, email, application, or advertisement) | Marketing partners | Direct marketing | Analytics services |
| | Advertising networks | Targeted advertising | Ad networks |
| | Third party data providers | | |
| Non-Precise Geolocation information (such as zip or area code, state, country) | Directly from you | To provide and improve the Services to you | Endeavor affiliates |
| | Cookies and similar technologies | Personalization of the Services | Ad networks |
| | Marketing sponsors | | Technology service providers |
| | Technology service providers | Fraud and cybersecurity | Marketing sponsors |
| | Ad networks | Direct marketing | |
| | | Targeted advertising | |

7072120.1.75

**MENU**

| | | | |
|---|---|---|---|
| Sensory information (such as audio, electronic, visual, or similar information) | Directly from you (such as when you interact with certain apps at our events) | Personalization of the services | Endeavor |
| | Technology service providers (such as apps and third party analytics platforms activating services at our events) | Enhancing live event experiences | Technology services providers |
| | | Research and development | |
| Inferences drawn from the above information about your predicted characteristics and preferences | Endeavor | To Provide and improve the Services | Endeavor |
| | Third party data providers | Personalization of the Services | Ad networks |
| | Marketing sponsors | Direct marketing | Marketing sponsors |
| | | Targeted advertising | Technology service providers |
| | | Analytics | Analytics companies |
| Other information about you that is linked to the personal information above | Directly from you | To Provide and Improve the Services | Endeavor |
| | Endeavor | Personalization of the Services | Ad networks |
| | Third party data providers | | Marketing sponsors |
| | Marketing sponsors. | | |

**MENU**

We may also use the information we have about you:

- ○ - as necessary if we believe there has been a breach of the Terms of Use or the rights of any third party, or
  ○ - to comply with legal and/or regulatory requirements.

We combine information we receive from other sources with information you give to us and information we collect about you. We use this combined information for the purposes set out above.

**DISCLOSURE OF PERSONAL INFORMATION**

We do share data with third parties, including event sponsors and Endeavor, and the other categories of partners as listed above. Some of these disclosures of data may be constitute a sale of data under some data privacy laws. Accordingly, we offer the option for you to opt out of the sale of your personal information, as further set forth below.

We may share your personal information with Endeavor and with selected third parties including:

- - business partners, suppliers and sub-contractors for the performance of any contract we enter into with them or you in order to provide you with a product or service;

- - business partners, suppliers and sub-contractors to provide you with information about promotions and offers;

- - advertisers, advertising networks and social networks that require the data to select and serve relevant advertisements to you and, in some cases, to others. For more information on how we use personal information for targeted advertising, see below; and

- - analytics and search engine providers that assist us in the improvement and optimization of the Service.

We may disclose your personal information to third parties:

**MENU**

- - if we are under a duty to disclose or share your personal information in order to comply with any legal obligation, or in the event of an emergency, or in order to enforce or apply our Terms of Use and other agreements, or to protect the rights, property, or safety of UFC, Endeavor, our customers, clients or others; and

- - to any other third party not covered in this policy with your prior consent.

**MARKETING AND ADVERTISING**

**Targeted Advertising**

We use your personal information to tailor our marketing and advertising efforts. To do this, we provide your information to third party advertising networks (such as Google Doubleclick) and social media companies (such as Facebook). When we provide data to agencies, ad networks, and other parties for targeted advertising, we do not provide them with your name, financial information, or any sensitive information (such as an government ID or date of birth, if we have collected that). We use online identifiers such as email, cookie addresses, and device identifiers to help us provide targeted advertising to you and others like you. We may also use aggregate information to help advertisers reach the kind of audience they want to target. We may make use of the personal information we have collected from you to enable us to display advertisements to target audiences;

To opt out of targeted advertising, you may use the following links provided by third parties that manage opt outs for some ad networks:

http://preferences-mgr.truste.com,
http://www.networkadvertising.org/managing/opt_out.asp
http://www.aboutads.info/
https://policies.google.com/privacy/partners

MENU

mailing lists, purchase a ticket or UFC merchandise, or subscribe to UFC content online. If you provide us with your email address in order to receive communications, you can opt out at any time by using the unsubscribe links at the bottom of our emails.

