Electronically Received 11/07/2022 03:30 PM

**FILED**
Superior Court of California
County of Alameda

**11/07/2022**

Chad Finke, Executive Officer/Clerk of the Court

By: _Cheryl Clark_ Deputy
C. Clark

1  **CROSNER LEGAL, P.C.**
2  Michael R. Crosner (SBN 41299)
Zachary M. Crosner (SBN 272295)
3  Chad A. Saunders (SBN 257810)
Craig W. Straub (SBN 249032)
4  9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
5  Tel: (310) 496-5818
Fax: (310) 510-6429
6  mike@crosnerlegal.com
zach@crosnerlegal.com
7  chad@crosnerlegal.com
craig@crosnerlegal.com
8
Attorneys for Plaintiffs
9
10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11                     **COUNTY OF ALAMEDA**
12
13  MOISES REZA, FRANK GARZA,            Case No.:  22CV019499
TANNER PENDERGRAFT, and
14  FEDERICO NAVARRETE on behalf of      **FIRST AMENDED CLASS ACTION**
themselves and all others similarly situated,  **COMPLAINT**
15
       Plaintiffs,                      1)  VIOLATION OF THE CALIFORNIA
16                                           FALSE ADVERTISING LAW [Bus. &
  v.                                         Prof. Code §§ 17500, *et seq.*]
17
ZUFFA, LLC, a Nevada limited liability   2)  VIOLATION OF THE CALIFORNIA
18  company; NEULION USA, LLC, a              CONSUMERS LEGAL REMEDIES ACT
Delaware limited liability company; and      [Civ. Code §§ 1750, *et seq.*]
19  DOES 1 to 50, inclusive,
                                          3)  VIOLATION OF THE CALIFORNIA
20       Defendants.                          UNFAIR COMPETITION LAW [Bus. &
                                              Prof. Code §§ 17200, *et seq.*]
21
                                          4)  CONVERSION
22
                                          5)  UNJUST ENRICHMENT
23
24                                        **JURY TRIAL DEMANDED**
25
26
27
28

Plaintiffs Moises Reza, Frank Garza, Tanner Pendergraft, and Federico Navarrete (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to themselves and on information and belief as to all other matters, by and through undersigned counsel, hereby bring this class action complaint against Defendants Zuffa, LLC and Neulion USA, LLC (collectively, "Defendants") and allege as follows:

## INTRODUCTION

1.      Defendants offer a digital streaming service called "UFC Fight Pass" which allows their customers to stream live and past Ultimate Fighting Championship ("UFC") combat sporting events. UFC is the most popular international mixed martial arts ("MMA") organization, with combat sporting events running year-round.

2.      UFC fights are one of the most watched sports in the world, averaging at least 1-2.5 million viewers per pay per view event in recent years.[1] Defendants capitalize on the sport's popularity by offering a streaming subscription service which allows customers to watch live fights, new shows, and events across multiple combat sports from around the world and grants exclusive access for all PPV preliminary events, the entire UFC Fight Library, live martial arts events from around the world and original series and shows. It includes over 1,000 hours of live combat sports action from around the globe. Unbeknownst to consumers, this service is automatically renewed, charging their bank accounts and credit/debit cards without their knowledge or consent.

3.      After a customer is convinced to purchase a month of Defendants' UFC Fight Pass streaming service, customers are unwittingly enrolled in Defendants' UFC Fight Pass streaming service that automatically renews either monthly or yearly. Defendants thereafter post charges to the consumer's credit or debit card in the amount of $9.99 per month for "UFC Fight Pass." The annual charge for this service is $95.99. The problem with Defendants' business practices is they fail to provide clear and conspicuous disclosures mandated by California law and fail to provide a clear mechanism by which consumers may cancel their subscriptions.

4.      Defendants have availed themselves of the highly profitable subscription economy. Subscription services were estimated be worth $650 billion in 2020 alone and are anticipated to

[1] *See* https://www.mmahive.com/ufc-viewership-statistics/ (Last visited November 3, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

drastically increase as more companies avail themselves of the marketing strategy. In fact, federal regulators are investigating ways to make it harder for companies like Defendants to trap consumers in auto-renewal subscriptions. However, the subscription business has outpaced the federal regulations that police it.

5.      Plaintiffs allege that Defendants violate California law in connection with an illegal automatically renewing UFC Fight Pass streaming service. Defendants enroll consumers in a subscription service without providing the "clear and conspicuous" disclosures mandated by California law, and post charges to consumers' credit or debit cards for purported subscription charges without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures. Furthermore, Defendants fail to provide an easy and efficient mechanism for customers to cancel the subscription service before its automatic renewal. Defendants make it difficult and confusing to cancel their subscription, often resulting in failed cancellations and repeated subscription charges.

6.      This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code §§ 17600, *et seq*.) ("ARL"), the Consumers Legal Remedies Act (Civ. Code §§ 1750, *et seq*.) ("CLRA"), the Unfair Competition Law (Bus. & Prof. Code §§ 17200, *et seq*.) ("UCL"), False Advertising Law (Bus. & Prof. Code §§ 17500, *et seq*.) ("FAL"), and California common law. As a direct result of this conduct, Plaintiffs and all those similarly situated customers (the "Class Members") suffered economic injury in the loss of money paid for a UFC Fight Pass streaming service subscription. As such, Plaintiffs bring this class action on behalf of themselves and all similarly situated Class Members seeking declaratory relief, injunctive relief, equitable relief (including, but not limited to, restitution), damages, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter under Cal. Code Civ. P. § 410.10 and Article VI, Section 10 of the California Constitution because this case is not given by statute to other trial courts. This action is brought as a class action on behalf of Plaintiffs and all Class Members pursuant to Cal. Code Civ. Proc. § 382.

8.      This This Court has personal jurisdiction over Defendants because during all relevant

FIRST AMENDED CLASS ACTION COMPLAINT

1    times, Defendants conducted sufficient business in, and had sufficient contacts with, and

2    intentionally availed themselves of the laws and markets of California, including Alameda County,

3    as to render exercise of jurisdiction by California courts permissible. Defendants have marketed,

4    promoted, distributed, and sold the UFC Fight Pass streaming subscription at issue in California,

5    including in Alameda County.

6        9.    Venue is proper in Alameda, California, pursuant to Cal Code Civ. P. § 1780(d)

7    because Defendants transact business in this County and Plaintiff Federico Navarrete resides in this

8    County and purchased Defendants' UFC Fight Pass here.

9                                    **THE PARTIES**

10       10.   Plaintiff Moises Reza is a citizen of and resides in the State of California. Plaintiff

11   Reza first purchased Defendants' UFC Fight Pass service in or around January 2020 by logging onto

12   Defendants' web page via his desktop computer. Upon clicking on the "Sign Up Today" button on

13   Defendants' home page, Plaintiff Reza was redirected to a new page where he created a UFC Fight

14   Pass account by providing his email address and creating a password. During the enrollment process,

15   but before he purchased Defendants' streaming service, Plaintiff Reza provided his personal credit

16   card/debit card information directly to Defendants. At the time Plaintiff Reza purchased the UFC

17   Fight Pass streaming service, Defendants did not disclose to Plaintiff Reza the required automatic

18   renewal offer terms associated with the subscription program and obtain Plaintiff Reza's affirmative

19   consent to those terms. After Plaintiff Reza completed his initial order, Plaintiff Reza did not receive

20   any acknowledgment from Defendants that contained the required information. After Plaintiff Reza

21   first signed up for the UFC Fight Pass streaming service, Defendants automatically renewed his

22   subscription and charged Plaintiff Reza's debit/credit card. Approximately two months after his

23   initial purchase, Plaintiff Reza discovered that Defendants enrolled him in an automatically

24   renewing monthly subscription service when he noticed a new monthly charge to his credit

25   card/debit card. Plaintiff Reza was surprised to see the recurring charge. Plaintiff Reza attempted to

26   cancel the monthly subscription by visiting Defendants' streaming service web page via his desktop.

