CROSNER LEGAL, P.C.
Chad A. Saunders (*Pro Hac Vice*)
Craig W. Straub (*Pro Hac Vice*)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
chad@crosnerlegal.com
craig@crosnerlegal.com

*Attorneys for Plaintiffs Moises Reza,
Frank Garza, and Tanner Pendergraft*

BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

GUCOVSCHI ROZENSHTEYN, PLLC
Adrian Gucovschi (*Pro Hac Vice*)
140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
Email: adrian@gr-firm.com

*Attorneys for Plaintiff Isaiah Sanchez*

ZIMMERMAN REED LLP
Hart L. Robinovitch (*Pro Hac Vice*)
14648 N. Scottsdale Rd. Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400
Email: hart.robinovitch@zimmreed.com

ZIMMERMAN REED LLP
Zachary J. Freese (*Pro Hac Vice*)
80 South 8th St., 1100 IDS Center
Minneapolis, MN 55402
Tel: (612) 341-0400
Email: zachary.freese@zimmreed.com

*Attorneys for Plaintiff Saul Garcia*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: Fight Pass Auto-Renewal Litigation | CASE NO.:   2:23-cv-00802-CDS-EJY |
| | Member Case Nos.:  2:23-cv-01211-CDS-EJY, 2:23-cv-01259-CDS-EJY |
| This Document Relates To: All Actions | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiffs Moises Reza, Frank Garza, Tanner Pendergraft, Isaiah Sanchez, and Saul Garcia ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Defendants Zuffa, LLC d/b/a Ultimate Fighting Championship ("UFC") and Neulion USA, LLC ("Defendants").  Plaintiffs make the following allegations pursuant to their attorneys' reasonable investigations, and on information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## I.   **INTRODUCTION**

1.     This complaint challenges Defendants' unlawful "automatic renewal" scheme for Fight Pass automatic renewal agreements sold to California consumers in violation of the California Automatic Renewal Law ("ARL"). Defendant Zuffa, LLC is a privately owned company involved in the production of mixed martial arts ("MMA") competitions, primarily under the banner of the Ultimate Fighting Championship (or "UFC"). Defendant, through its website www.ufcfightpass.com (the "Fight Pass Platform"), offers a streaming platform for exclusive MMA and UFC content including, but not limited to, live UFC fighting events, original programming, and recordings of past MMA fights (the "Fight Pass Products"). When consumers purchase Fight Pass Products via the Fight Pass Platform, Defendant enrolls them into an automatically renewing monthly or yearly autorenewal (the "Fight Pass Autorenewal(s)") that results in ongoing charges on consumer credit card, debit card, or third-party payment account ("Billing Information") unless and until the consumer cancels their Fight Pass Autorenewal.

2.     Defendant Neulion contracts with Zuffa, LLC to provide services that provide the consumer with the ability to access and view UFC Fight Pass content, and Neulion processes the subscription fees charged by Zuffa, LLC. Based on information and belief, the UFC Fight Pass service and/or access to view UFC fights and/or other UFC content is processed by Neulion so UFC Fight Pass users can view UFC fights and/or other UFC content.

3.     Pursuant to the ARL, businesses that offer automatic renewal agreements California consumers must, *inter alia*: (a) provide all material automatic renewal terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase, Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain affirmative consent to the automatic renewal

before charging consumers, *id.* § 17602(a)(2); and (c) provide consumers with an acknowledgement that includes the automatic renewal agreement's offer terms that also describes the cancellation policy and explains how to cancel, *id.* § 17602(a)(3). Defendants' Fight Pass Autorenewals fail to comply with these legal requirements and Defendants unlawfully charged Plaintiffs' and the Class's, and continues to unlawfully charge California consumers', Billing Information in violation of the ARL's core requirements.

4.     Specifically, Defendants do not provide all material Fight Pass Autorenewal offer terms, as defined under the ARL, "clearly and conspicuously" and in "visual proximity" to its request for consent to the Fight Pass Autorenewal before the purchase is fulfilled, in violation of ARL section 17602(a)(1). Defendants do not obtain the affirmative consent of its consumers before charging their Billing Information, in violation of ARL section 17602(a)(2).  And Defendants do not provide a post-purchase acknowledgement containing all material Fight Pass Autorenewal offer terms, a description of Defendants' cancellation policy, and an explanation of how to cancel a Fight Pass Autorenewal, in violation of ARL section 17602(a)(3). California consumers who have not yet transacted with Defendants, but are likely to in the future, remain at risk of future harm because of Defendants' ongoing unlawful conduct unless and until its illegal Fight Pass Autorenewal enrollment processes is enjoined and corrected.

5.     Plaintiffs would not have made their initial purchases of the Fight Pass Products associated with their Fight Pass Autorenewal had Defendants complied with the ARL by notifying Plaintiffs that they were being enrolled into the Fight Pass Autorenewal with automatic recurring charges. As such, and resulting from Defendants' violations of the ARL, Defendants never had Plaintiffs', nor the Class's, affirmative consent to the automatic renewing charges. Plaintiffs have thus suffered economic loss and have otherwise been financially injured because of Defendants' violations of the ARL. The Fight Pass Products associated with the Fight Pass Autorenewal including images, videos, audio, and text were sent to Plaintiffs and the class by Defendants and can be downloaded, printed out, retained, and/or used in physical form. Accordingly, because of Defendants' violations of the ARL, the Fight Pass Products associated with the Fight Pass

Autorenewal were unconditional gifts for which Defendants could not lawfully charge Plaintiffs and the Class, *see id* § 17603, and restitution is warranted. *See id.* § 17203.

6.      For the foregoing reasons, Plaintiffs bring this action individually and on behalf of all similarly situated California residents who, within the applicable statute of limitation period up to and including the date of judgment in this action, incurred fees for Defendants' unlawful Fight Pass Autorenewals. Based on Defendants' unlawful conduct, Plaintiffs seek monetary relief, declaratory relief, private injunctive relief, public injunctive relief on behalf of the general public in California to prevent Defendants from continuing to engage in its unlawful practices (*see McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017)), reasonable attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws, and all other relief deemed just and equitable in the circumstances for Defendants' violation of the ARL, UCL, CLRA, and other applicable law.

7.      Plaintiffs' separate request for public injunctive relief is not sought for the Class but rather on behalf of the general public of California, *i.e.*, consumers in California who have yet to transact with Defendant but are at risk of doing so in the future. *See McGill*, *supra*. The Fight Pass Platform continues to generate new customers on an ongoing and continuing basis and therefore, as time passes, new members of the general public are at risk of new harms and injuries from the legal violations complained of herein, unless those practices are enjoined and corrected so that they fully comply with the ARL, UCL, CLRA, and other applicable law. Plaintiffs bring this action on behalf of such persons in their individual capacity and class certification is not necessary for this type of public injunctive relief. This action and the relief sought for the general public will provide a public benefit.

## II.      THE PARTIES

7.      Plaintiff Moises Reza is a citizen of California, residing in California. Plaintiff Reza was enrolled into a monthly Fight Pass Autorenewal through the Fight Pass Platform in or around January 2020. Plaintiff Reza paid an initial fee of $9.99 for his Fight Pass Autorenewal after which Defendant enrolled Plaintiff Reza in a monthly autorenewal without providing the clear and conspicuous and visually proximate disclosures required by the ARL. Plaintiff Reza first attempted

to cancel the Fight Pass Autorenewal in or around March 2020 but was unable to do so. Defendant continued to automatically renew Plaintiff Reza's Fight Pass Autorenewal on a monthly basis, charging his Billing Information until in or around October 2021 for a total of out-of-pocket loss of at least $219.78. Plaintiff Reza did not know and did not expect that his initial Fight Pass transaction would automatically convert into an automatic renewal wherein he would continue to be charged on a recurring monthly basis unless and until he cancelled. Had Plaintiff Reza received clear and conspicuous disclosures in visual proximity to Defendant's request for purchase, as required under the ARL, at the time he made his initial purchase of Fight Pass Products, Plaintiff Reza would not have consented to his initial purchase. As a direct result of Defendant's violations of the ARL, Plaintiff Reza suffered an economic injury. Plaintiff Reza has standing to assert the claims set forth herein.

