CROSNER LEGAL, P.C.
Chad A. Saunders (*Pro Hac Vice*)
Craig W. Straub (*Pro Hac Vice*)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
chad@crosnerlegal.com
craig@crosnerlegal.com

*Attorneys for Plaintiffs Moises Reza, Frank Garza, and Tanner Pendergraft*

BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com

GUCOVSCHI ROZENSHTEYN, PLLC
Adrian Gucovschi (*Pro Hac Vice*)
140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
adrian@gr-firm.com

*Attorneys for Plaintiff Isaiah Sanchez*

ZIMMERMAN REED LLP
Hart L. Robinovitch (*Pro Hac Vice*)
14648 N. Scottsdale Rd. Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400
hart.robinovitch@zimmreed.com

ZIMMERMAN REED LLP
Zachary J. Freese (*Pro Hac Vice*)
80 South 8th St., 1100 IDS Center
Minneapolis, MN 55402
Tel: (612) 341-0400
zachary.freese@zimmreed.com

*Attorneys for Plaintiff Saul Garcia*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: Fight Pass Auto-Renewal Litigation | CASE NO.:   2:23-cv-00802-CDS-EJY |
| | Member Case Nos.: 2:23-cv-01211-CDS-EJY<br>2:23-cv-01259-CDS-EJY |
| This Document Relates To: All Actions | **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITIES IN SUPPORT THEREOF** |
| | **ORAL ARGUMENT REQUESTED JANUARY 17, 2025 AT 10:00 A.M.** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on January 17, 2025 at 10:00 a.m. or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 6B of the Lloyd D. George U.S. Courthouse, 333 Las Vegas Boulevard, South, Las Vegas, Nevada 89101, the Honorable Cristina D. Silva presiding, Plaintiffs Moises Reza, Frank Garza, Tanner Pendergraft, Isaiah Sanchez, and Saul Garcia ("Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move unopposed, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Stipulation of Class Action Settlement and Release (the "Settlement" or "Settlement Agreement") submitted herewith; (ii) provisionally certify the Class defined below for the purposes of preliminary approval, designating Plaintiffs as the Class Representatives and the undersigned as Class Counsel; (iii) establish procedures for providing notice to members of the Class; (iv) approve forms of notice to Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a final approval hearing.

The Settlement Class is defined as:

> All natural persons with a current or former paid Fight Pass subscription (i.e. Active or Inactive Subscribers) within the Class Period in the following states: California, District of Columbia, Florida, Hawaii, Illinois, New York, North Carolina, North Dakota, Oregon, Virginia, Vermont.

Excluded from the Settlement Class are all attorneys and employees of Settlement Class Counsel, any judicial officer to whom the Action is assigned, and persons who validly opt out of the Class Action Settlement by following the procedures set forth herein. This Motion is made on the grounds that terms of the proposed Settlement are fair and reasonable, and that preliminary approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met. Additionally, as all requirements of Fed.R.Civ.P. 23(a) and 23(b)(3) are met, conditional certification for settlement purposes is appropriate. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Granting Preliminary Approval of Class Action Settlement. Defendants do not oppose this Motion.

1

The Motion is based on the exhibits attached thereto, including the Settlement Agreement;

2

the [Proposed] Preliminary Approval Order submitted herewith; the Memorandum of Points and

3

Authorities filed herewith; the pleadings and papers on file in this Action; and such other evidence

4

and argument as may subsequently be presented to the Court.

5

6

Respectfully submitted,

Dated: December 23, 2024

7

8

CROSNER LEGAL, P.C.

9

By:    /s/ Chad A. Saunders
Chad A. Saunders (*Pro Hac Vice*)
Craig W. Straub (*Pro Hac Vice*)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
chad@crosnerlegal.com
craig@crosnerlegal.com

10

11

12

13

*Attorneys for Plaintiffs Moises Reza,*
*Frank Garza, and Tanner Pendergraft*

14

15

BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

16

17

18

19

GUCOVSCHI ROZENSHTEYN, PLLC
Adrian Gucovschi (*Pro Hac Vice*)
140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
Email: adrian@gr-firm.com

20

21

22

23

*Attorneys for Plaintiff Isaiah Sanchez*

24

MARKMAN LAW
David A. Markman (Nevada Bar No. 12440)
4484 S. Pecos Rd., Suite 130
Las Vegas, NV 89121
Tel: (702) 843-5899
Email: david@markmanlawfirm.com

25

26

27

ZIMMERMAN REED LLP

28

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE;
APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN
SUPPORT THEREOF

Hart L. Robinovitch (*Pro Hac Vice*)
Email: hart.robinovitch@zimmreed.com
14648 N. Scottsdale Rd., Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400

ZIMMERMAN REED LLP
Zachary J. Freese (Pro Hac Vice)

        Email:
zachary.freese@zimmreed.com
80 South 8th St.
Suite 1100
Minneapolis, MN 55402
Tel: (612) 341-0400

*Attorneys for Plaintiff Saul Garcia*

LEON GREENBERG, PC
Leon Greenberg (NV Bar No. 8094)
1811 S. Rainbow Blvd. Ste. 210
Las Vegas, NV 89146
(702) 383-6085

*Local Counsel for Plaintiffs Moises Reza,
Frank Garza, and Tanner Pendergraft*

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..........................................2

      A.    Plaintiffs' Allegations...............................................................................2

      B.    The Litigation ...........................................................................................4

      C.    Discovery and Mediation..........................................................................6

III.  STANDARDS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS .........6

IV.   TERMS OF PROPOSED SETTLEMENT..........................................................9

      A.    Certification of Class Settlement ..............................................................9

      B.    Benefits of the Monetary Relief Settlement .............................................9

            1.    Monetary and in-kind relief for class members.............................9

            2.    Claims procedure..........................................................................10

            3.    Release of claims...........................................................................12

            4.    Opt-out procedure and objections.................................................12

            5.    Claims administration....................................................................13

            6.    Class representative service awards. .............................................13

            7.    Attorneys' fees and expenses. .......................................................14

V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE FAIR,
      ADEQUATE, AND REASONABLE CLASS SETTLEMENT .........................14

      A.    The Hanlon Factors. ...............................................................................15

            1.    Strength of Plaintiffs' case. ..........................................................15

            2.    Risk of continuing litigation. ........................................................19

            3.    Risk of maintaining class action status.........................................21

            4.    The amount offered in settlement. .................................................21

            5.    The extent of discovery. ................................................................23

            6.    Experience and views of counsel...................................................24

      B.    Rule 23(e)(2) Factors...............................................................................25

i

1.  The class representatives and class counsel have adequately represented the
    class (Rule 23(e)(2)(A))...............................................................................25

2.  The settlement was negotiated at arm's length...............................................25

3.  The settlement provides adequate relief to the class. ....................................26

4.  The settlement treats all class members equally............................................29

VI.   CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ...30

A.  The Class Satisfies Rule 23(a)...................................................................32

1.  Numerosity .............................................................................................32

2.  Commonality ..........................................................................................32

3.  Typicality................................................................................................33

4.  Adequacy.................................................................................................34

B.  The Class Satisfies Rule 23(b)(3)...............................................................35

1.  Common questions predominate. ...........................................................35

2.  Class action is superior. .........................................................................36

VII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CO-CLASS COUNSEL....36

VIII.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED .....................................37

A.  The Content of the Proposed Class Notice Complies with Rule 23(c)(2)..............37

B.  Distribution of the Class Notice Will Comply with Rule 23(c)(2)......................38

IX.   CONCLUSION ........................................................................................................38

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE;
APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN
SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Trans Union*, LLC,
  243 F.R.D. 377 (C.D. Cal. 2007) ............................................................. 30

*Alaniz v. California Processors, Inc.*,
  73 F.R.D. 269 (N.D. Cal. 1976) ............................................................... 7

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ................................................................. 6

*Alvarez v. Sirius XM Radio Inc.*,
  2020 WL 7314793 (C.D. Cal. July 15, 2020) ..................................... 26, 27

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................... 31, 35

*Beaver v. Alaniz*,
  439 U.S. 837 (1978) ............................................................................... 7

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ................................................................. 30

*Blandino v. MCM Constr., Inc.*,
  2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ....................................... 28

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ................................................... 6, 24

*Boyd v. Avanquest N. Am. Inc.*, ,
  No. 12-CV-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015) ......................... 25, 29

*Carlotti v. ASUS Computer Int'l*,
  2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ........................................ 8

*Carter v. XPO Logistics, Inc.*,
  2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ........................................ 15

*Cavin v. Home Loan Ctr., Inc.*,
  236 F.R.D. 387 (N.D. Ill. 2006) ........................................................... 31

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F. 3d 566 (9th Cir. 2004) ............................................................... 15

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................ 6, 24

*Costelo v. Chertoff*,
  258 F.R.D. 600 (C.D. Cal. 2009) ................................................................. 33

*Daly v. Amazon.com, Inc.*,
  718 F. Supp. 3d 1378 (W.D. Wash. 2024) ..................................................... 17

*Dennis v. Kellogg Co.*,
  697 F.3d 858 (9th Cir. 2012) ...................................................................... 30

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ....................... 24

*Foster v. City of Oakland*,
  2007 WL 219796 (N.D. Cal. Jan. 29, 2007) ............................................... 30, 31

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................................................. 15

*Gen. Tel. Co. of Sw. Falcon*,
  457 U.S. 147 (1982) ................................................................................. 33

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir.1998) ............................... 8, 15, 30, 31, 32, 33, 35, 36

*Harris v. U.S. Physical Therapy, Inc.*,
  2012 WL 3277278 (D. Nev. July 18, 2012), *report and recommendation adopted,* No. 2:10-
  CV-1508-JCM, 2012 WL 3277276 (D. Nev. Aug. 9, 2012) ................................... 24

