**CROSNER LEGAL, P.C.**
Chad A. Saunders (*Pro Hac Vice*)
Craig W. Straub (*Pro Hac Vice*)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
chad@crosnerlegal.com
craig@crosnerlegal.com

*Attorneys for Plaintiffs Moises Reza,*
*Frank Garza, and Tanner Pendergraft*

**ZIMMERMAN REED LLP**
Hart L. Robinovitch (*Pro Hac Vice*)
14648 N. Scottsdale Rd. Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400
Email: hart.robinovitch@zimmreed.com

**ZIMMERMAN REED LLP**
Zachary J. Freese (*Pro Hac Vice*)
80 South 8th St., 1100 IDS Center
Minneapolis, MN 55402
Tel: (612) 341-0400
Email: zachary.freese@zimmreed.com

*Attorneys for Plaintiff Saul Garcia*

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice*)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC**
Adrian Gucovschi (*Pro Hac Vice*)
140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
Email: adrian@gr-firm.com

*Attorneys for Plaintiff Isaiah Sanchez*

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: FIGHT PASS AUTO-RENEWAL LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS. | Case No. 2:23-cv-00802-CDS-DJA<br><br>Member Case Nos.: 2:23-cv-01211-CDS-EJY<br>2:23-cv-01259-CDS-EJY<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: June 10, 2025<br>Time: 10:00 a.m.<br>Courtroom 6B<br><br>Hon. Cristina D. Silva |

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2

PLEASE TAKE NOTICE THAT Plaintiffs Moises Reza, Frank Garza, Tanner Pendergraft,

3

Isaiah Sanchez, and Saul Garcia ("Plaintiffs"), by and through their undersigned counsel of record,

4

move pursuant to all applicable rules of procedure including Fed. R. Civ. P. 23(e) and 54(d)(2) and

5

the Court's January 21, 2025 Order Granting Plaintiffs' Motion for Preliminary Approval of

6

Proposed Class Action Settlement, Certification of Settlement Class, Approval of Class Notice, and

7

Appointment of Class Counsel (ECF No. 103), for an order (1) granting final approval of the

8

Stipulation of Class Action Settlement and Release (the "Settlement" or "Settlement Agreement" or

9

"SA") submitted herewith; (2) certifying, for settlement purposes, the proposed Settlement Class

10

under Rule 23(a), (b)(3), and (e); (3) finding the class notice as implemented satisfies Rule 23 and

11

due process; (4) finally appointing Plaintiffs as Class Representatives; (5) finally appointing Hart L.

12

Robinovitch of Zimmerman Reed LLP, Timothy Fisher of Bursor & Fisher, P.A., and Chad Saunders

13

of Crosner Legal, P.C. as Class Counsel under Rule 23(g); (6) finally appointing Angeion Group

14

LLC ("Angeion") as the Settlement Administrator; and (7) any other relief the Court deems just and

15

proper.

16

This motion is based on: (1) this Notice of Motion and Motion, (2) the Memorandum of

17

Points and Authorities in support thereof, (3) the Declaration of Chad A. Saunders and exhibits

18

attached thereto (including the Settlement), (4) the Declaration of Sara Rugg of Angeion ("Rugg

19

Decl.") and the exhibits attached thereto (5) the declarations of Moises Reza, Frank Garza, Tanner

20

Pendergraft, Isaiah Sanchez, and Saul Garcia, (6) the papers and pleadings on file, and (7) other

21

written and oral arguments that may be presented to the Court.

22

A Proposed Final Approval Order and Judgment is submitted herewith.

23

Dated:  May 20, 2025                                   Respectfully submitted,

24

25                                                                **CROSNER LEGAL, P.C.**

26                                                                By:  ___*/s/ Chad A. Saunders*___
                                                                  Chad A. Saunders (*Pro Hac Vice*)

27                                                                Craig W. Straub (*Pro Hac Vice*)
                                                                  9440 Santa Monica Blvd. Suite 301

28                                                                Beverly Hills, CA 90210
                                                                  Tel: (866) 276-7637

Fax: (310) 510-6429
chad@crosnerlegal.com
craig@crosnerlegal.com

*Attorneys for Plaintiffs Moises Reza,*
*Frank Garza, and Tanner Pendergraft*

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice*)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC**
Adrian Gucovschi (*Pro Hac Vice*)
140 Broadway, Suite 4667 New York, NY 10005
Tel: (212) 884-4230
Email: adrian@gr-firm.com

*Attorneys for Plaintiff Isaiah Sanchez*

**MARKMAN LAW**
David A. Markman (Nevada Bar No. 12440)
4484 S. Pecos Rd.
Suite 130
Las Vegas, NV 89121
Tel: (702) 843-5899
Email: david@markmanlawfirm.com

**ZIMMERMAN REED LLP**
Hart L. Robinovitch (*Pro Hac Vice*)
Email: hart.robinovitch@zimmreed.com
14648 N. Scottsdale Rd.
Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400

**ZIMMERMAN REED LLP**
Zachary J. Freese (*Pro Hac Vice*)
Email: zachary.freese@zimmreed.com
80 South 8th St.
Suite 1100
Minneapolis, MN 55402
Tel: (612) 341-0400

*Attorneys for Plaintiff Saul Garcia*

**LEON GREENBERG, PC**
Leon Greenberg (NV Bar No. 8094)
1811 S. Rainbow Blvd. Ste. 210

Las Vegas, NV 89146
(702) 383-6085

*Local Counsel for Plaintiffs Moises Reza,*
*Frank Garza, and Tanner Pendergraft*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

PAGE(S)

I.   INTRODUCTION ............................................................................. 1

II.  BACKGROUND AND PROCEDURAL HISTORY ....................................3

    A.   Plaintiffs' Allegations .......................................................3

    B.   The Litigation..................................................................5

    C.   Discovery And Mediation...................................................6

    D.   Preliminary Approval........................................................7

III. SUMMARY OF THE PROPOSED SETTLEMENT.....................................7

IV.  CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
    APPROPRIATE.....................................................................8

V.   THE NOTICE PLAN COMPORTS WITH DUE PROCESS
    AND RULE 23...............................................................10

VI.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
    ADEQUATE, AND SHOULD BE APPROVED BY THE COURT ............13

    A.   Procedural Fairness: The Negotiation Process ...................15

    B.   Substantive Fairness – the Hanlon Factors ........................16

        1.   The Strength of Plaintiffs' Case .............................16

        2.   The Risk of Continuing Litigation..........................17

        3.   The Risk of Maintaining Class Action Status .........19

        4.   The Settlement Provides Excellent Relief to the Class ...........20

        5.   The Extent of Discovery..................................22

        6.   The Strength of Plaintiffs' Case .............................23

7.    The Response of Class Members Has Been Overwhelmingly Positive.........................................................................24

C.    Rule 23(e)(2) Factors ...........................................................................25

1.    The Class Representatives and Class Counsel have Adequately Represented the Class ............................................................25

2.    The Settlement Was Negotiated At Arm's Length...................25

3.    The Settlement Provides Adequate Relief To The Class .........26

4.    The Settlement Treats All Class Members Equally .................29

VII. CONCLUSION ..................................................................................31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ..........................................................................28

*Alvarez v. Sirius XM Radio Inc.*,
   2020 WL 7314793 (C.D. Cal. July 15, 2020) .................................................26, 27

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...........................................................................................8, 9

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...........................................................18

*Arreola v. Shamrock Foods Co.*,
   2021 WL 4220630 (C.D. Cal. Sept. 16, 2021) .......................................................24

*Behrens v. Landmark Credit Union*,
   2018 WL 9801773 (W.D. Wis. Sept. 11, 2018) ......................................................30

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ..................................................................10, 15

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ................................................................................9

*Blandino v. MCM Constr., Inc.*,
   2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) .......................................................28

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...............................................................................15

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .................................................................23, 26

*Carlotti v. ASUS Computer Int'l*,
   2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) .................................................13, 14

*Carter v. XPO Logistics, Inc.*,
   2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) .................................................15, 22

*Chambers v. Whirlpool Corp.*,
   214 F. Supp. 3d 877 (C.D. Cal. 2016) .................................................................10

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004), *cert. denied*, 543 U.S. 818 (2004) ................................. 11, 15

*Dennis v. Kellogg*,
  697 F.3d 858 (9th Cir. 2012) ...................................................................................... 30

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................................................... 10

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) .............................................................. 29

*Federal Trade Commission v. Amazon.com, Inc.*,
  735 F. Supp. 3d 1297 (W.D. Wash. 2024) .................................................................... 5

*Ferrell v. Buckingham Prop. Mgmt.*,
  2021 WL 488314 (E.D. Cal. Feb. 10, 2021) ............................................................... 14

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ................................................... 16, 25, 28

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  934 F.3d 316 (3d Cir. 2019) ....................................................................................... 22

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
  21 F.4th 1102 (9th Cir. 2021) ..................................................................................... 22

*In re Google Location Hist. Litig.*,
  No. 2024 WL 1975462 (N.D. Cal. May 3, 2024) ......................................................... 22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................*passim*

*Harris v. U.S. Physical Therapy, Inc.*,
  No. 2012 WL 3277278 (D. Nev. July 18, 2012) .......................................................... 23

*Johnson v. Pluralsight, LLC*,
  728 Fed.App'x. 674 (9th Cir. 2018) ............................................................................ 19

*Johnson v. Triple Leaf Tea Inc.*,
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ............................................................. 20