**Mobile Notifications**

With your consent, we may send promotional and non-promotional push notifications or alerts to your mobile device. You can deactivate these messages at any time by changing the notification settings on your mobile device.

**SOCIAL SHARING**

You may be able to use social sharing features and other integrated tools on the Site such as the Facebook "Like" button. These features and tools may permit you to share actions you take on our Service with other media, and vice versa. Your use of such features enables the sharing of information with your friends or the public, depending on the settings you establish with the service that provides the social sharing feature. Please remember, though, that use of the information you share on social media sites will be governed by the privacy policies of the social media provider, and we are not responsible for how they treat the information.

**COOKIES**

We and trusted third parties use cookies and similar technologies on the Site to collect and process personal information. For more information, please see our Cookie Notice.

**DO NOT TRACK**

Some web browsers may transmit "do-not-track" signals to the websites with which the user communicates. Because of differences in how web browsers incorporate and activate this feature, it is not always clear whether you intend for these signals to be transmitted, or whether you even are aware of them. Because there currently is no industry standard concerning what, if anything, websites should do when they receive such signals, we currently do not take action in response to these signals.

**MENU**

where your information will likely be stored and processed. Your information may be disclosed in response to inquiries or requests from government authorities or to respond to legal process in the countries in which we operate and/or store your information.

**CHILDREN**

We do not knowingly collect information from children who are under 13 years old. If you are a parent or guardian of a child who is 13-16 years old and using our Services, please send us an email at dataprivacy@ufc.com to opt in or request deletion of any personal information we may have collected about the child. If you are a parent or guardian of a child who is under 13 years old and using our Services, please contact us to arrange for deletion of any personal information we may have collected about the child.

**OPTING OUT OF THE SALE OF YOUR PERSONAL INFORMATION**

WE DO NOT SELL YOUR PERSONAL INFORMATION FOR MONEY.

However, sometimes we share your data with sponsors, vendors, Endeavor, and third party advertising networks. These transfers, which are used to provide you with certain Services and/or to more effectively provide you with personalized Services (including advertising), can be deemed a sale under some data privacy laws.

You may opt out of the sale of your personal information by clicking on the Do Not Sell My Personal Information button on our site or calling 1-866-983-0571. You will be asked to provide certain information to us in order to exercise this option so we can verify your identity and locate your records with us.

Please note that your decision to opt out of the sale of your personal information may impact the availability and quality of some of the Services provided to you. For example, if you choose to opt out of the sale of your personal information with regard to UFC FIGHT PASS, your account will need to be suspended because the service relies on certain data to function.

**CALIFORNIA PRIVACY RIGHTS**

7072120.1.80

**MENU**

- **- Information about You:** You may ask for us to state what categories of personal information about you we have, and the categories of sources from which we collect your personal information;
- **- Receive a Copy of Your Data:** You may request the categories and specific pieces of information (if any) we have about you, the categories of personal information that we have disclosed about you for a business purpose,   and the categories of third parties with which we have shared personal information in the previous 12 months.
- **- Delete Your Data:** You may request that we delete the personal information we have collected from you.
- **- Do-Not-Sell:**  You may opt out of our sale(s) of your personal information, as "sale" is defined by California law. Please see above for more information.
- **- Non-Discrimination:**  California law prohibits discrimination against you for exercising your privacy rights..

Note: Where certain technologies rely on your data to provide the Services, the absence of that data may impact the operation of the Services.

**How to Exercise Your Rights.** To exercise any of the above rights, please follow the instructions below:

- - By phone at 1-866-983-0571
- - Online by using this webform

If you have an online account with UFC FIGHT PASS, you may also exercise your rights through the menu options available to you in the account settings.

If you have any other request you wish to submit to the UFC Privacy Team, you may email us at dataprivacy@ufc.com.

**Verification Process and Required Information.** All requests must be verified.  Some requests, including receiving a copy of your data or requests made by an agent claiming to be acting on your behalf, are subject to heightened requirements.  If we cannot verify your identity based on the information provided, a request for a copy of your data shall be treated as a request for information and if we cannot verify your identity, a request to delete personal information may be treated as a request to opt-out of the sale of personal information.