27   Plaintiff Reza attempted to cancel multiple times and was unable to do so. Defendants continued to

28   charge Plaintiff Reza for a monthly subscription he did not consent to until in or around October

2021, when Defendants finally responded to his most recent attempt to cancel Defendants' subscription. Had Defendants complied with the ARL, Plaintiff Reza would not have agreed to sign up for and purchase the UFC Fight Pass streaming service had he known at the time of purchase that it was a subscription that would be automatically renewed each month at a cost of approximately $9.99. Alternatively, he would have cancelled his subscription prior to the expiration of the initial subscription period so as to avoid being charged any renewal fee. Accordingly, Plaintiff Reza has suffered injury in fact and lost money or property as a result of Defendants' misconduct as alleged herein.

11. Plaintiff Frank Garza is a citizen of and resides in the State of California. Plaintiff Garza first purchased Defendants' UFC Fight Pass service on or around July 31, 2020 by logging onto Defendants' web page via his laptop computer. Upon clicking on the "Sign Up Today" button on Defendants' home page, Plaintiff Garza was redirected to a new page where he created a UFC Fight Pass account by providing his email address and creating a password. During the enrollment process, but before he purchased Defendants' streaming service, Plaintiff Garza provided his personal credit card/debit card information directly to Defendants through the PayPal payment option. At the time Plaintiff Garza purchased the UFC Fight Pass streaming service, Defendants did not disclose to Plaintiff Garza the required automatic renewal offer terms associated with the subscription program and obtain Plaintiff Garza's affirmative consent to those terms. After Plaintiff Garza completed his initial order, Plaintiff Garza did not receive any acknowledgment from Defendants that contained the required information. After Plaintiff Garza first signed up for the UFC Fight Pass streaming service, Defendants automatically renewed his subscription and charged Plaintiff Garza's debit/credit card. On or around December 2020, Plaintiff Garza attempted to cancel the monthly subscription by visiting Defendants' streaming service web page via Defendants' website but was unable to do so. Plaintiff Garza attempted to cancel the monthly subscription several more times by phone, but he was unable to do so. Defendants continued to charge Plaintiff Garza for a monthly subscription without his consent until in or around at least February 2021, when Defendants finally cancelled Plaintiff Garza's monthly subscription, following Plaintiff Garza's most recent cancellation attempt. Plaintiff Garza never received any confirmation email and/or other

form of cancellation confirmation from Defendants. Had Defendants complied with the ARL, Plaintiff Garza would not have agreed to sign up for and purchase the UFC Fight Pass streaming service had he known at the time of purchase that it was a subscription that would be automatically renewed each month at a cost of approximately $9.99. Alternatively, he would have cancelled his subscription prior to the expiration of the initial subscription period so as to avoid being charged any renewal fee. Accordingly, Plaintiff Garza has suffered injury in fact and lost money or property as a result of Defendants' misconduct as alleged herein.

12.    Plaintiff Tanner Pendergraft is a citizen of and resides in the State of California. Plaintiff Pendergraft first purchased Defendants' UFC Fight Pass service on or around November 2021 by using his web browser on his mobile phone via which he accessed Defendants' web page. Upon clicking on the "Sign Up Today" button on Defendants' home page, Plaintiff Pendergraft was redirected to a new page where he created a UFC Fight Pass account by providing his email address and creating a password. During the enrollment process, but before he purchased Defendants' streaming service, Plaintiff Pendergraft provided his personal credit card/debit card information directly to Defendants. At the time Plaintiff Pendergraft purchased the UFC Fight Pass streaming service, Defendants did not disclose to Plaintiff Pendergraft the required automatic renewal offer terms associated with the subscription program and obtain Plaintiff Pendergraft's affirmative consent to those terms. After Plaintiff Pendergraft completed his initial order, Plaintiff Pendergraft did not receive any acknowledgment from Defendants that contained the required information. After Plaintiff Pendergraft first signed up for the UFC Fight Pass streaming service, Defendants automatically renewed his subscription and charged Plaintiff Pendergraft's debit/credit card. On or around January 2022, Plaintiff Pendergraft attempted to cancel the monthly subscription by phone but was unable to do so. Over the months that followed, Plaintiff Pendergraft attempted to cancel the monthly subscription again, to no avail. Defendants continued to charge Plaintiff Pendergraft for a monthly subscription without his consent until in or around April 2022, when Defendants finally cancelled Plaintiff Pendergraft's monthly subscription, following his most recent cancellation attempt. Had Defendants complied with the ARL, Plaintiff Pendergraft would not have agreed to sign up for and purchase the UFC Fight Pass streaming service had he known at the time

of purchase that it was a subscription that would be automatically renewed each month at a cost of approximately $9.99. Alternatively, he would have cancelled his subscription prior to the expiration of the initial subscription period so as to avoid being charged any renewal fee. Accordingly, Plaintiff Pendergraft has suffered injury in fact and lost money or property as a result of Defendants' misconduct as alleged herein.

13.     Plaintiff Federico Navarrete is a citizen the State of California and resides in Alameda County. Plaintiff Navarrete first purchased Defendants' UFC Fight Pass service, on or around October 25, 2019, via Defendants' UFC application downloaded on his smart phone. Plaintiff Navarrete created a UFC Fight Pass account by providing his email address and creating a password. During the enrollment process, but before he purchased Defendants' streaming service, Plaintiff Navarrete provided his personal credit card/debit card information directly to Defendants. At the time Plaintiff Navarrete purchased the UFC Fight Pass streaming service, Defendants did not disclose to Plaintiff Navarrete the required automatic renewal offer terms associated with the subscription program and obtain Plaintiff Navarrete's affirmative consent to those terms. After Plaintiff Navarrete completed his initial order, Plaintiff Navarrete did not receive any acknowledgment from Defendants that contained the required information. After Plaintiff Navarrete first signed up for the UFC Fight Pass streaming service, Defendants automatically renewed his subscription and charged Plaintiff Navarrete's debit/credit card. Plaintiff Navarrete attempted to cancel the monthly subscription the same day he downloaded the app and created his account after he was unable to access/view the UFC Fight Pass content for which he had signed up to view. Plaintiff Navarrete initially attempted to cancel the monthly subscription the same day as his initial purchase by deleting the app from his smart phone. Approximately two months after Plaintiff Navarrete's initial attempt to cancel the monthly subscription, Plaintiff Navarrete discovered that Defendants were continuing to post charges to his credit/debit card for the monthly subscription. Plaintiff Navarrete was surprised to see the recurring charges. Plaintiff Navarrete attempted to cancel the monthly subscription again by, including but not limited to, searching Defendants' website and search engines to find a contact number for Defendants so he could cancel, but he was unable to cancel. To this day, Defendants continue to charge Plaintiff Navarrete for a monthly

subscription he did not consent to. Had Defendants complied with the ARL, Plaintiff Navarrete would not have agreed to sign up for and purchase the UFC Fight Pass streaming service had he known at the time of purchase that it was a subscription that would be automatically renewed each month at a cost of approximately $9.99. Alternatively, he would have cancelled his subscription prior to the expiration of the initial subscription period so as to avoid being charged any renewal fee. Accordingly, Plaintiff Navarrete has suffered injury in fact and lost money or property as a result of Defendants' misconduct as alleged herein.

14.     Defendant Zuffa, LLC, is a Nevada limited liability company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California. According to Zuffa, LLC, Zuffa, LLC, owns the exclusive rights to, "Ultimate Fighting Championship," "Ultimate Fighting," "UFC," "The Ultimate Fighter," "Submission," "As Real As It Gets", "The Octagon" and the eight-sided cage design are registered trademarks, trademarks, trade dress or service marks, and Zuffa, LLC, operates all Ultimate Fighting Championship® web sites, including without limitation, those located at www.ufc.com and www.ufcfightpass.com.

15.     Defendant Neulion USA, LLC, ("Neulion") is a Delaware limited liability company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California. Plaintiffs are informed and believe, and based thereon allege, that Defendant Neulion contracts with Zuffa, LLC to provide services that provide the consumer with the ability to access and view Zuffa, LLC's UFC Fight Pass content, and Neulion processes the subscription fees charged by Zuffa, LLC. Based on information and belief, the UFC Fight Pass service and/or access to view UFC fights and/or other UFC content is processed by Neulion so UFC Fight Pass users can view UFC fights and/or other UFC content.