8.      Plaintiff Frank Garza is a citizen of California, residing in California. Plaintiff Garza was enrolled into a monthly Fight Pass Autorenewal through the Fight Pass Platform in or around July 2020. Plaintiff Garza paid the initial fee for his Fight Pass Autorenewal after which Defendant enrolled Plaintiff Garza in a monthly autorenewal without providing the clear and conspicuous and visually proximate disclosures required by the ARL. Plaintiff Garza first attempted to cancel the Fight Pass Autorenewal in or around December 2020 but was unable to do so. Defendant continued to automatically renew Plaintiff Garza Fight Pass Autorenewal on a monthly basis, charging his Billing Information until in or around February 2021. Plaintiff Garza did not know and did not expect that his initial Fight Pass transaction would automatically convert into an automatic renewal wherein he would continue to be charged on a recurring monthly basis unless and until he cancelled. Had Plaintiff Garza received clear and conspicuous disclosures in visual proximity to Defendant's request for purchase, as required under the ARL, at the time he made his initial purchase of Fight Pass Products, Plaintiff Garza would not have consented to his initial purchase. As a direct result of Defendant's violations of the ARL, Plaintiff Garza suffered an economic injury. Plaintiff Garza has standing to assert the claims set forth herein.

9.      Plaintiff Tanner Pendergraft is a citizen of California, residing in California. Plaintiff Pendergraft was enrolled into a monthly Fight Pass Autorenewal through the Fight Pass

Platform in or around November 2021. Plaintiff Pendergraft paid the initial fee for his Fight Pass Autorenewal after which Defendant enrolled Plaintiff Pendergraft in a monthly autorenewal without providing the clear and conspicuous and visually proximate disclosures required by the ARL. Plaintiff Pendergraft first attempted to cancel the Fight Pass Autorenewal in or around January 2022 but was unable to do so. Defendant continued to automatically renew Plaintiff Pendergraft Fight Pass Autorenewal on a monthly basis, charging his Billing Information until in or around April 2022. Plaintiff Pendergraft did not know and did not expect that his initial Fight Pass transaction would automatically convert into an automatic renewal wherein he would continue to be charged on a recurring monthly basis unless and until he cancelled. Had Plaintiff Pendergraft received clear and conspicuous disclosures in visual proximity to Defendant's request for purchase, as required under the ARL, at the time he made his initial purchase of Fight Pass Products, Plaintiff Pendergraft would not have consented to his initial purchase. As a direct result of Defendant's violations of the ARL, Plaintiff Pendergraft suffered an economic injury. Plaintiff Pendergraft has standing to assert the claims set forth herein.

10.     Plaintiff Isaiah Sanchez is a citizen of California, residing in Los Angeles, California. Plaintiff Sanchez was enrolled into a monthly Fight Pass Autorenewal through the Fight Pass Platform in or around July 2020. Plaintiff Sanchez paid an initial fee of $9.99 for his Fight Pass Autorenewal after which Defendant enrolled Plaintiff Sanchez in a monthly automatic renewal without providing the clear and conspicuous and visually proximate disclosures required by the ARL. Defendant continued to automatically renew Plaintiff Sanchez's Fight Pass Autorenewal on a monthly basis, charging his Billing Information an additional fourteen times for a total out-of-pocket loss of at least $136.86. Plaintiff Sanchez did not know and did not expect that his initial Fight Pass transaction would automatically convert into an automatic renewal in which he would continue to be charged on a recurring monthly basis unless and until he cancelled. Had Plaintiff Sanchez received clear and conspicuous disclosures in visual proximity to Defendant's request for purchase, as required under the ARL, at the time he made his initial purchase of Fight Pass Products, Plaintiff Sanchez would not have consented to his initial

purchase. As a direct result of Defendant's violations of the ARL, Plaintiff Sanchez suffered an economic injury. Plaintiff Sanchez has standing to assert the claims set forth herein.

12.     Plaintiff Saul Garcia is a citizen of California, residing in Los Angeles, California. Plaintiff Garcia was enrolled into a monthly Fight Pass Autorenewal through the Fight Pass Platform in or around October of 2022. Plaintiff Garcia paid an initial fee of $9.99 for his Fight Pass Autorenewal after which Defendant enrolled Plaintiff Garcia in a monthly autorenewal without providing the clear and conspicuous and visually proximate disclosures required by the ARL. Defendant continued to automatically renew Plaintiff Garcia's Fight Pass Autorenewal on a monthly basis, charging his Billing Information an additional eight times for a total out-of-pocket loss of at least $89.91. Plaintiff Garcia did not know and did not expect that his initial Fight Pass transaction would automatically convert into an automatic renewal in which he would continue to be charged on a recurring monthly basis unless and until he cancelled. Had Plaintiff Garcia received clear and conspicuous disclosures in visual proximity to Defendant's request for purchase, as required under the ARL, at the time he made his initial purchase of Fight Pass Products, Plaintiff Garcia would not have consented to his initial purchase. As a direct result of Defendant's violations of the ARL, Plaintiff Garcia suffered an economic injury. Plaintiff Garcia has standing to assert the claims set forth herein.

13.     Defendant Zuffa, LLC is a Nevada limited liability company having its principal place of business located at 6650 S. Torrey Pines Dr., Las Vegas, Nevada. Defendant owns, controls, and operates the Fight Pass Platform and charges consumer Billing Information for the Fight Pass Products associated with the Fight Pass Autorenewals. Defendant is also responsible for the promotion, advertising, and marketing of the automatically renewing Fight Pass Autorenewals. Defendant offers the Fight Pass Autorenewals to California consumers. Defendant's online Fight Pass Autorenewal enrollment process imbedded in the Fight Pass Platform is the same in all material respects for California consumers as it is for consumers in other states.

14.     Defendant Neulion USA, LLC, ("Neulion") is a Delaware limited liability company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California.

15.     As set forth in Defendant Zuffa's Terms of Use, it may nominate or otherwise contract with an agent(s) (NeuLion, Inc. and/or NeuLion, Limited (collectively "NeuLion")) for the collection and/or processing of Fight Pass Autorenewal fees for certain consumers, depending on type of payment method and/or the consumer's location.

16.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendant, including without limitation any officer, director, employee, supplier, distributor, agents, affiliates, subsidiaries, or parent of Defendant.

## III.     JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from defendant, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendants, a substantial portion of the alleged wrongdoing occurred in this District, and Defendants have sufficient contacts with this District.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue arose in this District.

## IV.     CALIFORNIA LAW APPLIES TO PLAINTIFFS' CLAIMS

20.     Zuffa's Terms of Use incorporate a choice of law provision designating the application of Nevada Law and a one-year limitation on claims provision. Both terms are unenforceable as applied to Plaintiffs' individual and class claims.