*Hernandez v. Alexander*,
  152 F.R.D. 192 (D. Nev. 1993) .................................................................... 32

*Hester v. Vision Airlines, Inc.*,
  2009 WL 4893185 (D. Nev. Dec. 16, 2009), *aff'd,* 687 F.3d 1162 (9th Cir. 2012) ........ 34

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................. 28

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................... 29

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
  2014 WL 7240144 (N.D. Cal. Dec. 19, 2014) ................................................... 6

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE;
APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN
SUPPORT THEREOF

*In re Lidoderm Antitrust Litig.*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)........................................................ 28

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000).......................................................... 14, 23, 28

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013).......................................................... 21

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995).......................................................... 8, 28

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008).......................................................... 6, 7

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................... 7, 29

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    2012 WL 7802852, (C.D. Cal. Dec. 28, 2012) .......................................................... 31

*In re Toyota*,
    2013 WL 3224585 (C.D. Cal. June 17, 2013).......................................................... 31

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    571 F.3d 953 (9th Cir. 2009).......................................................... 36

*Johnson v. Pluralsight, LLC*,
    728 Fed.App'x. 674 (9th Cir. 2018).......................................................... 20

*Johnson v. Triple Leaf Tea Inc.*,
    2015 WL 8943150 (N.D. Cal. Nov. 16, 2015).......................................................... 21

*Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001).......................................................... 35

*Kissel v. Code 42 Software, Inc.*,
    2016 WL 7647691 (C.D. Cal., Apr. 14, 2016).......................................................... 3

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) .......................................................... 8, 21, 22

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020).......................................................... 32

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014).......................................................... 19, 20, 21, 27

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ........................ 24, 28

*Lopez v. Stages of Beauty, LLC*,
   307 F. Supp. 3d. 1058 (S.D. Cal. 2018) ................................................. 17

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
   671 F. Supp. 819 (D. Mass. 1987) ...................................................... 24

*Mayron v. Google LLC*,
   54 Cal. App. 5th 566 (2020) ............................................................ 20, 22

*Morrell v. WW Int'l, Inc.*,
   551 F. Supp. 3d 173  (S.D.N.Y. 2021) ................................................. 17

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 19, 21, 22

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) ........................... 8, 15, 21, 22

*Pena v. Taylor Farms Pac., Inc.*,
   2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ........................................... 15

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ......................................... 25, 29

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968) .................................................................... 8

*Ramirez v. TransUnion LLC*,
   951 F.3d 1008 (9th Cir. 2020) .......................................................... 34

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ...................................................... 33

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................... 16, 18, 19, 21, 27

*Rothfarb v. Hambrecht*,
   649 F. Supp. 183 (N.D. Cal. 1986) ..................................................... 7

*Santoro v. Aargon Agency, Inc.*,
   252 F.R.D. 675 (D. Nev. 2008) ........................................................ 34

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE;
APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN
SUPPORT THEREOF

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................................ 30

*State of California v. eBay, Inc.*,
   2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ................................................... 29

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................... 14, 34

*Turnier v. Bed Bath & Beyond Inc.*,
   517 F. Supp. 3d 1132 (S.D. Cal. 2021) ............................................................. 16

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ...................................................................... 28

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..................................................................... 27, 28

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................... 8, 32

*Wellens v. Sankyo*,
   2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ................................................... 28

*White v. Imperial Adjustment Corp.*,
   2002 WL 1809084 (E.D. La. Aug. 6, 2002), *aff'd in part, appeal dismissed in part and remanded,* 75 F. App'x 972 (5th Cir. 2003) ...................................................... 31

*Wolin v. Jaguar Land Rover N. Am. LLC*,
   617 F.3d 1168 (9th Cir. 2010) ......................................................................... 36

**Statutes**

15 U.S.C. § 1693(b) ............................................................................................. 17

15 U.S.C. § 1693e(a) ....................................................................................... 4, 17

15 U.S.C. § 1983m(a)(2)(B) .................................................................................. 4

15 U.S.C. §§ 1693 ...................................................................................... 1, 3, 5

815 Ill. Comp. Stat. Ann. 601/10 ......................................................................... 16

Cal. Bus. & Prof. Code § 17601(c) ....................................................................... 16

Cal. Bus. & Prof. Code § 17602(a)(2) ................................................................... 17

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE;
APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN
SUPPORT THEREOF

Cal. Bus. & Prof. Code § 17603 ................................................................. 22

Cal. Bus. & Prof. Code §§ 17500 ................................................................. 1

Cal. Bus. & Prof. Code §§ 17600 ................................................................. 1

Cal. Bus. & Prof. Code §§ 17601(b)(1)-(5) ................................................ 16

Cal. Civ. Code §§ 1750 ................................................................................. 1

D.C. Code § 28A-203 .................................................................................. 16

Fla. Stat. Ann. § 501.165 ............................................................................ 16

Haw. Rev. Stat. Ann. § 481-9.5 .................................................................. 16

N.C. Gen. Stat. § 75-41 ............................................................................... 16

N.Y. Gen. Bus. Law § 527-a ....................................................................... 16

Nev. Rev. Stat. § 41.600(1) ........................................................................... 3

Nev. Rev. Stat. § 598.0915 ............................................................................ 3

Nev. Rev. Stat. §§ 598.0903 .......................................................................... 1

Nev. Rev. Stat. §§ 598.0915(9); 598.0923(1)(b); 598.0923(1)(c) ......... 17, 18

Or. Rev. St. § 646A.295 .............................................................................. 16

Va. Code Ann. § 59.1-207 ........................................................................... 16

Vt. Stat. Ann. Tit. 9, § 2454a ..................................................................... 16

**Rules**

Fed. R. Civ. P. 23(a)(1) .............................................................................. 32

Fed. R. Civ. P. 23(a)(2) .............................................................................. 32

Fed. R. Civ. P. 23(a)(3) .............................................................................. 33

Fed. R. Civ. P. 23(a) and 23(b)(3) ............................................................ 2, 9

Fed. R. Civ. P. 23(b) ................................................................................... 31

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... 37

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

1

Fed. R. Civ. P. 23(c)(3) ........................................................................................ 37

Fed. R. Civ. P. 23(e) ........................................................................................ 2, 26

Fed. R. Civ. P. 23(e)(2)(C)(i-iv) .......................................................................... 26

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................. 29

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................. 29

Fed. R. Civ. P. 23(e)(3); and (D) ................................................................... 15, 26

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ...................................................................... 37

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................. 36

**Regulations**

12 C.F.R. § 205.10(b) ...................................................................................... 4, 17

**Other Authorities**

Manual for Complex Litigation § 21.62 ............................................................... 14

Manual for Complex Litigation, Second § 30.44 (1985) ......................................... 7

*Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2002)")* ........... 6

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE;
APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN
SUPPORT THEREOF

# I.    INTRODUCTION

Plaintiffs and proposed Class Representatives Moises Resa, Frank Garza, Tanner Pendergraft, Isaiah Sanchez, and Saul Garcia (collectively, "Plaintiffs") respectfully submit for the Court's preliminary approval a proposed multi-state class action settlement (the "Settlement"), with Defendants Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC ("Defendant" or "Zuffa"); and NeuLion, Inc. ("Neulion") (collectively, Defendant and Neulion are referred to herein as "Defendants").

This previously consolidated putative class action lawsuit alleges that through their common operating procedures, Defendants do not adequately inform consumers of the automatic renewing nature of the Fight Pass Autorenewal(s), do not obtain the affirmative consent of its consumers to the Fight Pass Autorenewal(s) before charging them, and do not provide a post-purchase acknowledgment containing all material Fight Pass Autorenewal offer terms, a description of Defendants' cancellation policy, and an explanation of how to cancel the Fight Pass Autorenewal(s), in violation of the California Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, California's False Advertising Law ("FAL") Cal. Bus. & Prof. Code §§ 17500, California Consumers Legal Remedies Act Cal. Civ. Code §§ 1750, et seq., the Electronic Funds Transfer Act ("EFTA" or "Regulation E"), 15 U.S.C. §§ 1693, *et seq.*, and the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. §§ 598.0903, *et seq.*  All class members have alleged common claims for conversion, unjust enrichment, EFTA and NDTPA.

Following mediation on February 26, 2024, the Parties reached a class settlement agreement that, if approved, will deliver immediate and substantial monetary and in-kind relief to putative Class Members and will resolve Plaintiffs' and the putative class's claims against Defendants.   The Stipulation of Class Action Settlement Agreement and Release (the "Settlement") and its exhibits are submitted as Exhibit A to the Declaration of Hart Robinovitch in Support of Motion for Preliminary Approval of the Settlement ("Robinovitch Decl.").

The Settlement consists of cash and non-cash benefits with a total value exceeding $1,200,000.00.   Under the Settlement's terms, Active (i.e., those with a current Fight Pass

subscription) Class Members will automatically receive a credit equal to two (2) months of free service to be applied by Defendants to their Fight Pass subscription. If Active Class Members prefer, they can submit a claim form electing to instead receive a prorated cash payment of up to $9.99 from the Net Settlement Fund. Inactive Class Members can submit a Claim Form and elect to receive either (i) a credit for two (2) months of free service applied towards a new Fight Pass subscription or (ii) a prorated cash payment of up to $9.99 from the Net Settlement Fund. The Net Settlement will be used to pay all approved claims by Class Members, notice and administration expenses, a Court-approved incentive award to Plaintiffs, and attorneys' fees and costs to proposed Class Counsel to the extent awarded by the Court.