*Kissel v. Code 42 Software, Inc.*,
  2016 WL 7647691 (C.D. Cal., Apr. 14, 2016) .............................................................. 4

*Kissel v. Code 42 Software Inc.*,
  No. 2018 WL 6113078 (C.D. Cal. Feb. 20, 2018) ....................................................... 22

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal. July 11, 2014) ..................................................... 17, 19, 27, 28

*In re Lidoderm Antitrust Litig.*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)..........................................................28

*Linney v. Cellular Alaska P'ship*,
    1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998)...............28

*Maxin v. RHG & Co., Inc.*,
    2019 WL 4295325 (S.D. Cal. June 24, 2019) ..........................................................30

*Mayron v. Google LLC*,
    54 Cal. App. 5th 566 (2020) ..........................................................................19, 21

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)..........................................................................22, 28

*Miguel-Sanchez v. Mesa Packing, LLC*,
    2021 WL 4893394 (N.D. Cal. Oct. 20, 2021) ..............................................................17

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ........................................................................................11

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)....................................................................20, 24

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................................10, 19

*New York v. Sirius XM Radio, Inc.*,
    2024 N.Y. Misc. LEXIS 22455 (N.Y. Sup. Ct. Nov. 21, 2024)..............................................5

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982).........................................................................10, 16

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)..............................................................23, 24

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ......................................................................14, 25, 28

*Pena v. Taylor Farms Pac., Inc.*,
    2021 WL 916257 (E.D. Cal. Mar. 10, 2021)..............................................................15

*Perks v. Activehours, Inc.*,
    2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ........................................................25, 29

*Riker v. Gibbons*,
    2010 WL 4366012 (D. Nev. Oct. 28, 2010) ........................................................16, 24

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .......................................................................*passim*

*Ross v. Trex Co., Inc.*,
  2013 WL 6622919 (N.D. Cal. 2013) ................................................................15

*Smith v. One Nevada Credit Union*,
  2018 WL 4407251 (D. Nev. Sept. 16, 2018) ....................................................13

*Somogyi v. Freedom Mortg. Corp.*,
  2023 WL 8113242 (D.N.J. Nov. 22, 2023) ........................................................30

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) .......................................................................11

*In re Syncor*,
  516 F.3d at 1100 .................................................................................................25

*Torchia v. W.W. Grainger, Inc.*,
  304 F.R.D. 256 (E.D. Cal. 2014) .......................................................................24

*United States v. MyLife.com, Inc.*,
  567 F. Supp. 3d 1152,1169 (C.D. Cal. 2021) .....................................................5

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) .......................................................................28

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...........................................................27, 28, 29

*Wahl v. Yahoo! Inc.*,
  2018 WL 6002323 (N.D. Cal. Nov. 15, 2018) ..................................................22

*Wellens v. Sankyo*,
  2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ...................................................28

*Williamson v. McAfee, Inc.*,
  2017 WL 6033070 (N.D. Cal. Feb. 3, 2017) .....................................................21

*Young v. Polo Retail, LLC*,
  2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ....................................................15

**STATUTES, CODES, RULES**

Fed. R. Civ. P. 8 and 12(b)(6) .............................................................................18

Fed. R. Civ. P. 23 .......................................................................................8, 9, 10

12 C.F.R. § 205.10(b) ............................................................................................5

15 U.S.C. §§ 1693, *et seq.* ................................................................................1, 4

15 U.S.C. § 1983m .................................................................................................5

15 U.S.C. § 8403 ............................................................................................5

Cal. Bus. & Prof. Code §§ 17500 .................................................................2

Cal. Civ. Code §§ 1750, et seq. ....................................................................2

Cal. Bus. & Prof. Code §§ 17600, *et seq.*...............................................2, 21

## OTHER AUTHORITIES

Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010) ............................................................11

Automatic Renewal Law ...............................................................................19

Electronic Funds Transfer Act........................................................................1

Restore Online Shoppers' Confidence Act......................................................5

Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*.................1, 2, 3, 4, 6

ROSCA.............................................................................................................5

Plaintiffs respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of the multi-state class action Settlement Agreement between Plaintiffs and Defendants Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC ("Zuffa") and NeuLion, Inc. ("NeuLion") (collectively, "Defendants") (together with Plaintiffs, the "Parties").

## I.    INTRODUCTION

On January 21, 2025, the Court preliminarily approved the Class Action Settlement[1] between Plaintiffs and Defendants Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC ('Defendant" or "Zuffa") and NeuLion, Inc. ("Neulion") (collectively, "Defendants"). *See* Order Granting Preliminary Approval of Class Action Settlement, ECF No. 103. The settlement Claims Administrator, Angeion, has implemented the Court-approved notice plan, and notice has reached more than 96% of the certified Settlement Class. The settlement provides meaningful relief to the members of the Settlement Class, primarily through creation of a common fund which will allow each of the more than 186,000 class members the option to receive two months free service, valued at $19.98, or alternatively to make a cash election for payment of $9.99.  Not a single Class Member has filed an objection to the Settlement or opted out—an overwhelmingly positive response.

This previously consolidated putative class action lawsuit alleges that through their common operating procedures, Defendants do not adequately inform consumers in eleven states (California, District of Columbia, Florida, Hawaii, Illinois, New York, North Carolina, North Dakota, Oregon, Virginia, Vermont.) of the automatic renewing nature of the Fight Pass Autorenewal(s), do not obtain the affirmative consent of its consumers to the Fight Pass Autorenewal(s) before charging them, and do not provide a post-purchase acknowledgment containing all material Fight Pass Autorenewal offer terms, a description of Defendants' cancellation policy, and an explanation of how to cancel the Fight Pass Autorenewal(s), in violation of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. §§ 598.0903, *et seq.* and Electronic Funds Transfer Act ("EFTA" or "Regulation E"), 15 U.S.C. §§ 1693, *et seq.*  Subclass members assert additional claims under state

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Parties' Stipulation of Class Action Settlement Agreement and Release (the "Settlement" or "Settlement Agreement"), a true and correct copy of which is submitted as Exhibit 1 to the contemporaneously filed Declaration of Chad A. Saunders (the "Saunders Decl.").

1  laws, including the California Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600,

2  *et seq.*, California's False Advertising Law ("FAL") Cal. Bus. & Prof. Code §§ 17500, California

3  Consumers Legal Remedies Act Cal. Civ. Code §§ 1750, et seq., All class members have alleged

4  common claims for conversion, unjust enrichment, EFTA and NDTPA.

5      Following mediation on February 26, 2024, the Parties reached the Settlement that, if

6  approved, will deliver immediate and substantial monetary and in-kind relief to putative Class

7  Members and will resolve Plaintiffs' and the putative class's claims against Defendants. The

8  Settlement consists of cash and in-kind benefits with a total value exceeding $1.2 million.  In the

9  process of providing notice, Defendants learned that the number of Settlement Class Members

10  exceeded the initial estimate and agreed to provide the same settlement benefit to all.  Thus, over

11  186,000 class members stand to receive the two-month subscription, valued at $19.99, or alternative

12  cash option of $9.99. Of those Class Members, approximately 20,600 of them are Active Class

13  Members who automatically receive the benefit of a two-month subscription – a benefit which is not

14  deducted from the $1.2 million common fund but provided in addition to it. Thus, the total value of

15  the Settlement exceeds $1.6 million.

16      Class Members with a current Fight Pass subscription will automatically receive a credit

17  equal to two (2) months of free service to be applied by Defendants to their Fight Pass subscription.

18  Settlement Agreement ¶ 4.4.  If Active Class Members prefer, they can submit a claim form electing

19  to instead receive a prorated cash payment of up to $9.99 from the Net Settlement Fund. *Id.* Inactive

20  Class Members can submit a Claim Form and elect to receive either (i) a credit for two months of

21  free service applied toward a new Fight Pass subscription or (ii) a prorated cash payment of up to

22  $9.99 from the Net Settlement Fund. *Id.* The Settlement also provides for injunctive relief and

23  Defendants have already implemented changes to the Fight Pass subscription services to ensure that

24  their Fight Pass subscription enrollment process complies with applicable auto-renewal laws.

25  Settlement Agreement ¶4.5.  The changes to procedures that have been implemented on Defendants'

26  website include modifications to the subscription sign-up page to inform consumers that they are

27  signing up for a subscription that will auto-renew unless they first cancel.  Further, to make a Fight

28  Pass purchase on Defendants' website, consumers now must check a box affirmatively confirming

their understanding that the subscription will auto-renew unless cancelled before the renewal date. Overall, the result obtained is fair, adequate and reasonable for the members of the Settlement Class and satisfies the standard for approval under Fed.R.Civ.P. 23(e)

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Plaintiffs' Allegations

Defendants, through their website www.ufcfightpass.com (the "Fight Pass Platform"), offer a streaming platform for Mixed Martial Arts ("MMA") and Ultimate Fighting Championship ("UFC") content including, but not limited to, live UFC fighting events, original programming, and recordings of past MMA fights (the "Fight Pass Products"). When consumers purchase Fight Pass, Defendants enroll them into an automatically renewing monthly or yearly autorenewal (the "Fight Pass Autorenewal(s)") that results in ongoing charges on the consumer's credit card, debit card, or third-party payment account ("Billing Information") unless and until the consumer cancels their Fight Pass Autorenewal. First Am. Compl. ("FAC") (ECF No. 97) ¶¶ 1–5. Both the enrollment and cancellation processes described above have been common in all material respects for residents of California, District of Columbia, Florida, Hawaii, Illinois, New York, North Carolina, North Dakota, Oregon, Virginia, and Vermont during the Class Period. *See*, Defendants' Statement Re Settlement, ¶7 (attached to Saunders Decl. as Exh. 2). Plaintiffs allege that through their common and repetitive conduct Defendants automatically renewed Class Members' Fight Pass Autorenewal(s) in violation of the NDTPA, EFTA, and state auto renewal laws and common law. *Id.* ¶¶ 77–145.