**MENU**

**SECURITY**

We use a variety of administrative, physical, and technology solutions, including engaging with qualified cybersecurity companies, to protect your information from unauthorized access, loss, or misuse. Because there is always some risk in transmitting information over the internet and otherwise processing information, we cannot and do not guarantee or warrant the security of any information that you transmit on or through the Services or that we otherwise maintain.

**LINKS TO THIRD PARTY WEBSITES**

Our Services, newsletters, email updates and other communications may, from time to time, contain links to and from the websites of others, including our partner networks, retail partners, advertisers and affiliates. If you follow a link to any of these websites, please note that these websites have their own privacy policies and that we do not accept any responsibility or liability for these policies.

**UPDATES**

Any updates we may make to our Privacy Policy will be posted on this page, and we may also provide a website notice of any material changes for a reasonable period of time. Please check back frequently to see any updates or changes to our Privacy Policy. If you do not agree or consent to these updates or changes, do not continue to use the Services.

**CONTACT**

Questions or comments regarding this Privacy Policy should be emailed to dataprivacy@ufc.com

MENU

UFC.COM - UNITED STATES

**UFC**
The Sport
UFC Foundation
Careers
Store

**SOCIAL MEDIA**
IRL
Facebook
Instagram
TikTok
Twitch
Twitter
YouTube

**HELP**
Fight Pass FAQ
Devices
Press Credentials

**LEGAL**
Terms
Privacy Policy
Ad Choices

Do Not Sell My Personal Information
OneTrust

Exhibit 9



MENU 

PAGE

# COOKIE POLICY

Effective Date: May 24, 2018

**COOKIE POLICY**

Zuffa, LLC ("we", "us", "our") are committed to protecting and respecting your privacy as described in our Privacy Notice, of which this Cookie Policy forms a part.

By consenting to this cookie policy ("Cookie Policy"), you acknowledge and consent to our website using cookies and other similar technologies (as described below) to distinguish you from other users of our website and for analytics. This helps us to provide you with a good experience during your visit to our website. This also allows us to improve our website and provide you with tailored content and advertising. For example we can recognise and remember important information that will make it more comfortable browsing our website such as preferred settings.

A cookie is a small file of letters and numbers that we store via your browser on the hard drive of your computer or your mobile device, if you consent.

We may automatically collect and store certain information about your interaction with our website, including IP addresses, browser type, internet service provider (ISP), referring/exit pages, operating system, date/time stamps, and related data. We use this information, which does not identify individual users, solely to improve the quality of our products and services.

7072120.1.85

**MENU**

**First party cookies**

- **- Session Cookies** (Technical Cookies): Their use is strictly limited to sending the session identifiers (random numbers generated by the server) needed for secure and efficient Website browsing. They are not permanently stored on the user's computer and are deleted upon browser closing. In particular, the use of the session cookies aims at ensuring security and improving of the offered service; and
- **- Technical Cookie**: It is required to keep track of the consent given by the user.

The described cookies do not require your consent to be installed and used.

**Third party cookies**

Some third parties can also provide cookies on our website(s). These cookies or similar technologies are managed by the third parties set out in the table below, and are divided into the following categories:

- **- Analytical Cookies**: we use Google Analytics, the web analytics service offered by Google, Inc. ("Google") to analyse how our Website is used. This service uses cookies generating information on your use of our Website (including your IP address), collected from Google in an anonymous form. Disabling these third-party cookies does not affect the Website use;
- **- Marketing/Advertising**: Cookies used to provide advertising services on a given Website fall within this category. Disabling these third-party cookies does not affect the Website use; and
- **- Profiling Cookies**: They are used to trace the user's network browsing and create profiles about his/her tastes, behaviour, choices, etc. These cookies allow the transmission of online advertising messages to the user's device [with the preferences already expressed by that same user when browsing]. In accordance with applicable laws, using these cookies and any processing related thereto require the prior user's consent. Disabling these third-party cookies does not affect the Website use.