16.     As part of its business activities, Defendants operate an online streaming service called "UFC Fight Pass" to which consumers may subscribe on a monthly or annual basis. After subscribing to UFC Fight Pass, Defendants thereafter post charges to the consumer's credit or debit card in the amount of $9.99 per month for "UFC Fight Pass". The annual charge for this service is $95.99. However, Defendants fail to provide clear and conspicuous disclosures mandated by

California law and fail to provide a clear mechanism by which consumers may cancel their subscriptions.

17.     The true names and capacities of the DOE Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who therefore sue each such Defendant by said fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

18.     Plaintiffs are informed and believe, and based thereon allege, that, at all relevant times, each of the Defendants was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. Plaintiffs are further informed and believes, and based thereon allege, that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, and/or aided and abetted the conduct of all other Defendants.

19.     At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions complained of herein. The conduct of Defendants' managers and supervisors was at all relevant times undertaken as employees of Defendants, acting within the scope of their employment or authority in all of the unlawful activities described herein.

**THE CALIFORNIA AUTOMATIC RENEWAL LAW**

20.     As described below, the California Automatic Renewal Law was enacted to prohibit companies like Defendants from enrolling consumers in automatic renewal programs without first making specific clear and conspicuous disclosures and without obtaining each individual's affirmative consent.

21.     In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010, as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code §§ 17600, *et seq*. (the California Automatic Renewal Law or "ARL"). SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

22.     The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

23.     The ARL seeks to ensure that, before there can be a legally binding automatic renewal or continuous service arrangement, there must first be adequate disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, Bus. & Prof. Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

(1)     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. (Bus. & Prof. Code § 17602(a)(1).) For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (Bus. & Prof. Code § 17601(c).) In the case of an audio disclosure, 'clear and conspicuous' means in a volume and cadence sufficient to be readily audible and understandable." (*Id*.) The statute defines "automatic

renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (a) that the subscription or purchasing agreement will continue until the consumer cancels; (b) the description of the cancellation policy that applies to the offer; (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (e) the minimum purchase obligation, if any. (Bus. & Prof. Code § 17601(b).)

(2)     Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code § 17602(a)(2).)

(3) Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. (Bus. & Prof. Code § 17602(a)(3).) If the offer includes a free trial, the business must also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services. (*Ibid.*) Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation.[2]

---

[2]     According to the Federal Trade Commission, the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405, which contains the federal rules for automatic renewal agreements, "requires negative option sellers to provide a simple, reasonable means for consumers to cancel their contracts. To meet this standard, negative option sellers should provide cancellation mechanisms that are at least as easy to use as the method the consumer used to initiate the negative option feature. For example, to ensure compliance with this simple cancellation mechanism requirement, negative option sellers should not subject consumers to new offers or similar attempts to save the negative option arrangement that impose unreasonable delays on consumers' cancellation efforts. In addition, negative option sellers should provide their cancellation mechanisms at least through the same

24.     Violation of the ARL gives rise to restitution and injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof. Code § 17535. (Bus. & Prof. Code, § 17604, subd. (a).).

25.     Defendants' UFC Fight Pass streaming subscriptions are "automatic renewal" plans under Cal. Bus. & Prof. Code § 17601(a).

26.     As a result of the foregoing, all goods, wares, merchandise, or products sent to Plaintiffs and the Class Members as part of and pursuant to the terms of their UFC Fight Pass subscriptions are deemed to be an "unconditional gift" under Cal. Bus. & Prof. Code § 17603.

27.     As a result of Defendants' violations of the ARL, Plaintiffs and the Class Members suffered economic injury and are entitled to reimbursement of their UFC Fight Pass streaming subscription payments.

## FACTS GIVING RISE TO THIS ACTION

28.     Defendants automatically subscribed Plaintiffs and members of the Class to a UFC Fight Pass streaming service without first providing the clear and conspicuous disclosures required by the ARL and without first obtaining their affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. To make matters worse, Defendants do not provide an effective and easy-to-use mechanism for consumers to cancel their UFC Fight Pass streaming service.

29.      Upon accessing Defendants' UFC Fight Pass home page, potential customers are first greeted with several graphics and images of UFC combat sports The home page prompts consumers to "Sign Up Today" by clicking on a red box with the word "Sign Up Today" preceded by a seven-line blurb describing the service subscription to UFC Fight Pass as "a never-ending

---

medium (such as website or mobile application) the consumer used to consent to the negative option feature. The negative option seller should provide, at a minimum, the simple mechanism over the same website or web-based application the consumer used to purchase the negative option feature. If the seller also provides for telephone cancellation, it should provide, at a minimum, a telephone number, and answer all calls to this number during normal business hours, within a short time frame, and ensure the calls are not lengthier or otherwise more burdensome than the telephone call the consumer used to consent to the negative option feature. *See* https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 14.

supply of fighting…the Ultimate 24/7 platform for MORE combat sports, UFC Fight Pass!" Upon clicking on any of the three buttons on the home page (the "SIGN UP TODAY" or either of the two 'SELECT" buttons under the plan choices) the consumer is directed to a page with two large boxes with the choices to purchase a month or year of UFC Fight pass. The consumer is then given the option to click a button under either plan that reads "SELECT." Notably, this page fails to comply with the ARL including because it does not describe the cancellation policy, does not inform the consumer that their payment method will be charged until the consumer cancels, and fails to present the automatic renewal offer terms in a clear and conspicuous manner.

30.     Upon selecting either of the options to buy a month or year of UFC Fight Pass, the consumer is taken to a new page where he or she is prompted to "Create a New Account" by providing an email address and creating a password as well as providing a billing address. Notably, Defendants fail to provide any form of disclosures regarding the automatically renewing nature of its subscription services and/or that the plan will automatically renew on a monthly or yearly basis unless canceled. Once the consumer clicks "Continue" to create a new account, a box pops up containing the following language: "UFC (Zuffa, LLC) is collecting your information as part of its signup process, and while you use the services, for the purpose of providing the service to you, as well as other purposes set out in the Privacy Policy." Beneath this language, there are three checkboxes. The first checkbox has following language: "By checking this box, you confirm that you have read and agree to the Terms of Use, Privacy Policy and Cookie Policy."  If a user hovers over and clicks on the Terms of Use, Privacy Policy or Cookie Policy, he or she is taken to a page littered with boilerplate language which a user can then scroll through the incomprehensible and numerous sections and subsections. Together, the pages contain over 10,000 words. For example, the Terms of Use contains nearly 6,000 words, has 25 sections, and does not clearly describe how to deactivate/terminate a user's registration (i.e., "You may deactivate your registration on the website" but does not describe where on the website to deactivate the registration). A user must scroll down over 10 times to reach section twelve called "Special Terms and Conditions Applicable to Subscription Products, online Pay Per View, and Other Services/Products Offered for Purchase Through the Billing."  There are several paragraphs the user must scroll through, none of which

relate to any automatic renewal terms, before the user encounters a paragraph, not bolded, nor in a distinctive font nor emphasized in any way, containing the following language: "Billing and Automatic Renewal Policies for Certain Subscription Services or Monthly Subscriptions" Under this section, Defendants state that a monthly or annual subscription will begin "when you purchase and ends at the product's pre-determined cycle."  Notably, there is no disclosure informing the user the first date he/she will be charged for the service and/or that the service or purchasing agreement will continue until the consumer cancels. The section merely informs the user that he/she *may* cancel, not that he/she *must* cancel to avoid the continuation of charges.  Additionally, a user can check out and purchase the service without ever opening the Terms of Use. Other than these terms, which fail to be clear and conspicuous, there are no other clear and conspicuous disclosures provided to the consumer prior to purchasing a service. The Privacy Policy contains over 3,100 words and takes nearly 10 scrolls for a user to reach the end of the policy. [3]  The Cookie Policy contains  over 1,035 words and takes nearly 5 scrolls for a user to reach the end of the policy. The consumer is required to check this box to proceed/activate the "Submit" button at the bottom of the box. There are also optional boxes that can be checked to receive offers and opt out of certain data sharing.