21.     Frist, the ARL and, in turn, the UCL are fundamental public policies of the State of California having the purpose of protecting California consumers from ongoing charges by businesses for automatic renewal agreements without the consumer's explicit consent. The California Legislature enacted the ARL with the express intent to "end the practice of ongoing

charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600. The legislative history of the ARL notes that "[c]urrent consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements" and that the ARL "is intended to close this gap in the law."[1] Accordingly, the ARL is a fundamental California policy that is not subject to waiver by choice of law. *See Kissel v. Code 42 Software, Inc.*, No. 15-cv-01936, 2016 WL 7647691, at *5 (C.D. Cal. Apr. 14, 2016) (holding that the ARL reflects a fundamental policy of California); *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 868 (N.D. Cal. 2019) ("the Renewal Law nonetheless represents a fundamental public policy"). And, because Plaintiffs' UCL claim is predicated on a violation of fundamental California policy, Plaintiffs' UCL claim is also not subject to waiver by choice of law. *King*, 393 F. Supp. 3d at 867 (explaining "[w]hether a UCL claim implicates fundamental California policy depends on the predicate violation.") (quoting *Cardonet, Inc. v. IBM Corp.*, No. 06-cv-06337, 2007 WL 518909, at *5 (N.D. Cal. Feb. 14, 2007)).

22.    Likewise, Plaintiffs' CLRA claim represents a fundamental California policy that cannot be waived by choice of law. *See* Cal. Civ. Code § 1751 ("Any waiver by a consumer of [the CLRA] is contrary to public policy and shall be unenforceable and void."); *id.* § 3513 (". . . a law established for a public reason cannot be contravened by a private agreement."). As is Plaintiffs' individual claim for public injunctive relief. *See McGill, supra.*

23.    Additionally, although Plaintiff Garcia was enrolled into the Fight Pass Autorenewal within one year of this class action lawsuit, the one-year limitation period contained in Defendant's Terms of Use is substantively unconscionable because it reduces the UCL's four year statute of limitations and the CLRA's three year statute of limitations, s*ee Gostev v. Skillz Platform, Inc.*, 88 Cal.App.5th 1035, 1060 (2023) (the shortened limitations period of one-year for CLRA and UCL claims, in part, rendered the arbitration agreement substantively unconscionable);

---

[1] Senate Judiciary Committee Analysis of Senate Bill 340, at p. 1 (Apr. 14, 2009), available at: https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=200920100SB340.

*see also Fisher v. MoneyGram International, Inc.*, 66 Cal.App.5th 1084, 1105 (2021) (same), and is tantamount to an impermissible waiver of policies fundamental to California. *See* Cal. Civ. Code § 1751 ("Any waiver by a consumer of [the CLRA] is contrary to public policy and shall be unenforceable and void."); *see id.* § 3513 (". . . a law established for a public reason cannot be contravened by a private agreement.").

## V.   FACTUAL ALLEGATIONS

**A.    Background on the Automatic Renewal e-Commerce Industry**

24.    The e-commerce autorenewal business model centers on retailers providing goods or services in exchange for regular and automatic payment from the customer.[2] The e-commerce autorenewal market is enormous. Globally, in 2022, the autorenewal marketplace reached around $120 billion, or an approximate $50 billion increase from 2021.[3] By 2026, it is expected that this e-commerce market will reach $900 billion.[4] In turn, consumers are spending more on automatic renewals. In 2021, for example, consumers spent $273 per month on automatic renewals, up from $237 in 2018.[5] Automatic renewals have become so prevalent, in no small measure, because they provide companies with stable and enormous profits. Companies with automatic renewals have seen their financial positions dramatically improve because of the stability and strong cash flow generated by their purchasers. Simply put, autorenewals make money. According to Intuit, autorenewal are "217% more profitable for businesses than a one-time payment model."[6]

---

[2] Sam Saltis, *How to Run an eCommerce Subscription Service: The Ultimate Guide*, CORE DNA (May 19, 2020), https://www.coredna.com/blogs/ecommerce-subscription-services.
[3] Jia Wertz, *The Growth of Subscription Commerce*, FORBES (Jul. 15, 2022, 2:04AM EDT), https://www.forbes.com/sites/jiawertz/2022/07/15/the-growth-of-subscription-commerce/?sh=64ddfdbeb572.
[4] *Id.*
[5] WEST MONROE, *The State of Subscription Services Spending* (Aug. 2021), https://www.westmonroe.com/perspectives/report/the-state-of-subscription-services-spending.
[6] Intuit QuickBooks Blog, *Subscription Model or One-Time Sale: Which Should you Choose?* (Jan. 31, 2017), https://quickbooks.intuit.com/in/resources/running-a-business/subscription-model-one-time-sale/.

25.     Fight Pass Autorenewals have generated incredible revenue for Defendant. In 2018, Defendant had approximately 400,000 subscribers.[7] As with other e-commerce subscription businesses, the COVID-19 pandemic only accelerated the growth of Defendants' Fight Pass Autorenewals. Since 2019, according to Fight Pass Platform and Autorenewal vice president and general manager, Crowley Sullivan, UFC has seen a 23 percent year-over-year increase in its Fight Pass members.[8] UFC's year-over-year Fight Pass Autorenewal growth reportedly generated $59 million in revenue in 2021 alone.[9] Accordingly, out of the estimated $1.14 billion Defendant's UFC MMA league and other products generated in 2022,[10] the vast majority originating from the United States,[11] Defendants' Fight Pass Autorenewal represent a small but significant portion of its annual revenue stream.

26.     Although the autorenewal model is easy to enter, and can produce high profits, businesses struggle with high churn rates and consumer cancellation. Consumers, however, when confronted with the recurring nature of the service, billing practices, or unclear or complicated cancellation policies, "lose interest" but "may be too harried to take the extra step of cancelling

---

[7] Dade Hayes, *Can UFC Still Land a Knockout TV Deal Despite Ratings Slide and Talent Drain?*, DEADLINE (Feb. 20, 2018, 8:00AM), https://deadline.com/2018/02/can-ufc-still-land-a-knockout-tv-deal-despite-ratings-slide-and-talent-drain-1202289928/.
[8] Pat Evans, *UFC Fight Pass Overhaul Hits at Prime Time, Revenue Streams Growing*, FRONT OFFICE SPORTS (Sept. 4, 2020, 2:17PM), https://frontofficesports.com/ufc-fight-pass-overhaul/.
[9] *How the UFC is Becoming the Ultimate Fighting Championship*, TIFOSY CAPITAL & ADVISORY (Feb. 11, 2022), https://www.tifosy.com/en/insights/how-the-ufc-is-becoming-the-ultimate-fighting-championship-3558.
[10] Endeavor Group Holdings, Inc. Form 8-K, at F-20, https://otp.tools.investis.com/clients/us/wwe/SEC/sec-show.aspx?FilingId=16649900&Cik=0001091907&Type=PDF&hasPdf=1; *see also* John S. Nash, *UFC Admits to 'Lower Athlete Costs,' as they Boast 'Best Financial Year' in 2022*, BLOODY ELBOW (Feb. 2023), https://bloodyelbow.com/2023/03/07/ufc-admits-to-lower-athlete-costs-as-they-boast-best-financial-year-in-2022/; *see also* Jacob Debets, *UFC Doesn't Have an Integrity Problem—It Has a Capitalism Problem*, JACOBIN (May 25, 2023), https://jacobin.com/2023/05/ufc-james-krause-betting-scandal-fighters-wages-exploitation.
[11] *Supra* note 10, at F-35 (noting that $1.11 billion of Defendant's $1.14 billion in revenue in 2022 was generated from the United States).

their membership[s]."[12] In other words, businesses realized that the "real money is in the inertia."[13] To facilitate consumer inertia, subscription-based e-commerce companies implement manipulative designs to trick users into signing up for an automatic renewal. That is, companies engaging in autorenewal-based e-commerce "are now taking advantage of subscriptions to trick users into signing up for expensive or recurring plans. They do this by [among other things] intentionally confusing users with their [website or] app's design and flow, by making promises of 'free trials' that convert after only a matter of days, and other misleading tactics," such as failure to fully disclose the terms of the automatic renewal or continuous service programs.[14]

27.     E-commerce businesses also deliberately design the process to make consumer cancellation confusing and onerous. Once enrolled, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[15] As such, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly[.]"[16] Thus, although federal regulators have sought to make it harder for companies to trap consumers in subscriptions, draining their bank accounts, and have attempted to respond to the proliferation of abuses,[17] widespread utilization of "dark patterns" and deliberate attempts to obfuscate cancellation persist. Dark patterns are tricks and deceptive design elements that manipulate consumers into making, or not making, choices they otherwise would

---

[12] Amrita Jayakumar, *Little-Box Retailing: Subscription Services Offer New Possibilities to Consumers, Major Outlets*, WASHINGTON POST (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[13] *Id.*

[14] Sarah Perez, *Sneaky Subscriptions Are Plaguing the App Store*, TECHCRUNCH (Oct. 15, 2018, 3:21 PM), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[15] Rich Meyer, *The Problem with Subscription Marketing*, NEW MEDIA AND MARKETING (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/; *supra* note 12 ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'").