Given the favorable relief secured on behalf of the Class weighed against the risks of continued litigation and possible non-recovery, the Court should find that the Settlement is fair and reasonable and warrants preliminary approval. Accordingly, Plaintiffs respectfully request that the Court: (i) grant preliminary approval of the proposed Stipulation of Class Action Settlement and Release; (ii) provisionally certify the Class for the purposes of preliminary approval, designating Plaintiffs as the Class Representatives; (iii) establish procedures for providing notice to members of the Class; (iv) approve forms of notice to Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a final approval hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs' Allegations

Defendants, through their website www.ufcfightpass.com (the "Fight Pass Platform"), offer a streaming platform for exclusive Mixed Martial Arts ("MMA") and Ultimate Fighting Championship ("UFC") content including, but not limited to, live UFC fighting events, original programming, and recordings of past MMA fights (the "Fight Pass Products"). When consumers purchase Fight Pass Products via the Fight Pass Platform, Defendants enroll them into an automatically renewing monthly or yearly autorenewal (the "Fight Pass Autorenewal(s)") that results in ongoing charges on the consumer's credit card, debit card, or third-party payment

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

account ("Billing Information") unless and until the consumer cancels their Fight Pass Autorenewal.  First Am. Compl. ("FAC") ¶¶ 1–5.  Both the enrollment and cancellation processes described above have been common in all material respects for residents of California, District of Columbia, Florida, Hawaii, Illinois, New York, North Carolina, North Dakota, Oregon, Virginia, and Vermont since October 2018.

Plaintiffs allege Defendants automatically renewed Class Members' Fight Pass Autorenewal(s) in violation of the NDTPA, Nev. Rev. Stat. § 598.0915 *et seq.* and Nev. Rev. Stat. § 41.600(1)*,* EFTA, 15 U.S.C. §1693 *et seq*, and state auto renewal laws and common law. *Id.* ¶¶ 77–145.

Specifically, Plaintiffs allege that Defendants do not provide all material Fight Pass Autorenewal terms, as defined under the ARL, "clearly and conspicuously" and in "visual proximity" to its request for consent to the Fight Pass Autorenewal before the purchase is fulfilled. Defendants do not obtain the affirmative consent of its consumers before charging their Billing Information.    Plaintiffs further allege that Defendants do not provide a post-purchase acknowledgement containing all material Fight Pass Autorenewal offer terms, a description of Defendants' cancellation policy, and an explanation of how to cancel a Fight Pass Autorenewal. *Id.* ¶¶ 42–61.  This conduct is alleged to be deceptive and violate the NDTPA, as well as the applicable auto renewal laws.[1]

While Plaintiffs have presented claims under California law, Defendants' Terms of Use published on its website call for application of Nevada law as follows:

**Applicable Law and Jurisdictional Matters.**
You agree that: (i) the Service shall be deemed solely based in Nevada; and (ii) These Terms of Service shall be governed by the internal substantive laws of the

---

[1]  The Settlement resolves disputes over applicable choice of law.  Defendants' Terms of Use calls for application of Nevada law.  California case law, however, provides that laws such as the California ARL represent a fundamental right that cannot be waived by a choice of law clause. *See, Kissel v. Code 42 Software, Inc.*, No. SACV151936JLSKESX, 2016 WL 7647691 (C.D. Cal., Apr. 14, 2016).  This unresolved dispute remains outstanding and was a point of compromise in the final negotiated settlement.  Even under Nevada law, the common practices complained of are alleged to be deceptive and in violation of the NDTPA.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

State of Nevada, without respect to its conflict of laws principles. Any claim or dispute between you and UFC® that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Clark County, Nevada. The parties all consent to the jurisdiction of such courts agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it. These Terms of Service, together with the Privacy Notice at [*sic*] and any other legal notices published by UFCFIGHTPASS.com on the Service, shall constitute the entire agreement between you and UFC® concerning the Service.

YOU AND UFC® AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED."

*See* Terms of Use, available at https://www.ufc.com/terms.  In prior motion practice in the *Reza* case prior to transfer to this Court, Defendants argued that Nevada law applies to all disputes.  *See generally*, Motion to Dismiss at *8, filed in *Reza v. Zuffa, LLC and Neulion USA, LLC*, No. 3:22-cv-9068 (N.D. Cal., filed March 31, 2023).  Each class member has common claims for deceptive practices under the NDTPA, which are resolved as part of this settlement.

Further, based on the alleged violations of state law, each class member has common claims under the EFTA which prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."  15 U.S.C. § 1693e(a).  Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."  12 C.F.R. § 205.10(b).  Pursuant to 15 U.S.C. § 1983m(a)(2)(B), Plaintiffs and Class Members are also entitled to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant."

**B.    The Litigation**

The present case is the result of three separately filed actions alleging similar claims against Defendants that were later consolidated in this court as *In re: Fight Pass Auto-Renewal Litigation*. Plaintiffs Reza, Garza, and Pendergraft originally filed this class action on October 11, 2022, in California Superior Court, County of Alameda.  On December 21, 2022, Defendants removed the

4

case to the United States District Court for the Northern District of California, *Reza, et al. v. Zuffa, LLC, et al.*, Case No. 3-22-cv-09068-MMC (N.D. Cal.). Defendants filed a Motion to Dismiss the operative complaint and a Motion to Transfer the case to the District of Nevada. Defendants' Motion to Transfer was granted. No. 2:23-cv-00802-CDS-EJY (D. Nev.).

Plaintiff Sanchez filed a putative class action on January 31, 2023, in the Superior Court of California, County of Los Angeles, Case No. 23-st-cv-02154. Defendant Zuffa removed the case to the United States District Court for the Central District of California where Plaintiff Sanchez then stipulated to transfer the matter to the District of Nevada. On August 4, 2023, the Central District of California entered an order transferring the case to the District of Nevada. No. 2:23-cv-01259-JAD-VCF (D. Nev.).

Plaintiff Garcia filed a putative class action complaint on June 30, 2023, in the Eighth Judicial District Court for Clark County, Nevada, Case No. A-23-873287-C. Defendant Zuffa, LLC timely removed the case to the District of Nevada on August 2, 2023. No. 2:23-cv-01211-JAD-VCF (D. Nev.).

On August 25, 2023, Defendants filed a Motion to Consolidate the three related putative class actions pending in the District of Nevada. On November 8, 2023, Defendants' Motion to Consolidate was granted. Plaintiffs then filed a Consolidated Class Action Complaint in the United States District Court for the District of Nevada on December 8, 2023 (the "Action"). A First Amended Consolidated Class Action Complaint ("FAC") has been filed by agreement of the Parties so that the class definition in the currently operative complaint is consistent with that of the settlement class definition in the Settlement Agreement. The FAC adds a common claim under the Electronic Funds Transfer Act. 15 U.S.C. 1693, *et seq*. ("EFTA") and NDTPA.

The proposed Settlement now before the Court relates to the cases which have been consolidated under a Consolidated Class Action Complaint in the above-entitled action (the "Complaint" or the "Action").

## C. Discovery and Mediation

Leading up to the filing of this proposed Settlement, the Parties participated in factual investigations, informal discovery and extensive negotiations including a mediation session on February 26, 2024 before the experienced complex litigation mediator Honorable Peggy A. Leen (Ret.) of JAMS.

During the mediation process – which continued beyond the initial February 26 session – the Parties reached a mutually agreeable compromise on the legal and factual issues presented. All negotiations were at arms-length, hard-fought, and at times, quite contentious. There was no discussion of attorneys' fees or service awards until the end of the mediation session after agreement had been reached on all material components of relief to the class.

Following settlement, Plaintiffs conducted confirmatory discovery. This discovery confirms that while the Parties continued to have major disagreements as to the merits of the claims, viability of Defendants' defenses, including governing law, the practices were similar in material respects, allowing for a class-wide settlement on common terms now memorialized in the Settlement Agreement.

## III. STANDARDS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS

The law favors compromise and settlement of class action suits. *See Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (noting "strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned") (citing *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)).[2] Ultimately, the approval of a proposed class action settlement is left

---

[2] *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (acknowledging the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 3:12-CV-06003-CRB, 2014 WL 7240144, at *4 (N.D. Cal. Dec. 19, 2014); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979) (Orrick, J.) ("[T]he court should remain cognizant of the overriding public interest in settling large class actions[.]"); Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ("*Newberg*"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

6

to the discretion of the trial court.  *See Rothfarb v. Hambrecht*, 649 F. Supp. 183, 237 (N.D. Cal. 1986) (Orrick, J.) ("The fee award is left to the discretion of the trial court.").

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval." [3]  *In re Syncor ERISA Litig.*, 516 F.3d at 1100; *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837 (1978).  This first step in the settlement process allows notice to issue to the class and for class members to object or opt-out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

The purpose of a preliminary approval hearing is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and to proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Id.* (internal quotation marks omitted) (*quoting* Manual for Complex Litigation, Second § 30.44 (1985)).

Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, because that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See id.*  Nevertheless, a review of the standards applied in determining whether a settlement should be given final approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at

---

[3] If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place.  *See Manual for Complex Litigation*, § 21.312 at 293-96 (4th ed. 2004).

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)).  While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998) (overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  Indeed, when a settlement is negotiated at arms-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Carlotti v. ASUS Computer Int'l*, No. 18-CV-03369-DMR, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted).  The Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate.  *Carlotti*, 2019 WL at *3.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement.  *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968) ("[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.").  Indeed, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017) (quoting *Officers for Justice*, 688 F.2d at 625); *see also Id.* ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.") (internal quotation marks omitted); *accord* Fed. R. Civ. P. 23(e)(2) (settlement must be "fair, reasonable, and adequate.").