Specifically, Plaintiffs allege that Defendants did not provide all material Fight Pass Autorenewal terms, as defined under the ARL, "clearly and conspicuously" and in "visual proximity" to its request for consent to the Fight Pass Autorenewal before the purchase is fulfilled. Plaintiffs allege that Defendants dis not obtain the affirmative consent of their consumers before charging their Billing Information. Plaintiffs also alleged that Defendants did not provide a post-purchase acknowledgement containing all material Fight Pass Autorenewal offer terms, a description of Defendants' cancellation policy, and an explanation of how to cancel a Fight Pass Autorenewal. *Id.* ¶¶ 42–61.  This conduct was alleged in the operative Complaint to be deceptive and violate the

NDTPA, EFTA as well as the applicable state autorenewal laws.[2]

While Plaintiffs have presented claims under California law, Defendants' Terms of Use published on its website call for application of Nevada law as follows:

**Applicable Law and Jurisdictional Matters.**

You agree that: (i) the Service shall be deemed solely based in Nevada; and (ii) These Terms of Service shall be governed by the internal substantive laws of the State of Nevada, without respect to its conflict of laws principles. Any claim or dispute between you and UFC® that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Clark County, Nevada. The parties all consent to the jurisdiction of such courts agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it. These Terms of Service, together with the Privacy Notice at [sic] and any other legal notices published by UFCFIGHTPASS.com on the Service, shall constitute the entire agreement between you and UFC® concerning the Service.

YOU AND UFC® AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED.

*See* Terms of Use, available at https://www.ufc.com/terms. In prior motion practice in the *Reza* case prior to transfer to this Court, Defendants argued that Nevada law applies to all disputes. *See generally*, Motion to Dismiss (ECF No. 15) at *8, filed in *Reza v. Zuffa, LLC and Neulion USA, LLC*, No. 3:22-cv-9068 (N.D. Cal., filed March 31, 2023). Each class member has common claims for deceptive practices under the NDTPA, which are resolved as part of this settlement.

Further, based on the alleged violations of state law, each class member has common claims under the EFTA which prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the

---

[2] The Settlement resolves disputes over applicable choice of law. Defendants' Terms of Use calls for application of Nevada law. California case law, however, provides that laws such as the California ARL represent a fundamental right that cannot be waived by a choice of law clause. *See Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691 (C.D. Cal., Apr. 14, 2016). This unresolved dispute remains outstanding and was a point of compromise in the final negotiated settlement. Even under Nevada law, the common practices complained of are alleged to be deceptive and in violation of the NDTPA.

1    consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R.

2    § 205.10(b). Pursuant to 15 U.S.C. § 1983m(a)(2)(B), Plaintiffs and Class Members are also entitled

3    to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net

4    worth of the defendant."

5        Finally, the Restore Online Shoppers' Confidence Act ("ROSCA"), makes it illegal for "any

6    person to charge or attempt to charge any consumer for any goods or services sold in a transaction

7    effected on the Internet through a negative option feature . . . unless the person . . . provides simple

8    mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit

9    card, debit card, bank account, or other financial account." 15 U.S.C. § 8403.  While ROSCA does

10   not provide for a private cause of action, its standards provide guidance for practices which are

11   deceptive, unfair and/or are unlawful under the above-cited consumer protection laws.[3]

12       **B.    The Litigation**

13       The present case is the result of three separately filed actions alleging similar claims against

14   Defendants that were later consolidated in this court as *In re: Fight Pass Auto-Renewal Litigation*.

15   Plaintiffs Reza, Garza, and Pendergraft originally filed this class action on October 11, 2022, in

16   California Superior Court, County of Alameda. On December 21, 2022, Defendants removed the

17   case to the Northern District of California, *Reza, et al. v. Zuffa, LLC, et al.*, Case No. 3-22-cv-09068-

18   MMC (N.D. Cal.). Defendants filed a Motion to Dismiss the operative complaint and a Motion to

19   Transfer the case to the District of Nevada. Defendants' Motion to Transfer was granted.

20       Plaintiff Sanchez filed a putative class action on January 31, 2023, in the Superior Court of

21   California, County of Los Angeles, Case No. 23-st-cv-02154. Defendant Zuffa removed the case to

22   the Central District of California where Plaintiff Sanchez then stipulated to transfer the matter to the

23

24   [3]  *Federal Trade Commission v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1324 (W.D. Wash. 2024)
     (four webpage cancellation flows where consumers were presented alternatives to cancellation and
25   other options before cancellation was not simple under ROSCA for purposes of motion to dismiss);
     *United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152,1169 (C.D. Cal. 2021) (finding on summary
26   judgment that defendant's cancellation practices violated ROSCA because consumers could only
     cancel after interacting with live agent and were confronted with a six-part retention sales script
27   aimed to thwart cancellation); *New York v. Sirius XM Radio, Inc.*, No. 453325/2023, 2024 N.Y. Misc.
     LEXIS 22455 (N.Y. Sup. Ct. Nov. 21, 2024)(granting summary judgment on ROSCA claim).

28

District of Nevada. On August 4, 2023, the Central District of California entered an order transferring the case to the District of Nevada.

Plaintiff Garcia filed a putative class action complaint on June 30, 2023, in the Eighth Judicial District Court for Clark County, Nevada. Defendant Zuffa timely removed the case to the District of Nevada on August 2, 2023.

On August 25, 2023, Defendants filed a Motion to Consolidate the three related putative class actions pending in the District of Nevada. On November 8, 2023, Defendants' Motion to Consolidate was granted. Plaintiffs then filed a Consolidated Class Action Complaint on December 8, 2023. A First Amended Consolidated Class Action Complaint ("FAC") has been filed by agreement of the Parties so that the class definition in the currently operative complaint is consistent with that of the settlement class definition in the Settlement Agreement. The FAC adds common claims under EFTA and NDTPA, while maintaining previous consumer protection claims asserted in earlier complaints

The proposed Settlement now before the Court relates to the claims in the FAC.

**C.    Discovery And Mediation**

Leading up to the filing of the Settlement, the Parties conducted factual investigations, informal discovery, and extensive negotiations, including an all-day mediation session on February 26, 2024, before the experienced complex litigation mediator Hon. Peggy A. Leen (Ret.) of JAMS.

During the mediation process—which continued beyond the initial February 26 session—the Parties reached a mutually agreeable compromise on the legal and factual issues presented. All negotiations were at arms-length, hard-fought, and at times, quite contentious. There was no discussion of attorneys' fees or service awards until the end of the mediation session after agreement had been reached on all material components of relief to the class.

Following settlement, Plaintiffs conducted confirmatory discovery. This discovery confirms that, while the Parties continued to have major disagreements as to the merits of the claims, viability of Defendants' defenses, including governing law, the practices were similar in material respects, allowing for a class-wide settlement on common terms now memorialized in the Settlement Agreement. *See generally*, Defendants' Statement re: Settlement, May 16, 2025 (appended to Saunders Decl. as Exh. 2).

1
2
3
4

In the process of compiling the class list for purposes of providing notice to persons within the confined of the defined settlement class, Defendants learned that the number of persons within the class was actually larger than previously reported. Once the final class list was clarified, notice was provided to 186,566 persons, each of whom is eligible to receive the settlement benefits.

5

### D.    Preliminary Approval

6
7
8
9

Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement on December 23, 2024. (ECF No. 93). The Court entered an Order Granting Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement, Certification of Settlement Class, Approval of Class Notice, and Appointment of Class Counsel on January 21, 2025 (ECF No. 103).

10

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

11
12
13
14
15

The Settlement provides a fair, adequate and reasonable result for the class by delivering cash and non-cash benefits to approximately 186,000 persons "with a current or former paid Fight Pass subscription (*i.e.*, Active or Inactive subscribers) within the Class Period in the following states: California, District of Columbia, Florida, Hawaii, Illinois, New York, North Carolina, North Dakota, Oregon, Virginia, [and] Vermont."  Settlement § 1(r); *see also* Saunders Decl. ¶13.

16
17
18
19
20
21
22
23
24
25
26
27
28

The Settlement consists of a $1.2 million common fund of cash benefits (the Gross Settlement Amount), *plus* non-cash benefits (i.e., the two month subscription extensions that will be provided automatically to all current subscribers and inactive subscribers who so elect) equaling roughly $1.6 million. Settlement § 1(m), 4.4. Active Class Members will automatically receive a credit equal to two months of free service (which currently has a retail price of $9.99 per month) to be applied by Defendants to their Fight Pass subscription. *Id.* § 4.4(a)(1). If Active Class Members prefer, they can submit a claim form electing to instead receive a cash payment of up to $9.99 from the Net Settlement Fund. *Id.* § 4.4(a)(2). In other words, no claim form will be necessary for Active Class Members to realize the benefits of the Settlement, and in lieu of such benefits Active Class Members may choose to receive a cash payment by submitting a simple cash election form. Inactive Class Members can submit a Claim Form and elect to receive either (i) a credit for two (2) months of free service applied toward a new Fight Pass subscription or (ii) a cash payment of up to $9.99 from the Net Settlement Fund. *Id.* § 4.4(b); Saunders Decl., ¶14.