7072120.1.86

**MENU**

**Type of Cookie**: Google Analytics

**Purpose of Cookie**: The web analytics service offered by Google, Inc. ("Google"), to analyse how our Website is used. This service uses cookies generating information on your use of our Website (including your IP address), collected from Google in an anonymous form. Disabling these third-party cookies does not affect the Website useThese cookies are used to collect information about how visitors use our website. We use the information to compile reports and to help us improve the website. The cookies collect information in an anonymous form, including the number of visitors to the website, where visitors have come to the website from and the pages they visited.

**Profiling**: yes

**Duration**: Varies

**Link:** https://www.google.com/analytics/terms/us.html

**Type of Cookie**: Doubleclick / AdWords

**Purpose of Cookie**: Ad targeting / relevance.

**Profiling:** yes

**Duration**:  Varies

**Link:** https://policies.google.com/technologies/ads

**Type of Cookie** Facebook

**MENU**

**Duration**:  Varies

**Link:** https://www.facebook.com/policy.php

**Type of Cookie:** Youtube

**Purpose of Cookie**: Ad targeting / relevance.

**Profiling:** yes

**Duration**:  Varies

**Link:** https://support.google.com/youtube/answer/7671399?p=privacy_guidelines&hl=en&visit_id=1-636627269713290487-2925436020&rd=1

**Type of Cookie:** Yahoo

**Purpose of Cookie**: Ad targeting / relevance.

**Profiling:** yes

**Duration**:  Varies

**Link:** https://policies.oath.com/us/en/oath/privacy/

**Type of Cookie:** Snapchat

**MENU**

**Duration**: Varies

**Link:** https://www.snap.com/en-US/privacy/privacy-policy/

**Type of Cookie:** The Trade Desk

**Purpose of Cookie**: Ad targeting / relevance.

**Profiling:** yes

**Duration**: Varies

**Link:** https://www.thetradedesk.com/general/privacy-policy

**Type of Cookie:** Twitter

**Purpose of Cookie**: Ad targeting / relevance.

**Profiling:** yes

**Duration**: Varies

**Link:** https://twitter.com/privacy

You also acknowledge and consent to the use of third party cookies (including, for example, those provided by operators of advertising networks and providers of external services like web traffic analysis services). You acknowledge that where we allow advertising networks,

**MENU**

Most internet browsers are set up by default to accept cookies. However, if you want to refuse or delete any cookies (or similar technologies), please refer to the help and support area on your internet browser for instructions on how to block or delete cookies (for example: Internet Explorer, Google Chrome, Mozilla Firefox and Safari). Please note you may not be able to take advantage of all the features of our Website, including certain personalised features, if you delete or refuse cookies.

To opt out of Google Analytics, visit https://tools.google.com/dlpage/gaoptout.

For more information on managing cookies, please go to www.allaboutcookies.org

**If you are a resident in the EU:**

For more information on managing cookies, please visit www.youronlinechoices.eu which has further information about behavioral advertising and online privacy.

**Changes to our Cookie Policy**

This Cookie Policy may be updated from time to time.

If we change anything important about this Cookie Policy we will notify you through a pop-up on the website for a reasonable length of time prior to and following the change. You may review the Cookie Policy by visiting the website and clicking on the "Cookie Policy" link.

MENU

**UFC.COM - UNITED STATES**

**UFC**
The Sport
UFC Foundation
Careers
Store

**SOCIAL MEDIA**
IRL
Facebook
Instagram
TikTok
Twitch
Twitter
YouTube

**HELP**
Fight Pass FAQ
Devices
Press Credentials

**LEGAL**
Terms
Privacy Policy
Ad Choices

**Do Not Sell My Personal Information**
OneTrust

Exhibit 10

7072120.1.92



Exhibit 11



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY |
| --- | --- |
| | *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**   ZUFFA, LLC, a Nevada limited liability company;
*(AVISO AL DEMANDADO):*  NEULION USA, LLC, a Delaware limited liability
company; and DOES 1 to 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MOISES REZA, FRANK GARZA, TANNER PENDERGRAFT, and
FEDERICO NAVARRETE on behalf of themselves and all others similarly
situated