31.     Moreover, Defendants fail to explain the cancellation policy in a way that can be retained by the user. For example, the paragraph "Billing and Automatic Renewal Policies for Certain Subscription Services or Monthly Subscriptions" purports to articulate a cancellation policy with the language "To cancel your monthly subscription or the annual automatic renewal feature, send an e-mail to UFCTVSupport@UFC.com cancellation will become effective as of the next monthly billing cycle following receipt."  However, it is unclear as to exactly what is required to effectively cancel the service in a timely manner. The purported cancellation policy does not articulate any sort of intelligible policy, simply stating "send an email to UFCTVSupport@UFC.com."  For example, there is no indication to the user that he/she will receive a confirmation email upon receipt and/or other indication the user's email was correctly received,

---

[3] Upon clicking on the phrase "Privacy Policy", the consumer is taken to a new page that includes several terms, none of which explain the automatic renewal terms. Neither of the policies presented to the consumer—"Privacy Policy" and/or the "Cookie Policy"—contains any automatic renewal terms.

noted, and the user's account updated; no instructions are provided to the user as to what to include in the email e.g., label the subject line of the email or the required contents of the email for effective cancellation in a timely manner. In short, the cursory nature of the purported cancellation policy that is couched among numerous irrelevant terms and devoid of any real instruction to the user as to how to effectuate cancellation in a timely manner renders it confusing and/or unintelligible and not capable of being retained by the consumer. Moreover, as noted, a user can check out and purchase the service without ever opening the Terms of Use. Other than these terms, which fail to be clear and conspicuous, there are no other clear and conspicuous disclosures provided to the consumer prior to purchasing a service.

32.     After the user checks the box that he/she has read and agrees to the terms of use, privacy and cookies policies in order to activate the "Submit" button to advance, the user is taken directly to a "Checkout" page that directs the consumer to choose a method of payment (PayPal, Google Pay or Debit/Credit Card).  On the right side of this screen is an "Order Summary" with the following description of the streaming service "Access to exclusive prelims for all PPV events, the entire UFC Fight Library, live martial arts events from around the world and exclusive original series and shows." Beneath this description are two line items "Over 1,0000 hours of live combat sports action from around the globe" and a second line with the following language "Monthly subscription, cancel anytime." The Order Summary provides displays the total price for a single purchase in larger font than anything else on the page. There is no indication that the subscription will automatically renew, that the subscription will continue until it is cancelled, when such renewal will occur, the amount of each recurring charge and/or whether the recurring charge is subject to change. There is no indication of the process by which to cancel. As such, the Checkout page fails to provide the clear and conspicuous automatic renewal disclosures as required by California law.

///

///

///

///

///

33.     Upon selecting the option for Debit/Credit Card, the user is taken to a second "Checkout" page that requests the consumer's credit card information. Below is a screenshot of the Selected Payment page (as of September 11, 2022) that requests the consumer's credit card information with an "Order Summary" on the right-hand side of the screen that is identical to the "Order Summary" provided on the first checkout page that directs the user to choose a payment method:



34.     As shown above, the checkout page fails to provide the clear and conspicuous automatic renewal disclosures as required by California law. Additionally, once the user has entered his/her payment information, he/she can select the "Secure Checkout" without ever being provided with any of the clear and conspicuous disclosures as required by California law.

35.     As a result of Defendants' failure to provide clear and conspicuous automatic renewal terms under California law, consumers do not affirmatively consent to the hidden renewal terms of the UFC Fight Pass service.

36.     Additionally, consumers are never provided with an acknowledgement that includes the automatic renewal or continuous offer terms, cancellation policy, or information regarding how

to cancel in a manner that is capable of being retained by the consumer.

37.     Individuals that purchase Defendants' UFC Fight Pass service via an application on their smart phone or smart TV undergo a process that is substantially similar if not identical to the process described above, including but not limited to the lack of disclosures required under California law.

38.     When Plaintiffs and members of the Class purchased a UFC Fight Pass service following a very similar process as that described above. Defendants automatically subscribed Plaintiffs and the members of the Class to the UFC Fight Pass service without first providing the clear and conspicuous disclosures required by the ARL and posted charges to Plaintiffs' debit/credit cards without first obtaining his affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Moreover, Defendants did not provide an adequate mechanism for cancelling the service before the renewal date.  Defendants unlawful acts are ongoing.

39.     Plaintiffs are not the only consumers deceived by Defendants' auto-renewal practices. Consumers have publicly complained about the unwanted and unexpected renewal charges and difficulties with canceling Defendants' unlawful practices, including on blog posts titled "Rant- the horrors of cancelling UFC Fight Pass," "Fight Pass cancellation problems," and "anyone know how to unsubscribe from UFC Fight pass?":

> They sign you up to a monthly subscription after you pay the fight pass. Please beware they make it virtually impossible to cancel. I am still trying since months ago.[4]

> If I could give a zero I would, so I canceled my subscription and they hacked my card and auto renewed my subscription. And to top it off they blocked me from canceling my subscription on their site. Total scam. If I could send the photo of the site blocking me I'd show everyone.[5]

> Cant get hold of anyone, no one replies, take money and can view nothing. Its a scam , rip off and total waste of time. No idea how to cancel the subscription as there is no facility to do so and no person to talk to.[6]

---

[4] https://ca.trustpilot.com/review/www.ufc.tv?page=3 (last visited Nov. 2, 2022)
[5] *Id.*
[6] *Id.*

Rant- the horrors of cancelling UFC Fight Pass - This November I decided to cancel my UFC Fight Pass subscription….So, I go to their website and follow the instructions to cancel my subscription. However, come December I see that I have been charged again for the past month. I got a hold of customer service and cancel my subscription for a second time. …  After again using the chat function on the website to talk to a customer service representative I explained my situation and ask them to refund me for the past month, and cancel my subscription for a THIRD month in a row…. I'm not sure if anyone else has tried to cancel their UFC Fight Pass and had this experience, but I have to say I have never had a harder time ending a subscription payments to a company before.[7]

anyone know how to unsubscribe from UFC Fight pass? I googled it but none of those options in the instructions are actually on the main page…[8]

Damn thing has been charging me for months without me using it...[9]

When I log into my account to cancel my subscription there are no subscriptions to cancel. I hope someone answers my email. Next step reporting them to BBB!!![10]

Charged twice for one fight pass. Queried the charge. Was asked for proof of transactions - which was provided via return email. It has now been weeks... Have heard nothing back! May Khabib pound you for your unconscionable conduct! Nothing but a bunch of thieves!!![11]

This. Call your credit card company, not UFC.[12]

Can't cancel UFCfightpass.com subscription. Can't Email them, the email is rejected to go through. They don't provide a contact number. Can't retrieve email address or password we misplaced. Worst site I have ever had such issues with. I did finally contact Zuffa LLC in Las Vegas, Nevada @ (***) ******** and spoke to "Ryan" @ Zuffa and he told me today 01/26/2022 the main guy that handles "Fight Pass" wil call me back in approximately 2 hrs. Definitely always read complaints about companies before signing up for them. ufcfightpass.com has MANY complaints about canceling subscriptions. I hope I receive a call back like I was told, to finally be able to cancel this horrible mess of a subscription. I guess that's why they have a D- rating with BBB and are not accredited with BBB. I hope this helps others who have experienced. Thank you To the BBB customer service representative that

---

[7] https://www.reddit.com/r/ufc/comments/l7cinj/rant_the_horrors_of_cancelling_ufc_fight_pass/ (last visited Nov. 2, 2022).

[8] https://www.reddit.com/r/ufc/comments/bc5wu3/anyone_know_how_to_unsubscribe_from_ufc_fight_pass/ (last visited November 2, 2022).