[16] *Supra* note 12.

[17] *Id.*

not have made.[18] Although dark patterns can take many, often evolving forms,[19] their core purpose is to manipulate consumers.

28.     Indeed, as the Consumer Financial Protection Bureau recently reported, consumers across the country have submitted complaints "about being repeatedly charged for services they did not intend to buy or no longer want[ed] to continue purchasing" and "about the difficulty of cancelling subscription-based services and about charges made to their credit card or bank account after they requested cancellation."[20]  More recently, the FTC has made clear that vendors that make subscriptions that auto-renew difficult or burdensome to cancel is an unfair business practice.[21]

**B.     Online Consumer Complaints About the Fight Pass Autorenewal**

28.     UFC's recent growth in subscriber count and revenues with respect to its Fight Pass Autorenewal coincides with a sharp decline in member satisfaction. Consumers have complained on social media outlets about Defendants' unclear cancellation process. As one subscriber shared on X, "For those that cancelled UFC 9.99 Fight Pass, and decided to do annual sub instead, check credit card statements. UFC. Tv billed me twice."[22] In fact, Defendant's conduct has drawn the attention and ire of customers across the country. By way of example, TrustPilot – which hosts online reviews of businesses worldwide – is riddled with one-star reviews (one star being the minimum rating) for Defendant's Fight Pass Autorenewal offering as shown below:[23]

/

/

//

---

[18] *Bringing Dark Patterns to Light*, FEDERAL TRADE COMMISSION, 2, 21 (Sept. 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf.
[19] *Id.* at 21–26.
[20] Consumer Financial Protection Circular 2023-01, *Unlawful Negative Option Marketing Practices*, 2 (Jan. 19, 2023), Circular 2023-01 Unlawful negative option marketing practices (consumerfinance.gov).
[21] *Supra* note 18 *generally*.
[22] https://twitter.com/fight_ghost/status/493882761669656577.
[23] *UFC Fight Pass*, TRUST PILOT, https://www.trustpilot.com/review/www.ufc.tv, one-star reviews make up 83% of all reviews for UFC Fight Pass on TrustPilot (last accessed Nov. 27, 2023).



**Marc Carroll**
1 review   AU

★☆☆☆☆                                          Oct 25, 2020

**As bad as it gets**

As bad as it gets! I just cancelled my subscription through apple tv after 4 years, $169 for an annual subscription plus $54.99 x 2 for the last 2 pay per views that the app would not let me watch. There is absolutely no help or customer service from the ufc or app provider...nowhere to complain or ask for help...just give them all your money then bang your head against the wall! Just lost alot of revenue from a (formal) loyal customer.

**Date of experience:** October 25, 2020

👍 Useful     ⌁ Share                                          ⚐

**Travis Worlock**
1 review   US

★☆☆☆☆                                          Oct 19, 2020

**I purchased the year plan to watch a...**

I purchased the year plan to watch a pay per view fight last year and was not able to...money wasted. I thought there would be events to watch...NOT. I am trying to cancel again because they charged me again for the full year. We use to be fans BUT NOT ANYMORE. I have sent several emails. When I log into my account to cancel my subscription there are no subscriptions to cancel. I hope someone answers my email. Next step reporting them to BBB!!!

**Date of experience:** October 19, 2020

**Kyle Longsdorf**
1 review   US

★☆☆☆☆                                          Mar 25, 2021

**If I could give a zero I would**

If I could give a zero I would, so I canceled my subscription and they hacked my card and auto renewed my subscription. And to top it off they blocked me from canceling my subscription on their site. Total scam. If I could send the photo of the site blocking me I'd show everyone.

**Date of experience:** March 25, 2021

👍 Useful 3     ⌁ Share                                          ⚐

**Maickol R Sanchez Leger**
1 review   PR

★☆☆☆☆                                          Oct 26, 2020

**You cant cancel**
You cant cancel. They still taking your money
**Date of experience:** October 26, 2020

29.     A number of subscribers have left scathing reviews on the Better Business Bureau website, complaining of the unclear billing practices and confusing cancellation policy associated with Defendant's Fight Pass Autorenewal.[24]

**Initial Complaint**
07/21/2020

**Complaint Type:** Advertising/Sales Issues
**Status:** Resolved ✅

I have tried to cancel UFC Fight Pass through the website, by phone, and by email. However, I continue to be charged by UFC. I have tried to cancel UFC Fight Pass to no avail. My username is my email, ********************. I've called, emailed, and tried to cancel over the website, UFC Fight Pass. UFC has fraudulently charged my credit card company for past 3 months while I have never used the product.

**Initial Complaint**
09/19/2021

**Complaint Type:** Advertising/Sales Issues
**Status:** Answered ✅

I have been trying to solve this problem for over 1 year. I have been charged $10.44 every month for services I did not sign up for. *** charges to my account $10.44 for unknown services. I did enroll in *** fight pass but I have canceled my subscription a few years ago. I kept calling *** ********* but keeps getting the run around. I finally got this number ************** associated with my charges. I have no other information. First, I am asking these charges to stop. Secondly, I am asking for reimbursement.

**Business response**
05/06/2022

**Business Response** /* (1000, 8, 2021/10/15) */ Communication was made with the consumer on 10/1/2021 via email address: ************** Refund was issued and consumer accepted.

**Initial Complaint**
01/16/2020

**Complaint Type:** Advertising/Sales Issues
**Status:** Unanswered ✅

They have been charging me a monthly subscription without my knowledge. Their UI is misleading and it's not clear how to even stop the subscription. I stumbled across a monthly charge from them since July 2019 that I was unaware of. They said I had signed up to a monthly subscription but I did not do that and I've never used their service. It's possible I did this unwittingly due to their confusing UI for a one-time event purchase (or so I thought). They refused to refund me and their UI is nearly impossible to figure out how to cancel the subscription. This is bad to make the UI such that you don't know you're getting a subscription and their response was "you had to accept the terms and conditions" which is thousands of words of legalese. I've never watched any of their stuff and I want my $70 back.

---

[24] *Complaints: Zuffa, LLC*, BETTER BUSINESS BUREAU, https://www.bbb.org/us/nv/las-vegas/profile/sports-and-recreation/zuffa-llc-1086-67430/complaints (last accessed Nov. 27, 2023).

30.     The above reviews are just a sampling of the widespread pattern of uniform unlawful conduct by Defendants, underscoring the artifice devised and employed by Defendants to lure and deceive millions of consumers into enrolling, and remaining enrolled, in its paid Fight Pass Autorenewal.