## IV.    TERMS OF PROPOSED SETTLEMENT

Subject to this Court's approval, the Settlement Agreement ("Agreement" or "SA") will resolve all claims of the named Plaintiffs and all members of the Settlement Class who do not exclude themselves by opting out.  Set forth below is a summary which paraphrases the key terms of the Agreement.  Robinovitch Decl. ¶ 13, Ex. A.[4]

### A.    Certification of Class Settlement

The Parties have agreed and stipulated that the following Class can be certified under Fed. R. Civ. P. 23:

> All natural persons with a current or former paid Fight Pass subscription (i.e. Active or Inactive subscribers) within the Class Period in the following states: California, District of Columbia, Florida, Hawaii, Illinois, New York, North Carolina, North Dakota, Oregon, Virginia, Vermont.

SA § 1(r).  Excluded from the Settlement Class are: (1) all attorneys and employees of the Settlement Class Counsel; (2) any judicial officer to whom the Action is assigned; and (3) persons who validly opt out of the Class Action Settlement by following the procedures set forth in the Agreement.  SA § 1(r).  As described below, all requisite elements for Fed. R. Civ. Pr. 23(a) and 23(b)(3) are satisfied with respect to the Settlement Class.

### B.    Benefits of the Monetary Relief Settlement

#### 1.    Monetary and in-kind relief for class members.

The Settlement consists of the option for cash and non-cash benefits.  The total value of the cash benefit is $1,200,000.00.  Settlement Class Members will be entitled to the following relief:

(a) Active Class Members:

---

[4] For the sake of clarity, all future citations to the Settlement Agreement will be solely referred to as "SA".  The Agreement and its exhibits are attached to the Declaration of Hart Robinovitch as Exhibit A.

1.      Will receive a credit equal to two (2) months of free service (which currently has a retail price of $9.99 per month) to be applied by Defendants to their current Fight Pass subscription.

If, as of the Settlement Effective Date, an Active Class Member no longer maintains an active, paid Fight Pass subscription, this benefit will automatically convert to an electronic credit for two (2) months of free service applied towards a new or reactivated Fight Pass subscription.

OR

2.      May elect to receive a prorated cash payment of up to $9.99 from the Net Settlement Fund by submitting a valid and approved Claim form to the Settlement Administrator before the Claims Deadline.

If an Active Class Member does not make an election, such Active Class Member will automatically receive two (2) months of free service to their Fight Pass Subscription.

(b) Inactive Class Members[5] must elect to either:

1.      Receive a credit for two (2) months of free service applied towards a new or reactivated Fight Pass subscription;

OR

2.      Receive a prorated cash payment of up to $9.99 from the Net Settlement Fund

SA § 4.4.

**2.  Claims procedure.**

A Class Member Contact List will be compiled by Defendants and provided to the Claims Administrator no later than 21 days after the entry of the Court's order preliminarily approving the

---

[5] "Inactive" means Settlement Class Members who, as of the date their Claim is submitted, do not have an active, paid Fight Pass subscription. SA § 1(n).

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

Class Action Settlement.  Within 45 days of the Court's order, the Claims Administrator must provide notice to Class Members.  An e-mail notice shall be provided for those on the Class Member Contact List for whom an e-mail address was provided by Defendants.  *See* SA, Ex. B (E-mail Notice).[6]  The e-mail notice will provide a hyperlink allowing Class Members to access the Settlement Website.  E-mail will likely be the most reliable means of notification for potential class members.  SA § 7.3.1.

For Class Members for whom an e-mail address is unavailable, the Claims Administrator will send a Postcard Notice by regular mail.  *See* SA, Ex. C (Postcard Notice).  The Postcard Notice will include a tear-off claim form and a URL code that Members can scan to link directly to the Claim Form on the Settlement Website.  SA § 7.3.2.  If the Postcard Notice is returned as undeliverable, the Claims Administrator will perform a skip-trace or other customary address search to try and locate a valid address for the Class Member.  If a new mailing address is identified, a new Postcard Notice shall be sent.  SA § 7.3.1.

The Settlement Website will be published by the time the notices are sent.  It shall provide free of charge a viewable, printable, and downloadable copy of the following documents in PDF format: Settlement Agreement; operative Complaint; Court's (anticipated) order preliminarily approving the Class Action Settlement; Claim Form; and the long-form Settlement Class Notice.  *See* SA § 7.5, Ex. A (Claim Form).  The website will further contain a detailed notice explaining the settlement.  *See* SA, Ex. D (Notice).  The Settlement Website will also contain a Frequently Asked Questions section to provide answers to common questions claims members may present, as well as a portal to present questions to the Claims Administrator or Class Counsel.

Review of the proposed Long Form, Short Form, and Email Notice to Class shows that they inform the Settlement Class Members of the following: (1) the nature of the litigation; (2) the financial and other terms of the Agreement that are particularly significant for the Settlement Class

---

[6] The Notices attached to the Settlement Agreement are in a proposed form, the contents of which have been agreed upon by the parties.  Angeion Group has copies of the Notices and will finalize them upon granting the instant Motion.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

Members; (3) the procedure for and consequences of making a claim, opting-out, and objecting to the Agreement; and, (4) the date of final approval hearing set by the Court.  SA § 7.

To receive the Settlement benefits, active subscribers need not do anything—unless they wish to elect to receive the cash benefit in lieu of the two month subscription credit.  Inactive class members must complete and timely submit a Claim Form so the Claims Administrator knows which benefit option the class member elects to receive.  Such procedures are reasonable and designed to best distribute the settlement benefits to the class.

### 3.  Release of claims.

In consideration for the Settlement, Plaintiffs, and each Class Member who has not opted out, on behalf of themselves and any other legal or natural persons who may claim by, through or under them, shall be deemed to have and by operation of this Agreement and the Final Approval Order and Judgment shall have, fully, finally, irrevocably, and forever, released Defendants from any and all liabilities, claims, causes of action, damages (whether actual, compensatory, statutory, punitive or of any other type).  SA §§ 14.1-14.2.

### 4.  Opt-out procedure and objections.

Any Settlement Class Member has until 60 days after the Claims Administrator has sent the Settlement Class Notice to opt-out of the Settlement Agreement.  To do so, Class Members must send a letter by first class mail to the Claims Administrator containing (1) the title of the Action; (2) the full name, address, and telephone number of the person requesting exclusion; (3) a statement that he or she requests exclusion from the Settlement Class; and, (4) email or other such information sufficient to determine the Fight Pass subscription.  If a Class Member timely opts out, they shall: (a) have no right to receive any benefits from the Class Action Settlement; (b) not bound by the terms of the Class Action Settlement, including the release; and (c) have no right to object to the terms of the Class Action Settlement or to be heard at the final fairness hearing. SA § 11.1.

Regarding objections to the Settlement Agreement, Class Members have until 60 calendar days after the Claims Administrator has sent the Settlement Class Notice to object to the

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

Settlement.  Objections must be personally signed by the Class Member and include the case caption, Settlement Class Member's name and contact information, a statement of objector's belief they are a Class Member, a detailed factual and legal objecting statement for each objection, and a statement of whether the objector intents to appear at the final approval hearing and, if applicable, a statement identifying their counsel and their counsel's contact information.  SA § 10.

### 5. Claims administration.

Plaintiffs, with Defendants' assent, request that the Court appoint Angeion Group LLC as the Claims Administrator.  Angeion Group LLC is a well-known, reputable claims administration company with significant experience in electronic notice issues.  *See generally*, www.angeiongroup.com.  As the Claims Administrator, Angeion Group LLC will be charged with the following: (1) administering the process of notifying the Settlement Class; (2) receiving, processing and paying claims, Settlement Class Counsel's approved attorneys' fees and costs, and the Settlement Class Representatives' approved service awards; (3) opening and maintaining bank accounts and maintaining the Gross Settlement Amount and Net Settlement Fund; (4) complying with all tax-reporting obligations such as issuing and mailing to Settlement Class Members any necessary United States Internal Revenue Service 1099 Forms; (5) obtaining any necessary information from Settlement Class Counsel, the Settlement Class Representative and Authorized Claimants for tax reporting purposes; and (6) carrying out any other duties necessary to administer the Class Action Settlement and/or to which the Parties otherwise agree in writing.  SA § 4.1, § 5 §7.  The cost of the Claims Administrator will be deducted from the Gross Settlement Amount. *Id*.

### 6. Class representative service awards.

Each Settlement Class Representative is eligible to receive a service award of up to $2,500.00 as consideration for their efforts in prosecuting the Action and accepting litigation risks. Defendants will not oppose this so long as the service awards do not exceed $12,500.00 total.

Other than the value of individual claims as a Settlement Class Member, the amount ultimately ordered by the Court shall be the only consideration paid to the Settlement Class Representatives and shall be paid out of the Gross Settlement Amount. SA § 4.3.

Enhancement awards like the ones requested here are appropriate. Unlike unnamed Class members, who will enjoy the benefits of the Plaintiffs' efforts without taking any personal action, the named Plaintiffs made themselves available as witnesses, subjected themselves to all the obligations of named parties, and assumed certain risks. Incentive awards, which serve as premiums in addition to any claims-based recovery from the Settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000); *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003); Manual for Complex Litigation § 21.62, n. 971 (4th ed. 2004) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). Any amounts sought here will be modest in amount and reasonable. No amounts have been promised to any proposed Class Representative and the amount of any Service Award awarded, if any, is in the Court's discretion.

### 7. Attorneys' fees and expenses.

Class Counsel shall have the right to make a motion for attorneys' fees of no more than one-third of the Gross Settlement Amount, amounting to $400,000, plus actual out-of-pocket costs. Defendants shall not be liable for any payment to Settlement Class Counsel other than the above-described award of attorneys' fees and costs to be paid out of the Gross Settlement Amount regardless of any potential objection or appeal. SA § 4.2.