Defendants have also made (or will make within 60 days of the Effective Date) certain changes to the Fight Pass website to ensure that their Fight Pass Subscription enrollment process complies with applicable auto-renewal laws. *Id.* § 4.5. These changes involve improving the flow of the sign-up process to ensure there is a) disclosure that the Fight Pass purchase will automatically renew; b) a check box to confirm that Defendants have the affirmative consent of its consumers to the Fight Pass Autorenewal(s) before charging them; c) improving the post-purchase acknowledgment notification to more clearly detail the material Fight Pass Autorenewal offer terms and more clearly explain Defendants' cancellation policy; and to improve the method(s) of cancellation. Saunders Decl., ¶ 15. *See e.g.*,    https://app.ufcfightpass.com/signup ("Monthly subscription of $9.99, will auto-renew monthly unless cancelled before renewal date" … "Monthly subscription of $9.99, will auto-renew monthly unless cancelled before renewal date") (last visited May 20, 2025).

The release in the Settlement is specifically tailored to the claims at issue in the present litigation, and not overbroad as a result. Settlement § 14.

These three categories of settlement benefits provide roughly $1.6 million in value available to the Settlement Class. Saunders Decl. ¶ 16.[4] Overall, this is a fair and reasonable, and excellent result for the Settlement Class that warrants final approval under Fed. R. Civ. P. 23.

## IV.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil

---

[4] These three categories of settlement benefits provide roughly $1.6 million in value available to the Settlement Class. As of May 16, 2025, Defendants confirmed that there are approximately 20,652 active Fight Pass subscribers, who will automatically receive two-months of free service (valued at $19.99) under the Settlement. This amount is in addition to the baseline value of the Settlement, which is $1.2 million common fund. Thus, the total value provided by the settlement is approximately $1.6 million, plus the value of the injunctive relief under Settlement § 4.5. (20,652 x $19.99 = $412,833.48; $1,200,000 + $412,833.48 = $1,612,833.48). Saunders Decl. ¶ 16. The value of the settlement described in Plaintiffs' Motion for an Award of Attorneys' Fees, Costs and Expenses and Incentive Awards for the Class Representatives, filed April 22, 2025 (ECF 106) should be amended to be consistent with this valuation. *See id* at pages 1, 9-10.

Procedure 23. Under Rule 23, a class action may be maintained if all the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

> [Q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). The Ninth Circuit "has directed that [Rule 23] be liberally construed to effectuate its remedial purposes," and courts are to adopt a standard of flexibility in evaluating class certification. *Blackie v. Barrack*, 524 F.2d 891, 906 n.22 (9th Cir. 1975); *see also id*. at 904 n.19 ("[Avoidance of duplicative proceedings] is a major purpose of a class action; the 'common question' requirement should be interpreted to obtain that objective. … The common question requirement should not be restrictively interpreted … as to do so would eliminate the class action deterrent for those who engage in [unlawful schemes]."). Additionally, in assessing whether the class certification requirements of Rule 23 have been satisfied, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial.").

The record obtained in discovery supports an order maintaining class certification. Defendants' Statement re Settlement confirms that while the parties dispute the merits of the claims, the subscription sign-up processes and disclosures were common throughout the eleven states, as were choice of law issues, allowing those disputes to be addressed and resolved by a court on a classwide basis without the need to resolve an overwhelming number of individual issues. Saunders Decl., Exh. 2. This supports a finding that the commonality, typicality and predominance requirements of Rule 23(a) and (b)(3) continue to be satisfied.

Here, the Court's Preliminary Approval Order provisionally certified a Class for settlement purposes defined as: "[a]ll natural persons with a current or former paid Fight Pass subscription (i.e. Active or Inactive Subscribers) within the Class Period in the following states: California, the District of Columbia, Florida, Hawaii, Illinois, New York, North Carolina, North Dakota, Oregon, Virginia, and Vermont." (the "Settlement Class"). ECF No. 103 ¶ 2. Notably, no substantive changes have occurred since that finding, and, more importantly, no objections have challenged that conclusion. The Court may therefore rely on the same rationale as explained in the preliminary approval order to find that class certification is appropriate under Fed. R. Civ. P. 23(a) and (b) in connection with final approval. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) ("[T]the Court will rely on the rationale for class certification as explained in the Preliminary Approval Order.").

Accordingly, the Court's previous finding should be made final here. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016) ("Because circumstances have not changed, and for the reasons set forth in its Order […], the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).") (citation omitted); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 253 (N.D. Cal. 2015) ("In the Court's Order granting preliminary approval of the settlement, the Court found that the putative class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). The Court is unaware of any changes that would alter its analysis, and the parties did not indicate either in their papers or at the fairness hearing that any such developments had occurred. Thus, the Court concludes that all four of Rule 23(a)'s requirements have been met.") (citations omitted).[5]

## V.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS AND RULE 23

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including

---

[5] Plaintiffs incorporate by reference their prior arguments regarding certification of the Settlement Class, as set forth in the Motion for Preliminary Approval, rather than repeating them here. *See* ECF No. 98 at 30-36.

---

1    individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

2    23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

3        "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*,

4    150 F.3d at 1025. Such notice to class members must be reasonably calculated under the

5    circumstances to apprise interested parties of the pendency of the settlement proposed and to afford

6    them an opportunity to present their objections. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct

7    notice [of a proposed class settlement] in a reasonable manner to all class members who would be

8    bound by the proposal[.]"); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San*

9    *Francisco*, 688 F.2d 615, 6245 (9th Cir. 1982) (citation omitted) ("The class must be notified of a

10   proposed settlement in a manner that does not systematically leave any group without notice.");

11   *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It must clearly state

12   essential information regarding the settlement, including the nature of the action, terms of the

13   settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B).

14       A class action settlement notice "is satisfactory if it generally describes the terms of the

15   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

16   forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), *cert.*

17   *denied*, 543 U.S. 818 (2004); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir.

18   2009) (same). At its core, all that notice must do is "fairly apprise the prospective members of the

19   class of the terms of the proposed settlement and of the options that are open to them in connection

20   with the proceedings." *Id.* (citation omitted). "The notice should provide sufficient information to

21   allow class members to decide whether they should accept the benefits of the settlement, opt out and

22   pursue their own remedies, or object to its terms." *Id.* "[N]otice is adequate if it may be understood

23   by the average class member." 4 Newberg on Class Actions § 11:53, at 167 (4th ed. 2013); *see also*

24   *Rodriguez*, 563 F.3d at 962 ("Settlement notices are supposed to present information about a

25   proposed settlement neutrally, simply, and understandably[.]"). Ultimately, "[t]he standard for the

26   adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal

27   Rules is measured by reasonableness." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal.

28   2016) (citation omitted). The Federal Judicial Center notes that a notice plan is reasonable if it

1    reaches at least 70% of the class. *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims*

2    *Process Checklist and Plain Language Guide* 3 (2010).

3         Here, notice of the settlement was accomplished in four different ways: 1) direct email notice;

4    2) direct mailed Postcard notice for those without email; 3) maintenance of a settlement website; and

5    4) a case-specific toll free telephone number with an interactive voice response ("IVR") system.

6         Notice was primarily accomplished by email as that is the communication method that

7    Defendants generally used to transact with class members when signing up for a Fight Pass

8    subscription on the UFC.com website.  Defendants generally maintain email addresses for consumers

9    who enrolled in Fight Pass subscriptions during the Class Period. Defendants' Statement re:

10   Settlement ¶¶ 4-5 (Saunders Decl., Exh. 2). The list of Settlement Class Members email addresses

11   was provided by Defendants to the Settlement Administrator, Angeion Group, LLC. *Id.*; Sara Rugg

12   Decl. ¶7. Angeion then engaged in a process of removing duplicative records from the data provides,

13   resulting in 186,556 valid email records. *Id.*

14        The Email Notice was sent to approximately 186,556 Settlement Class Members with a valid

15   and deliverable email address on three occasions (March 7, April 7 and May 2, 2025). Rugg Decl.

16   ¶¶8-10. Of those, approximately 8,610 could not be delivered. Angeion then engaged in a mailed

17   Postcard Notice campaign for the benefit of 16,904 Settlement Class Members who could not be sent

18   an Email Notice either due to a hard bounce (8,610) or because they did not have a valid email

19   address (8,294). Rugg Decl. ¶¶8, 11-17 and footnote 2. Of the mailed Postcard notices, those that

20   were returned (1,927) were skip traced allowing 1,250 to be re-mailed. Rugg Decl. ¶15. From the

21   above data, Angeion estimates that notice has been successfully delivered to over 99% of the

22   Settlement Class. Rugg Decl. ¶17. Settlement Class Notice implemented in this case meets the

23   standard of reasonableness due to its success in reaching the proposed Settlement Class Members.