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
10/11/2022
Chad Finke , Executive Officer / Clerk of the Court
By: _____ A. Linhares ____ Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
| --- | --- |
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Superior Court for the State of California<br><br>for the county of Alameda - Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | CASE NUMBER:<br>*(Número del Caso):*<br><br>**22CV019499** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
CROSNER LEGAL, PC 9440 Santa Monica Blvd., Ste. 301 Beverly Hills, CA 90210 Tel: (310) 496-5818

| DATE: 10/11/2022  Chad Finke, Executive Officer / Clerk of the Court | Clerk, by | A. Linhares | , Deputy |
| --- | --- | --- | --- |
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

**SUMMONS**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael R. Crosner (SBN 41299), Zachary M. Crosner (SBN. 272295),<br>Jamie Serb (SBN 289601)<br>CROSNER LEGAL, PC, 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210 | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>10/13/2022 at 01:22:27 PM<br>By: Cheryl Clark,<br>Deputy Clerk |

TELEPHONE NO.: (310) 496-5818    FAX NO. *(Optional):* (310) 510-6429
E-MAIL ADDRESS: zach@crosnerlegal.com, jamie@crosnerlegal.com
ATTORNEY FOR *(Name):* Moises Reza, Frank Garza, Tanner Pendergraft, Federico Navarrete

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

CASE NAME:
MOISES REZA, et al. v. ZUFFA, LLC, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 22CV019499 |
| | | | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [x] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more issues that will be time-consuming to resolve    courts in other counties, states, or countries, or in a federal court
   c. [x] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 4
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date: October 11, 2022

Zachary Crosner
_____
(TYPE OR PRINT NAME)    ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

7072120.1.96

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**     **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

7072120.1.98

| | |
|---|---|
| # SUPERIOR COURT OF CALIFORNIA<br># COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp<br>**FILED**<br>Superior Court of California<br>County of Alameda<br>10/13/2022<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ A. Linhares _____ Deputy |
| COURTHOUSE ADDRESS:<br><br>Rene C. Davidson Courthouse<br><br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |
| PLAINTIFF(S):<br>MOISES REZA  et al | |
| DEFENDANT(S):<br>ZUFFA, LLC, a Nevada limited liability company et al | |
| **NOTICE OF HEARING** | CASE NUMBER:<br><br>22CV019499 |

TO ALL PARTIES:

Notice is hereby given that the above-entitled action has been set for a/an
Complex Determination Hearing _____ on  12/06/2022 ____ at
 3:00 PM ____ in  Department 23 _____ of the above named court located at
 Administration Building, 1221 Oak Street, Oakland, CA 94612 _____ .


Chad Finke, Executive Officer / Clerk of the Court
*A. Linhares, Deputy Cler.*

Dated:  10/13/2022

By: _____
Deputy Clerk


**NOTICE OF HEARING**

ACSC (Rev. [12/20])

<div style="writing-mode:vertical">7072120.1.99</div>

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ALAMEDA**

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda

10/11/2022

Chad Finke, Executive Officer / Clerk of the Court

By: _____ A. Linhares _____ Deputy

COURTHOUSE ADDRESS:
Rene C. Davidson Courthouse
Administration Building, 1221 Oak Street, Oakland, CA 94612

PLAINTIFF:
MOISES REZA  et al

DEFENDANT:
ZUFFA, LLC, a Nevada limited liability company et al

**NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER:
22CV019499

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

Date: 02/08/2023    Time: 8:30 AM    Dept.: 23
Location: Rene C. Davidson Courthouse
Administration Building, 1221 Oak Street, Oakland, CA 94612

TO DEFENDANT(S)/ATTORNEY(S) OF DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA CIV-100 [Rev. 10/2021]

**NOTICE OF**
**CASE MANAGEMENT CONFERENCE**

7072120.1.100

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Alameda<br>10/11/2022<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____A. Linhares_____ Deputy |
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |
| PLAINTIFF/PETITIONER:<br>MOISES REZA  et al | |
| DEFENDANT/RESPONDENT:<br>ZUFFA, LLC, a Nevada limited liability company et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CV019499 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Michael R Crosner
CROSNER LEGAL, PC
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

Chad Finke, Executive Officer / Clerk of the Court

Dated: 10/13/2022                    By:

A. Linhares, Deputy Clerk

**CERTIFICATE OF MAILING**



Crosner Legal, PC
9440 Santa Monica Blvd., Ste. 301
Beverly Hills CA 90212

7072120-1