[9] *Id.*

[10] https://www.trustpilot.com/review/www.ufc.tv (last visited Nov. 11, 2022)

[11] https://www.trustpilot.com/review/www.ufc.tv?page=4 (last visited Nov. 4, 2022)

[12] https://forums.sherdog.com/threads/fight-pass-cancellation-problems.3262953/ (last visited Nov. 4, 2022)

FIRST AMENDED CLASS ACTION COMPLAINT

assisted me with getting in touch with a real person concerning this matter.[13]

I have been trying to solve this problem for over 1 year. I have been charged $10.44 every month for services I did not sign up for. *** charges to my account $10.44 for unknown services. I did enroll in *** fight pass but I have canceled my subscription a few years ago. I kept calling *** ********* but keeps getting the run around. I finally got this number ************** associated with my charges. I have no other information. First, I am asking these charges to stop. Secondly, I am asking for reimbursement.

I have tried to cancel UFC Fight Pass through the website, by phone, and by email. However, I continue to be charged by UFC. I have tried to cancel UFC Fight Pass to no avail. My username is my email, **********************. I've called, emailed, and tried to cancel over the website, UFC Fight Pass. UFC has fraudulently charged my credit card company for past 3 months while I have never used the product.

UFC seems to be suggesting I leave well enough alone regarding Fight Pass subscription. UFC has given me an erroneous Internet address to cancel from. Problem Date: 4/11/20 Sales Rep: Shakiera Amount: $9.99 Payment Method: ********** Purchase Date: 3/1/20 I was given an email address that doesn't exist to cancel Fight Pass before 5/1/20 of **********************************. I emailed support@ufctv.com to inform them of my desire, & it doesn't matter about unwilling to continue it or unable. Leave well enough alone seems to be the message Iam hearing. I tried the address given me today & the compose space in the email box wouldn't, couldn't, & shouldn't even take it.

They have been charging me a monthly subscription without my knowledge. Their UI is misleading and it's not clear how to even stop the subscription. I stumbled across a monthly charge from them since July 2019 that I was unaware of. They said I had signed up to a monthly subscription but I did not do that and I've never used their service. It's possible I did this unwittingly due to their confusing UI for a one-time event purchase (or so I thought). They refused to refund me and their UI is nearly impossible to figure out how to cancel the subscription. This is bad to make the UI such that you don't know you're getting a subscription and their response was "you had to accept the terms and conditions" which is thousands of words of legalese. I've never watched any of their stuff and I want my $70 back.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this lawsuit as a class action under Code of Civil Procedure section 382 on behalf of the following Class:

All persons in California who, within the applicable statute of limitations period, purchased Defendants' UFC Fight Pass and were charged a fee to renew their subscription.

---

[13] This and the following complaints were posted on the Better Business Bureau's public webpage at https://www.bbb.org/us/nv/las-vegas/profile/sports-and-recreation/zuffa-llc-1086-67430/complaints (last visited Nov. 4, 2022)

FIRST AMENDED CLASS ACTION COMPLAINT

41.     Excluded from the Class are: (1) Defendants and their officers, directors, employees, principals, affiliated entities, controlling entities, agents, and other affiliates; (2) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (3) the Judge(s) assigned to this case and any members of their immediate families

42.     <u>Ascertainability</u>. The members of the Class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' marketing and promotion records, customer records, and billing records.

43.     <u>Common Questions of Fact or Law</u>. There are questions of fact and law that are common to the members of the Class, which predominate over individual issues. Common questions regarding the Class include, without limitation: (1) whether Defendants present all statutorily-mandated automatic renewal offer terms, within the meaning of Business and Professions Code § 17601(b); (2) whether Defendants present automatic renewal offer terms in a manner that is "clear and conspicuous," within the meaning of § 17601(c), and in "visual proximity" to a request for consent to the offer, or in the case of an offer conveyed by voice, in temporal proximity to a request for consent to the offer, as required by § 17602; (3) whether Defendants obtain consumers' affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms before charging a credit card, debit card, or third-party payment account; (4) whether Defendants provide consumers with an acknowledgment that includes clear and conspicuous disclosure of all statutorily-mandated automatic renewal or continuous service offer terms, the cancellation policy, and information regarding how to cancel; (5) Defendants' record-keeping practices; (6) the appropriate remedies for Defendants' conduct; and (7) the appropriate terms of an injunction.

44.     <u>Numerosity</u>. The Class is so numerous that joinder of all class members would be impracticable. Plaintiffs are informed and believe and allege that the Class consists of at least 100 members.

45.     <u>Typicality and Adequacy</u>. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members they seek to represent, and

they are similarly situated with members of the Class. Plaintiffs allege that Defendants enrolled Class Members in automatic renewal subscriptions without disclosing all terms required by law, and without presenting such terms in the requisite "clear and conspicuous" manner; charged Class Members' credit cards, debit cards, or third-party accounts without first obtaining the Class members' affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms; and failed to provide the requisite acknowledgment. Plaintiffs have no interests that are adverse to those of the other Class Members. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel who are competent and experienced in the prosecution of class action litigation.

46.     <u>Superiority</u>. A class action is superior to other methods for resolving this controversy. Because the amount of restitution or damages to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for class members to redress the wrongs done to them without a class action forum. Plaintiffs and the members of the Class have suffered and will continue to suffer harm as a result of Defendants' conduct. Defendants continue to deny wrongdoing or remedy the conduct that is the subject of this complaint. Class members do not know that their legal rights have been violated. Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

47.     <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>. Defendants have acted on grounds that are generally applicable to the members of the Class, thereby making appropriate final injunctive relief and/or declaratory relief with respect to the Class as a whole.

## **FIRST CAUSE OF ACTION**

### **Violation of California's False Advertising Law**

### **(Bus. & Prof. Code §§ 17500, *et seq*.)**

48.     Plaintiffs incorporate the previous allegations as though set forth herein.

49.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

50.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the

1  public in this state, … in any advertising device … or in any other manner or means whatever,

2  including over the Internet, any statement, concerning … personal property or services, professional

3  or otherwise, or performance or disposition thereof, which is untrue or misleading and which is

4  known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

5      51.    Defendants committed acts of false advertising, as defined by § 17500, by

6  intentionally making and disseminating statements to consumers in California and the general public

7  concerning Defendants' products and services, as well as circumstances and facts connected to such

8  products and services, which are untrue and misleading on their face and by omission, and which

9  are known or which by the exercise of reasonable care should be known by Defendants to be untrue

10  or misleading. Defendants have intentionally made or disseminated untrue or misleading statements

11  and material omissions to consumers in California and to the public as part of a plan or scheme with

12  intent not to sell those services as advertised.

13      52.    Defendants' statements include but are not limited to representations and omissions

14  made to consumers before and after enrollment in Defendants' UFC Fight Pass streaming

15  subscriptions concerning the terms of payment for and cancellation of a consumer's automatic

16  payments. Such representations and omissions on the checkout page constitute false and deceptive

17  advertisements.

18      53.    Defendants' actions in violation of § 17500, as described herein, were false and

19  misleading such that the general public is and was likely to be deceived. Plaintiffs and members of

20  the Class were deceived by Defendants' statements and omissions made online (or via a phone

21  application or otherwise) when they signed up and started paying for their UFC Fight Pass

22  subscriptions, and there is a strong probability that other California consumers and members of the

23  public were also or are likely to be deceived as well. A reasonable consumer would be misled and

24  were in fact mislead by Defendants' false and misleading statements and material omissions.

25  Plaintiffs and other members of the Class did not learn of Defendants' cancellation and automatic

26  payment policies until after they had already signed up and started paying for Defendants' UFC

27  Fight Pass streaming services. They relied on Defendants' statements and omissions to their

28  detriment.

54.     Plaintiffs and the Class lost money or property as a result of Defendants' FAL violations because they would not have purchased the UFC Fight Pass streaming services on the same terms if the true facts were known about the product and the subscriptions do not have the characteristics as promised by Defendants.

55.     Pursuant to Bus. & Prof. Code § 17535, Plaintiffs seek an order of this Court ordering Defendants' to fully disclose the true nature of its misrepresentations. Plaintiffs further seek individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendants from continuing with its false and deceptive advertisements and omissions including restitution that will restore the full amount of their money or property, disgorgement of Defendants' applicable profits and proceeds, and an award of costs and reasonable attorneys' fees. Such conduct is ongoing and continues to this date.