**C.     California's Automatic Renewal Law**

31.     In 2010, the California Legislature enacted the ARL with the express intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600. The legislative history of the ARL notes that "[c]urrent consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements" and that the ARL "is intended to close this gap in the law."[25] The ARL thus provides legal protections to Californian consumers that the laws of other jurisdictions do not have.

32.     The ARL makes it "unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or, in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

> (2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

> (3) Fail to provide an acknowledgement that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous

[25] *Supra* note 1 at 1.

service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code §§ 17602(a)(1)–(3).

33.    An "automatic renewal" means any "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." *Id.* § 17601(a). Additionally, the phrase "automatic renewal offer terms" is defined as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels. (2) The description of the cancellation policy that applies to the offer. (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known. (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer. (5) the minimum purchase obligation, if any." *Id.* § 17601(b)(1)–(5).

34.    The ARL defines "clear and conspicuous" or "clearly and conspicuously" to mean "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(c).

35.    Finally, where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the product is "deemed an unconditional gift to the consumer[.]" *Id.* § 17603.

36.    As alleged below, Defendants' Fight Pass Autorenewals systematically violate Sections 17602(a)(1), 17602(a)(2), and 17602(a)(3) of the ARL.

**D.    Defendants' Fight Pass Autorenewal Enrollment Process**

37.    At all relevant times, Defendants offered, via the Fight Pass Platform, their Fight Pass Autorenewals for Fight Pass Products online. Defendants' Fight Pass Autorenewal are offered on a recurring monthly or yearly basis and automatically renew at the end of the renewal period

unless and until the consumer cancels. For example, customers who sign up for a monthly Fight Pass Autorenewal are automatically renewed and typically charged the full amount for the next month and every month thereafter if they do not cancel. Defendants' Fight Pass Autorenewals constitute an automatic renewal agreement under the ARL. *See* Cal. Bus. & Prof. Code § 17601(a).

38. Before finalizing their initial purchase of Fight Pass Products, consumers must enter their Billing Information to complete the transaction. Under the ARL, the complete Fight Pass Autorenewal offer terms must appear clearly and conspicuously, and within visual proximity to, the "request for consent to the offer," which for the Fight Pass Autorenewal pertains to the "CHECKOUT" webpage shown below:



39. Defendants' "CHECKOUT" webpage is the point at which Defendants request consumer consent to the automatically renewing Fight Pass Autorenewal and where Defendants must provide the complete Fight Pass Autorenewal offer terms in the manner required under the ARL. Defendants' "CHECKOUT" webpage, as shown above, provides the initial purchase price but, as alleged in greater detail below, there is no suggestion that the consumer's purchase will, in fact, automatically renew and continue to renew unless and until the consumer cancels their Fight

Pass Autorenewal. Additionally, as alleged in greater detail below, the other automatic renewal offer terms, as defined by the ARL, are also absent from Defendants' "CHECKOUT" webpage.

40.     Upon making payment, the consumer may receive an email confirming the charge (the "Confirmation Email"). That Confirmation Email suffers from the same deficiencies as Defendants' "CHECKOUT" webpage in that does not provide the complete Fight Pass Autorenewal offer terms, as defined under the ARL, and does not provide the Defendants' cancellation policy and a description of how to cancel a Fight Pass Autorenewal as is required under ARL section 17602(a)(3).

41.     Regardless of how the consumer is enrolled into a Fight Pass Autorenewal, Defendants' Fight Pass Autorenewal enrollment process, including the aesthetic of and information provided in the Fight Pass Platform, is substantially and materially the same for every consumer. As such, Defendants' Fight Pass Autorenewal enrollment process uniformly violates the core mandates of the ARL.

**E.      Defendants Violate the California Automatic Renewal Law**

42.     At all relevant times, Defendants failed, and continue to fail, to comply with the ARL by: (i) failing to present all material Fight Pass Autorenewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the purchase is fulfilled, in violation of ARL section 17602(a)(1); (ii) charging consumers' Billing Information without first obtaining their affirmative consent to the Fight Pass Autorenewal, in violation of ARL section 17602(a)(2); and (iii) failing to provide an acknowledgement that includes the automatic renewal offer terms, cancellation policy, and information explaining how consumers can cancel the Fight Pass Autorenewal in a manner that is capable of being retained by the consumer, in direct violation of ARL sections 17602(a)(3).

    **i.   Defendants' "CHECKOUT" webpage does not present the complete Fight Pass Autorenewal offer terms "clearly and conspicuously" and "in visual proximity" before the purchase of a Fight Pass Autorenewal is fulfilled.**

43.     In violation of ARL section 17602(a)(1), Defendants' "CHECKOUT" webpage, the point at which Defendants request consumer affirmative consent, does not present the

"automatic renewal offer terms," as defined by ARL section 17601(b) in the manner prescribed by the ARL.

44.     First, as shown above, although the "CHECKOUT" webpage mentions that "Monthly subscription, cancel anytime" this disclosure is entirely overshadowed by the large "Secure Checkout" button that simply states "Total US$9.99." This call to action does not inform consumers that their purchase of a Fight Pass Products will, in fact, automatically renew resulting in continuously recurring charges to their Billing Information unless and until the consumer cancels but rather leaves the impression that consumers are engaging in a single transaction on the given day of purchase for $9.99. Defendants thus fail to place its consumers on notice, in the manner required under the statute, of the most fundamental requirement of the ARL. *See* Cal. Bus. & Prof. Code. §§ 17601(b)(1) (defining the phrase "Automatic renewal offer terms" to include, *inter alia*, "[t]hat the subscription or purchasing agreement will continue until the consumer cancels."); 17602(a)(1) (requiring that the automatic renewal offer terms be presented clearly and conspicuously and in visual proximity to the request for consent). *See id.* § 17600 (noting that the in enacting the ARL the legislature intended to put an end to the practice of automatic renewal agreements without explicit consent from the consumer).

45.     This impression is further bolstered by the web-flow of the Fight Pass Platform, which gives consumers the impression that they are purchasing a single pay-per-view fight, as depicted below:

/

/

/

/

/

/

/

/

//

1
2
3
4
5
6
7
8
9
10
11
12
13



14    46.    Clicking on the "PPV" symbol leads consumers to the bottom of the Fight Pass

15  Platform home page, where a title bout (*e.g.*, "BARBOZA vs GAETHJE") accompanied by a red

16  button which reads "WATCH LIVE", as depicted below:

17
18
19
20
21
22
23
24
25



26

27    47.    This, along with the tagline "ANYTIME. ANYWHERE. ANY DEVICE." further

28  bolsters consumers' impressions that the Fight Pass Autorenewal is tied to a specific live event.

48.     Second, in further violation of ARL section 17602(a)(1), Defendant does not present a complete "description of the cancellation policy that applies to the offer." *Id.* § 17601(b)(2). Defendants' "CHECKOUT" webpage does not describe how or when consumers must cancel to avoid further charges nor do Defendants describe its Fight Pass Autorenewal refund policy. For example, UFC's Terms of Use provide that cancellation of a Fight Pass Autorenewal will become effective as of the next billing cycle following receipt of the request. Additionally, UFC's Terms of Use states that consumers who cancel after five days of their initial enrollment into a Fight Pass Autorenewal will not be provided with a refund. Moreover, the "CHECKOUT" webpage, nor the terms, disclosure what time zone applies to cancellation requests and thus fails to identify when cancellation must occur.[26] But none of this information is displayed on Defendants' "CHECKOUT" webpage. Furthermore, although Defendants' "CHECKOUT" webpage provides that consumers can "cancel anytime," Defendants do not explain how consumers can effectuate their Fight Pass Cancellation request. That all this information, as with the other Fight Pass Autorenewal offer terms, may be provided in elsewhere on the Fight Pass Platform or in UFC's Terms of Use does not satisfy the ARL. *See Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1140 (S.D. Cal. 2021) ("But the [automatic renewal] terms themselves—not the access point to them—need to be in visual proximity to the request.").