## V. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE FAIR, ADEQUATE, AND REASONABLE CLASS SETTLEMENT

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When making this determination, the Ninth Circuit has instructed district courts to balance several factors: (1) "the strength of the plaintiffs' case;" (2) "the risk, expense, complexity,

and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" and (5) "the extent of discovery completed and the stage of the proceedings."[7]  *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566 (9th Cir. 2004) (same); *Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282-KJM-AC, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO Logistics, Inc.*, No. 16-CV-01231-WHO, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019).

In addition to these factors, courts should also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  There is significant overlap between the Rule 23(e)(2) and *Hanlon* factors, which complement, rather than displace each other.

A.    The *Hanlon* Factors.

1.    Strength of Plaintiffs' case.

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625.  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto.*

---

[7] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at that time.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

1    *Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing

2    *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

3    Under California ARL, as with all class states,[8] Defendants were, and are, required to

4    disclose the following "clearly and conspicuously"[9] and in visual proximity to their request for

5    consent (pre-purchase disclosure requirement) on their Fight Pass Autorenewal CHECKOUT

6    webpage and on the Confirmation Email (post-purchase disclosure requirement): "(1) That the

7    subscription or purchasing agreement will continue until the consumer cancels. (2) The description

8    of the cancellation policy that applies to the offer. (3) The recurring charges that will be charged

9    to the consumer … as part of the automatic renewal plan or arrangement, and that the amount of

10   the charge may change, if that is the case, and the amount to which the charge will change, if

11   known. (4) The length of the automatic renewal term … unless the length of the term is chosen by

12   the consumer. (5) the minimum purchase obligation, if any." Cal. Bus. & Prof. Code §§

13   17601(b)(1)-(5); 17602(a)(1) (clear, conspicuous, and visual proximate disclosure of automatic

14   renewal offer terms prior to the request for consent to the purchase); 17602(a)(3) (required

15   disclosure of the automatic renewal offer terms in the post-purchase acknowledgment, *i.e.*,

16   Defendants' Confirmation Email).

17   Importantly, Plaintiffs alleged that Defendants' statutorily required disclosures cannot be

18   satisfied by hyperlink and must actually appear on the CHECKOUT webpage and on the

19   Confirmation Email. *Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1140 (S.D. Cal.

20   2021) (The [automatic renewal offer] terms themselves—not the access point to them—need to be

21   in visual proximity to the request."); *id.* at 1140 n. 6 (The ARL arose from, and was intended to,

22

23   _____

24   [8] *Compare with* D.C. Code § 28A-203, Fla. Stat. Ann. § 501.165; Haw. Rev. Stat. Ann. § 481-9.5, 815 Ill. Comp. Stat. Ann. 601/10, N.Y. Gen. Bus. Law § 527-a, N.C. Gen. Stat. § 75-41, N.D.

25   Cent. Code Ann. § 51-37-02, Or. Rev. St. § 646A.295, Va. Code Ann. § 59.1-207-46, and Vt. Stat. Ann. Tit. 9, § 2454a.

26   [9] "Clearly and conspicuously" is defined to mean "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the

27   surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

16

28

thwart the practice of burying material autorenewal terms in "fine print," which the use of a hyperlink to the terms presents a similar practice); *Daly v. Amazon.com, Inc.*, 718 F. Supp. 3d 1378, 1388-89 (W.D. Wash. 2024) (providing in the post-purchase acknowledgment that consumers may "cancel any time" and simply including hyperlinks with instructions did not satisfy ARL section 7602(a)(3)); *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d. 1058, 1072 (S.D. Cal. 2018) (holding defendant's confirmation email did not satisfy California ARL because it omitted defendant's cancellation policy from the email itself).[10] Finally, Defendants' alleged failure to follow the ARL's pre-purchase disclosure requirement pursuant to ARL section 17602(a)(1) results in a failure to obtain consumer affirmative consent to the Fight Pass Autorenewal. *See* Cal. Bus. & Prof. Code § 17602(a)(2).

In tandem with the California ALR, the EFTA's primary objective is to protect consumers, *see* 15 U.S.C. § 1693(b), and the statute prohibits preauthorized electronic transfers without written authorization and requires that consumers be provided a copy of any such written authorization. *Id.* § 1693e(a); *see also* 12 C.F.R. § 205.10(b). Plaintiffs' allegations give rise to EFTA claims because Plaintiffs allege that Defendants do not provide automatic renewal terms, "clearly and conspicuously" and in "visual proximity" to its request for consent to the Fight Pass Autorenewal charges upon enrollment.

Additionally, the NDPTA prohibits several deceptive acts, including, advertising goods or services with the intent not to sell as advertised, failure to disclose a material fact in the sale of a good or service, and violating a state or federal statute or regulation relating to the sale of a good or service. Nev. Rev. Stat. §§ 598.0915(9); 598.0923(1)(b); 598.0923(1)(c).

---

[10] *See also Morrell v. WW Int'l, Inc.*, 551 F. Supp. 3d 173, 185-86 (S.D.N.Y. 2021) (holding that an acknowledgment email merely instructing customers to find "instructions on how to cancel… in the Help section of the site[,]" providing "no summary of, or clear means of accessing, the cancellation policy[,]" and failing to provide a "timely" or "easy-to-use" cancellation method but simply directing customers to the "Help" page failed to meet the requirements of California ARL section 17602(a)(3)).

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

Here, Plaintiffs allege, and show with screenshots, Defendants' common failures to properly disclose the Fight Pass Autorenewal offer terms and the charging of Plaintiffs, and the Class Members, without their affirmative consent.  FAC ¶¶ 28-30, 40-44, 46-59.  Plaintiffs also allege, and demonstrate how, in violation of the EFTA, Defendants engage in the unauthorized electronic transfer of funds by the same conduct.  *Id.*  And Plaintiffs also allege, and show with common screenshots from the same program, how Defendants' Fight Pass Autorenewal is advertised as a single transaction when it is in fact an automatically renewing subscription, FAC ¶¶ 46, 51 (Defendants' Fight Pass Autorenewal CHECKOUT webpage does not affirmatively inform consumers that their purchase will automatically renew unless and until canceled), 48-49 (screenshots giving impression that consumers are purchasing as a single pay-per-view fight), in violation of the NDTPA.  *See* Nev. Rev. Stat. §§ 598.0915(9); 598.0923(1)(b).  Moreover, as alleged, and illustrated above, Defendants' violations of the ARL and EFTA form the predicate violations of state and federal statutes or regulations relating to automatic renewals and electronic monetary transactions in violation of NDTPA section 598.0923(1)(c).  *See* FAC ¶¶ 40-59, 132-152.

Class Counsel became thoroughly familiar with the applicable facts, legal theories, and defenses on both sides before engaging in arms-length negotiations with Defendants' counsel.  *See* Robinovitch Decl. ¶¶ 22-24.  Although Plaintiffs and Class Counsel have confidence in their claims, they recognize that a favorable outcome was not assured and that they would face risks at class certification, summary judgment, and trial.  *Id.* ¶¶ 18, 22-24.

Defendants fully deny Plaintiffs' allegations asserting they comply with the relevant statutes.  Further, there is no doubt that Defendants would present a vigorous defense at trial, and there are no assurances that the Class would prevail or, even if the Class did prevail, that they would be able to obtain an award of damages significantly more than achieved here absent such risks.  The Settlement abrogates these risks to Plaintiffs and the Class and secures a positive recovery for each class member.  *See Rodriguez*, 563 F.3d at 956-66 ("[O]ne factor that may bear on review of a settlement is the advantages of the proposed settlement versus the probable outcome

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members[.]") (citation and internal quotations omitted).  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an opportunity to obtain relief at this stage in the litigation and eliminates the risk of non-recovery and the need to advance significant costs for items like expert witness, on a contingent basis.

### 2. Risk of continuing litigation.

Given the risks associated with continued litigation, approval of the proposed settlement is appropriate.  Generally, acceptance and approval of settlement is preferable to litigation, unless the settlement in "clearly inadequate," *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004), and settlements are "favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (citing *Rodriguez*, 563 F.3d at 966). By reaching a favorable settlement now, Plaintiffs seek to avoid significant expense and delay, and better assure recovery for the class.

As discussed above, the Parties engaged in informal discovery prior to mediation. Robinovitch Decl. ¶ 12.  The facts on which the settlement was negotiated are subject to confirmatory discovery.

Barring settlement approval, Plaintiffs would have to oppose Defendants' Motion to Dismiss and resolution by the Court, engage in prolonged discovery, including Party depositions and substantial written discovery, contested motions for class certification and summary judgment, which would cost substantial time and expense, and would create the risk that a litigation class would not be certified or that the Settlement Class would not recover at all.  For example, Plaintiffs are aware that Defendants would assert defenses on the merits because, according to Defendants, they presented all of the requisite pre-purchase and post-purchase disclosures and obtained Plaintiffs' affirmative consent to the automatically renewing Fight Pass Autorenewal in compliance with the ARL and consumer protection laws.  Furthermore, Defendants would challenge Plaintiffs' standing under consumer protection statutes, including Plaintiffs' ability to

show that Defendants' conduct caused any economic injury. Plaintiffs were also aware that Defendants would oppose class certification because Defendants would contend that Plaintiffs are not entitled to bring at least some of their claims on a class-wide basis and that Plaintiffs may not present a workable damages model. With regard to damages under the ARL, courts are split. The Ninth Circuit has allowed claims that seek a full refund of amounts paid under the "unconditional gift" language in the ARL, while state courts have adopted a narrower interpretation. *Compare Johnson v. Pluralsight, LLC*, 728 Fed.App'x. 674 (9th Cir. 2018) with *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 575-76 (2020). Application of both tests remained in dispute through the negotiations because Defendants argued that Nevada law applied to all class members' claims based on its Terms of Use. This settlement resolves those disputes and guarantees a common recovery to class members.