24        In addition to the individual notices that were distributed by email or mail, Angeion

25   maintained a case specific website (www.FPRenewalSettlement.com) for the benefit of the

26   Settlement Class members. Rugg Decl. ¶18.  The Settlement Website contained a secure online portal

27   where Settlement Class Members could submit a Claim Form. Additionally, the Settlement Website

28   contained copies of the Claim Form, Long-Form Notice, Settlement Agreement, Order and other

1   settlement related documents, all which were available for class members to download. The

2   Settlement Website had a "Frequently Asked Questions" page which provided Settlement Class

3   Members with answers to common inquiries about the Settlement, and a "Contact Us" page which

4   provided Settlement Class Members with the mailing address, phone number and email address to

5   contact the Claims Administrator. Rugg Decl. ¶18. As of May 9, 2025, the Settlement Website has

6   had 12,378 unique visitors totaling 30,491 page views. Rugg Decl. ¶19.

7        Finally, Angeion also established a toll-free hotline dedicated to this Settlement to further

8   apprise Settlement Class Members of their rights and options in the Settlement: 1-844-787-4101.

9   Rugg Decl. ¶20. The toll-free hotline utilized an interactive voice response system to provide

10   Settlement Class Members with responses to frequently asked questions and provide essential

11   information regarding the Settlement. *Id.* Settlement Class Members were able to leave a message

12   for the Settlement Administrator, provide updated information, or ask additional questions. The

13   hotline was accessible 24 hours a day, 7 days a week. *Id.*

14        The deadline for members of the Settlement Class to exclude themselves or object was May

15   6, 2025. As of that date there were **zero objections or opt-outs submitted**. Rugg Decl. ¶24-25. This

16   supports a finding that the class supports the settlement.

17        It should be reiterated that this is not a traditional claims-made settlement. Rather, it is a

18   common fund settlement in which all current subscribers automatically receive the primary

19   settlement benefit (two months extended service) without having to submit a Claim Form or do

20   anything. A Claim Form was only required if a current subscriber wished to exercise their right to

21   elect the cash option or for inactive subscribers to elect between the two months free service or the

22   cash option.  SA ¶4.4.

23        Although the claims period is still open through June 5, 2025, and the claims are still being

24   processed and verified, through May 12, 2025, Angeion has received 1,603 Claim forms.  Rugg Decl.

25   ¶22-23.

26        Should any money remain in the Net Settlement Fund after deduction of attorneys' fees and

27   costs and administrative expenses, the remaining funds will be equally distributed to the Cy Pres

28   Beneficiaries, Public Citizen and Public Justice. Settlement § 4.7; *see also infra* § VI.C.4.

1

2

## VI.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019). To determine whether to approve a settlement, courts examine procedural and substantive fairness in light of the "strong judicial policy" in favor of settlement of class action suits. *Smith v. One Nevada Credit Union*, 2018 WL 4407251, at *2 (D. Nev. Sept. 16, 2018) ("The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.") (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Ferrell v. Buckingham Prop. Mgmt.*, 2021 WL 488314, at *3 (E.D. Cal. Feb. 10, 2021) ("The Ninth Circuit has repeatedly affirmed that a strong judicial policy favors settlement of class actions.") (citing *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). This is particularly true in complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Ferrell*, 2021 WL 488314, at *3. Fairness is determined upon review of both the terms of the settlement agreement (substantive fairness) and the negotiating process that led to such agreement (procedural fairness). *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

In terms of procedural fairness, a presumption of fairness, adequacy, and reasonableness attaches to a class action settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *See In re Pac.*, 47 F.3d at 378; *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted). As the Ninth Circuit has recognized, although the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the

extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 830 (N.D. Cal. 2017) (quoting *Officers for Justice*, 688 F.2d at 625); *see also id.* ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.") (internal quotation marks omitted); accord Fed. R. Civ. P. 23(e)(2) (settlement must be "fair, reasonable, and adequate").

Courts must also consider whether a proposed settlement is substantively fair. In making this determination, the Ninth Circuit has instructed district courts to balance several factors (the "*Hanlon* factors"): (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members of the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566 (9th Cir. 2004) (same); *Pena v. Taylor Farms Pac., Inc.*, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019) (same). "The court need not consider all of these factors, or may consider others." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("The factors in a court's fairness assessment will naturally vary from case to case.").

In addition to these factors, when a settlement agreement is negotiated prior to formal class certification, courts should also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees,

including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). There is significant overlap between the Rule 23(e)(2) and *Hanlon* factors, which complement, rather than displace each other.

### A.    Procedural Fairness: The Negotiation Process

In this case, there is no question that the Settlement was arrived at through genuine arm's length bargaining after a developed factual record that allowed the parties to have a "clear view of the strengths and weaknesses of their case[]." *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citations omitted). Accordingly, it is entitled to a presumption of reasonableness. *Ross v. Trex Co., Inc.*, 2013 WL 6622919, at *3 (N.D. Cal. 2013) ("[T]here is no fraud or collusion underlying this Settlement, and it was reached after good faith, arms'-length negotiations, warranting a presumption in favor of approval.") (citation omitted); *Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("'An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.'") (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:42 (4th ed.2002); *see also Rodriguez*, 563 F. 3d at 965 ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution[.]").

As discussed further below, the circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair. Here, the Settlement was reached after hard-fought, arms-length negotiations and a mediation before a well-respected mediator in the Honorable Peggy A. Leen (Ret.) of JAMS, and the Parties continued negotiations beyond the mediation. *See* Saunders Decl. ¶¶ 11-14. Additionally, the Parties had engaged in informal written discovery prior to mediation and confirmatory discovery afterwards. Saunders Decl. ¶ 17 & Exh. 2 (Defendants' Statement Re: Settlement). Moreover, the negotiations leading to the Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients. *See* Saunders Decl. ¶¶ 24-30.

Thus, the Settlement Agreement is the result of arm's-length negotiations between the parties and experienced counsel. This factor weighs in favor of approving the settlement.

1

2

**B.    Substantive Fairness – the Hanlon Factors**

**1.    The Strength of Plaintiffs' Case**

3

4

In determining the likelihood of a plaintiff's success on the merits of a class action, "the

5

district court's determination is nothing more than an amalgam of delicate balancing, gross

6

approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks

7

omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator

8

arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner*,

2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).

9

10

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories, and

11

defenses on both sides before engaging in arms-length negotiations with Defendants' counsel. *See*

12

Saunders Decl. ¶¶ 17-20. Although Plaintiffs and Class Counsel had confidence in their claims, they

13

recognize that a favorable outcome was not assured and that they would face risks at class

certification, summary judgment, and trial. *See* Saunders Decl. ¶¶ 19-21. Defendant vigorously

14

denies Plaintiff's allegations and asserts that neither Plaintiffs nor the Class suffered any harm or

15

damages. In addition, Defendant would no doubt present a vigorous defense at trial, and there is no

16

assurance that the Class would prevail – or even if they did, that they would be able to obtain an

17

award of damages significantly more than achieved here absent such risks. In other words,

18

"[a]lthough the class members (or some of them) arguably might have received more if they had

19

proceeded to trial and prevailed on the merits of their case, they also faced a risk that the resulting

20

recovery would be smaller than what is currently expected." *Miguel-Sanchez v. Mesa Packing, LLC*,

21

2021 WL 4893394, at *6 (N.D. Cal. Oct. 20, 2021). The Settlement abrogates these risks to Plaintiffs

22

and the Class. *See Rodriguez*, 563 F.3d at 965–66 ("[O]ne factor 'that may bear on review of a

23

settlement'" is "the advantages of the proposed settlement versus the probable outcome of a trial on

24

the merits of liability and damages as to the claims, issues, or defenses of the class and individual

25

class members[.]'") (citing Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316

26

(4th ed. 2004)). "Further, the benefit of receiving an award in the immediate future has its own

27

value." *Miguel-Sanchez*, 2021 WL 4893394, at *6 (citing *Bellinghausen*, 306 F.R.D. at 255). Thus,

28

1   in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding

2   opportunity to obtain significant relief at this stage in the litigation.

3                   **2.       The Risk of Continuing Litigation**

4           Next, approval of the proposed settlement is appropriate given the risks associated with

5   continued litigation. By reaching a favorable settlement now, Plaintiffs seek to avoid significant

6   expense and delay and instead ensure recovery for the class. "Generally, 'unless the settlement is

7   clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

8   with uncertain results.'" *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11,

9   2014) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.

10  Cal. 2004)) (internal quotation marks omitted). "Moreover, settlement is favored where, as here,

11  significant procedural hurdles remain, including class certification and an anticipated appeal." *Id.*

12  (citing *Rodriguez*, 563 F.3d at 966).

13          Here, the Parties engaged in informal written discovery prior to mediation. Saunders Decl. ¶

14  17. Had the case not been resolved, the plaintiffs would have to argue another Motion to Dismiss (an

15  earlier motion was filed in the *Reza* action while venued in California), engage in prolonged

16  discovery, including Party depositions and substantial written discovery, contested motions for class

17  certification and summary judgment, which would cost substantial time and expense, and would

18  create the risk that a litigation class would not be certified or that the Settlement Class would not

19  recover at all. Saunders Decl. ¶ 18. For example, Plaintiffs are aware that Defendant would continue

20  to assert defenses on the merits, including that Plaintiffs' allegations are insufficient under Fed. R.