## SECOND CAUSE OF ACTION

### Violations of the California Consumers Legal Remedies Act

### (Civ. Code, §§ 1750 *et seq.*)

56.     Plaintiffs incorporate the previous allegations as though set forth herein.

57.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

58.     Plaintiffs and the members of the Class are "consumers" within the meaning of Civil Code § 1761(d) in that Plaintiffsand the Class sought or acquired Defendants' goods and/or services for personal, family, or household purposes. The purchases and payments by Plaintiffsand Class members are "transactions" within the meaning of Civil Code § 1761(e).

59.     Defendants are "persons" under Cal. Civ. Code § 1761(c). Defendants' subscription service offers pertain to "goods" and/or "services" within the meaning of Civil Code § 1761(a) and (b).

60.     Defendants conduct, as described herein, which includes its failure to timely and adequately disclose the terms of its automatic renewal and/or continuous service associated with its UFC Fight Pass streaming subscription service pursuant to Cal. Bus. & Prof. Code §§ 17600, *et seq.* violates California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

Defendants violated the CLRA by misrepresenting and omitting material facts regarding the automatic renewal and/or continuous service terms of its subscription services, and by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions that were intended to result in, and did result in, the sale of its UFC Fight Pass streaming subscription service:

a. Representing that goods or services have characteristics, uses, and/or benefits which they do not have (Civil Code § 1770(a)(5));

b. Advertising goods or services with intent not to sell them as advertised (Civil Code § 1770(a)(9));

c. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Civil Code § 1770(a)(16)); and

d. Representing that consumers will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction (Civil Code § 1770(a)(17)).

61. Defendants violated the CLRA by failing to clearly and conspicuously disclose the terms of their automatic renewal and/or continuous service associated with its UFC streaming subscription service, automatically charging Plaintiffs and members of the Class a fee to renew their subscription and failing to cancel the subscription service when requested.

62. Plaintiffs, on behalf of themselves and all other Class members, seeks an order enjoining the above-described unlawful acts and practices of Defendants and for restitution and disgorgement.

63. Pursuant to § 1782 of the CLRA, on September 28, 2022, Plaintiffs notified Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that Defendants rectify the problems associated with the acts and practices described above. A copy of the letter is attached as **Exhibit 1**. Defendants have failed to rectify the problems associated with the actions detailed above. Accordingly, Plaintiffs seek actual, punitive, and statutory damages (*see* Civil Code § 1782.).

64. Pursuant to § 1780(d) of the Act, attached as **Exhibit 2** is the affidavit showing that this action was commenced in the proper forum.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**

**Violations of Unfair Competition Law**

**(Bus. & Prof. Code, §§ 17200 *et seq*.)**

65.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

66.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

67.     Defendants are "person[s]" as that term is defined under Cal. Bus. & Prof. Code § 17201.

68.     The Unfair Competition Law defines unfair competition as including any unlawful, unfair or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act of false advertising under section 17500. (Bus. & Prof. Code § 17200.) In the course of business, Defendants committed "unlawful" business practices by, among other things, making the representations and omissions of material facts, as set forth more fully herein, and violating Cal. Bus. & Prof. Code §§ 17600, *et seq*., and the common law. Plaintiffs, individually and on behalf of the other Class Members, reserve the right to allege other violations of the law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

69.     During the class period, Defendants committed and continue to commit unlawful, unfair, and/or fraudulent business practices, and engaged in unfair, deceptive, untrue, and/or misleading advertising, by, inter alia and without limitation: (a) failing to present the automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation of § 17602(a)(l); (b) charging the consumer in connection with an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of automatic renewal offer terms or continuous service offer terms, in violation of § 17602(a)(2); (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding how to cancel, in violation of § 17602(a)(3); (d) representing that goods or services have characteristics,

25

uses, and/or benefits which they do not have, in violation of Civil Code § 1770(a)(5); advertising goods and services with the intent not to sell them as advertised, in violation of Civil Code § 1770(a)(9); (e) representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, in violation of Civil Code § 1770(a)(16); and (f) representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of Civil Code § 1770(a)(17). Plaintiffs reserve the right to identify other acts or omissions that constitute unlawful, unfair or fraudulent business acts or practices, unfair, deceptive, untrue or misleading advertising, and/or other prohibited acts.

70.     Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Defendants' acts and omissions also violate and offend the California Legislature's intent, codified by the Automatic Renewal Law, "to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent." Cal. Bus. & Prof. Code § 17602. This conduct constitutes violations of the unfair prong of the UCL. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

71.     The UCL also prohibits any "fraudulent business act or practice." In the course of business, Defendants committed "fraudulent business act[s] or practices" by, among other things, failing to make the required disclosures under Cal. Bus. & Prof. Code §§ 17600, *et seq*.

72.     Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were also false or misleading and likely to deceive the consuming public within the meaning of the UCL.

73.     Plaintiffs, in fact, have been deceived as a result of their reliance on Defendants' material representations and omissions. Plaintiffs have suffered injury in fact and lost money as a result of Defendants' acts and omissions. Such injury includes being charged a renewal membership fee for a Defendants' UFC Fight Pass streaming subscription service, and other damages

1    proximately caused by Defendants' misconduct as alleged.

2    74.    Unless restrained and enjoined, Defendants will continue to engage in the above-

3    described conduct. Accordingly, injunctive relief is appropriate. Pursuant to Bus. & Prof. Code §

4    17203, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public are

5    entitled to (1) restitution from Defendants of all money obtained from Plaintiffs and the other Class

6    Members as a result of unfair competition; (2) an injunction prohibiting Defendants from continuing

7    such practices in the State of California that do not comply with California law; and (3) all other

8    relief this Court deems appropriate, consistent with Cal. Bus. & Prof. Code § 17203.

9    **FOURTH CAUSE OF ACTION**

10    **Conversion**

11    75.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

12    76.    Plaintiffs bring this claim individually and on behalf of the members of the Class

13    against Defendants.

14    77.    As a result of charges made by Defendants to Plaintiffs' and Class Members' credit

15    and/or debit cards without authorization and in violation of California law, Defendants have taken

16    money that belongs to Plaintiffs and the Class. Defendants have wrongfully interfered with

17    Plaintiffs' and Class Members' possession of money. The amount of money wrongfully taken by

18    Defendants is capable of identification from records in the possession of Defendants and/or third

19    parties, including Defendants' customer and billing records.

20    78.    Defendants engaged in this misconduct knowingly, willfully, and with oppression,

21    fraud, and/or malice.

22    79.    As a result of Defendants' actions, Plaintiffs and the Class have suffered damages.

23    **FIFTH CAUSE OF ACTION**

24    **Unjust Enrichment**

25    80.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

26    81.    Plaintiffs bring this claim individually and on behalf of the members of the Class

27    against Defendants.

28

82.     As a direct and proximate result of misrepresentations concerning the UFC Fight Pass streaming subscription service and failure to sufficiently disclose that UFC Fight Pass streaming subscription service will be automatically renewed, Defendants have profited through the sale of their services and/or products to Plaintiffs and Class members.

83.     Defendants' unlawful and wrongful acts, as alleged above, enabled Defendants to unlawfully receive money from Plaintiffs and the Class it would not have otherwise obtained.

84.     Plaintiffs and the Class members have conferred benefits on Defendants, which Defendants have knowingly accepted and retained.

85.     Defendants' retention of the benefits conferred by Plaintiffs and the Class members would be against fundamental principles of justice, equity, and good conscience.

86.     Plaintiffs and Class members seek to disgorge Defendants' unlawfully retained money resulting from the unlawful conduct and seek restitution and rescission for the benefit of Plaintiffs and Class members.