49.     Finally, Defendants fail to disclose that the "recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known" as defined by Cal. Bus. & Prof. Code § 17601(b)(3). Specifically, although the "CHECKOUT" webpage provides, if unclearly and inconspicuously, the language "Monthly subscription" and that they will be charged a "total" of "US$9.99," the "CHECKOUT" webpage does not indicate how much money consumers will be charged for each subsequent month. To make matters worse, the "CHECKOUT" webpage also

---

[26] *UFC Terms of Use*, https://www.ufc.com/terms (last accessed Nov. 29, 2023).

fails to disclose that Defendants "may make changes to any products or services offered on the Site, or to the applicable prices for any such products or services, at any time, without notice."[27]

50.    Defendants' "CHECKOUT" webpage, the place at which it requests consumer consent to the automatically recurring Fight Pass Autorenewals, uniformly violates ARL section 17602(a)(1) because Defendant failed to present all material "automatic renewal offer terms," as defined by ARL section 17601(b), associated with the Fight Pass Autorenewal on its "CHECKOUT" webpage. As such, Defendant failed to present the material Fight Pass Autorenewal offer terms before the agreement was fulfilled in violation of ARL section 17602(a)(1). As alleged above, to the extent that any of Defendants' Fight Pass Autorenewal offer terms appear in the Terms of Use, or elsewhere on the Fight Pass Platform, that does not satisfy the ARL's mandate. *See Turnier*, 517 F. Supp. 3d at 1140 ("But the [automatic renewal] terms themselves—not the access point to them—need to be in visual proximity to the request.").

51.    Further, even if Defendant presented all material "automatic renewal offer terms" associated with the Fight Pass Autorenewal—it did not—those terms were not presented in a "clear and conspicuous manner . . . and in visual proximity . . . to the request for consent to the offer" in violation of ARL section 17602(a)(1). The ARL defines "clear and conspicuous" or "clearly and conspicuously" to mean "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c). Defendants' inadequate "automatic renewal offer terms" fall well short of that statutory requirement because they are smaller than the bold text featured in and under the "Monthly" and "US$9.99" headers above. Additionally, Defendants' terms appear in 11-point font, without emphasis, are illegible to the naked eye without increasing the zoom level and are much less obvious or noticeable than the preceding text, in paragraph form, and are found after an indistinguishable checkmark located directed on top with no paragraph or spacing in between. Finally, the terms are overshadowed by the large call-to-action "Secure Checkout" button that

---

[27] *Id.*

immediately turns red after a consumer enters their Billing Information drawing attention away from the faint text at issue. The "Secure Checkout" is also found at the very bottom of the "CHECKOUT" webpage and is thus not within "visual proximity" to the inadequate Fight Pass Autorenewal offer terms found at the top of the webpage. As such, and in further violation of ARL section 17602(a)(1), Defendants' "CHECKOUT" webpage does not "clearly call attention" to its otherwise deficient automatic renewal disclosures.

**ii. Defendants charge consumers for Fight Pass Autorenewals without their affirmative consent.**

52.     The ARL itself provides a checklist that sellers, such as Defendants, must follow to obtain consumer consent. Cal. Bus. & Prof. Code § 17602(a)(1). Defendants do not follow that checklist by disclosing the complete Fight Pass Autorenewal offer terms in the manner required by statute and have thus failed to obtain consumers' affirmative consent to the automatically renewing Fight Pass Autorenewal before charging them. Further, consumers are never required to affirmatively agree, *e.g.*, by selecting or clicking a "checkbox," to the Fight Pass Autorenewal offer terms on Defendants' "CHECKOUT" webpage.

**iii. Defendants do not provide a post-purchase acknowledgement that includes the Fight Pass Autorenewal offer terms, cancellation policy, and how consumers can cancel their Fight Pass Autorenewal.**

53.     After enrolling into a Fight Pass Autorenewal, Defendants fail to provide an acknowledgement, as shown by the below confirmation email, that includes all material Fight Pass Autorenewal offer terms, cancellation policy, as defined by ARL section 17601(b) and information explaining how consumers can cancel their Fight Pass Autorenewal, in violation of ARL section 17602(a)(3).

/

/

/

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23    54.    In fact, Defendants' bare bones confirmation email contains even less of the

24  required information than Defendants unclearly and inconspicuously disclose on the

25  "CHECKOUT" webpage, as described above.

26    55.    In sum, Defendants' pre-purchase and post-purchase disclosures fail to comply

27  with the ARL. Nowhere in the foregoing enrollment process do Defendants present the complete

28  terms of the Fight Pass Autorenewal in a clear and conspicuous manner and in visual proximity to

the offer before the purchase is completed in violation of ARL section 17602(a)(1). Defendants fail to obtain affirmative consent from consumers to the Fight Pass Autorenewal before completing the purchase in violation of ARL section 17602(a)(2). Defendant does not provide a post-purchase acknowledgment in the manner mandated by the ARL in violation of section 17602(a)(3).

56.    Regardless of the consumers' experience with the Fight Pass Platform or the e-commerce marketplace, it is Defendants' burden to put all consumers on notice of the Fight Pass Autorenewal offer terms in the manner prescribed by the ARL and obtain consumer affirmative consent *before* charging their Billing Information. Defendants' violations of the ARL systematically occur every time a prospective consumer creates an account and is enrolled into a Fight Pass Autorenewal. Every Fight Pass consumer receives the exact same legally inadequate disclosures on the front and back end of their transaction.

## VI.    CLASS ALLEGATIONS

57.    Plaintiffs' experience with Defendants' unlawful Fight Pass Autorenewal scheme is far from unique. Indeed, every California consumer who subscribed to any Fight Pass Products within the relevant statute of limitations period was subject to the same common sales and enrollment procedures and, in turn, failed to receive the requisite disclosures prior to their purchase and failed to receive the required post-purchase acknowledgments. Bus. & Prof. Code §§ 17602(a)(1)–(3). Because all of the automatic renewal fees that Defendant assessed against Plaintiffs and the Class were without their affirmative consent, and thus unlawful, Plaintiffs and all members of the class they seek to represent are entitled to restitution from Defendant of the fees they paid, in every successive billing period for which they were assessed. In addition, due to Defendants' unlawful conduct in violation of the ARL, the subscriptions for which Defendants charged class members should also be considered unconditional gifts without having to bear the cost. Cal. Bus. & Prof. Code § 17603.

58.    **Class Definition**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals in California who were enrolled in a Fight Pass Autorenewal within the applicable statute of limitations period, and who were

subsequently assessed an automatic renewal fee(s) associated with those subscription(s).

59.   Excluded from the Class are the undersigned Plaintiffs' counsel and all employees of their law firms; and the judicial officers and staff overseeing this action.

60.   Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

61.   **Numerosity**:  The proposed class is so numerous that joinder of all class members would be impracticable. Upon information and belief, *see supra* ¶ 19, Plaintiffs allege that the class includes at least 70,000 members. The class members are all ascertainable from records in possession of Defendants, specifically Defendants' customer and billing records. Furthermore, Defendants' actions against class members are generally applicable to every member of the proposed class, thereby making appropriate restitution and further injunctive relief appropriate as to the entire proposed class.

62.   **Commonality and Predominance**: Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (1) whether Defendants presented all statutorily-required automatic renewal offer terms and cancellation policy in a manner that is clear and conspicuous and in visual proximity to a request for consent to the offer within the meaning of the ARL; (2) whether Defendants provided the post-transaction acknowledgment disclosures required by section 17602(a)(3) of the ARL; (3) Defendants' policies, practices and procedures for obtaining affirmative consent from their California consumers before charging their Billing Information; and (4) the appropriate remedies for Defendants' unlawful conduct.