Even if Plaintiffs survived all of the above challenges, and summary judgment, they would likely face the risk of establishing liability at trial as a result of conflicting expert testimony. If the unconditional gift damage model argued under California law and *Pluralsight* was disallowed, experts would be required to conduct a conjoint analysis to compute damages–both a costly and time consuming endeavor. In this "battle of experts," it is virtually impossible to predict with any certainty which expert the jury would accept. Experience of Class Counsel has taught them that these considerations can make the ultimate outcome at trial highly uncertain. Additionally, looking beyond trial, Defendants could appeal the merits of any adverse decision. Even if Plaintiffs were to prevail at every stage of litigation, there remains a substantial likelihood that Class Members would not be awarded significantly more (or even as much as) is offered to them under the Settlement, especially considering the added costs of such litigation.

In sum, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, . . . a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4). The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than

20

if the case proceeded to judgment through trial and/or appeals, and provides certainty. "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

### 3. Risk of maintaining class action status.

Plaintiffs also face risks in certifying a class and maintaining class status through trial. The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would be reached only after decision on Defendants' Motion to Dismiss, discovery is completed, and exhaustive class certification briefing is filed. Moreover, even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Class Counsel anticipates that, should the Court certify the class, Defendants may appeal the Court's decision through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-CV-01570-MMC, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015). The Settlement eliminates these risks, expenses, and delay.

### 4. The amount offered in settlement.

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp*, 283 F. Supp. 3d at 832 (citing *Rodriguez,* 563 F.3d at 965). Instead, the Court's analysis of whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice." *Id.* In assessing the consideration available to Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*,

688 F.2d at 628). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. Indeed, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citation omitted).

Here, the cash value of the proposed Settlement is $1,200,000.00 consisting of cash or in-kind relief for all Active Class Members without submission of a claim form and Inactive Class Members who submit a claim, as well as the payment of attorneys' fees and costs. SA § 4.5. Current subscribers will automatically receive settlement benefits in the form of a two month subscription, valued at $19.99 total, while maintaining their right to submit a claim form to make a cash election up to $9.99. SA § 4.4. Inactive subscriber class members can submit a claim form to elect to receive the two month credit of a cash benefit. *Id.* Thus, Class Members receive real and substantial dollar value through the Settlement. *See Knapp*, 283 F. Supp. 3d at 833 ("[C]lass members who choose to use their voucher have the opportunity to realize a $10 value."). While the class recovery is less than the amount of full recovery pursuant to the "unconditional gift" provision of the ARL, *see* Cal. Bus. & Prof. Code § 17603, recent decisions can be read to call full restitution into question as a theory of class recovery. *See Mayron*, 54 Cal. App. 5th at 575-76. The Settlement Fund of $1,200,000.00 is sufficient to fund the distributions to the class after deduction of reasonable attorneys' fees and costs, as well as the costs of the claims administrator.[11]

Additionally, Defendants have agreed to pay the costs of notice, administration, and reasonable attorneys' fees and costs for Class Counsel from the all-in fund established by the Settlement. SA § 4. Defendants are also making certain changes to the Fight Pass website, which provides a benefit to the Class. *see also Knapp*, 283 F. Supp. 3d at 833 ("The Settlement

---

[11]   While final costs cannot be tabulated prior to final approval, Class Counsel currently estimates that litigation costs of counsel, as well as those of the Claims Administrator will be approximately $90,000.00-100,000.00.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

Agreement also provides for injunctive relief, so class members that choose to continue doing business with [the defendant] will benefit from this aspect as well.").

Moreover, when judging the adequacy of this Settlement compared to settlements in other ARL matters, the proposed Settlement plainly meets those in other ARL cases. For example, the Southern District of New York recently granted preliminary approval to a similar class-wide settlement under California's ARL having a common fund in the amount of $2,375,000.00 for a class of approximately 855,000 members. *Moses v. The New York Times Company*, No. 1:20-cv-04658 (S.D.N.Y.) ("*Moses*"); Robinovitch Decl., Ex. B (Plaintiff's Unopposed Motion for Preliminary Approval, *Moses*, ECF No. 42), Ex. C (Plaintiff's Motion for Settlement Preliminary Approval, *Moses*, ECF. No. 78), Ex. D (Order granting Preliminary Approval, *Moses*, ECF. No. 79). Further, the Northern District of California granted preliminary approval for a class-wide settlement under California's ARL, with a settlement fund of $2,400,000.00 for a class of approximately 321,600 members. *Jordan v. WP Company LLC*, 3:20-cv-05218 (N.D. Cal.) ("*Jordan*"); Robinovitch Decl., Ex. E at 19-22, 24 (Plaintiff's Motion for Settlement Unopposed Motion for Preliminary Approval, *Jordan*, ECF No. 46); Ex. F (Order granting Preliminary Approval, *Jordan*, ECF No. 50).

The proposed Settlement distributes comparable cash to proportionately the same, or more, persons in both *Jordan* and *Moses*, resulting in significant relief per Class Member. SA § 4.5. Weighing the benefits of the proposed Settlement against the risks associated with continued litigation and in collecting on any judgment, the proposed Settlement is more than reasonable.

### 5.    The extent of discovery.

Courts also evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000). Plaintiffs, by and through their counsel, have conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation, through: (i) review of information produced by Defendants through informal discovery regarding the number of Fight Pass transactions and other financial

data; (ii) the review of other publicly available reports and tests concerning the Fight Pass Autorenewal; and (iii) review of publicly available information regarding Defendants, Defendants' business practices, and involvement in prior litigation. *See* Robinovitch Decl. ¶ 23. The Parties also held telephonic and written discussions regarding Plaintiffs' allegations, discovery, and the prospects of settlement, as well a mediation session with JAMS neutral Peggy A. Leen. *Id.* ¶ 24. Thus, the proposed Settlement is the result of fully-informed negotiations following sufficient informal discovery and exchange of information.

### 6. Experience and views of counsel.

The judgment of experienced counsel regarding the Settlement is entitled to great weight. *Harris v. U.S. Physical Therapy, Inc.*, No. 2:10-cv-01508-JCM, 2012 WL 3277278, at *7 (D. Nev. July 18, 2012), *report and recommendation adopted,* No. 2:10-CV-1508-JCM, 2012 WL 3277276 (D. Nev. Aug. 9, 2012) ("Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the settlement should is fair, reasonable, and adequate, the court finds that this factor weighs in favor of granting preliminary approval of the settlement.") (citing *City of Seattle*, 955 F.2d at 1291); *see also*, *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd*, 485 F. Supp. at 622. Here, counsel for the Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiffs' Counsel here have extensive experience in prosecuting and litigating consumer class action cases. Robinovitch Decl. ¶¶ 25-42. Here, proposed Class Counsel have conducted extensive investigation in this case, and demanded information in advance of the mediation and in discussions with defendants' counsel. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate under the applicable factors weighs heavily in favor of this Court's approval of the Settlement.

1

### B.   Rule 23(e)(2) Factors.

2

#### 1.   The class representatives and class counsel have adequately represented the class (Rule 23(e)(2)(A)).

3

4    As is discussed further below, Plaintiffs' interests here are aligned with other class

5    members' interests because they all claim to have suffered the same injuries: paying a fee to

6    Defendants due to their automatic renewal process.  Because Plaintiffs and the Class suffered these

7    alleged injuries as a result of Defendants' common course of conduct, Plaintiffs have an interest

8    in vigorously pursuing the claims of the class.  Further, as elaborated upon below, Plaintiffs'

9    attorneys have extensive experience, Robinovitch Decl. ¶¶ 25-42, and have more than adequately

10   met the obligations and responsibilities of Class Counsel.  This factor thus favors preliminary

11   approval.

#### 2.   The settlement was negotiated at arm's length.

12

13   This proposed Settlement is the result of extensive negotiations, including an intensive

14   mediation session conducted by Honorable Peggy A. Leen (Ret.) on February 26, 2024.  *Id.* ¶¶ 6,

15   24.  The Parties have investigated the facts and analyzed the relevant legal issues regarding the

16   claims and defenses asserted in the Action.  *Id.* ¶ 22.  Prior to mediation, Plaintiffs engaged in

17   informal discovery, reviewed information provided by Defendants, retained and consulted with an

18   expert concerning auto-renewals and similar streaming issues.  *Id.* ¶ 23.  Under such

19   circumstances, the proposed Settlement is entitled to a presumption of reasonableness, and the

20   Court is entitled to rely upon counsel's opinions and assessments.  *See Perks v. Activehours, Inc.*,

21   No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) ("[T]he Court found

22   that Class Counsel have substantial experience in litigating and settling consumer class actions.

23   Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information

24   to make an informed decision about the Settlement and about the legal and factual risks of the case.

25   … The Settlement was also the product of arm's-length negotiations through mediation sessions

26   and follow-up communications supervised by [an experienced neutral]. There is no indication of

27   any collusion between the parties."); *Boyd v. Avanquest N. Am. Inc.*, No. 12-CV-04391-WHO,

28

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

2015 WL 4396137, at \*3 (N.D. Cal. July 17, 2015) ("[U]se of mediator 'tends to support the conclusion that the settlement process was not collusive.'") (citations omitted).