21  Civ. P. 8 and 12(b)(6). Defendants would also challenge Plaintiffs' standing under the relevant

22  consumer protection statutes, including Plaintiffs' ability to show that Defendants' conduct caused

23  Plaintiffs economic injury. Plaintiffs and Class Counsel are also aware that Defendants would oppose

24  class certification vigorously, including because Defendants would contend that Plaintiffs are not

25  entitled to bring at least some of their claims on a class-wide basis and that Plaintiffs cannot present

26  a workable damages model. Plaintiffs and Class Counsel further understand that Defendants would

27  prepare a competent defense at trial. Even assuming that Plaintiffs were to survive summary

28  judgment, they would likely face the risk of establishing liability at trial as a result of conflicting

expert testimony between their own expert witnesses and Defendants' expert witnesses. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury. The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain. Additionally, looking beyond trial, Defendants could appeal the merits of any adverse decision. Even if Plaintiffs were to prevail at every stage of this litigation, there remains a substantial likelihood that Class Members would not be awarded significantly more than (or even as much as) is offered to them under this Settlement. *See, e.g.*, *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs awarding over $100 million in damages, entering judgment in favor of individual defendants, and ordering new trial for corporate defendant).

Two of the primary disputes that the parties had here were on choice of law and available remedies. Regarding choice of law, each group of Plaintiffs initially brought claims under California's consumer protection statutes, including its Automatic Renewal Law. Defendants, however, challenged the application of California law arguing that Nevada law applied instead under its standard Terms of Use. While Plaintiffs argued that the ARL represented a fundamental right that could not be waived, this remained a significant issue in dispute that the settlement resolves. Regarding available remedies, under the California ARL a violation can give rise to a right to have the subscription deemed an "unconditional gift." Applying the unconditional gift language, the Ninth Circuit has allowed claims that seek a full refund of amounts paid. In contrast, California's state courts have adopted a narrower interpretation. *Compare Johnson v. Pluralsight, LLC*, 728 Fed.App'x. 674 (9th Cir. 2018) with *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 575-76 (2020). This issue continued to present both significant risk and disagreement, which the settlement resolves through the compromise reached.

In sum, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4. The Settlement, on the other hand, permits a prompt resolution of this action on terms that are

1    fair, reasonable and adequate to the Class. This result will be accomplished years earlier than if the

2    case proceeded to judgment through trial and/or appeals and provides certainty. "Accordingly, the

3    high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.*

4    (citing *Rodriguez*, 563 F.3d at 964).

5                    ### 3.    The Risk of Maintaining Class Action Status

6              In addition to the risks of continuing the litigation, Plaintiffs would also face risks in

7    certifying a class and maintaining class status through trial. The Court has not yet certified the

8    proposed Class for merits purposes, and the Parties anticipate that such a determination would be

9    reached only after decision on Defendants' Motion to Dismiss, after discovery is completed, and

10   after exhaustive class certification briefing is filed. Moreover, even assuming that the Court were to

11   grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix*

12   *Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court

13   could decertify a class at any time is one that weighs in favor of settlement.") (internal citations

14   omitted). From their prior experience, Class Counsel anticipates that, should the Court certify the

15   class, Defendants may appeal the Court's decision through a Rule 23(f) petition and subsequently

16   move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a

17   process. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff

18   and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and

19   immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

20   The Settlement eliminates these risks, expenses, and delay.

21                    ### 4.    The Settlement Provides Excellent Relief to the Class

22             The determination of "the fairness, adequacy, and reasonableness of the amount offered in

23   settlement is not a matter of applying a 'particular formula.'" *Knapp*, 283 F. Supp. 3d at 832) (citing

24   *Rodriguez*, 563 F.3d at 965). Instead, the Court's analysis of whether a settlement amount is

25   reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice." *Id.* In

26   assessing the consideration available to Class Members in a proposed Settlement, "[i]t is the

27   complete package taken as a whole, rather than the individual component parts, that must be

28   examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688

F.2d at 628). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Here, the cash value of the proposed Settlement is $1,200,000.00. Consistent with update data received from Angeion, 20,600 Settlement Class Members have selected the $19.99 automatic service, making the total estimated value of the cash and non-cash elements of the Settlement roughly $1.6 million, and higher when considering the additional value of the injunctive benefits.[6] Saunders Decl., ¶16 Settlement § 4.4. Current subscribers will automatically receive settlement benefits in the form of a two-month subscription, valued at $19.99 total, while maintaining their right to submit a claim form to make a cash election up to $9.99. Settlement § 4.4. Inactive subscriber class members can submit a claim form to elect to receive the two-month credit a cash benefit. *Id.* Thus, Class Members receive real and substantial dollar value through the Settlement. *See Knapp*, 283 F. Supp. 3d at 833 ("[C]lass members who choose to use their voucher have the opportunity to realize a $10 value."). While the class recovery is less than the amount of full recovery pursuant to the "unconditional gift" provision of the ARL, *see* Cal. Bus. & Prof. Code § 17603, recent decisions can be read to call full restitution into question as a theory of class recovery. *See Mayron v. Google LLC*, 54 Cal. App. 5th 566, 575-76 (Cal. Ct. App. 2020). The Settlement Fund is sufficient to fund the distributions to the class after deduction of reasonable attorneys' fees and costs, as well as the costs of the claims administrator.[7]

Additionally, Defendants have made important changes to the Fight Pass website including improving the flow of the sign-up process to ensure there is affirmative consent of its consumers to

---

[6] This makes the requested attorneys' fees by class counsel equivalent to 25% of the estimated Settlement value. As referenced in footnote 4 above, the value of the settlement described in Plaintiffs' Motion for an Award of Attorneys' Fees, Costs and Expenses and Incentive Awards for the Class Representatives, filed April 22, 2025 (ECF 106) should be amended to be consistent with this valuation. *See id.* at pages 1, 9-10.

[7] While final costs cannot be tabulated prior to final approval, Class Counsel currently estimates that litigation costs of counsel, as well as those of the Claims Administrator will be approximately $90,000.00-$100,000.00.

---

1   the Fight Pass Autorenewal(s) before charging them; improving the post-purchase acknowledgment

2   notification to more clearly detail that the purchase is for an automatically renewing subscription

3   unless first cancelled. Saunders Decl., Exh. 2, ¶¶6-7; *see* Settlement § 4.5. This provides an additional

4   benefit to the Class beyond the cash benefits and automatic two-month subscription extensions.

5   *Knapp*, 283 F. Supp. 3d at 833 ("The Settlement Agreement also provides for injunctive relief, so

6   class members that choose to continue doing business with Art.com will benefit from this aspect as

7   well.").

8         Moreover, in judging the adequacy of this Settlement, it is appropriate to compare the relief

9   offered here to settlements in other ARL matters. Viewed in this light, the relief offered under this

10  Settlement plainly meets or exceeds settlements in other ARL matters. Indeed, the over $1,600,000

11  settlement value and individual relief per Class Member are outstanding in comparison to other ARL

12  cases. *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2017 WL 6033070, at *1 (N.D. Cal.

13  Feb. 3, 2017) ("Under the settlement, each member of the Auto-Renewal Class receives a "value

14  certificate" for $11.50 that can only be used to purchase McAfee or Intel Security products.); *Wahl*

15  *v. Yahoo! Inc.*, No. 17-CV-02745-BLF, 2018 WL 6002323, at *2 (N.D. Cal. Nov. 15, 2018) (three

16  months of comped subscription time or $10 to monthly subscribers in finally approved settlement);

17  *Kissel v. Code 42 Software Inc.*, No. 815CV01936JLSKES, 2018 WL 6113078, at *2 (C.D. Cal. Feb.

18  20, 2018) (roughly $8 payments to class members).

19        To the extent that a portion of the $1,200,000 cash fund goes unclaimed, it will go to *cy pres*

20  as expanded on in § VI.C.4. Even if a significant portion were to go to the *cy pres* recipient, that does

21  not weigh against the approval of the settlement. *In re Google Inc. St. View Elec. Commc'ns Litig.*,

22  21 F.4th 1102, 1122 (9th Cir. 2021) (affirming district court's final approval of settlement that had a

23  *cy pres* only cash distribution); *In re Google Location Hist. Litig.*, No. 5:18-CV-05062-EJD, 2024

24  WL 1975462, at *16 (N.D. Cal. May 3, 2024) (approving settlement with solely *cy pres* distribution

25  and injunctive relief); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326

26  (3d Cir. 2019) (rejecting the argument that "*cy pres*-only settlements are unfair per se under Rule

27

28

1    23(e)(2)" and recognizing that "[i]n some cases a *cy pres*-only settlement may be proper").[8]

2        Weighing the benefits of the Settlement against the risks associated with proceeding in

3    litigation and in collecting on any judgment, the proposed Settlement is more than reasonable. *See*

4    *Carter*, 2019 WL 5295125, at *3 ("The amount of the settlement is fair, adequate and reasonable

5    given the risks of continued litigation.").

6                    **5.    The Extent of Discovery**

7        Under this factor, courts evaluate whether Class Counsel had sufficient information to make

8    an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

9    454, 459 (9th Cir. 2000). Plaintiffs, by and through their counsel, has conducted extensive research,

10   discovery, and investigation during the prosecution of the Action, including, without limitation,

11   through: (i) review of information obtained from Defendants through informal discovery during the

12   mediation process; (ii) post mediation confirmatory discovery;  (iii) the review of publicly available

13   information regarding Fight Pass; and (iv) review of publicly available information regarding

14   Defendant, its business practices, and prior litigation involving it. *See* Saunders Decl. ¶ 12. The

15   parties also held telephonic discussions regarding Plaintiff's allegations, discovery, and the prospects

16   of settlement, as well as a mediation session. *Id.* ¶¶ 6, 10-13. Information exchanged was confirmed

17   by Defendants in discovery responses. *See* Saunders Decl., Exh. 2. Thus, the proposed Settlement is

18   the result of fully informed negotiations.