87.     Plaintiffs and the Class members are entitled to the imposition of a constructive trust upon Defendants, such that the unjustly retained money is distributed equitably by the Court to and for the benefit of Plaintiffs and the Class members.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the proposed Class, respectfully request the Court enter judgment in Plaintiffs' favor and against Defendants as follows:

a.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

b.     Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of Defendants' unlawful, unfair and fraudulent business practices;

///

///

1    c.    Ordering injunctive relief as permitted by law or equity, including enjoining

2 Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to

3 engage in a corrective advertising campaign;

4    d.    Ordering actual, treble, statutory and punitive damages;

5    e.    Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiffs and the

6 other members of the Class;

7    f.    Ordering Defendants to pay both pre- and post-judgment interest on any amounts

8 awarded; and

9    g.    Ordering such other and further relief as may be just and proper.

10                              **<u>DEMAND FOR JURY TRIAL</u>**

11    Plaintiffs demand a trial by jury on all claims so triable.

12

13  Dated: November 7, 2022                    **CROSNER LEGAL, P.C**.

14                                   By:    *s/  Zachary M. Crosner*
                                          ZACHARY M. CROSNER

15                                   Michael R. Crosner
16                                   Zachary M. Crosner
                                     Chad A. Saunders
17                                   Craig W. Straub
                                     9440 Santa Monica Blvd. Suite 301
18                                   Beverly Hills, CA 90210
                                     Tel: (310) 496-5818
19                                   Fax: (310) 510-6429
                                     mike@crosnerlegal.com
20                                   zach@crosnerlegal.com
                                     chad@crosnerlegal.com
21                                   craig@crosnerlegal.com

22                                   *Attorneys for Plaintiffs*

23

24

25

26

27

28

# Exhibit 1



Chad Saunders, Esq.
9440 Santa Monica Blvd.,
Ste. 301
Beverly Hills, CA 90210

chad@crosnerlegal.com
direct: (510) 439-9470
fax: (310) 510-6429

_____

September 28, 2022

**SENT VIA U.S. CERTIFIED MAIL RETURN RECEIPT REQUESTED**

CSC Lawyers Incorporating Service
Agent for Service of Process for:
**Zuffa, LLC**
2710 Gateway Oaks Dr Ste 150N
Sacramento, CA 95833

**NeuLion USA, LLC**
Attn: Legal Department
1600 Old Country Rd
Plainview, NY 11803

CSC Lawyers Incorporating Service
Agent for Service of Process for:
**NeuLion USA, LLC**
2710 Gateway Oaks Dr Ste 150N
Sacramento, CA 95833

**Zuffa, LLC**
Attn: Legal Department
6650 S. Torrey Pines
Las Vegas, NV 89118

*Re: Reza, Garza, Pendergraft, and Navarrete, et. al. v. Zuffa, LLC, et. al.*

| | | |
|---|---|---|
| Our Client(s) | : | Moises Reza, Frank Garza, Tanner Pendergraft, and Federico Navarrete |
| Products | : | UFC Fight Pass |
| Matter | : | CLRA Demand Letter |

To Whom It May Concern:

Please be advised that our office represents Moises Reza, Frank Garza, Tanner Pendergraft, and Federico Navarrete ("Plaintiffs"), and other similarly situated individuals, in pursuing class action wide legal claims against Zuffa, LLC and NeuLion USA, LLC ("Defendants")

September 28, 2022, CLRA Demand Letter
Zuffa, LLC, et. al.
Page 2 of 6

for violations of the Consumer Legal Remedies Act ("CLRA"), and California Business and Professions Code §17200 ("UCL").

Having been formally notified of our representation, we respectfully demand you not contact our clients for any reason. Instead, please direct all future contact and correspondence to this office. We reserve the right to seek injunctive relief against you should you fail to honor these directives.

The purpose of this letter is to advise Defendants of their violations and to quickly resolve the matter of my client's right to compensation for the same, without resorting to expensive and unnecessary litigation. Before additional damages accrue, including needless attorney fees, we should work together expeditiously to correct the inequity that occurred in connection with Defendants' handling of the matters detailed below. Thus, please accept this correspondence as notice pursuant to the CLRA, of violations thereof. Be advised, you have thirty (30) calendar days from the date of receipt of this notice, to correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of § 1770 of the CLRA, as further outlined below.

Please review the violations set forth below and contact our offices immediately, to discuss settlement.

**Facts**

Defendants own, operate, and/or manage the website found at https://welcome.ufcfightpass.com/region/united-states.[1] As described below, this is the website on which consumers subscribe to the UFC Fight Pass streaming service complained of herein.

As part of its business activities, Defendants operate an online streaming service called UFC Fight Pass to which consumers may subscribe on a monthly or annual basis. After subscribing to UFC Fight Pass, Defendants thereafter post charges to the consumer's credit or debit card in the amount of $9.99 per month for UFC Fight Pass. The annual charge for this service is $95.99. Defendants automatically renew these charges on a monthly or annual basis. However, Defendants fail to provide "clear and conspicuous" disclosures mandated by California law, and posts charges to consumers' credit or debit cards for purported subscriptions charges without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures.[2] As such, Defendants failed to properly inform consumers of its autorenewal terms, thereby violating Cal. Bus. & Prof. Code § 17600 *et. seq.*  More specific examples illustrating how Defendants violate California's Automatic Renewal Laws and the CLRA can be found in Plaintiffs' Complaint, which is affixed hereto for ease of reference.

---

[1] See https://www.ufc.com/terms (last visited September 11, 2022).
[2] Based on information and belief, Defendants fail to provide the required disclosures on all platforms that provide access to Defendants' UFC Fight Pass service including but not limited via desktop, smart phone application, and/or smart TV application.

September 28, 2022, CLRA Demand Letter
Zuffa, LLC, et. al.
Page 3 of 6

Plaintiff Reza first purchased Defendants' UFC Fight Pass service in or around January 2020 by logging onto Defendants' web page https://welcome.ufcfightpass.com/region/united-states via his desktop computer. Upon clicking on the "Sign Up Today" button on Defendants' home page, Plaintiff Reza was redirected to a new page that advertised the features of Defendants' streaming service. Plaintiff Reza then created a UFC Fight Pass account by providing his email address and creating a password. After creating the account, Plaintiff Reza paid for one month of Defendants' UFC Fight Pass service using a personal credit card and/or debit card. To Plaintiff Reza's surprise, Defendants automatically enrolled him in a monthly subscription plan that was scheduled to renew each month. On or around March 2020, Plaintiff Reza attempted to cancel the monthly subscription by visiting Defendants' streaming service web page via his desktop. Plaintiff Reza attempted to cancel multiple times and was unable to do so. Defendants continued to charge Plaintiff Reza for a monthly subscription he did not consent to until in or around October 2021, when Defendants finally responded to his most recent attempt to cancel Defendants' subscription.

If Plaintiff Reza had known that Defendants were going to automatically renew his subscription with charges of up to $9.99 per month, Plaintiff Reza would not have purchased Defendants' UFC Fight Pass service in the first place.

Plaintiff Garza first purchased Defendants' UFC Fight Pass Service on or around July 31, 2020. Plaintiff Garza logged onto Defendants' UFC Fight Pass streaming service home page at https://welcome.ufcfightpass.com/region/united-states via his laptop computer. Upon clicking on the "Sign Up Today" button on Defendants' home page, Plaintiff Garza was redirected to a new page that advertised the features of Defendants' streaming service. Plaintiff Garza then created a UFC account by providing his email address and creating a password. After creating the account, Plaintiff Garza paid for one month of Defendants' UFC Fight Pass using the PayPal payment option and was automatically enrolled in Defendants' monthly subscription plan that was scheduled to renew each month. On or around December 2020, Plaintiff Garza attempted to cancel the monthly subscription by visiting Defendants' streaming service web page via Defendants' website but was unable to do so. Plaintiff Garza attempted to cancel the monthly subscription several more times by phone, but he was unable to do so. Defendants continued to charge Plaintiff Garza for a monthly subscription without his consent until in or around at least February 2021, when Defendants finally cancelled Plaintiff Garza's monthly subscription, following Plaintiff Garza's most recent cancellation attempt. Plaintiff Garza never received any confirmation email and/or other form of cancellation confirmation from Defendants.