63.   **Typicality**: Plaintiffs' claims are typical of the claims of the class members in that they were enrolled into a Fight Pass Autorenewal using a common online process, received the exact same inadequate pre-transaction disclosures as received by all members of the class, and similarly received inadequate post-transaction acknowledgements that failed to include the information required under section 17602(a)(3). Plaintiffs' claims are further typical in that they were charged for automatic renewal fees without Defendants having first obtaining their

affirmative consent to an agreement containing clear and conspicuous disclosures of all Fight Pass Autorenewal offer terms.

64.   **Adequacy**: Plaintiffs will fairly and adequately protect Class Members' interests. Plaintiffs have no interest antagonistic to Class Members' interest, and Plaintiffs have retained counsel having considerable experience and success in prosecuting complex class-action and consumer-protection cases.

65.   **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecution of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecutions as a class action permits claims to be handled in an orderly and expeditious manner.

66.   Defendants have acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

67.   Without a class action, Defendants will continue a course of action that will result in further injury to Plaintiffs and members of the Class and will likely retain the benefits of their wrongdoing.

68.   As noted above, apart from relief for the Class, Plaintiffs separately seek public injunctive relief on behalf of the general public of California to stop the ongoing and continuing violations of California law described above. Members of the general public in California who have not transacted with Defendants but may in the future are at risk of new harms, injuries and financial losses from the ongoing and continuing conduct complained of unless enjoined and corrected. Such claims for public injunctive relief are not required to be certified as class actions and the above elements are not required to be satisfied for such relief.

69.   Based on the foregoing, Plaintiffs' claims for relief include those set forth below.

/

/

//

# VII.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Violation of the California Unfair Competition Law: Unlawful Conduct**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

70.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

71.     The UCL prohibits unfair competition in the form of "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. *Id.* § 17204. Such a person may bring such action on behalf of her- or himself and others similarly situated who are affected by the unlawful business practice or act.

72.      The predicate unlawful acts described above as violating the ARL do not require any showing of fraud or deception to establish a violation. The violations of the ARL are established through objective facts and criteria. As a result, a showing of individual reliance is not a required element of this claim.

73.     In the course of conducting business in California within the applicable limitations period, Defendants committed unlawful business practices by, *inter alia* and without limitation: (a) failing to provide all material Fight Pass Autorenewal offer terms and cancellation policy "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) failing to obtain the affirmative consent of consumers to those terms before charging for the Fight Pass Autorenewal, in violation of *id.* § 17602(a)(2); and (c) failing to provide an acknowledgment that includes the Fight Pass Autorenewal offer terms, Defendant's cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by Fight Pass consumers, in violation of *id.* § 17602(a)(3).

74.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

75.     Plaintiffs have lost money as a result of Defendants' unlawful acts of unfair competition, in that Plaintiffs would not have incurred the automatic renewal fees associated with their initial purchase of Fight Pass Products associated with the Fight Pass Autorenewal had Defendants fully, clearly, and conspicuously apprised him of the terms of the automatic renewal offer described herein.

76.     As a result of their violations of the ARL, Defendants never obtained Plaintiffs', or the Class's, affirmative consent to the automatically renewing charges, *see id.* § 17602(a)(2), and all Fight Pass Products associated with the Fight Pass Autorenewals were unconditional gifts, *see id* § 17603, for which Defendants could not lawfully charge Plaintiffs and the Class.

77.     Further, as alleged below, Defendants have committed additional unlawful business practices under the UCL by: (a) representing that Defendants' goods and services have certain characteristics that they do not have, in violation of Cal. Civ. Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(a)(9); and (c) Defendants represented that a transaction in question conferred or involved rights, remedies, or obligations that it did not have or involve, or were otherwise prohibited by law, in violation of *id.* § 1770(a)(14).

78.     Each of these acts and practices constitutes an independent violation of the CLRA, and thus an independent violation of the UCL.

79.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the members of the class are entitled to restitution of all amounts paid to Defendants in connection with an automatic renewal Fight Pass Autorenewal in the four years preceding the filing of this Complaint and continuing until Defendants' acts of unfair competition cease.

80.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Plaintiffs remain at risk of future harm and injury unless the challenged practices, described above, are modified and enjoined. Pursuant to Cal. Bus. & Prof. Code § 17203, on behalf of the class, and for the benefit of the general public of the State of California, Plaintiffs seek an injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

81.     Plaintiffs, on behalf of the general public of the State of California, seek a court order for public injunctive relief, declaratory relief and all other relief deemed appropriate in the circumstances including that enjoining Defendants from such future misconduct, and any other such orders that may be necessary to rectify Defendants' unlawful business practices and conduct. Such relief is appropriate and necessary to protect members of the general public who have not yet transacted with Defendants but are likely to and therefore remain at risk of future harm and thus, need protection from ongoing and continuing violations of the ARL and UCL, as described above. Such relief will create a public benefit.

82.     Plaintiffs bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the Class are therefore entitled to an award of attorneys' fees and costs under Cal. Code of Civ. P. § 1021.5 and other applicable law for bringing this action.

## SECOND CAUSE OF ACTION
### For Violation of the California Consumers Legal Remedies Act
### Cal. Civ. Code §§ 1750, *et seq.*

83.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

84.     Plaintiffs and the Class are "consumers" within the meaning of the CLRA, *see* Cal. Civ. Code § 1761(d), in that Plaintiffs and the Class sought or acquired Defendants' good and/or services for personal, family, or household purposes.

85.     Defendants' Fight Pass Autorenewal offers and the products and services pertaining to the Fight Pass Autorenewal are "goods" and/or "services" within the meaning of Cal. Civ. Code § 1761(a) and (b). The purchases made by Plaintiffs and the Class are "transactions" within the meaning of Cal. Civ. Code § 1761(e).

86.     The acts and practices of Defendants as described herein were intended to deceive Plaintiffs and the Class and have resulted, and will continue to result, in injury to Plaintiffs and the Class. The actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendants' acts and practices constitute representations or omissions deceiving that their automatically renewing Fight Pass Autorenewal has characteristics, uses, and/or benefits, which

they do not, in violation of Cal. Civ. Code § 1770(a)(5); (b) Defendants' acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of *id.* § 1770(a)(9); (c) Defendants represented that a transaction in question conferred or involved rights, remedies, or obligations that it did not have or involve, or were otherwise prohibited by law, in violation of *id.* § 1770(a)(14).

87.     As shown above, Defendants' "CHECKOUT" webpage and "Secure Checkout" button omit material terms of the Fight Pass Autorenewal agreement, namely, that by selecting the "Secure Checkout" button consumers will be charged on an ongoing and automatic basis unless and until they undertake formal and affirmative action to cancel. The omission of that material term, and the omission of the other material automatic renewal offer terms and cancellation policies, as alleged above, from Defendants' "CHECKOUT" webpage deceived Plaintiffs, and deceives the general public, because they believed that by selecting the "CHECKOUT" button they were only making a one-time, single purchase of a "Total" of "US$9.99" and not engaging in an automatic renewal. Reasonable consumers would equally rely on and be deceived by Defendants' omissions on the "CHECKOUT" webpage because the information contained does not convey that by selecting the ambiguous "Secure Checkout" button they are engaging in an automatic renewal for which formal cancellation is required to avoid future and ongoing charges.

88.     Plaintiffs and the Class suffered economic injury as a direct result of Defendants' misrepresentations and/or omissions because they were unlawfully charged for Fight Pass Products associated with the Fight Pass Autorenewal that were unconditional free gifts by operation of law. Had Defendants fully and clearly disclosed the terms associated with its Fight Pass Autorenewal, Plaintiffs and the Class would not have been enrolled into the Fight Pass Autorenewal.