### 3. The settlement provides adequate relief to the class.

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon* factors including: "the risk, expense, complexity, and likely duration of further litigation" and "the risk of maintaining class action status throughout the trial" and "the amount offered in settlement." As noted above, the Settlement satisfies all *Hanlon* factors. *Supra* sections V.A.1–6. As to "any agreement required to be identified by Rule 23(e)(3)," no such agreement exists in this case other than the Settlement.

Regarding "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605 JVS (SSX), 2020 WL 7314793, at \*6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*. Here, under the terms of the proposed Settlement, Active Class Members will automatically receive credit for two (2) free months applied to their current Fight Pass Autorenewal or, upon their election, a *pro rata* payment from the Settlement Fund. SA § 7.7. And Inactive Class Members may elect to receive credit for two (2) free months of free service applied to a new or reactivated Fight Pass Autorenewal or, upon their election, a *pro rata* cash payment from the Settlement Fund. *Id*. The claims process here is only required for Settlement Class Members who opt to elect cash or those Inactive Members who already cancelled Fight Pass. And just as in *Alvarez*, cash election merely "requires logging on to the Settlement Website and submitting a Claim there, or a Settlement Class Member

may print the Claim form from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer." *Alvarez*, 2020 WL 7314793, at *6; SA § 4.4. The Court should thus find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective." *Alvarez*, 2020 WL 7314793, at *6.

Next, with respect to "the terms of any proposed award of attorneys' fees," Class Counsel will apply for attorneys' fees, not to exceed "more than one-third of the Gross Settlement Amount ($400,000)" plus costs. SA § 4.2. The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund; (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiffs and the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, proposed Class Counsel has easily satisfied each factor.

First, Class Counsel has secured a settlement consisting of monetary relief with a total value of $1,200,000.00 and other in kind relief bringing the total value much higher. This is an excellent result. *Supra* section V.A.4.

Second, Plaintiffs have established that there are significant risks in entering protracted litigation. *Supra* sections V.A.2-3. Thus, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4. "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Id.* (citing *Rodriguez*, 563 F.3d at 966). "Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources." *Id.* (citation omitted). "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

Third, Class Counsel's time and efforts in this litigation have generated benefits beyond the Class settlement fund. SA § 4.6 (agreement that Defendants "must take reasonable steps to modify their Fight Pass Subscription enrollment process to comply with applicable auto-renewal laws"). SA § 4.5.

Fourth, Class Counsel's requested fee is consistent with market rates as reflected by awards made in similar cases. Indeed, courts in this Circuit routinely approve fees request for up to one-third of a common fund. *See, e.g., Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014 WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (awarding 33% of settlement fund in attorneys' fees); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (awarding 33% in fees); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 460 (9th Cir. 2000), *as amended* (June 19, 2000) (affirming 33.5% fee award); *Linney*, 1997 WL 450064 at *7 (affirming 33.3% fee award) ("The $2,000,000 requested by class counsel amounts to one-third of this common fund. … Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured for the class.") (citations omitted); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379 (affirming 33% fee award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding fee of 32.8%); *Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding 36% of $8,200,000 settlement fund in fees).

Finally, the requested fees are also fair given the significant time Class Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all absent successful resolution. It is expected that once all professional time is calculated prior to final approval, Class Counsel's fee request will not involve a significant positive multiplier. Thus, because of the contingent nature of the fee and the financial burden carried by Plaintiffs and the Class, Plaintiffs' Counsels' requested fee award of one-third of the total Settlement Value is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048-50.

The Settlement thus provides adequate relief to the Class pursuant to Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

### 4. The settlement treats all class members equally.

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). In assessing this factor, "the Court considers whether the proposal "'improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Id.* (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079).

Here, Active Class Members are treated equally and receive an automatic credit for two months of free service or may elect a cash payment up to $9.99. Inactive Class Members (i.e. those who cancelled their automatic renewal) are treated equally and must elect either a credit for two months of free service[12] or cash payment up to $9.99. Cash relief to those who submit a claim, for both Active and Inactive class members, is made on a *pro rata* basis. SA § 4.4. Courts in this Circuit have found that allocating Settlement benefits among Class Members in this manner is equitable. *See Perks*, 2021 WL 1146038, at *6 ("This *pro rata* distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages."); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *Avanquest*, 2015 WL 4396137, at *3 ("[T]he proposed settlement agreement 'does not improperly grant preferential treatment to class representatives or segments of the class[]' because all class members are treated in the same way and there is no difference in treatment throughout the class.") (internal citations omitted) (quoting *State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014)).

---

[12]  Inactive Class Members must make an election because the Parties do not want to enroll customers without consent.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF

Finally, any undistributed funds will go as a *cy pres* distribution equally between Public Citizen and Public Justice, national consumer rights organizations. *See generally*, https://www.citizen.org/ and https://www.publicjustice.net. Accordingly, the *cy pres* funds will best approximate the class by continuing to be used to support consumer's rights against allegedly deceptive business practices, indirectly benefiting all class members here. This satisfies the requirements for a *cy pres* award in the Ninth Circuit. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990); SA § 4.8. Thus, this factor weighs in favor of granting approval.

## VI. CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiffs request that the Court provisionally certify a multistate class for settlement purposes. The Settlement Class is defined as:

> All natural persons with a current or former paid Fight Pass subscription (i.e. Active or Inactive subscribers) within the Class Period in the following states: California, District of Columbia, Florida, Hawaii, Illinois, New York, North Carolina, North Dakota, Oregon, Virginia, Vermont.

SA § 1(r).

Provisional certification permits notice of the proposed Settlement to the Class to inform Class members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt-out or object, and of the date, time, and place of the formal fairness hearing. *See* Manual for Complex Litig., §§ 21.632, 21.633.

The decision whether to certify these actions as class actions is committed to the sound discretion of this Court within the guidelines set forth in Fed. R. Civ. P. 23. *See, e.g.*, *Hanlon*, 150 F.3d at 1026; *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 384 (C.D. Cal. 2007). In exercising its discretion, however, this Court is obliged to "accept[] the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." *Foster v. City of Oakland*, No. C 05-03110 MHP, 2007 WL 219796, at *5 (N.D. Cal. Jan. 29, 2007); *see also*, *Blackie v. Barrack*, 524 F.2d 891, 901

n.17 (9th Cir. 1975). "The merits of the class members' substantive claims are generally irrelevant to this inquiry." *Foster*, 2007 WL 219796, at *5.

The courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *White v. Imperial Adjustment Corp.*, No. CIV.A. 99-3804, 2002 WL 1809084, at *15 (E.D. La. Aug. 6, 2002), *aff'd in part, appeal dismissed in part and remanded,* 75 F. App'x 972 (5th Cir. 2003); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment"). As set forth below, there is no basis for regarding these consumer claims any differently. In fact, the Ninth Circuit in *Hanlon*, 150 F.3d at 1026, specifically approved the class certification of a similar nationwide class for settlement purposes. *See also, In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 8:10ML02151 JVS FMOX, 2012 WL 7802852 at *5, (C.D. Cal. Dec. 28, 2012); *In re Toyota*, 2013 WL 3224585, at *5 (C.D. Cal. June 17, 2013) (same).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, all applicable Rule 23 requirements are met, and Defendants consent to provisional certification for settlement purposes. Thus, preliminary approval should be granted.

### A.    The Class Satisfies Rule 23(a).

#### 1.    Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); *Hanlon*, 150 F.3d at 1019. There is no exact numerical formula that determines numerosity. *Hernandez v. Alexander*, 152 F.R.D. 192, 194 (D. Nev. 1993). But numerosity can be presumed with as few as forty members. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) ("Courts generally find numerosity satisfied if the class includes forty or more members.") (citations omitted). Here, the proposed Settlement Class includes approximately 85,000 class members who were enrolled in and charged for a Fight Pass Autorenewal during the Class Period. Robinovitch Decl. ¶ 16. Numerosity is thus satisfied.

#### 2.    Commonality

Rule 23(a)(2) requires the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2). Commonality "means that [the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quotation omitted). Commonality is liberally construed, and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019-20.

The commonality and predominance requirements are satisfied here. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (1) whether Defendants presented all statutorily-required automatic renewal offer terms and cancellation policy in a manner that is clear and conspicuous and in visual proximity to a request for consent to the offer within the meaning of the ARL; (2) whether Defendants provided the post-transaction acknowledgment disclosures required by section 17602(a)(3) of the ARL; (3) Defendants' policies, practices and procedures for obtaining affirmative consent from their California consumers before charging their Billing Information; (4) whether the EFTA was

violated; and (5) whether the NDTPA was violated.  FAC ¶¶ 40-59.  Defendants' Fight Pass Autorenewal enrollment process is online and uniform for every consumer who is enrolled in the subscription.  *Id.* ¶¶ 44, 59.  Courts considering almost identical claims resulting from uniform conduct routinely certify classes based on evidence of common policy.  *See, e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("Courts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar," involving consumer products).

Plaintiffs also brought their claims under legal theories common to the Class as a whole and that alone is sufficient to establish commonality.  *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  Here, all legal theories asserted by Plaintiffs, including those under the EFTA, NDTPA, and common law are common to all Class members.  *See* FAC ¶¶ 63, 96-101, 112-152.  Commonality is satisfied.

### 3.  Typicality.

Rule 23(a)(3) requires that the class representatives' claims are typical of the class.  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'"  *Hanlon*, 150 F.3d at 1020.  The focus is "on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."  *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009).  To meet this requirement, Plaintiffs need only demonstrate that members of the settlement class have the same or similar grievance.  *See Gen. Tel. Co. of Sw. Falcon*, 457 U.S. 147, 161 (1982).