19                 **6.    The View of Experienced Counsel Support Granting Final**

20                         **Settlement Approval**

21        "The recommendations of plaintiffs' counsel should be given a presumption of

22   reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re*

23   *Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same); *Harris v. U.S. Physical*

24   _____

25   [8]  Distributing the unclaimed funds from the Net Settlement Fund to the two designated *cy pres*
     recipients is reasonable in the context of this settlement instead of trying to distribute it to the class
26   members who elect to receive the cash option through a proportional ratchet-up that would exhaust
     the Fund. This is true because the majority of the active class members are receiving the automatic
27   two month subscription service and only a minority will elect the cash option. Providing a
     proportional increase to the cash electors only would be disproportional and could result in windfall
28   awards given the low number of class members who submitted Claim Forms making the cash
     election.

---

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:23-CV-00802-CDS-DJA                                                    23

1   *Therapy, Inc.*, No. 2:10-cv-01508-JCM, 2012 WL 3277278, at *7 (D. Nev. July 18, 2012), *report*

2   *and recommendation adopted,* No. 2:10-CV-1508-JCM, 2012 WL 3277276 (D. Nev. Aug. 9, 2012)

3   ("Based on counsels' knowledge of the specific facts of this action, experience in settlements such

4   as this, and opinion that the settlement should is fair, reasonable, and adequate, the court finds that

5   this factor weighs in favor of granting preliminary approval of the settlement."). Deference to Class

6   Counsel's evaluation of the Settlement is appropriate because "[a]ttorneys, having an intimate

7   familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the

8   action, and the Court should not without good cause substitute its judgment for theirs." *Bechtel Corp.*,

9   485 F. Supp. at 622; *see also Rodriguez*, 563 F.3d at 967 ("Parties represented by competent counsel

10  are better positioned than courts to produce a settlement that fairly reflects each party's expected

11  outcome in litigation."). Here, the Settlement was negotiated by counsel with extensive experience

12  in consumer class action litigation. *See* ECF No. 106-1, 106-2, 106-3 ("Firm Resumes"). Based on

13  their experience, Class Counsel concluded that the Settlement provides fair, adequate and reasonable

14  results for the Class while sparing the Class from the uncertainties of continued and protracted

15  litigation.

### 7.   The Response of Class Members Has Been Overwhelmingly Positive

17         The objection and opt-out deadlines lapsed on May 6, 2025. By that date, not a single Class

18  Member objected to the Settlement, and 0 Class Members opted out. *See* Rugg Decl. ¶¶24-25. Such

19  an overwhelmingly positive response from a group of Class Members that exceeds 186,000 strongly

20  supports final approval. *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017)

21  ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong

22  presumption that the terms of a proposed class settlement action are favorable to the class members.'

23  A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when

24  few class members object to it. … [T]he fact that the overwhelming majority of the class willingly

25  approved the offer and stayed in the class presents at least some objective positive commentary as to

26  its fairness."); *Rodriguez*, 563 F.3d at 967 (affirming district court's finding that 54 objections out of

27  376,301 putative class members reflected a favorable reaction); *Riker*, 2010 WL 4366012, at *5

28

1    ("The small number of objections is an indication that the settlement is fair, adequate, and

2    reasonable."); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d at 1043 ("the absence of a large number

3    of objections to a proposed class action settlement raises a strong presumption that the terms of a

4    proposed class settlement action are favorable to the class members") (emphasis added and citation

5    omitted); *Torchia v. W.W. Grainger, Inc.,* 304 F.R.D. 256, 270 (E.D. Cal. 2014) ("Significantly, no

6    objections were filed by Class Members following service of the Class Notice Packet. ... Therefore,

7    this factor weighs in favor of the Settlement.") (internal citation omitted*); Nat'l Rural Telecomm.

8    Coop,* 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides

9    further support for final approval of the Proposed Settlement. It is established that the absence of a

10   large number of objections to a proposed class action settlement raises a strong presumption that the

11   terms of a proposed class settlement action are favorable to the class members."); *Arreola v.

12   Shamrock Foods Co.,* 2021 WL 4220630, at *5 (C.D. Cal. Sept. 16, 2021) ("[N]one [of the settlement

13   class members] objected or opted out. A low proportion of opts outs and objections 'indicates that

14   the class generally approves of the settlement.' Therefore, this factor weighs in favor of final

15   approval.") (citations omitted).

16       **C.    Rule 23(e)(2) Factors**

17           **1.    The Class Representatives and Class Counsel have
                      Adequately Represented the Class**

18

19           As is discussed further below, Plaintiffs' interests here are aligned with other class members'

20   interests because they suffered the same injuries: paying fees to Defendants due to its automatic

21   renewal scheme. Because Plaintiffs and the Class suffered these alleged injuries as a result of

22   Defendants' common course of conduct, Plaintiffs have an interest in vigorously pursuing the claims

23   of the Class. Further, numerous other courts in this Circuit have previously found that Plaintiffs'

24   attorneys adequately meet the obligations and responsibilities of Class Counsel. *See* Saunders Decl.

25   ¶ 27; *see also* ECF Nos. 106-1, 106-2, 106-3 (Firm Resumes).

26           **2.    The Settlement Was Negotiated At Arm's Length**

27           In evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention

28   should be paid to the process of settlement negotiations. When a class settlement is reached through

1    arm's-length negotiations between experienced, capable counsel knowledgeable in complex class

2    litigation, there is a presumption that the settlement is fair and reasonable. *See In re Pac. Enters. Sec.*

3    *Litig.*, 47 F.3d at 378; *Garner*, 2010 WL 1687832, at *9. The Court's role is to ensure that the

4    settlement is fundamentally fair, reasonable and adequate. *See In re Syncor*, 516 F.3d at 1100.

5         Here, counsel for both Plaintiffs and Defendants are experienced in class action litigation,

6    engaged in protracted settlement discussions, and reached this settlement with the assistance of an

7    experienced neutral. *See* H. Robinovitch Decl. in Support of Motion for Preliminary Approval of

8    Settlement (ECF 98-1); T. Fisher Decl. (ECF 106-1); C. Straub Decl. (ECF 106-1). In other words,

9    the negotiations were conducted at arm's length, non-collusive, well-informed (in that they were

10   conducted after an assessment of the strengths and weaknesses of the claims on both sides),

11   conducted between counsel on both sides with significant class action experience, and utilized at the

12   appropriate time the assistance of a well-respected mediator. Under such circumstances, the proposed

13   Settlement is entitled to a presumption of reasonableness, and the Court is entitled to rely upon

14   counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D.

15   Cal. Mar. 25, 2021) ("[T]he Court found that Class Counsel have substantial experience in litigating

16   and settling consumer class actions. Despite the relatively early stage of the litigation, Class Counsel

17   obtained sufficient information to make an informed decision about the Settlement and about the

18   legal and factual risks of the case… The Settlement was also the product of arm's-length negotiations

19   through mediation sessions and follow-up communications supervised by [an experienced neutral].

20   There is no indication of any collusion between the parties."); *Boyd v. Avanquest N. Am. Inc*

21   [hereinafter *Avanquest*], 2015 WL 4396137, at *3 (N.D. Cal. July 17, 2015) ("[U]se of mediator

22   'tends to support the conclusion that the settlement process was not collusive.'") (quoting *Villegas*

23   *v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *Bechtel Corp.*,

24   485 F. Supp. at 622-25. Accordingly, the second Rule 23(e)(2) factor has been met.

25              **3.    The Settlement Provides Adequate Relief To The Class**

26        Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and

27   appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the

28   method of processing class-member claims, if required; (iii) the terms of any proposed award of

1   attorney's fees, including timing of payment; and (iv) any agreement required to be identified under

2   Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon* factors including: "the

3   risk, expense, complexity, and likely duration of further litigation" (*Hanlon* Factor 2); "the risk of

4   maintaining class action status throughout the trial" (*Hanlon* Factor 3); and "the amount offered in

5   settlement" (*Hanlon* Factor 4). As noted above, the Settlement has met each of the *Hanlon* factors.

6   *Supra* §§ V.A(1)-(5). As to "any agreement required to be identified by Rule 23(e)(3)[,]" no such

7   agreement exists in this case other than the Settlement.

8       As to "the effectiveness of any proposed method of distributing relief to the class," it is

9   "important for the court to scrutinize the method of claims processing to ensure that it facilitates

10  filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal. July

11  15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims processing

12  method should deter or defeat unjustified claims, but the court should be alert to whether the claims

13  process is unduly demanding." *Id*. Here, Settlement Class Members with current subscriptions will

14  automatically receive two months of free access to Fight Pass services, without having to file any

15  claim. Settlement § 4.4. Alternatively, Settlement Class Members can submit a claim form electing

16  to instead receive a payment from the Settlement Fund of $9.99. *Id*. The claims process is only

17  required for Settlement Class Members who opt to elect cash and it "requires logging on to the

18  Settlement Website and submitting a Claim there, or a Settlement Class Member may print the Claim

19  form from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer."