Plaintiff Pendergraft first purchased Defendants' UFC Fight Pass Service in or around November 2021. In or around November 2021, Plaintiff Pendergraft opened his web browser on his mobile phone and went to Defendants' UFC Fight Pass streaming service home page at https://welcome.ufcfightpass.com/region/united-states via his web browser on his mobile phone. Upon clicking on the "Sign Up Today" button on Defendants' home

September 28, 2022, CLRA Demand Letter
Zuffa, LLC, et. al.
Page 4 of 6

page, Plaintiff Pendergraft was redirected to a new page that advertised the features of Defendants' streaming service. Plaintiff Pendergraft then created a UFC account by providing his email address and creating a password. After creating the account, Plaintiff Pendergraft paid for one month of Defendants' UFC Fight Pass using the credit card payment option and was automatically enrolled in Defendants' monthly subscription plan that was scheduled to renew each month. On or around January 2022, Plaintiff Pendergraft attempted to cancel the monthly subscription by phone but was unable to do so.  Over the months that followed, Plaintiff Pendergraft attempted to cancel the monthly subscription again, to no avail. Defendants continued to charge Plaintiff Pendergraft for a monthly subscription without his consent until in or around at least April 2022, when Defendants finally cancelled Plaintiff Pendergraft's monthly subscription, following his most recent cancellation attempt.

Based on information and belief, the purchase process via a smart phone application is substantially similar if not identical to the process described above. On or about October 25, 2019, Plaintiff Navarrete downloaded Defendants' UFC application via his smart phone. He then created an account. After creating an account, Plaintiff Navarrete purchased one month of UFC Fight Pass without ever being provided with the required disclosures under California law. As such, Plaintiff Navarrete did not realize that Defendants would enroll him in an automatically renewing monthly subscription that he would be charged for immediately after creating his account.  Plaintiff Navarrete attempted to cancel the monthly subscription the same day he downloaded the app and created his account after he was unable to access/view the UFC Fight Pass content for which he had signed up to view. Plaintiff Navarrete initially attempted to cancel the monthly subscription the same day as his initial purchase by deleting the app from his smart phone.  Approximately two months after Plaintiff Navarrete's initial attempt to cancel the monthly subscription, Plaintiff Navarrete discovered that Defendants were continuing to post charges to his credit/debit card for the monthly subscription.  Plaintiff Navarrete was surprised to see the recurring charges. Plaintiff Navarrete attempted to cancel the monthly subscription again by, including but not limited to, searching Defendants' website and search engines to find a contact number for Defendants so he could cancel, but he was unable to cancel.  To this day, Defendants continue to charge Plaintiff Navarrete for a monthly subscription he did not consent to.

Defendants automatically subscribed Plaintiffs to their UFC Fight Pass service without first providing the clear and conspicuous disclosures required by the ARL and posted charges to Plaintiffs' debit card/credit card without first obtaining their affirmative consent to an agreement containing the required clear and conspicuous disclosures as required under California law. Moreover, Defendants did not provide an adequate mechanism for cancelling the service before the renewal date.

September 28, 2022, CLRA Demand Letter
Zuffa, LLC, et. al.
Page 5 of 6

**CLRA (*Cal. Civ. Code §1750 et seq.*) Violations**
Among other things, the CLRA prohibits the following "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction to result or which results in the sale or lease of goods or services" to a consumer:

1.      Passing off goods or services as those of another *Cal. Civ. Code* §1770(1);

2.      Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. *Cal. Civ. Code* §1770(7);

3.      Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; - *Cal. Civ. Code* §1770(14); and

4.      Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. *Cal. Civ. Code* §1770(16).

Further, under the CLRA, a consumer may recover actual damages, an order enjoining any such practices that are prohibited by the CLRA, restitution of property, punitive damages, civil penalties, and reasonably attorney's fees and costs. *Cal. Civ. Code* §§1780, *et seq.*.

By engaging in the conduct detailed above, Defendants violated Sections §1770(1), (7), (14), and (16) of the CLRA, thereby entitling Plaintiff to attorney's fees and costs, and actual and punitive damages.

The enclosed draft complaint provides further detail regarding the factual and legal basis of the foregoing claims asserted against Defendants.

**Unfair Competition Law (*Cal. Bus. Prof. Code §17200*)**
The Unfair Competition Law, Cal. Bus. Prof. C. §17200 prohibits unlawful, unfair or fraudulent business acts or practices. Further, any person who has suffered injury in fact and has lost money or property as a result thereof may bring an action to enjoin or restrain any violation of this act and recover restitution resulting from such violations. *Cal. Bus. Prof. Code* §4381(b)-(c).

Defendants engaged in fraudulent, unfair and unlawful business practices through their conduct and violated the UCL. Defendants made representations, and omitted material facts, to Plaintiffs and this amounts to fraudulent and unfair business practices. Further, as noted above, Defendants violated the CLRA, thus engaging in unlawful business practices. Defendants' conduct, as detailed above, violates numerous provisions of the CLRA; consequently, said conduct constitutes unlawful business practices. Defendants' conduct entitles Plaintiffs to restitution and injunctive relief.

September 28, 2022, CLRA Demand Letter
Zuffa, LLC, et. al.
Page 6 of 6

The enclosed draft complaint provides further detail regarding the factual and legal basis of the foregoing claims asserted against Defendants.

## Class Potential

At this stage, Defendants' fraudulent and deceptive business practices, and violations of both California and federal law, have impacted potentially thousands of consumers throughout the state of California and/or the nation. Thus, we anticipate either a state and/or nation-wide class of thousands of consumers whom Plaintiffs will adequately represent. The conduct detailed above is systematic in nature. Thus, certifying a class will be very straightforward. Upon certifying a class, we will seek not only actual damages, but punitive damages and statutory damages, in addition to attorney's fees and costs.

If we do not hear from Defendants within thirty (30) days, we will proceed to amend the enclosed draft complaint to include a claim for monetary damages under the CLRA, pursuant to California Civil Code section 1782(d), and to file this action against Defendants.

We are available if you want to discuss the issues raised in this letter. Thank you for your attention to this matter.

Kindest regards,

Chad Saunders, Esq.

Encl:
Class Action Complaint

# Exhibit 2

1

**CROSNER LEGAL, P.C.**
Michael R. Crosner (SBN 41299)

2
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)

3
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301

4
Beverly Hills, CA 90210
Tel: (310) 496-5818

5
Fax: (310) 510-6429
mike@crosnerlegal.com

6
zach@crosnerlegal.com

7
chad@crosnerlegal.com
craig@crosnerlegal.com

8

9
Attorneys for Plaintiffs

10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                    **COUNTY OF ALAMEDA**

12

13
MOISES REZA, FRANK GARZA,
TANNER PENDERGRAFT, and

14
FEDERICO NAVARRETE on behalf of
themselves and all others similarly situated,

15
          Plaintiffs,

16
     v.

17
ZUFFA, LLC, a Nevada limited liability
company; NEULION USA, LLC, a

18
Delaware limited liability company; and
DOES 1 to 50, inclusive,

19
          Defendants.

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| Case No.:  22CV019499 | |
| **CLASS ACTION** | |
| **AFFIDAVIT OF ZACHARY M. CROSNER PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)** | |

1    I, ZACHARY M. CROSNER, declare as follows:

2    1.    I am an attorney duly licensed to practice before all of the courts of the State of

3    California. I am the managing partner of the law firm of Crosner Legal, P.C., one of the counsel of

4    record for plaintiffs in the above-entitled action.

5    2.    Defendants Zuffa, LLC and Neulion USA, LLC have done, and are doing, business

6    in California, including Alameda County. Such business includes the marketing, promotion,

7    distribution, and sale of their UFC Fight Pass streaming subscription services.  Moreover, Plaintiff

8    Federico Navarrete resides in this County and purchased Defendants' UFC Fight Pass here.

9    I declare under penalty of perjury under the laws of the State of California that the foregoing

10   is true and correct. Executed this 7th day of November, 2022, at Beverley Hills, California.

11                                          *s/  Zachary M. Crosner*
                                          ZACHARY M. CROSNER
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2
AFFIDAVIT OF ZACHARY M. CROSNER PURSUANT TO CCP § 1780(d)