89.     As a direct and proximate cause of Defendant's conduct, as alleged herein, Plaintiffs and the Class have been damaged, injured and suffered ascertainable loss, thereby entitling them to, *inter alia*, injunctive and equitable relief, reasonable attorneys' fees, filing fees, and the costs of prosecuting this action, as well as any and all other relief that may be available at law or equity.

90.     Plaintiffs have complied with Cal. Civ. Code § 1782(a) by notifying Defendants in writing, by certified mail, of the violations alleged herein and demanded that Defendants remedy those violations. Defendants have not remedied or agreed to remedy the violations alleged herein within 30 days of receipt of Plaintiffs' CLRA pre-suit notice. Accordingly, Plaintiffs seek actual, punitive, and statutory damages pursuant to the CLRA.

91.     Plaintiffs, on behalf of the general public of the State of California, seek a court order for public injunctive relief, declaratory relief and all other relief deemed appropriate in the circumstances including that enjoining Defendants from such future misconduct, and any other such orders that may be necessary to rectify Defendants' unlawful business practices and conduct. Such relief is appropriate and necessary to protect members of the general public who have not yet transacted with Defendants but are likely to and therefore remain at risk of future harm and thus, need protection from ongoing and continuing violations of the ARL and UCL, as described above. Such relief will create a public benefit.

92.      Plaintiffs bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the Class are therefore entitled to an award of attorneys' fees and costs under Cal. Code of Civ. P. § 1021.5, Cal. Civ. Code § 1780(e), and other applicable law for bringing this action.

### THIRD CAUSE OF ACTION
**For Conversion**

93.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

94.     As a result of charges made by Defendants to Plaintiffs' and the Class members' Payment Methods without proper authorization and in violation of California law, Defendants have taken money that belongs to Plaintiffs and the Class.

95.     The amount of money wrongfully taken by Defendants can be identified.

96.     Defendants engaged in this conduct knowingly, willfully, and with oppression, and/or malice within the meaning of Cal. Civil Code § 3294(c).

97.     As a result of Defendants' actions, Plaintiffs and the Class have suffered damages.

**FOURTH CAUSE OF ACTION**
**For Violations of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

98.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

99.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it  "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,… in any advertising device… or in any other manner or means whatever, including over the Internet, any statement, concerning… personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

100.     Defendants committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statement to consumers in California and the general public concerning Defendants' products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendants to be untrue or misleading. Defendants have also intentionally made or disseminated such untrue or misleading statements and material missions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

101.     Defendants' statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendants' Fight Pass Autorenewal regarding the terms of payment for and cancellation of a consumer's automatic payments. For instance, Defendants' representation on the "CHECKOUT" webpage of the Fight Pass Platform that members can "cancel" their Fight Pass Autorenewal "anytime" is contradicted by its policy set forth elsewhere on the Fight Pass Platform that a customer's cancellation of their Fight Pass Autorenewal would become effective "as of the next monthly billing cycle following receipt." In light of Defendants' disclosure of the former and silence as to the latter on the "CHECKOUT" webpage for the Fight Pass Autorenewal, the representations and omissions on the "CHECKOUT"

webpage constitute false and deceptive advertisements. Similarly, Defendants willfully induced Plaintiffs and the Class members into believing that by purchasing its Fight Pass Autorenewal they would be able to access to view the "PPV" they were interested in viewing; without clarifying that their purchase did not include the main match of the event—the most sought out and advertised fight.

102.    Defendants' actions in violation of Cal. Bus. & Prof. Code § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

103.    Defendants knew that their actions were misleading based on the sheer number of complaints that they have received from consumers who were unwillingly enrolled in its Fight Pass Autorenewal under false pretenses.

104.    Plaintiffs and the members of the Class were deceived by Defendants' statements and omissions made online when they signed up and started paying for their Fight Pass Autorenewals, and other California consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendants' false and misleading statements and material omissions. Plaintiffs and other members of the Class did not learn of Defendants' Fight Pass Autorenewal price, cancellation, and automatic payment policies until after they had already signed up and started paying for Defendants' Fight Pass Autorenewal. Thus, they relief on Defendants' statements and omissions to their detriment.

105.    Plaintiffs and the Class lost money or property as a result of Defendants' FAL violations because they would not have purchased the Fight Pass Autorenewal on the same terms if the true facts were known about the product, and the Fight Pass Autorenewal do not have the characteristics or the purchase price as promised by Defendants.

106.    Plaintiffs, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendants from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendants' relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment / Restitution**

107.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

108.    Plaintiffs and the Class conferred benefits on Defendants by purchasing the Fight Pass Autorenewal.

109.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class's purchases of the Fight Pass Autorenewals. Retention of those moneys under these circumstances is unjust and inequitable because Defendants' failure to disclose material terms of the purchase agreement, in violation of California law, induced Plaintiffs and the Class to purchase the Fight Pass Autorenewals. These omissions caused injuries to Plaintiffs and the Class because they would not have purchased the Fight Pass Autorenewal at all, or on the same terms if the true facts were known.

110.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## VIII.    JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury as to all issues triable to a jury.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request relief as follows on all counts:

1.    For restitution of the amounts unlawfully charged Plaintiffs and members of the class in violation of the ARL, UCL, and other applicable law;

2.    For public injunctive relief against further violations of the ARL by Defendant;

3.    For private injunctive relief and declaratory relief;

4.    For reasonable attorneys' fees and costs of suit pursuant to Cal. Code of Civ. P. § 1021.5, Cal. Civ. Code § 1780(e), and other applicable law;

5.    For prejudgment interest; and

6.      For such other relief as the Court deems just and proper.

DATED this 8th day December 2023.

Respectfully submitted by:

CROSNER LEGAL, P.C.

By:    /s/ Chad A. Saunders

Chad A. Saunders (*Pro Hac Vice*)
Craig W. Straub (*Pro Hac Vice*)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
chad@crosnerlegal.com
craig@crosnerlegal.com

*Attorneys for Plaintiffs Moises Reza,*
*Frank Garza, and Tanner Pendergraft*

BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

GUCOVSCHI ROZENSHTEYN, PLLC
Adrian Gucovschi (*Pro Hac Vice*)
140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
Email: adrian@gr-firm.com

*Attorneys for Plaintiff Isaiah Sanchez*

ZIMMERMAN REED LLP
Hart L. Robinovitch (*Pro Hac Vice*)
  Email: hart.robinovitch@zimmreed.com
14648 N. Scottsdale Rd.
Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400

ZIMMERMAN REED LLP
Zachary J. Freese (*Pro Hac Vice*)
  Email: zachary.freese@zimmreed.com
80 South 8th St.

CONSOLIDATED CLASS ACTION COMPLAINT

Suite 1100
Minneapolis, MN 55402
Tel: (612) 341-0400

*Attorneys for Plaintiff Saul Garcia*

LEON GREENBERG, PC
Leon Greenberg (NV Bar No. 8094)
1811 S. Rainbow Blvd. Ste. 210
Las Vegas, NV 89146
(702) 383-6085

*Local Counsel for Plaintiffs Moises Reza,*
*Frank Garza, and Tanner Pendergraft*

MARKMAN LAW
David A. Markman (Nevada Bar No. 12440)
 Email: david@markmanlawfirm.com
4484 S. Pecos Rd.
Suite 130
Las Vegas, NV 89121
Tel: (702) 843-5899

*Local Counsel for Plaintiff Saul Garcia*

CONSOLIDATED CLASS ACTION COMPLAINT