Plaintiffs' claims are typical of the claims of the class members in that they were enrolled into a Fight Pass Autorenewal using a common online process, received the exact same inadequate pre-transaction disclosures as received by all members of the class, and similarly received inadequate post-transaction acknowledgments that failed to include the information required under

section 17602(a)(3).  FAC ¶¶ 40-59, 64.  Plaintiffs' claims are further typical in that they were charged for automatic renewal fees without Defendants having first obtained their affirmative consent to an agreement containing clear and conspicuous disclosures of all Fight Pass Autorenewal offer terms.  *Id.*  Thus, because Plaintiffs' claims arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and [their] claims were based on the same legal theory," *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (internal citations omitted), Plaintiffs' claims are typical.

### 4. Adequacy.

The final threshold prerequisite for class certification is that the named plaintiffs be able fairly and adequately to protect the interests of the class.  This determination turns on just two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton*, 327 F.3d at 957; *Santoro v. Aargon Agency*, *Inc.*, 252 F.R.D. 675, 682 (D. Nev. 2008), *as corrected* (Oct 21, 2008).

Both components of the "adequacy" test are met here.  Plaintiffs have actively pursued this litigation on behalf of the Class Members, and share an identical interest in establishing Defendants' liability and obtaining a suitable remedy for Defendants' violation of the ARL.  The proposed Class Representatives have suffered economic loss from the same conduct of Defendants.  Similarly, the proposed Class Representatives have actively participated in and kept abreast of the litigation while it developed.  There can be no argument that Plaintiffs will adequately represent the Class and have no conflicts or positions antagonistic to the Class.

The undersigned proposed counsel similarly satisfy the adequacy requirement and should be appointed Class Counsel.  In retaining the undersigned law firms, the Plaintiffs and proposed Class Representatives have employed counsel who are "qualified, experienced, and generally able to conduct the proposed litigation."  *Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009), *aff'd*, 687 F.3d 1162 (9th Cir. 2012) (internal quotation). With a litany of experience in class action and other complex litigation that proposed Class

34

Counsel bring, there can be no doubt that they are adequate to represent the Settlement Class here. *See generally* Robinovitch Decl. ¶¶ 25-42, Ex. G, H, I.

**B.      The Class Satisfies Rule 23(b)(3).**

This action is well-suited for certification under Rule 23(b)(3) because, particularly in the context of this Settlement, questions common to the Class Members predominate over questions affecting only individual Class Members, and the class action device provides the best method for the fair and efficient resolution of the Class's claims.   Indeed, Defendants do not oppose provisional class certification for the purpose of effectuating the proposed Settlement.   When addressing the propriety of class certification, the Court should take into account the fact that, in light of the settlement, trial will now be unnecessary, and that the manageability of the Class for trial purposes and need to calculate damages is not relevant to the Court's inquiry.   *See Amchem*, 521 U.S. 591; *Hanlon*, 150 F.3d at 1021-23.

**1.      Common questions predominate.**

A class action is appropriate under 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members..." Fed. R. Civ. P. 23(b)(3).   "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Here, as the proposed Settlement is structured, common questions of law and fact predominate over individual issues.   Certain manageability concerns are eliminated as there will no longer be a trial and certain objections are waived.   Thus, the predominance requirement is satisfied.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."   *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 117 S.Ct. at 2249).   If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance

test is satisfied.  *Id.* at 1022.  There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position.  The main concern is "the balance between individual and common issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

As explained above, *supra* section VI.A.2, common issues predominate here.  The evidence necessary to establish Plaintiffs' claims is common to both the Class Representatives and Class Members—they would all seek to prove that Defendants' violation of the ARL.

## 2. Class action is superior.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."  *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Rule 23(b)(3)'s non-exclusive factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties managing a class action."

All of these factors are present here as it is clear that managing these disputes in a single class action before a single judge is preferable and more manageable than to require thousands of consumers to each bring individual actions where the filing fees alone would likely exceed the value of any potential recovery.  The more likely outcome in that situation would be the absence of any actions and no remedy being provided to any Class Members.

## VII.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CO-CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation,

and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer class actions in general. *See supra* section VI.A.4. As a result of their zealous efforts in this case, proposed Class Counsel have secured substantial monetary relief to the Settlement Class Members. Thus, the Court should appoint Hart L. Robinovitch of Zimmerman Reed LLP, Timothy Fisher of Bursor & Fisher, P.A., and Chad Saunders of Cronser Legal, P.C. as Class Counsel.

**VIII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED**

> **A.    The Content of the Proposed Class Notice Complies with Rule 23(c)(2).**

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:(i) the nature of the action;(ii) the definition of the class certified;(iii) the class claims, issues, or defenses;(iv) that a class member may enter an appearance through an attorney if the member so desires;(v) that the court will exclude from the class any member who requests exclusion;(vi) the time and manner for requesting exclusion; and(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the proposed Notice provides detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and an incentive award for Named Plaintiffs; and (3) a detailed explanation of the Released Claims. SA § 7, Ex. B, C, D. The Notice also provides information about the final approval hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (and the deadlines and procedure for doing so), and how to receive additional information. SA §§ 7.6–7.7, 10, 11. In sum, the Notice Plan fully informs the Class Members of the lawsuit and the proposed Settlement and provides them with the necessary information to make an informed decision. The detailed information in the proposed Notice goes well beyond the requirements of the Federal Rules.

**B.    Distribution of the Class Notice Will Comply with Rule 23(c)(2).**

The Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of Rule 23 and due process. Notice will be accomplished primarily through email, with Postcard Notices to be mailed to Class Members who have not provided or which an e-mail address is unavailable.  Defendants possess Class Members' emails or mailing addresses and can provide them to the Claims Administrator to send the Email Notice, for those in which contact information is not available the Administrator will take steps to obtain.  *See* SA, § 7, SA Ex. B (E-mail Notice). The e-mail notice will provide a GUID link allowing Class Members to access the Settlement Website.  E-mail will likely be the most reliable means of notification for potential class members as that is the method by which class members communicated with Defendants in the ordinary course of business.

For Class Members for whom an e-mail address is now unavailable, the Claims Administrator will send a Postcard Notice by regular mail.  *See* SA, Ex. C (Postcard Notice).  The Postcard Notice will include a tear-off claim form and a URL Code that Members can use to directly access the Claim Form on the Settlement Website.  If the Postcard Notice is returned as undeliverable, the Claims Administrator will perform a skip-trace or other customary address search to locate a valid address for the Class Member.  If a new mailing address is identified, a new Postcard Notice shall be sent.

The Settlement Website will be published prior to the notices being sent.  It shall provide free of charge a viewable, printable, and downloadable copy of the following documents in PDF format: Settlement Agreement, Complaint, Court's order preliminarily approving the Class Action Settlement; Claim form; and the long-form Settlement Class Notice.  *See* SA, Ex. A (Claim Form), D (Notice).

## IX.    CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of the Settlement.

1   Respectfully submitted,

2   Dated: December 23, 2024

3                                                CROSNER LEGAL, P.C.

4                            By:      /s/ Chad A. Saunders
                                      Chad A. Saunders (*Pro Hac Vice*)
5                                     Craig W. Straub (*Pro Hac Vice*)
                                      9440 Santa Monica Blvd. Suite 301
6                                     Beverly Hills, CA 90210
                                      Tel: (866) 276-7637
7                                     Fax: (310) 510-6429
                                      chad@crosnerlegal.com
8                                     craig@crosnerlegal.com

9                                     *Attorneys for Plaintiffs Moises Reza,*
                                      *Frank Garza, and Tanner Pendergraft*
10

11                                    BURSOR & FISHER, P.A.
                                      L. Timothy Fisher (State Bar No. 191626)
12                                    1990 North California Boulevard, Suite 940
                                      Walnut Creek, CA  94596
13                                    Telephone: (925) 300-4455
                                      Facsimile: (925) 407-2700
14                                    E-Mail: ltfisher@bursor.com

15                                    GUCOVSCHI ROZENSHTEYN, PLLC
                                      Adrian Gucovschi (*Pro Hac Vice*)
16                                    140 Broadway, Suite 4667
                                      New York, NY 10005
17                                    Tel: (212) 884-4230
                                      Email: adrian@gr-firm.com
18

19                                    *Attorneys for Plaintiff Isaiah Sanchez*

20                                    MARKMAN LAW
                                      David A. Markman (Nevada Bar No. 12440)
21                                    4484 S. Pecos Rd., Suite 130
                                      Las Vegas, NV 89121
22                                    Tel: (702) 843-5899
                                      Email: david@markmanlawfirm.com
23
                                      ZIMMERMAN REED LLP
24                                    Hart L. Robinovitch (Pro Hac Vice)
                                      Email: hart.robinovitch@zimmreed.com
25                                    14648 N. Scottsdale Rd., Suite 130
                                      Scottsdale, AZ 85254
26                                    Tel: (480) 348-6400

27                                    ZIMMERMAN REED LLP

28

Zachary J. Freese (Pro Hac Vice)
Email: zachary.freese@zimmreed.com
80 South 8th St., Suite 1100
Minneapolis, MN 55402
Tel: (612) 341-0400

Attorneys for Plaintiff Saul Garcia

LEON GREENBERG, PC
Leon Greenberg (NV Bar No. 8094)
1811 S. Rainbow Blvd. Ste. 210
Las Vegas, NV 89146
(702) 383-6085

*Local Counsel for Plaintiffs Moises Reza,
Frank Garza, and Tanner Pendergraft*

**IT IS SO ORDERED:**

**UNITED STATES DISTRICT JUDGE**

_____

**DATED: _____**

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; APPOINTMENT OF CLASS COUNSEL; AND MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN SUPPORT THEREOF