20  *Alvarez*, 2020 WL 7314793, at *6. The Court should find that "this process is not unduly demanding,

21  and that the proposed method of distributing relief to the Class is effective." *Id.*

22      Next, as to "the terms of any proposed award of attorney's fees," Class Counsel applied for

23  attorneys' fees, costs, and expenses not to exceed $400,000 which constitutes approximately 25%

24  percent of the value of the Settlement, and a lower percentage if the injunctive benefits are

25  considered. Settlement § 4.2; Saunders Decl., ¶16. There is no significant multiplier on counsel's

26  hourly time calculated at their regular billing rates for contingent, class action litigation. The Ninth

27  Circuit has identified five factors that are relevant in determining whether requested attorneys' fees

28  are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work

generated benefits beyond the Class settlement fund, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiffs and the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, as expounded upon in their Motion for Fees and Expenses (ECF No. 106), Proposed Class Counsel has easily satisfied each factor.

First, with respect to the results achieved, Class Counsel's efforts have secured a settlement consisting of a mix of monetary and in-kind relief, with a cash value of $1,200,000 and in-kind relief leading the total value of the settlement to roughly equal $1,600,000, in addition to injunctive relief. As discussed in detail above, this is an excellent result. *See supra* § VI.A(4).

Second, Plaintiffs have established that there are significant risks in entering a protracted litigation. *See supra* §§ VI.A(2)-(3). Thus, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4. "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Id.* (citing *Rodriguez*, 563 F.3d at 966). "Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources." *Id.* (citing *Garner*, 2010 WL 1687832, at *10). "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

Third, as noted above, *see supra* § III, Class Counsel's time and efforts in this litigation have generated benefits beyond the Class settlement fund. *See also* Settlement § 4.5.

Fourth, Plaintiff's counsel's requested fee is consistent with market rates as reflected by awards made in similar cases. Indeed, courts in this Circuit routinely approve fee requests for up to one-third of a common fund. *See, e.g.*, *Blandino v. MCM Constr., Inc.*, 2014 WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (awarding 33% of settlement fund in attorneys' fees); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (awarding 33% in fees); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 460 (9th Cir. 2000) (affirming 33.5% fee award); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234

1  (9th Cir. 1998) (affirming 33.3% fee award) ("The $2,000,000 requested by class counsel amounts

2  to one-third of this common fund. ... Courts in this district have consistently approved attorneys'

3  fees which amount to approximately one-third of the relief procured for the class.") (citations

4  omitted); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379 (affirming 33% fee award); *Vasquez v.*

5  *Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of

6  acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In*

7  *re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding fee of 32.8%); *Garner*

8  *v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687829, at *1 (N.D. Cal. Apr. 22, 2010) ("A fee award

9  of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common

10 fund cases."); *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee award); *Larsen*, 2014 WL 3404531, at

11 *9 ("[Counsel's] request for attorneys' fees in the amount of 28% of the common fund falls within

12 the range of acceptable attorneys' fees in Ninth Circuit cases.") (citations omitted); *Wellens v.*

13 *Sankyo*, 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding 36% of $8,200,000 settlement

14 fund in fees).  As noted above, the fee sought here is not 33% of the entire fund, but only the cash

15 portion.

16      Finally, the requested fees are also fair given the significant time Class Counsel has devoted

17 to this case on a contingency fee basis, with the threat of no recovery at all absent a successful

18 resolution. Thus, because of the contingent nature of the fee and the financial burden carried by

19 Plaintiffs and the Class, Plaintiffs' Counsel's requested fee award of 33% of the total cash portion of

20 the Settlement and a smaller proportion of the entire value of the Settlement is reasonable and

21 appropriate in this case. *See Vizcaino*, 290 F.3d at 1048–50.[9]

22      The Settlement therefore provides adequate relief to the Class under Rule 23(e)(2)(C), and

23 the requested attorneys' fees are reasonable in relation to such relief.

24

25

---

26 [9]   In addition, Plaintiff also seek reasonable service awards op to $2,500 for each of the named
Plaintiffs/Settlement Class Representatives.  SA §4.2.  Such amounts are reasonable given the time

27 devoted and risks assumed by the representative plaintiffs.  Absent their efforts, there would be no
settlement for the absent class members and therefore, courts often approve service awards in this

28 range allowing the cost to be spread proportionally to all class members.

### 4.    The Settlement Treats All Class Members Equally

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'"  *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)).  In assessing this factor, "the Court considers whether the proposal 'improperly grant[s] preferential treatment to class representatives or segments of the class.'"  *Id.* (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079).

Here, in addition to providing a credit of two months of free service (retail price of $9.99 a month) to those Class Members with active subscriptions who do nothing, the Settlement also distributes cash relief to those who submitted a claim. Settlement § 4.4.  Courts in this Circuit have found that allocating Settlement benefits among Class Members in this manner is equitable.  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding distribution equitable); *Avanquest*, 2015 WL 4396137, at *3  ("[T]he proposed settlement agreement 'does not improperly grant preferential treatment to class representatives or segments of the class[]' because all class members are treated in the same way and there is no difference in treatment throughout the class.") (internal citations omitted) (quoting *State of California v. eBay, Inc.*, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014)).

Finally, any undistributed funds will go as a *cy pres* distribution to be split equally between Public Citizen and Public Justice, two national consumer rights organizations. *See generally*, https://www.citizen.org/ and https://www.publicjustice.net.

In *Dennis v. Kellogg*, 697 F.3d 858, 865 (9th Cir. 2012) the court explained:

> A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary," and there must be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (quotation omitted). That is to say, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.* (quotation omitted). A *cy pres* distribution is not appropriate if there is "no reasonable certainty that any class member would benefit from it." *Id.* (quotation omitted).

The standard is satisfied here. As explained on their websites, Public Justice and Public Citizen are organizations that help advocate for consumer rights against deceptive or unfair practices. *See generally*, www.citizen.org ("Public Citizen is a nonprofit consumer advocacy organization that

champions the public interest in the halls of power.") and www.publicjustice.net ("We take on the biggest systemic threats to justice in our time – abusive corporate power and predatory practices.")

In turn, the required nexus between the settlement Class and the *cy pres* recipient exists. This is further shown by Public Justice and Public Citizen having been approved by courts as appropriate *cy pres* recipients in consumer class settlements as their work approximates benefits provided directly to consumers. *See, e.g.*, *Maxin v. RHG & Co., Inc.*, 2019 WL 4295325, at *2 (S.D. Cal. June 24, 2019) ("Public Justice Foundation…meet[s] the relatedness standard required for *cy pres* distribution."); *Somogyi v. Freedom Mortg. Corp.*, 2023 WL 8113242, at *1 (D.N.J. Nov. 22, 2023) ("The Court agrees with Plaintiffs that a *cy pres* distribution is appropriate and that the Public Justice Foundation is an appropriate cy pres recipient"); *Behrens v. Landmark Credit Union*, 2018 WL 9801773 (W.D. Wis. Sept. 11, 2018) (approving Public Citizen as *cy pres* recipient in case related to assessed fees). Accordingly, the *cy pres* funds will best approximate the Settlement Class lass by continuing to be used to support consumer's rights against allegedly deceptive business practices, indirectly benefiting all class members here. This satisfies the requirements for a *cy pres* award in the Ninth Circuit. *See Dennis*, 697 F.3d at 865, citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990); Settlement § 4.8. Thus, this factor weighs in favor of granting approval.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their unopposed Motion for Final Approval of the Settlement. A Proposed Order granting final approval and certifying the Settlement Class will be submitted in advance of the June 10, 2025 final approval hearing.

Dated:  May 20, 2025          **CROSNER LEGAL, P.C.**

By:   */s/ Chad A. Saunders*
          Chad A. Saunders

Chad A. Saunders (*Pro Hac Vice*)
Craig W. Straub (*Pro Hac Vice*)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637

1

2

Fax: (310) 510-6429
chad@crosnerlegal.com
craig@crosnerlegal.com

3

*Attorneys for Plaintiffs Moises Reza,*
*Frank Garza, and Tanner Pendergraft*

4

5

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice*)

6

1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596

7

Telephone: (925) 300-4455
Facsimile: (925) 407-2700

8

E-Mail: ltfisher@bursor.com

9

**GUCOVSCHI ROZENSHTEYN, PLLC**

10

Adrian Gucovschi (*Pro Hac Vice*)
140 Broadway, Suite 4667 New York, NY 10005

11

Tel: (212) 884-4230
Email: adrian@gr-firm.com

12

13

*Attorneys for Plaintiff Isaiah Sanchez*

14

**MARKMAN LAW**
David A. Markman (Nevada Bar No. 12440)

15

4484 S. Pecos Rd.
Suite 130

16

Las Vegas, NV 89121
Tel: (702) 843-5899

17

Email: david@markmanlawfirm.com

18

**ZIMMERMAN REED LLP**
Hart L. Robinovitch (*Pro Hac Vice*)

19

Email: hart.robinovitch@zimmreed.com
14648 N. Scottsdale Rd.

20

Suite 130
Scottsdale, AZ 85254

21

Tel: (480) 348-6400

22

**ZIMMERMAN REED LLP**
Zachary J. Freese (*Pro Hac Vice*)

23

Email: zachary.freese@zimmreed.com
80 South 8th St.

24

Suite 1100
Minneapolis, MN 55402

25

Tel: (612) 341-0400

26

*Attorneys for Plaintiff Saul Garcia*

27

**LEON GREENBERG, PC**
Leon Greenberg (NV Bar No. 8094)

28

1811 S. Rainbow Blvd. Ste. 210

Las Vegas, NV 89146
(702) 383-6085

*Local Counsel for Plaintiffs Moises Reza,*
*Frank Garza, and Tanner Pendergraft*